4195-23733

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 11 |
| | * | |
| FIRST NBC BANK HOLDING COMPANY, | * | CASE NO. 17-11213 |
| | * | |
| Debtor, | * | SECTION "A" |
| | * | |
| * * * * * * * | * | |
| | * | * * * * * |
| | * | |
| ZURICH AMERICAN INSURANCE COMPANY | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| VERSUS | * | |
| | * | |
| GREGORY ST. ANGELO, WILLIAM D. | * | |
| AARON, JR., HERBERT W. ANDERSON, | * | ADV. P. NO. _____ |
| DALE ATKINS, JOHN C. CALHOUN, | * | |
| WILLIAM CARROUCHE, | * | |
| LEANDER J. FOLEY, III, JOHN F. FRENCH, | * | |
| LEON GIORGIO, JR., SHIVAN GOVIDAN, | * | |
| LAWRENCE BLAKE JONES, LOUIS | * | |
| LAURICELLA, MARK MERLO, | * | |
| HERMAN MOYSE, III, GRISH LLOYD | * | |
| PANDIT, JAMES RODDY, DR. CHARLES | * | |
| TEAMER, JOSEPH TOOMY, RICHARD M. | * | |
| WILKINSON, LOUIS BALLERO, MARSHA | * | |
| CROWLE, MARY BETH VERDIGETS, | * | |
| FRANK FUGETTA AND MICHAEL LULICH | * | |
| | * | |
| Defendants. | * | |
| * * * * * * * * | * | |

**COMPLAINT FOR INTERPLEADER**
**AND FOR DECLARATORY RELIEF**

Zurich American Insurance Company ("Zurich"), plaintiff herein, hereby seeks to interplead $270,872.85 ("the Proceeds") and respectfully requests that this Honorable Court

1

determine whether defendants, Gregory St. Angelo, William D. Aaron, Jr., Herbert W. Anderson, Dale Atkins, John C. Calhoun, William Carrouche, Leander J. Foley, III, John F. French, Leon Giorgio, Jr., Shivan Govidan, Lawrence Blake Jones, Louis Lauricella, Mark Merlo, Herman Moyse, III, Grish Lloyd Pandit, James Roddy, Dr. Charles Teamer, Joseph Toomy, Richard J. Wilkinson, Louis Ballero, Marshal Crowle, Mary Beth Verdigets, Frank Fugetta and Michael Lulich, are entitled to the Proceeds. In support thereof, Zurich states as follows:

## JURISDICTION AND VENUE

1. First NBC Bank Holding Company filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code on May 11, 2017, in the United States Bankruptcy Court for the Eastern District of Louisiana (No. 17-11213).

2. Zurich is the insurer of First NBC Bank Holding Company, its officers and directors, and other individuals, as defined by and pursuant to the terms and conditions of Zurich's Policy No. DOP 9311203-04 (the "Policy").

3. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334, Federal Rule of Civil Procedure 22, and Federal Bankruptcy Rule of Procedure 7022. This is an interpleader action to deposit insurance Proceeds into the Court's Registry and to obtain a declaration of the party or parties entitled to receive those proceeds, and further to obtain a declaration that Zurich is discharged from all further liability regarding the Proceeds concerning the controversy described herein. As detailed further below, Zurich finds itself facing competing demands from multiple **Insured Persons**[1] under its Policy, which may expose Zurich to potentially duplicative litigation, and to the risk of conflicting judgments. Defendant Gregory St. Angelo is

---

[1] Unless otherwise specified, capitalized and bolded terms used in this Complaint for Interpleader and Declaratory Relief have the same meaning that is ascribed to them in the Policy.

demanding immediate reimbursement of $270,872.85 in **Defense Costs** from the Policy's proceeds, and the remaining Defendants have demanded that the reimbursement not be made, and that those same funds be used to pay their own **Loss** incurred under the Policy.

4. Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

5. The statutory bases for the relief of the causes herein are 28 U.S.C. §1335 (the Federal Interpleader Statute) and 28 U.S.C. §2201 (the Declaratory Judgment Act).

## PARTIES

6. Plaintiff, Zurich, is a New York Corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New York, New York 10007, and its principal place of business at 1299 Zurich Way, Schaumburg, Illinois 60196.

7. Defendant, Gregory St. Angelo, is upon information and belief a citizen of the State of Louisiana, who resides at 10 Tupelo Trace, Mandeville, LA 70471.

8. Defendant, Herbert W. Anderson, is upon information and belief a citizen of the State of Louisiana, who resides at 1400 Webster Street, New Orleans, LA 70118.

9. Defendant, Dale B. Atkins, is upon information and belief a citizen of the State of Louisiana, who resides at 2411 Oriole Street, New Orleans, LA 70122.

10. Defendant, William David Aaron, Jr., is upon information and belief a citizen of the State of Louisiana, who resides at 10 Natchez Trace Drive, Harvey, LA 70058.

11. Defendant, John C. Calhoun, is upon information and belief a citizen of the State of Louisiana, who resides at 5422 Prytania Street, New Orleans, LA 70115.

12. Defendant, William Carrouche, is upon information and belief a citizen of the State of Louisiana, who resides at 2709 Old Spanish Trail, Slidell, LA 70461.

13. Defendant, Leander J. Foley, III, is upon information and belief a citizen of the State of Louisiana, who is domiciled in Louisiana.

14. Defendant, John Fenner French, Sr., is upon information and belief a citizen of the State of Louisiana, who resides at 230 Carondelet Street, New Orleans, LA 70130.

15. Defendant, Leon L. Giorgio, Jr., is upon information and belief a citizen of the State of Louisiana, who resides at P.O. Box 75010, Metairie, LA 70033.

16. Defendant, Shivan Govindan, a person of the full age of majority and domiciled in the State of Colorado, who resides at 230 Gaylord Street, Denver, CO 80206.

17. Defendant, Lawrence Blake Jones, is upon information and belief a citizen of the State of Louisiana, who resides at, 701 Poydras Street, Suite 4100, New Orleans, LA 70139.

18. Defendant, Louis Lauricella, is upon information and belief a citizen of the State of Louisiana, who is domiciled in Louisiana.

19. Defendant, Mark Merlo, is upon information and belief a citizen of the State of Louisiana, who is domiciled in Louisiana.

20. Defendant, Hermann B. Moyse, III, is upon information and belief a citizen of the State of Louisiana, who resides at 5926 Boone Drive, Baton Rouge, LA 70808.

21. Defendant, Grish Roy B. Pandit, is upon information and belief a citizen of the State of Louisiana, who resides at 25 Chateau Mouton Drive, Kenner, LA 70065.

22. Defendant, James C. Roddy, is upon information and belief a citizen of the State of Louisiana, who resides at 26 Audubon Place, New Orleans, LA 70118.

23. Defendant, Dr. Charles C. Teamer, Sr., is upon information and belief a citizen of the State of Louisiana, who resides at 32 Fairway Oaks Drive, New Orleans, LA 70131.

24. Defendant, Joseph F. Toomy, is upon information and belief a citizen of the State of Louisiana, who resides at P.O. Box 663, Gretna, LA 70054-0663.

25. Defendant, Richard M. Wilkinson, is upon information and belief a citizen of the State of Louisiana, who resides at 813 Barracks Street, New Orleans, LA 70116.

26. Defendant, Louis P. Ballero, Jr., is upon information and belief a citizen of the State of Louisiana, who resides at 6537 Argonne Blvd, New Orleans, LA 70124.

27. Defendant, Marsha Crowle, is upon information and belief a citizen of the State of Louisiana, who resides at 6208 Pratt Place, New Orleans, LA 70122.

28. Defendant, Mary Beth Verdigets, is upon information and belief a citizen of the State of Louisiana, who resides at 2400 Gay Lynn Drive, Kenner, LA 70065.

29. Defendant, Frank Fugetta, is upon information and belief a citizen of the State of Louisiana, who is domiciled in Louisiana.

30. Defendant, Michael Lulich, is upon information and belief a citizen of the State of Louisiana, who is domiciled in Louisiana.

## FACTS COMMON TO ALL COUNTS

**The Policy**

31. Zurich issued a Financial Institution Select Insurance Policy to First NBC Bank Holding Company, No. DOP9311203-04, with a policy period of 06/09/2015 to 06/09/2016, which includes a Management Liability Coverage Part with an aggregate limit of liability of $15 million (the "Policy"). See Exhibit "A."

32. All of the Interpleader-Defendants are **Insureds** under the Policy, subject to the Policy's various terms, conditions, and exclusions.

33. The Policy provides coverage to **Insured Persons** pursuant to its Coverage Part A for Management Coverage Liability.

34. Insuring Clause A of the Policy's Management Liability Coverage Parts states as follows:

> INSURED PERSON LIABILITY COVERAGE
>
> The Insurer shall pay on behalf of the **Insured Persons** all **Loss** for which the **Insured Persons** are not indemnified by the **Company** and which the **Insured Persons** become legally obligated to pay on account of any **Claim** first made against them, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**, subject to the applicable Limits of Liability set forth in the Declarations.
> …

35. The Policy's Management Liability Coverage Part defines **Claim** as follows:

> A. **Claim** means, in pertinent part:
> …
> 1. a written demand against any **Insured Person** for monetary damages or non-monetary or injunctive relief commenced by the **Insured Person's** receipt of such demand, including a written demand that the **Insured Person** toll or waive a statute of limitations;
> …
> 4. a civil, criminal, administrative or regulatory investigation of any **Insured Person** commenced by the service upon or other receipt by the **Insured Person** of a target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;
> …
>
> for a **Wrongful Act**, including any appeal therefrom.

36. The Policy's Management Liability Coverage Part defines **Insured Person** as follows:

6

    C. **Insured Person** means:

    1. any one or more natural persons who were, now are or shall become a duly elected or appointed director, trustee, governor, **Manager**, officer, advisory director, or member of a duly constituted committee or board of the Company or their functional equivalent;

    2. any one or more natural persons not described in Subsection 1 above who were, now are or shall become **Employees** of the **Company**;

…

37. The Policy's Management Liability Coverage Part defines **Wrongful Act** as follows:

    H. **Wrongful Act** means:

    1. any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by any of the **Insured Persons**, individually or otherwise, in their capacity as such;

        1. any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity; or

        2. any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by the **Company**.

…

38. The Policy's General Terms and Conditions defines **Company** as follows:

    D. **Company** means, collectively, the **Policyholder** and its **Subsidiaries**, including any such organization as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

39. The Policy's General Terms and Conditions defines **Policyholder** as follows:

    NN. **Policyholder** means the organization designated in Item 1 of the Declarations.

7

40. The Policy's General Terms and Conditions defines **Subsidiary** as follows:

> AAA. **Subsidiary** means:
>
> 1. any organization other than a joint venture or partnership (including ant **Company** acting as a general partner of a partnership), in which more than fifty percent (50%) of the outstanding voting securities or voting rights representing the present right to vote for election of directors, trustees, Managers, or equivalent executives is owned or controlled, directly or indirectly, in any combination, by one or more **Companies**;

41. Section VII(A)(1) of the Policy's General Terms and Conditions states, "With respect to any **Liability Coverage Part**, if, pursuant to Item 8 of the Declarations, it shall be the duty of the **Insureds** to defend **Claims** . . ."

42. The Policy defines **Loss** as follows:

> F. **Loss** means the total amount the **Insureds** become legally obligated to pay on account of **Claims** made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment or post-judgment interest with respect to covered damages, settlements and **Defense Costs**.
>
> The insurability of such punitive, exemplary or multiple damages shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Insureds**, the Insurer, this policy or such **Claim** is located.
>
> **Loss** does not include any of the following provided this sentence does not apply to **Defense Costs** with respect to any of the following:
>
> 1. any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

8

    2.    taxes, fines or penalties imposed by law;

    3.    any amount incurred by the **Company** that represents or is substantially equivalent to an increase in the consideration paid or proposed to be paid by a **Company** in connection with its purchase of any securities or assets;

    4.    any amount incurred by the **Company** to comply with any injunctive or other equitable relief or any agreement to provide such relief;

    5.    any amount incurred as a result of an administrative or regulatory proceeding; or

    6.    matters uninsurable under the law pursuant to which this policy is construed.

43.    Section V of the Policy's General Terms and Conditions provides as follows:

> A.    If in any **Claim** under the **Liability Coverage Parts** the **Insureds** incur both **Loss** covered by this policy and loss not covered by this policy either because the **Claim** against the **Insureds** includes both covered and uncovered matters or because the **Claim** is made against both **Insureds** who are afforded coverage for such **Claim** and others, including **Insureds,** who are not afforded coverage for such **Claim,** the **Insureds** and the Insurer shall use their best efforts to allocate such amount between covered **Loss** and uncovered loss based upon the relative legal and financial exposures of the parties to covered and uncovered matters; provided however that one hundred percent (100%) of any such **Defense Costs** shall be allocated to covered **Loss** if and to the extent such **Defense Costs** are incurred by covered **Insureds** and are in part covered and in part not covered by this policy solely because the **Claim** against the **Insureds** includes both covered and uncovered matters.

44.    Section VI.C. of the Policy's General Terms and Conditions states that "[a]ny advancement or payment of **Defense Costs** shall be repaid to the Insurer by the **Insureds** severally according to their respective interests if and to the extent the Insureds shall not be entitled under the terms and conditions of this policy to coverage for such **Defense Costs**."

9

**The Noticed Matters**

45. The Defendants have cumulatively provided notice of multiple matters under the Policy to Zurich including, but not limited to, the following:

- a demand letter from the FDIC-R dated August 25, 2017, in which the FDIC-R indicates its intention to recover alleged damages in the amount of at least $250 million based on certain Defendants' alleged breaches of duty to the Bank and/or First NBC Bank Holding Company;

- a lawsuit filed by the Official Committee of Unsecured Creditors of First NBC Bank Holding Company (the "Committee"), entitled <u>Official Committee of Unsecured Creditors of First NBC Bank Holding Company v. Ashton J. Ryan, Jr., et al.</u>, Case No. 2:19-cv-10341;

- <u>a lawsuit entitled Academy Place, LLC, et al. v. First NBC Bank, et al.</u>, originally filed in Louisiana's Civil District Court for the Parish of New Orleans, Docket No. 17-4057

- multiple subpoenas issued by the Securities Exchange Commission;

- multiple federal grand jury subpoenas;

- a target letter issued by the U.S. Department of Justice;

- multiple subpoenas issued by the FDIC-R;

- multiple subpoenas issued by the FDIC's Legal Division, as a precursor to a potential enforcement proceeding;

46. Since the inception of these matters, the Defendants have sought coverage for the same under the Policy, including the advancement of **Defense Costs**.

47. This Court has issued two Orders in the Chapter 11 bankruptcy proceeding regarding distribution of proceeds from the Policy. On January 26, 2018, the Court ordered that the "2016-2017 insurers" are to "comply with the terms of their respective policies, including, without limitation, to advance, reimburse or make payments on account to defense costs (including and without limitation attorney's fees and expenses) and other Loss as defined in the respective policies. . .". The order further provided that "aggregate payments permitted in the policies shall be subject to a "soft cap" of $5 million." (Case 17-11213, R. Doc. 325 at p 2). The Court issued a second order on March 14, 2019, providing that "the aggregate payments permitted under the policy shall be subject to a "soft cap" of $9 million (an increase of $4 million from the original Soft Cap") (Case 17-11213, Doc. 531). Copies of those orders are attached to this Complaint as Exhibits "B" and "C".

**Guilty Plea by Defendant St. Angelo**

48. On March 22, 2019, a Bill of Information to Commit Bank Fraud and Notice of Forfeiture was filed against Gregory St. Angelo in the United States District Court for the Eastern District of Louisiana, No. 2:19-CR-00055, alleging that Mr. St. Angelo was the general counsel of First NBC Bank from September of 2006 through September of 2016, and alleging conspiracy to commit bank fraud. (See Case No. 2:19-CR-0055, R. Doc. 1, 03/22/2019).

49. Zurich had previously agreed to provide reimbursements for **Defense Costs** to Mr. St. Angelo pursuant to a Reservation of Rights.

50. On June 28, 2019, Mr. St. Angelo formally pled guilty to one count of conspiracy to commit mail fraud in violation of 18 U.S.C. §1349 and also admitted that he engaged in an intentional scheme along with two other unnamed officers at First NBC to defraud the bank. As part of his plea agreement, Mr. St. Angelo knowingly and voluntarily waived and has given up any

right to appeal or contest his guilty plea, conviction, sentence, fine, supervised release and any restitution imposed by the Court, with the sole exception being sentenced to a term of imprisonment in excess of the statutory maximum.

51. On July 29, 2019, Zurich notified Mr. St. Angelo that it was going to deny coverage to him under two exclusions of the policy - which require a final and non-appealable adjudication of guilt – namely, Sections IV(I) and IV(J) of the Policy's Management Liability Coverage Part. In the same letter, Zurich also demanded that Mr. St. Angelo return all monies previously advanced by Zurich.

52. All defendants other than Mr. St. Angelo are either former directors of First NBC Bank and/or have asserted that they are **Insured Persons** under the Policy, and all have submitted claims under the Policy for reimbursement of their attorney's fees and expenses.

## THE COMPETING CLAIMS

53. Mr. St. Angelo has disputed Zurich's position denying him coverage and argued that a "final adjudication" under the Policy does not occur until he is sentenced by the Court, and he therefore contends that Zurich must continue to pay his fees up until his date of sentencing. Mr. St. Angelo has demanded payment for all outstanding defense costs not yet reimbursed to him under the Policy (a total of $270,872.85 to date). Mr. St. Angelo has further stated that if Zurich fails to pay, then he will commence a lawsuit against Zurich, including seeking bad faith damages.

54. In light of Zurich's duty of good faith to all of its insureds, in light of its duty to safeguard against any potential claw back proceeding against Mr. St. Angelo, and to avoid potentially favoring the interests of any one **Insured Person(s)** over the interest of any other **Insured Person(s)**, by letter dated September 17, 2019, Zurich inquired whether any of the other **Insured Persons** currently receiving funds from the Policy had any objection to the continued

payment of fees for Mr. St. Angelo. In in response, Zurich received four letters on behalf of 23 individuals who comprise all defendants in this action other than Mr. St. Angelo, and who collectively made demands that Zurich not make any further payments from the Policy's Proceeds to Mr. St. Angelo (the "Objecting Insureds"). The Objecting Insureds also demanded that Zurich recoup all fees that have been paid to date to Mr. St. Angelo.

55. The Objecting Insureds contend that Zurich should not make any further reimbursements to Mr. St. Angelo under the Policy on multiple grounds. They contend that Mr. St. Angelo's guilty plea and admissions trigger the fraudulent conduct exclusions under the policy. Additionally, the Objecting Insureds contend that in light of Mr. St. Angelo's guilty plea, he should be judicially estopped from receiving further fees under the Policy. Further, they contend that Mr. St. Angelo should not be allowed to drain the Policy's limit of liability funds, which he is contractually obligated to repay, when those funds potentially could be used for the benefit of other insureds. Further, the Objecting Insureds contend that Mr. St. Angelo does not qualify as an **Insured Person** under the Policy, and therefore has no right to receive any proceeds from the Policy. Finally, the Objecting Insureds contend that Mr. St. Angelo has failed to comply with the applicable orders issued by the Court concerning the receipt of funds from the Policy. Notwithstanding Zurich's good faith efforts to resolve the controversy, the Objecting Insureds have declined to withdraw their demands and objections.

56. As set forth above, Zurich is subject to inconsistent and conflicting demands with respect to the $270,872.85 that Mr. St. Angelo seeks from Zurich for payment of **Defense Costs** (and that amount is expected to increase each month as new fees are incurred). Zurich cannot pay Mr. St. Angelo's continued **Defense Costs** without exposing Zurich to a lawsuit that it favors the rights of one Insured Defendant over the rights of another Insured Defendant. Likewise, Zurich

cannot refuse to pay Mr. St. Angelo's continued **Defense Costs** without exposing Zurich to a lawsuit that it favors the rights of one Insured Defendant over the rights of another Insured Defendant.

## COUNT ONE - INTERPLEADER

57. Zurich hereby incorporates the allegations set forth in paragraphs 1 through 56 as if fully set forth herein.

58. Pursuant to the Federal Interpleader Statute, Rule 7022 of the Federal Rules of Bankruptcy Procedure, and Rule 22 of the Federal Rules of Civil Procedure, this Court may resolve and declare which among two or more parties that have claimed entitlement to a sum of money rightfully is entitled to the money.

59. Zurich will move to deposit the proceeds with the Clerk of Court as required by 28 U.S.C. §1335.

60. Zurich respectfully requests that this Honorable Court determine which of the defendants are entitled to the Proceeds and order the distribution of the Proceeds to the proper party.

## COUNTER II – DECLARATORY JUDGMENT

61. Zurich prays that this Court declare that Zurich is discharged from all further liability from any of the defendants or anyone else with respect to the Policy and the Proceeds thereunder with respect to the issue of any and all further payments of **Loss** to Mr. St. Angelo, including any claims for bad faith.

62. Zurich prays that the Court award it its reasonable attorney's fees and court costs.

63. Zurich prays for all such relief, both general and special, at law and in equity, to which it may show itself to be justly entitled.

## **PRAYER FOR RELIEF**

Zurich respectfully requests the following relief:

1. That defendants be served with the Summons and this Complaint and be required to answer in a time and manner prescribed by law;

2. That the Court accept the Policy Proceeds into the Court's Registry pending further Order of this Court;

3. That the Court enter an order discharging Zurich of all liability to defendants or to anyone else with regard to the issue of any and all further payments of **Loss** to Mr. St. Angelo under the Policy and Proceeds thereunder;

4. That the Court award Zurich its reasonable attorney's fees and court costs to be paid from the interpleaded funds;

5. That the Court award the Policy Proceeds to the party or parties rightfully and legally entitled to receive them;

6. That Zurich receives all such other and further relief, both general and special, at law and in equity to which it is entitled.

Dated: January 24, 2020.

Respectfully submitted,

 /s/ John W. Hite III
Salley, Hite, Mercer & Resor LLC
**JOHN W. HITE III (17611)**
**GLEN E. MERCER (21752)**
**MARCEL MOULLEDEAUX (30339)**
**JAMES G. ALBERTINE III (32053)**
One Canal Place
365 Canal Street, Suite 1710
New Orleans, LA 70130
Telephone: 504/566-8800
Facsimile: 504/566-8828
**BY: /s/ John W. Hite III**
      JOHN W. HITE III
**ATTORNEYS FOR ZURICH AMERICAN INSURANCE COMPANY**

23733/PLEADINGS/Interpleader Complaint