# Financial Institutions Select™ Insurance Policy Declarations



**ZURICH®**

Zurich American Insurance Company
Administrative Office
One Liberty Plaza, 165 Broadway, 32nd Floor
New York, New York 10006

A Stock Insurance Company

Policy No:   DOP 9311203-04

**THE LIABILITY COVERAGE PARTS, IF PURCHASED, ARE ON A CLAIMS MADE AND REPORTED BASIS AND COVER ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD OR RUN-OFF COVERAGE PERIOD, IF EXERCISED, AND REPORTED TO THE INSURER AS REQUIRED BY THIS POLICY. THE LIMITS OF LIABILITY AND ANY RETENTION SHALL BE REDUCED BY AMOUNTS INCURRED AS DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

Item 1.   Name and Mailing Address of the **Policyholder**:

FIRST NBC BANK HOLDING COMPANY
210 BARONNE ST
NEW ORLEANS, LA 70112

Item 2.   **Policy Period**:   From:  06/09/2015  To:  06/09/2016
12:01 a.m. local time at the address of the **Policyholder** stated above.

Item 3.   **Extended Reporting Period**:   A.  Additional Premium:   75.00% of Annual Premium

B.  Additional Period:   365 Days

Item 4.   Notice to Insurer:

A.  Address for Notice of **Claim**, Potential **Claim** or **Coverage Event**:

Attn:  Zurich American Insurance Company
P.O. Box 968041
Schaumburg, IL 60196-8041

B.  Address for All Other Notices:

Attn:  Zurich American Insurance Company
600 Red Brook Blvd.
Owings Mills, MD 21117

Item 5.   Coverage Schedule:   This policy includes only those Coverage Parts or coverages designated below by "X" as purchased. If a Coverage Part or coverage is not expressly designated as purchased, this policy does not include such Coverage Part or coverage.

| Purchased Yes/No | Coverage Part | Limit of Liability | | Retention[1] | | Pending or Prior Date |
|---|---|---|---|---|---|---|
| [X] Yes<br>[ ] No | A. Management Liability<br>Insured Person Liability, Company Reimbursement and Retired Independent Directors Liability | $15,000,000<br><br>$1,500,000 | for all **Loss** for all **Claims** under Insuring Clauses A and B in each **Policy Year**<br><br>aggregate for all **Loss** for all **Retired Independent Directors** for all **Claims** under Insuring Clause C in each **Policy Year** | $350,000 | each **Claim** under Insuring Clause B | 05/09/2006 |
| [X] Yes<br>[ ] No | B. Non-Indemnifiable Excess DIC Liability | $1,000,000 | for all **Non-Indemnifiable Loss** for all **Claims** in each **Policy Year**, which amount shall be separate from any other Limit of Liability under this policy | None | | 06/09/2014 |
| [X] Yes<br>[ ] No | C. Public Company Securities Coverage<br>1. Liability Insuring Clauses<br>Insured Person Securities Liability, Company Reimbursement and Company Securities Liability | $15,000,000 | for all **Loss** for all **Securities Claims** under Liability Insuring Clauses A, B and C in each **Policy Year** | $350,000 | each **Securities Claim** under Insuring Clauses B and C | 05/09/2006 |
| | Retired Independent Directors Liability | $1,500,000 | aggregate for all **Loss** for all **Retired Independent Directors** for all **Securities Claims** under Insuring Clause D in each **Policy Year** which amount shall be part of, not in addition to, the Insuring Clause C Limit of Liability in the Management Liability Coverage Part | None | | |
| [X] Yes<br>[ ] No | 2. Non-Liability Insuring Clause Derivative Demand Investigation Expenses | $150,000 | for all **Investigation Expenses** in each **Policy Year** which amount shall be separate from any other Limit of Liability under this policy | None | | 05/09/2006 |
| [X] Yes<br>[ ] No | D. Employment Practices Liability | $2,000,000 | for all **Loss** for all **Employment Practices Claims** in each **Policy Year** | $100,000 | each **Employ-ment Practices Claim** | 05/09/2006 |

---

[1]  No Retention shall apply to non-indemnifiable **Loss** incurred by **Insured Persons** under any **Liability Coverage Part**, except as required by state law.

| Purchased Yes/No | Coverage Part | Limit of Liability | | Retention[1] | | Pending or Prior Date |
|---|---|---|---|---|---|---|
| [X] Yes<br>[ ] No | Third Party Discrimination Liability | $2,000,000 | Sublimit for all **Loss** for all **Third Party Discrimination Claims** in each **Policy Year** | $150,000 | each **Third Party Discrim- ination Claim** | |
| [X] Yes<br>[ ] No | E. Fiduciary Liability | $5,000,000 | for all **Loss** for all **Claims** in each **Policy Year** | $50,000 | each **Claim** | 05/09/2006 |
| | | $250,000 | Sublimit for all **Voluntary Settlements** and **Defense Costs** in each **Policy Year** | | | |
| | | $25,000 | Sublimit for all **HIPAA Penalties** in each **Policy Year** | | | |
| [X] Yes<br>[ ] No<br>[ ] Yes<br>[X] No<br>[ ] Yes<br>[X] No<br>[ ] Yes<br>[X] No | F. Professional Liability<br><br>Broker Services Liability<br><br>Insurance Agent Services Liability<br><br>IRA/Keogh Services Liability | $5,000,000 | for all **Loss** for all **Claims** in each **Policy Year** | $150,000 | each **Claim** under Insuring Clauses A.2, A.3, B, C and D | 05/09/2006 |
| [X] Yes<br>[ ] No | G. Lender Liability | $10,000,000 | for all **Loss** for all **Claims** in each **Policy Year** | $250,000 | each **Claim** | 05/09/2006 |
| [X] Yes<br>[ ] No | H. Trust Department Liability | $5,000,000 | for all **Loss** for all **Claims** in each **Policy Year** | $150,000 | each **Claim** | 05/09/2006 |
| | I. Security & Privacy Protection<br>1. Liability Insuring Clauses | | | | | |
| [ ] Yes<br>[X] No | a. Security & Privacy Liability | $ N/A | for all **Loss** for all **Claims** in each **Policy Year** | $ N/A | each **Claim** | N/A |
| [ ] Yes<br>[X] No | b. Internet Media Liability | $ N/A | for all **Loss** for all **Claims** in each **Policy Year** | $ N/A | each **Claim** | N/A |
| | 2. Non-Liability Insuring Clauses | | | | | |
| [ ] Yes<br>[X] No | a. Privacy Breach Costs | $ N/A | for all **Privacy Breach Costs** in each **Policy Year** | $ N/A | each **Privacy Event** | N/A |
| [ ] Yes<br>[X] No | b. Public Relations Expense | $ N/A | for all **Public Relations Expenses** in each **Policy Year** | $ N/A | each **Security Event** | N/A |
| [ ] Yes<br>[X] No | c. Reward Payments | $ N/A | for all **Reward Payments** in each **Policy Year** | None | | N/A |

[1]    No Retention shall apply to non-indemnifiable **Loss** incurred by **Insured Persons** under any **Liability Coverage Part**, except as required by state law.

| Purchased Yes/No | | Coverage Part | Limit of Liability | | Retention[1] | | Pending or Prior Date |
|---|---|---|---|---|---|---|---|
| [ ] Yes [X] No | d. | Business Income Loss, Dependent Business Income Loss | $ N/A | for all **Business Income Loss, Dependent**) for each **Security Event Extra Expenses** in each **Policy Year** | The greater of $ N/A or | hours (the **Waiting Hours Retention**) for each **Security Event** | N/A |
| [ ] Yes [X] No | e. | Digital Asset Replacement Expense | $ N/A | for all **Digital Asset Replacement Expenses** in each **Policy Year** | $ N/A | each **Security Event** | N/A |
| [ ] Yes [X] No | f. | Cyber Extortion Threat | $ N/A | for all **Extortion Expenses** and **Extortion Payments** in each **Policy Year** | $ N/A | each **Cyber Extortion Threat** | N/A |

Item 6.  Additional Limit of Liability for **Defense Costs**:  $ N/A

Item 7.  Aggregate Limits of Liability

This policy includes the following Aggregate Limit(s) of Liability designated below by "X":

[X]  Shared Aggregate Limit of Liability in each **Policy Year** $15,000,000 under the following **Liability Coverage Parts**:   Management Liability, Company Securities Coverage - Public

[X]  Shared Aggregate Limit of Liability in each **Policy Year** $10,000,000 under the following **Liability Coverage Parts**:   Employment Practices Liability, Fiduciary Liability, Professional Liability, Lender Liability, Trust Department Liability

[X]  Combined Aggregate Limit of Liability in each **Policy Year** $20,000,000 under all **Liability Coverage Parts**, other than Retired Independent Directors Liability Coverage and Non-Indemnifiable Excess DIC Liability Coverage

Item 8.  Defense:

A.  Management Liability Coverage Part:

[X] **Insureds**' Duty to Defend     [ ] Insurer's Duty to Defend     [ ] Not Purchased

B.  Non-Indemnifiable Excess DIC Liability Coverage Part:

[X] **Insureds**' Duty to Defend     [ ] Insurer's Duty to Defend     [ ] Not Purchased

C.  All Other **Liability Coverage Parts**:

[X] **Insureds**' Duty to Defend     [ ] Insurer's Duty to Defend     [ ] Not Purchased

Item 9.  Policy Premium:  $232,570

Item 10. Endorsements Effective at Inception:  See attached Schedule

---

1   No Retention shall apply to non-indemnifiable **Loss** incurred by **Insured Persons** under any **Liability Coverage Part**, except as required by state law.

# Financial Institutions Select™ Insurance Policy

**Form and Endorsement Schedule**


**ZURICH**®

| THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY. |
|---|
| If this form is issued concurrently with the policy, this Attaching Clause need not be completed. |

| Policy No.  DOP 9311203-04 | Effective Date:  06/09/2015 |
|---|---|

| Form Name | Form Number | Edition Date | Endorsement No. |
|---|---|---|---|
| Disclosure of Important Information Relating to Terrorism Risk Insurance Act | U-GU-630-D CW | (01/15) | |
| Financial Institutions Select Insurance Policy Declarations | U-DOP-D-0005-A CW | (01/10) | |
| General Terms and Conditions | U-DOP-1201-A CW | (01/10) | |
| Management Liability Coverage Part | U-DOP-1202-A CW | (01/10) | |
| Non-Indemnifiable Excess DIC Liability Coverage Part | U-DOP-1203-A CW | (01/10) | |
| Public Company Securities Coverage Part | U-DOP-1205-A CW | (01/10) | |
| Employment Practices and Third Party Discrimination Liability Coverage Part | U-DOP-1206-A CW | (01/10) | |
| Fiduciary Liability Coverage Part | U-DOP-1207-A CW | (01/10) | |
| Professional Liability Coverage Part | U-DOP-1208-A CW | (01/10) | |
| Lender Liability Coverage Part | U-DOP-1209-A CW | (01/10) | |
| Trust Department Liability Coverage Part | U-DOP-1210-A CW | (01/10) | |
| Acquisition, Creation, Assumption Endorsement | U-DOP-2128-A CW | (01/10) | 01 |
| Definition of Plan in Fiduciary Liability Coverage Part Amended to include an ESOP Endorsement | U-DOP-MANU-A CW | (02/12) | 02 |
| Exclusion - P or P Date Amended (Mgmt Liab CP increase at renewal) | U-DOP-MAN-ACW | (09/12) | 03 |
| Prior or Pending Date Amended Endorsement (Additional $5m Public Company Securities limit) | U-DOP-MAN-ACW | (09/12) | 04 |
| Prior or Pending Date Amended Endorsement (Additional $5m Lender Liability) | U-DOP-MAN-ACW | (09/12) | 05 |

| | | | |
|---|---|---|---|
| Louisiana Amendatory Endorsement | U-DOP-1118-A LA | (01/10) | 06 |
| Sanctions Exclusion Endorsement | U-GU-1191-A CW | (03/15) | 07 |
| Important Notice - In Witness Clause | U-GU-319-F | (01/09) | |
| Cap on Losses From Certified Acts of Terrorism | U-GU-767-B CW | (01/15) | 08 |



# Financial Institutions Select™ Insurance Policy

**General Terms and Conditions**

## TABLE OF CONTENTS

I. TERMS AND CONDITIONS ...................................................................................................................1

II. GENERAL DEFINITIONS ...................................................................................................................1

III. LIMITS OF LIABILITY, RETENTION AND SINGLE CLAIMS..................................................................7

IV. LIABILITY COVERAGE PART EXTENSIONS ......................................................................................8

V. ALLOCATION.................................................................................................................................9

VI. CHANGES IN EXPOSURE...............................................................................................................10

VII. DEFENSE AND SETTLEMENT .........................................................................................................11

VIII. REPORTING AND NOTICE..............................................................................................................12

IX. REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGES............................................................................................................................13

X. TERRITORY AND VALUATION.........................................................................................................13

XI. OTHER INSURANCE .....................................................................................................................13

XII. SUBROGATION ...........................................................................................................................13

XIII. ALTERATION, ASSIGNMENT AND HEADINGS ...................................................................................14

XIV. PAYMENT PRIORITY ....................................................................................................................14

XV. POLICY TERMINATION AND NONRENEWAL.......................................................................................14

XVI. AUTHORIZATION CLAUSE..............................................................................................................15

XVII. BANKRUPTCY OR INSOLVENCY .....................................................................................................15

XVIII. ALTERNATIVE DISPUTE RESOLUTION ............................................................................................15



# General Terms and Conditions

In consideration of payment of the premium and in reliance upon the statements made in the **Application**, which is made a part hereof, and subject to the Declarations and the definitions, exclusions, limitations, conditions, provisions and other terms of this policy (including any endorsements hereto), the Insurer and the **Insureds** agree as follows:

I. TERMS AND CONDITIONS

This policy is comprised of these General Terms and Conditions, the Declarations, various Coverage Parts and endorsements, if applicable, and the **Application**. Although various Coverage Parts may be referenced in this policy, a Coverage Part is included within this policy and affords coverage only if that Coverage Part is designated as being purchased in the Coverage Schedule in Item 5 of the Declarations.

Except for these General Terms and Conditions or unless stated to the contrary in any Coverage Part or endorsement, the terms and conditions of each Coverage Part of this policy apply only to that Coverage Part and shall not apply to any other Coverage Part of this policy. Any defined term referenced in the General Terms and Conditions but defined in a Coverage Part shall, for purposes of coverage under that Coverage Part, have the meaning set forth in that Coverage Part. If any provision in the General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.

II. GENERAL DEFINITIONS

When used in this policy, the following terms, whether in the singular or plural, are defined as follows:

A. **Application** means:

1. all materials and information, including all signed applications and any materials attached thereto or incorporated therein, submitted by or on behalf of the **Insureds** to the Insurer in connection with the underwriting of this policy or any policy issued by the Insurer of which this policy is a direct or indirect renewal or replacement; and

2. all publicly available documents filed by the **Company** during the twelve (12) months preceding the inception of this policy which are reviewed by the Insurer in connection with the underwriting of this policy or any policy issued by the Insurer of which this policy is a direct or indirect renewal or replacement.

The **Application** is deemed attached to and incorporated into this policy.

B. **Broker Services** means the purchase or sale of securities, mutual funds, annuities, variable annuities, or life, accident or health insurance which have been approved by the **Company** to be transacted through a Registered Representative of the **Company** or a third party service provider pursuant to a contract between the **Company** and the service provider. In connection with the foregoing activities, **Broker Services** also includes the provision of:

1. economic advice, financial advice or investment advisory services; and

2. financial planning advice including without limitation any of the following activities in conjunction therewith: the preparation of financial plans or personal financial statements, and the giving of advice with regard to insurance, savings, investments, retirement planning or taxes.

**Broker Services** shall not include **Insurance Agent Services** or the sale of credit life or disability insurance incidental to the issuance of a loan.

C. **Claim** means, with respect to any **Liability Coverage Part**, those demands, proceedings, investigations and other matters defined as a **Claim** in such Coverage Part.

D. **Company** means, collectively, the **Policyholder** and its **Subsidiaries**, including any such organization as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

E.  **Company's Computer System** means: (1) a **Computer System** the **Company** leases, owns or operates; or (2) a **Computer System** that a **Service Provider**, pursuant to written contract, operates to provide services to the **Company**.

F.  **Computer System** means computer hardware and **Software**, and the **Electronic Data** stored thereon, as well as associated input and output devices, data storage devices, networking equipment, components, firmware and electronic backup facilities, including systems accessible through the internet, intranets, extranets or virtual private networks.

G.  **Coverage Event** means, with respect to a **Non-Liability Coverage Part**, the event or loss which must occur or be incurred in order to invoke coverage under such Coverage Part.

H.  **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and expert's fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or **Employees** of the **Company**) incurred by the **Insureds** after the **Claim** is first made: (1) in defending or investigating **Claims**, including costs assessed against the **Insureds** in a **Claim** or the premium for appeal, attachment or similar bonds, provided the Insurer shall have no obligation to apply for or furnish such bonds; or (2) at the Insurer's request to assist the Insurer in investigating a **Claim**.

I.  **Denial of Service Attack** means a malicious attack by a third party which is designed to slow or completely interrupt access to a targeted **Computer System** or website by other third parties authorized to gain access to that **Computer System** or website.

J.  **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Company**.

K.  **Electronic Data** means information that exists in electronic form, including **Personal Information**, provided, however, **Electronic Data** does not include **Software**.

L.  **Electronic Publishing** means the reproduction, publication, dissemination, transmission or release of information, including **Electronic Data**, image files, audio files or text, on the **Insured's** internet website; provided that such information must have been developed by or for the **Insured** or acquired by the **Insured** for its use.

M.  **Electronic Publishing Wrongful Act** means any actual or alleged:

1.  libel, slander, trade libel or disparagement resulting from **Electronic Publishing** that defames a person or organization or disparages a person's or organization's goods, products or services;

2.  plagiarism, false light or false advertising resulting from **Electronic Publishing**;

3.  violation of the right of privacy or seclusion or right of publicity of any person other than an **Insured Person** resulting from **Electronic Publishing** that publicly discloses private facts relating to such person or commercially appropriates such person's name or likeness;

4.  infringement of a copyright, title, slogan, trademark, trade name, trade dress, mark, service mark or service name including, without limitation, infringement of domain name, deep-linking or framing, resulting from **Electronic Publishing**; or

5.  unauthorized use of titles, formats, performances, style, characters, plots or other protected material resulting from **Electronic Publishing**.

N.  **Employee** means any natural person in the regular service of the **Company** in the ordinary course of the **Company's** business and who the **Company** compensates by salary, wages and/or commissions and has the right to govern and direct in the performance of such service, including any such natural persons who are leased, temporary, part-time or seasonal employees of the **Company** provided any coverage for any such leased employees shall be specifically excess of any indemnification or insurance otherwise available to such leased employees from the applicable leasing company or any other source.

O.  **Employment Practices Claim** means a **Claim** which is brought and maintained by or on behalf of any past, present, future or prospective **Employee(s)** of the **Company** against any **Insured** for any **Wrongful Act** in connection with any actual or alleged:

1.  breach of any express or implied employment contract;

2.  violation of any law or public policy concerning discrimination in employment whether based upon race, national origin, religion, sex, sexual preference, marital status, disability, medical leave or genetic predisposition; or

3.  employment-related torts including without limitation wrongful termination, failure or refusal to hire or promote; wrongful discipline; wrongful reference, deprivation of a career opportunity, demotion or adverse change in terms, conditions or status of employment; wrongful failure to grant tenure; humiliation; retaliation for asserting a legal right; workplace harassment including without limitation offensive, intimidating, coercive or unwelcome conduct, advances, contact or communications; negligent hiring, retention, supervision, training or performance evaluation; and employment-related misrepresentation, defamation, invasion of privacy or infliction of emotional distress.

P.  **Environmental Event** means:

1.  the actual, alleged or threatened discharge, release, escape, seepage, migration or disposal of **Pollutants** or **Greenhouse Gases** into or on real or personal property, water or the atmosphere; or

2.  any direction or request that the **Company** or the **Insured Persons** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants** or **Greenhouse Gases**, or any voluntary decision to do so,

whether or not such **Greenhouse Gases** are **Pollutants**.

Q.  **ERISA** means the Employee Retirement Income Security Act of 1974, as amended.

R.  **Executive Officers** means with respect to any **Company** its chair, president, chief executive officer, chief financial officer, in-house general counsel, and solely with respect to the Employment Practices and Third Party Discrimination Liability Coverage Part, if purchased, the human resource manager, or, if a **Company** does not have one of such positions, any equivalent executive position in such **Company**.

S.  **Extended Reporting Period** means the automatic period of the extended coverage under the **Liability Coverage Parts** and the optional period of the extended coverage under the **Liability Coverage Parts**, as set forth in Item 3 of the Declarations.

T.  **Extradition** means any formal process by which an **Insured Person** located in any country is or is sought to be surrendered to any other country for trial, or otherwise to answer any criminal accusation, for a **Wrongful Act**.

U.  **Financial Impairment** means the status of the **Company** resulting from the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Company**, or the **Company** becoming a debtor in possession.

V.  **Greenhouse Gases** means carbon dioxide (CO2), methane (CH4), nitrous oxide (N20), hydrofluorocarbons (HFCs), perfluorocarbons (PFCs), and sulphur hexafluoride (SF6) or any other emission or substance defined by applicable law as a Greenhouse Gas.

W.  **Independent Contractor** means any natural person who: (1) is not an **Employee**; (2) is working for a **Company** in the capacity of an independent contractor pursuant to an express contract or agreement with the **Company** which governs the nature of such person's engagement; and (3) the **Company** agrees in writing within thirty (30) days after the **Claim** is made to provide indemnification to such independent contractor for any **Loss** arising out of such **Claim**; provided any coverage under this policy for any such **Independent Contractor** shall be specifically excess of any indemnification or insurance otherwise available to such **Independent Contractor** from any other source.

X.  **Insurance Agent Services** means any of the following services which have been approved by the **Company** to be performed by an **Insured** as insurance agent, insurance broker, insurance consultant or insurance managing general agent:

1.  sale and placement of insurance;

2.  identification, analysis and evaluation of a client's insurance needs, including work performed for prospective clients;

3.  appraisal of property and inspections for insurance purposes;

4.  adjustment of claims on behalf of insurance companies, including loss payments; or

5.  arrangement of premium financing for clients.

**Insurance Agent Services** shall not include: (1) services as an insurance wholesaler, managing general underwriter, or third party administrator of benefit or insurance plans; or (2) the sale of credit life or disability insurance incidental to the issuance of a loan.

Y. **Insured Persons** means with respect to each Coverage Part the natural persons defined as **Insured Persons** in such Coverage Part.

Z. **Insureds** means with respect to each Coverage Part the entities, plans and natural persons defined as **Insureds** in such Coverage Part.

AA. **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

BB. **IRA/Keogh Services** means acting as an administrator, custodian or trustee of any Individual Retirement Account (I.R.A.) or Keogh Account (H.R. 10 Plan).

CC. **Lending Act** means: (1) an extension of credit; (2) an agreement or refusal to extend credit; (3) the collection or restructuring of any extension of credit by the **Company**; (4) the sale of credit life or disability insurance incidental to the issuance of a loan; and (5) **Loan Servicing**. **Lending Act** shall include extensions of credit by the **Company** pursuant to a loan participation or syndication agreement.

DD. **Loan Servicing** means, whether for others or for extensions of credit made and retained by a **Company**, collecting loan payments, remitting principal and interest payments to investors, maintaining insurance, paying real estate taxes and hazard insurance premiums and following-up on delinquencies and managing foreclosures.

EE. **Liability Coverage Part** means any of the following: the Management Liability Coverage Part, Non-Indemnifiable Excess DIC Liability Coverage Part, the Liability Insuring Clauses of the Public Company Securities Coverage Part, the Liability Insuring Clauses of the Private Company Securities Coverage Part, the Employment Practices and Third Party Discrimination Liability Coverage Part, the Fiduciary Liability Coverage Part, the Professional Liability Coverage Part, the Lender Liability Coverage Part, the Trust Department Liability Coverage Part and the Liability Insuring Clauses of the Security & Privacy Protection Coverage Part, if purchased as set forth in the Coverage Schedule in Item 5 of the Declarations.

FF. **Loss** means:

1. with respect to any **Liability Coverage Part**, the amounts defined as **Loss** in such Coverage Part, including **Non-Indemnifiable Loss** as defined in the Non-Indemnifiable Excess DIC Liability Coverage Part; and

2. with respect to any **Non-Liability Coverage Part**, the amounts covered under such Coverage Part.

GG. **Malicious Code** means unauthorized, corrupting, or harmful **Software**, including but not limited to computer viruses, Trojan horses, keystroke loggers, cookies, spyware, adware, worms and logic bombs.

HH. **Managers** means any natural person who was, now is or shall become: (1) a manager, member of the Board of Managers or equivalent executive of a **Company** that is a limited liability company; and (2) a general partner, managing partner or equivalent executive of a partnership or joint venture that is expressly included as a **Company** by endorsement to this policy.

II. **Network Security** means the use of hardware, **Software**, firmware and written security policies and procedures by **Insureds**, or by others on behalf of the **Company**, to protect against **Unauthorized Access** to or the **Unauthorized Use** of the **Company's Computer System** including the use of the **Company's Computer System** in a **Denial of Service Attack**.

JJ. **Non-Liability Coverage Part** means the Non-Liability Insuring Clauses of the Public Company Securities Coverage Part, the Private Company Securities Coverage Part and the Security & Privacy Protection Coverage Part and any other Coverage Part, other than the **Liability Coverage Parts**, if purchased as set forth in the Coverage Schedule in Item 5 of the Declarations.

KK. **Outside Entity** means:

1. any organization chartered and operated as a not-for-profit organization; or

2. any other organization specifically included as an **Outside Entity** by endorsement to this policy provided such organization is not included in the definition of **Company**.

LL. **Personal Information** means any information from which an individual may be uniquely and reliably identified or contacted, including an individual's name, telephone number, social security number, medical or healthcare data or other protected health information, driver's license number or state identification number, account number, credit card number, debit card number, access code or password that would permit access to that individual's financial account or any other non-public personal information as defined in **Privacy Regulations**;

provided, however, **Personal Information** does not include information lawfully available to the general public for any reason, including information from federal, state, or local government records.

MM. **Plans** means the plans and programs defined as **Plans** in the Fiduciary Liability Coverage Part, if purchased.

NN. **Policyholder** means the organization designated in Item 1 of the Declarations.

OO. **Policy Period** means the period set forth in Item 2 of the Declarations, subject to prior termination in accordance with Section XV of these General Terms and Conditions.

PP. **Policy Year** means the period of one (1) year following the effective date and hour of this policy or any anniversary thereof or, if the time between the effective date or any anniversary thereof and the termination of the **Policy Period** is less than one (1) year, such lesser period.

QQ. **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, silica, noise, fungus (including mold, mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi, but not any fungi intended by the **Insured** for consumption) and electric or magnetic or electromagnetic field. Such matters shall include, without limitation, solids, liquids, gaseous, thermal, biological, nuclear or radiological irritants, contaminants or smoke, soot, fumes, acids, alkalis, chemicals or waste materials.

RR. **Privacy Event** means:

1. an unauthorized disclosure or loss of:

    a. **Personal Information** in the care, custody or control of any **Insured** or **Service Provider**; or

    b. corporate information in the care, custody or control of any **Insured** or **Service Provider** that is specifically identified as confidential and protected under a nondisclosure agreement or similar contract; or

2. a violation of any **Privacy Regulation**.

SS. **Privacy Regulation** means any of the following statutes, including any amendments thereto or regulations thereunder, associated with the control and use of personally identifiable financial, medical or other sensitive information:

1. Health Information Technology for Economic and Clinical Health Act (HITECH) (American Recovery and Reinvestment Act of 2009);

2. Health Insurance Portability and Accountability Act of 1996;

3. Gramm-Leach Bliley Act of 1999;

4. California Security Breach Notification Act (CA SB 1386), CA AB 211 and CA SB 541;

5. Section 5(a) of the Federal Trade Commission Act (15 U.S.C. 45(a)), but solely for alleged unfair or deceptive acts or practices in or affecting commerce;

6. Massachusetts 201 CMR 17;

7. the Identity Red Flags under the Fair and Accurate Credit Transactions Act of 2003; and

8. any similar state, federal or foreign identity theft or privacy protection statute.

TT. **Privacy Wrongful Acts** means any actual or alleged act, error, omission, neglect or breach of duty by an **Insured**, someone for whom the **Company** is legally responsible, or a **Service Provider**, that results in a **Privacy Event**.

UU. **Professional Services** means only those services performed or required to be performed by an **Insured** for, on behalf of or in connection with a customer of the **Company**. **Professional Services** shall include **Broker Services**, **Insurance Agent Services** and **IRA/Keogh Services** if coverage for any of these services is purchased as indicated in the Coverage Schedule as set forth in Item 5 of the Declarations.

VV. **Run-Off Coverage Period** means the period of the extended coverage as described in Subsection VI.B of these General Terms and Conditions.

WW. **Securities Claim** means any **Claim** alleging a violation of any statutory or common law which in whole or in part is: (1) brought by one or more securities holders of the **Company**, in their capacity as such; or (2) based upon, arising out of or attributable to the purchase or sale of, or offer or solicitation of an offer to purchase or sell, any securities issued by the **Company**, whether such purchase, sale, offer or solicitation involves a transaction with the **Company** or occurs in the open market (including without limitation any such **Claim** brought by the Securities and Exchange Commission or any other claimant).

**Securities Claim** shall not include any employment-related **Claim** brought by an **Insured Person** or other actual, alleged or prospective **Employees**.

XX. **Security Wrongful Acts** means any actual or alleged act, error, omission, neglect, or breach of duty by an **Insured**, someone for whom the **Company** is legally responsible, or a **Service Provider**, which causes a breach of the **Company's Network Security** that results in:

1. the theft, alteration, or destruction of **Electronic Data** on the **Company's Computer System**;

2. the **Unauthorized Access** to or **Unauthorized Use** of the **Company's Computer System**;

3. the denial of an authorized user's access to the **Company's Computer System**, unless such denial of access is caused by a mechanical or electrical failure outside the control of the **Insured**;

4. the participation by the **Company's Computer System** in a **Denial of Service Attack** directed against a third party's **Computer System**; or

5. the transmission of **Malicious Code** from the **Company's Computer System** to a third party's **Computer System**.

YY. **Service Provider** means a business the **Company** does not own, operate, or control, but that the **Company** hires for a fee pursuant to a written contract to perform services related to the conduct of the **Company's** business, including but not limited to:

1. maintaining, managing, or controlling **Computer Systems**;

2. hosting or facilitating the **Company's** internet website; or

3. providing other information technology services to the **Company**.

ZZ. **Software** means operations and applications, codes and programs by which **Electronic Data** are electronically collected, transmitted, processed, stored or received. **Software** does not include **Electronic Data**.

AAA. **Subsidiary** means:

1. any organization, other than a joint venture or partnership (including any **Company** acting as a general partner of a partnership), in which more than fifty percent (50%) of the outstanding voting securities or voting rights representing the present right to vote for election of directors, trustees, **Managers** or equivalent executives is owned or controlled, directly or indirectly, in any combination, by one or more **Companies**; and

2. any foundation, charitable trust or political action committee controlled or exclusively sponsored by one or more **Companies**;

provided coverage shall apply only with respect to **Claims** for **Wrongful Acts** or **Coverage Events** taking place while such organization qualifies as a **Subsidiary** under Subsections 1 or 2 above.

BBB. **Third Party Discrimination Claim** means a **Claim**, other than an **Employment Practices Claim**, which is brought and maintained by or on behalf of any natural person (including customers, vendors, service providers and other business invitees) other than an **Insured Person** for an actual or alleged violation of any law or public policy concerning discrimination or harassment.

CCC. **Trust Services** means any trust department functions permitted by law, for the benefit of a client or customer of the **Company**, including, without limitation, the following:

1. administrator of a decedent estate or executor or trustee under a will or inter vivos trust agreement;

2. conservator or guardian of any person;

3. trustee under a pension, profit sharing, health and welfare or other employee benefit plan or trust, other than a pension, profit sharing, health and welfare or other employee benefit plan or trust sponsored or established by the **Company** for its **Employees**;

    4.   custodian or manager of any personal property or trustee in respect of any personal property owned by others;

    5.   interest or dividend disbursing agent, transfer or paying agent, redemption or subscription agent, fiscal agent, tax withholding agent, registrar of securities, agent of voting trustees, warrant agent, exchange agent, depositor or agent for a committee of holders of securities, sinking fund agent, escrow agent or agent under corporate bond indenture; or

    6.   trustee exercising any other trust or fiduciary powers expressly permitted by law.

**Trust Services** shall not include any **IRA/Keogh Services**.

DDD. **Unauthorized Access** means the gaining of access to a **Computer System** by an unauthorized person or persons, or by an authorized person or persons in an unauthorized manner.

EEE. **Unauthorized Use** means the use of a **Computer System** by an unauthorized person or persons or by an authorized person or persons in an unauthorized manner.

FFF. **Wrongful Acts** means, with respect to any **Liability Coverage Part**, the acts, errors, omissions and other matters defined as **Wrongful Acts** in such Coverage Part.

III.   LIMITS OF LIABILITY, RETENTION AND SINGLE CLAIMS

    A.   LIMITS OF LIABILITY FOR LIABILITY COVERAGE PARTS

        1.   Coverage Part Limit of Liability

The respective Limit of Liability for each **Liability Coverage Part**, as set forth in the Coverage Schedule in Item 5 of the Declarations, shall be the Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** under such **Liability Coverage Part** for each **Policy Year**. The Limit of Liability for each **Liability Coverage Part** shall be part of and not in addition to the Shared Aggregate Limit of Liability, if applicable, and the Combined Aggregate Limit of Liability, if applicable, as set forth in Item 7 of the Declarations.

        2.   Coverage Parts Shared Aggregate Limit of Liability

If a Shared Limit of Liability is designated in Item 7 of the Declarations, then the Insurer's maximum aggregate liability for all **Loss** under this policy on account of all **Claims** in each **Policy Year** under all such designated **Liability Coverage Parts** shall be the Shared Aggregate Limit of Liability set forth in Item 7 of the Declarations. The Shared Aggregate Limit of Liability for the designated **Liability Coverage Parts** shall be part of and not in addition to the Combined Aggregate Limit of Liability, if applicable, as set forth in Item 7 of the Declarations.

        3.   Coverage Parts Combined Aggregate Limit of Liability

If the Combined Limit of Liability for a **Liability Coverage Part** is designated in Item 7 of the Declarations, then the Insurer's maximum aggregate liability for all **Loss** under this policy on account of all **Claims** in each **Policy Year** under all **Liability Coverage Parts** shall be the Combined Aggregate Limit of Liability set forth in Item 7 of the Declarations.

        4.   Sublimit of Liability

Any Sublimit of Liability set forth in the Coverage Schedule in Item 5 of the Declarations shall be part of, and not in addition to, the Aggregate Limits of Liability set forth in Item 7 of the Declarations and the applicable Coverage Part Limit of Liability.

        5.   Defense Costs Within Limit of Liability

**Defense Costs** are part of and not in addition to the Limits of Liability applicable to the **Liability Coverage Parts**, and the payment by the Insurer of **Defense Costs** reduces such Limits of Liability. If the applicable Limit of Liability is exhausted by payment of **Loss**, the Insurer's obligations, including without limitation any applicable duty to defend, shall be completely fulfilled and extinguished. Subject to Section XIV of these General Terms and Conditions, the Insurer is entitled to pay **Loss** as it becomes due and payable by the **Insureds**, without consideration of other future payment obligations.

        6.   Additional Limit of Liability for Defense Costs

If the Aggregate Limit of Liability for a **Policy Year** applicable to **Loss** covered under a **Liability Coverage Part** is exhausted by payments by the Insurer, then the Insurer's liability for any **Defense Costs** which are covered under such **Liability Coverage Part** and which are incurred thereafter on account of a **Claim** in

the same **Policy Year** separate from the **Claim(s)** which exhausted such Limit of Liability shall be subject to an additional aggregate Limit of Liability in an amount set forth in Item 6 of the Declarations for each **Policy Year**.

7. Extended Reporting Period or Run-Off Coverage Period Limit of Liability

Except as provided in Subsection IV.C, the Limit of Liability for any **Extended Reporting Period** or **Run-Off Coverage Period** under the **Liability Coverage Parts** shall be part of and not in addition to the remaining applicable Limits of Liability for the **Liability Coverage Parts** as set forth in the Declarations.

B. RETENTION FOR LIABILITY COVERAGE PARTS

The Insurer's liability under the **Liability Coverage Parts** with respect to **Loss** on account of each **Claim** shall apply only to that part of **Loss** which is excess of the applicable Retention set forth in the Coverage Schedule in Item 5 of the Declarations, and such Retention shall be borne by the **Insureds** uninsured and at their own risk. No Retention shall apply to **Loss** incurred by an **Insured Person** for which the **Company** is not permitted by common or statutory law to indemnify or is not financially able to indemnify by reason of **Financial Impairment**.

C. SINGLE CLAIMS

All **Claims** under the **Liability Coverage Parts** which arise out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of **Insureds** shall be deemed one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made against any **Insured**, regardless of whether such date is before or during the **Policy Period**.

D. SINGLE CLAIM COVERED BY MULTIPLE LIABILITY COVERAGE PARTS

If a single **Claim** (as described in Subsection III.C above) is covered in whole or in part under more than one **Liability Coverage Part**:

1. the applicable Retention under each such **Liability Coverage Part** shall be applied with respect to coverage for such **Claim** under such **Liability Coverage Part**, provided the sum of all applicable Retentions under all such **Liability Coverage Parts** shall not exceed the largest of such applicable Retentions; and

2. the remaining applicable Limits of Liability under each such **Liability Coverage Part** shall apply with respect to coverage for such **Claim** under such **Liability Coverage Part**, provided the Insurer's maximum aggregate liability for all **Loss** covered under all such **Liability Coverage Parts**, combined, on account of such **Claim** shall not exceed the largest of such remaining applicable Limits of Liability. This Subsection III.D.2 does not increase the Insurer's maximum liability with respect to such **Claim**, which is also subject to the Combined Aggregate Limit of Liability as set forth in Item 7 of the Declarations and any Shared Aggregate Limit of Liability described in Subsection III.A.2 above.

E. LIMITS OF LIABILITY AND DEDUCTIBLE/RETENTION FOR NON-LIABILITY COVERAGE PART

The Insurer's maximum liability and the applicable Deductible/Retention under the **Non-Liability Coverage Parts** shall be the respective Limits of Liability and Deductible/Retention amounts as set forth in either the Coverage Schedule in the Declarations or the respective Coverage Part Declarations, if any. Such Limits of Liability and Deductible/Retention amounts will be applied as described in the respective **Non-Liability Coverage Part**.

IV. LIABILITY COVERAGE PART EXTENSIONS

A. ESTATES, LEGAL REPRESENTATIVES, SPOUSES AND DOMESTIC PARTNERS

The estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of **Insured Persons** shall be considered an **Insured Person** under the **Liability Coverage Parts** but only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where such **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured Person** to the spouse or **Domestic Partner**. No coverage is provided for any wrongful act or omission of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All provisions in these General Terms and Conditions and the respective **Liability Coverage Part** applicable to **Loss** incurred by the **Insured Person** shall also apply to loss incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

B. EXTENDED REPORTING PERIOD

1. Automatic Extended Reporting Period

If the Insurer or **Policyholder** terminates or refuses to renew this policy or one or more **Liability Coverage Parts** other than for nonpayment of premium, the **Insureds** shall have the right to an extension of the

coverage granted by such **Liability Coverage Part(s)** but only with respect to any **Claim** first made during the period of ninety (90) days after the effective date of such termination or nonrenewal for any **Wrongful Act** taking place prior to the effective date of such termination or nonrenewal.

2. Optional Extended Reporting Period

If the Insurer or **Policyholder** terminates or refuses to renew this policy or one or more **Liability Coverage Parts** other than for nonpayment of premium, the **Insureds** shall have the right, upon payment of the additional premium set forth in Item 3.A of the Declarations, to an extension of the coverage granted by such **Liability Coverage Part(s)** for the **Extended Reporting Period** set forth in Item 3.B of the Declarations following the effective date of termination or nonrenewal, but only with respect to any **Claim** first made during the **Extended Reporting Period** for any **Wrongful Act** taking place prior to the effective date of such termination or nonrenewal. This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is given by the **Insureds** to the Insurer within sixty (60) days following the effective date of termination or nonrenewal.

The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew.

The Optional **Extended Reporting Period**, if applicable, shall run concurrently with the automatic **Extended Reporting Period** provided in Subsection IV.B.1 above.

The entire additional premium for the **Extended Reporting Period** shall be deemed fully earned at the inception of the **Extended Reporting Period**.

The **Insureds** shall not be entitled to elect the **Extended Reporting Period** if a **Run-Off Coverage Period** is purchased.

C. INDIVIDUAL INSURED PERSON EXTENDED COVERAGE

If with respect to the **Liability Coverage Parts** the **Insureds** are entitled to but do not exercise the Optional **Extended Reporting Period** or the **Run-Off Coverage Period**, any **Insured Person** shall have the right to elect an Optional **Extended Reporting Period** or **Run-Off Coverage Period** under such Coverage Part for only such **Insured Person**, subject to the provisions of this policy. The extension of coverage pursuant to any such individual **Extended Reporting Period** or **Run-Off Coverage Period** shall apply only with respect to coverage under such Coverage Part for **Loss** which is incurred by the **Insured Person** who elected such extension of coverage and which is not indemnified by the **Company**, and shall not apply to any other coverage afforded under this policy.

If more than one individual **Extended Reporting Period** or **Run-Off Coverage Period** is elected, the Insurer's maximum aggregate liability under all such individual **Extended Reporting Periods** or **Run-Off Coverage Periods**, combined, shall not exceed the Insurer's maximum aggregate liability for any one individual **Extended Reporting Period** or **Run-Off Coverage Period**; provided, however, that if applicable law prohibits this election, the Insurer shall condition such election upon the **Insured Person's** acceptance of an endorsement to this policy which provides a separate, but lower, limit of liability applicable only to such **Insured Person's** coverage under such **Extended Reporting Period** or **Run-Off Coverage Period**.

This right of extension shall lapse unless written notice of such election is given by the **Insured Person** to the Insurer within thirty (30) days after the **Policyholder's** right to exercise the Optional **Extended Reporting Period** has expired, or with respect to the **Run-Off Coverage Period**, within thirty (30) days after the end of the **Policy Period**. If one or more **Insured Persons** give such written notice within such thirty (30) day period, then promptly after expiration of such thirty (30) day period the Insurer shall notify all the **Insured Persons** who elected such individual **Extended Reporting Period** or **Run-Off Coverage Period** of the additional premium payable by each such **Insured Person** for such extension. This extension of coverage for any such **Insured Person** is conditioned upon such **Insured Person** paying such additional premium within fifteen (15) days after being notified of the amount of the additional premium.

V. ALLOCATION

A. If in any **Claim** under the **Liability Coverage Parts** the **Insureds** incur both **Loss** covered by this policy and loss not covered by this policy either because the **Claim** against the **Insureds** includes both covered and uncovered matters or because the **Claim** is made against both **Insureds** who are afforded coverage for such **Claim** and others, including **Insureds**, who are not afforded coverage for such **Claim**, the **Insureds** and the Insurer shall use their best efforts to allocate such amount between covered **Loss** and uncovered loss based upon the relative legal and financial exposures of the parties to covered and uncovered matters; provided however that one hundred percent (100%) of any such **Defense Costs** shall be allocated to covered **Loss** if and

to the extent such **Defense Costs** are incurred by covered **Insureds** and are in part covered and in part not covered by this policy solely because the **Claim** against the **Insureds** includes both covered and uncovered matters.

B. If the Insurer and the **Insureds** cannot agree on an allocation of **Defense Costs**, the Insurer shall advance on a current basis amounts that the Insurer believes to be covered **Defense Costs** until a different allocation is negotiated, arbitrated or judicially determined. Any such negotiated, arbitrated or judicially determined allocation shall be applied retroactively to all **Defense Costs** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Defense Costs** on account of a **Claim** shall not apply to the allocation of other **Loss** on account of such **Claim**.

C. In any arbitration, suit or other proceeding among the Insurer and the **Insureds** or the **Company**, no presumption shall exist concerning what is a fair and proper allocation between covered **Loss** and uncovered loss.

## VI. CHANGES IN EXPOSURE

### A. NEW ORGANIZATIONS

1. If during the **Policy Period** the **Company** acquires or creates a new **Subsidiary** or acquires an entity by merger or consolidation, coverage under any this policy automatically shall apply to the new organization and its **Insureds**, provided such coverage shall apply only with respect to **Claims** for **Wrongful Acts** or **Coverage Events** taking place after such acquisition or creation.

2. However, if:

    a. such newly acquired organization generates revenue from services or business in which the **Policyholder** or any **Subsidiary** did not engage immediately prior to the acquisition or creation;

    b. the total assets of such newly acquired organization exceeds thirty percent (30%) of the total assets of the **Policyholder** as reflected in their respective most recent audited consolidated financial statements;

    c. solely with respect to the Employment Practices and Third Party Discrimination Liability Coverage Part, if purchased, the total number of **Employees** of all **Companies** increases by more than thirty percent (30%) as an immediate result of such acquisition, merger or consolidation; or

    d. solely with respect to the Fiduciary Liability Coverage Part, if purchased, the total assets of all **Plans** of such newly acquired organization exceeds thirty percent (30%) of the total assets of all other **Plans** of all **Companies** as reflected in their respective most recent financial statements;

    the coverage provided in Subsection 1 above shall apply: (i) automatically for **Claims** first made and **Coverage Events** taking place in the ninety (90) days after the acquisition or creation, so long as the **Policyholder** provides written notice of the acquisition or creation prior to the end of the **Policy Period**; and (ii) for **Claims** first made and **Coverage Events** taking place after such ninety (90) day period if within ninety (90) days after the acquisition or creation, the **Policyholder** provides additional information, pays any additional premium and agrees to any additional terms and conditions reasonably required by the Insurer for such extension of coverage. In such event, the Insurer shall issue an endorsement to this policy confirming such coverage extension.

### B. ACQUISITION OF POLICYHOLDER

If during the **Policy Period** any of the following events occur:

1. the **Policyholder** merges into or consolidates with another organization such that the **Policyholder** is not the surviving entity;

2. another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors, trustees or equivalent executives of the **Policyholder**;

3. the acquisition, divestiture or sale of more than 50% of the assets or liabilities of the **Company** (as reflected in its most recently consolidated financial statement) by or to any person, entity or affiliated group of persons or entities; or

4. the appointment of a receiver, conservator, trustee, liquidator, or rehabilitator, or any similar official, for or with respect to the **Company**;

then coverage under this policy shall continue until the termination of this policy or, if the **Run-Off Coverage Period** is purchased, the expiration of the **Run-Off Coverage Period**, provided such coverage shall apply only with respect to **Claims** for **Wrongful Acts** or **Coverage Events** taking place prior to such merger, consolidation or acquisition.

The **Policyholder** shall have the right to request an offer from the Insurer of a **Run-Off Coverage Period**. The Insurer shall offer such **Run-Off Coverage Period** pursuant to such terms, conditions and premium as the Insurer may reasonably decide. The right to exercise the **Run-Off Coverage Period** shall lapse unless the **Policyholder** gives written notice of such exercise to the Insurer prior to expiration of the **Policy Period**, including the requested length of the **Run-Off Coverage Period** which shall not exceed six (6) years after such merger, consolidation or acquisition. The **Policyholder** shall promptly pay such additional premium as a condition precedent to commencement of the **Run-Off Coverage Period**. The entire additional premium for the **Run-Off Coverage Period** shall be deemed fully earned at the inception of the **Run-Off Coverage Period**.

The **Policyholder** shall not be entitled to elect the **Run-Off Coverage Period** if the **Extended Reporting Period** is elected pursuant to Subsection IV.B.

C.  CESSATION OF SUBSIDIARIES

If:

1.  an organization was a **Subsidiary** under any policy issued by the Insurer or any affiliate of the Insurer of which this policy is a direct or indirect renewal or replacement and ceased to be a **Subsidiary** prior to the inception of the **Policy Period**; or

2.  during the **Policy Period** an organization ceases to be a **Subsidiary**,

coverage with respect to such **Subsidiary** and its **Insureds** shall continue until termination of this policy, provided such coverage shall apply only with respect to **Claims** for **Wrongful Acts** or **Coverage Events** taking place prior to the date such organization ceased to be a **Subsidiary**.

D.  CESSATION OF PLANS

If before or during the **Policy Period** a **Plan** is terminated, coverage for such **Plan** and its **Insureds** under the Fiduciary Liability Coverage Part, if purchased, shall continue until termination of such Coverage Part with respect to **Wrongful Acts** taking place before or after such **Plan** termination.

VII.  DEFENSE AND SETTLEMENT

A.  LIABILITY COVERAGE PART DEFENSE AND SETTLEMENT

1.  Insureds' Duty to Defend

a.  With respect to any **Liability Coverage Part,** if, pursuant to Item 8 of the Declarations, it is the duty of the **Insureds** to defend **Claims**, then, subject to this Subsection VII.A, it shall be the duty of the **Insureds** and not the duty of the Insurer to defend any **Claims** and the **Insureds** will choose defense counsel.

b.  The **Insureds** agree not to offer to settle or to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation, admit any liability or stipulate to any judgment with respect to any **Claim** without the Insurer's written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for or as a result of any offer to settle, settlement, **Defense Costs**, assumed obligation, admission or stipulated judgment to which it has not given its prior consent.

c.  The Insurer shall have the right and shall be given the opportunity to make any investigation it deems necessary and to effectively associate with the **Insureds** in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any **Claim** that is or reasonably could be covered in whole or in part by the **Liability Coverage Part**.

d.  The Insurer may, with the consent of the **Insured** which shall not be unreasonably withheld, make any settlement of any **Claim** covered under a **Liability Coverage Part**.

2.  Insurer's Duty to Defend

a.  With respect to any **Liability Coverage Part,** if, pursuant to Item 8 of the Declarations, it is the duty of the Insurer to defend **Claims**, then the Insurer shall have the right and duty to defend any **Claim**. The Insurer will choose defense counsel regardless of whether the retention applicable to such **Claim** has or is likely to be exhausted, although the Insurer shall not be liable to pay covered **Loss**, including **Defense Costs**, with respect to such **Claim** until the applicable retention has been exhausted.

Coverage shall apply even if any of the allegations are groundless, false or fraudulent. The Insurer's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

b. Without limiting the Insurer's right to defend any **Claim**:

(i) the **Insureds** agree not to offer to settle or to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation, admit any liability or stipulate to any judgment with respect to any **Claim** without the Insurer's written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for or as a result of any offer to settle, settlement, **Defense Costs**, assumed obligation, admission or stipulated judgment to which it has not given its prior consent.

(ii) the Insurer shall have the right and shall be given the opportunity to make any investigation it deems necessary and to effectively associate with the **Insureds** in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any **Claim** that is or reasonably could be covered in whole or in part by the **Liability Coverage Parts**.

c. The Insurer may, with the consent of the **Insured** which shall not be unreasonably withheld, make any settlement of any **Claim** covered under a **Liability Coverage Part**.

**B. COOPERATION**

With respect to all Coverage Parts, the **Insureds** agree to provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and agree that in the event of a **Claim** or **Coverage Event**, the **Insureds** will do nothing that shall prejudice the Insurer's position or its potential or actual rights of recovery.

**C. DEFENSE COST ADVANCEMENT**

Under Subsections VII.A.1 and VII.A.2 above, solely with respect to the **Liability Coverage Parts**, the Insurer shall advance or pay **Defense Costs** on a current basis. Any advancement or payment of **Defense Costs** shall be repaid to the Insurer by the **Insureds** severally according to their respective interests if and to the extent the **Insureds** shall not be entitled under the terms and conditions of this policy to coverage for such **Defense Costs**.

**VIII. REPORTING AND NOTICE**

A. Solely with respect to any **Liability Coverage Part**:

1. As a condition precedent to their rights under any **Liability Coverage Part**, the **Insureds** shall give to the Insurer written notice of any **Claim** made against the **Insureds** as soon as practicable after the chief executive officer, chief financial officer or in-house general counsel or functionally equivalent position of the **Company** first learns of such **Claim**, but in no event later than: (a) ninety (90) days after expiration of the **Policy Period**; or (b) the expiration of the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised.

2. If during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, the **Insureds** become aware of circumstances that could give rise to a **Claim** against the **Insureds** and give written notice of such circumstances to the Insurer during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, then any **Claims** subsequently arising from such circumstances shall be considered to have been made during the **Policy Period**. No coverage is afforded under any **Liability Coverage Part** for fees, expenses or other loss incurred in connection with such potential **Claim** prior to the time such notice results in a **Claim**.

3. As a condition precedent to exercising their rights under any **Liability Coverage Part**, the **Insureds** shall: (a) include within any notice of **Claim** or circumstance a description of the **Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of actual or potential claimants, and the manner in which the **Insureds** first became aware of the **Claim** or circumstances; and (b) give to the Insurer such information and cooperation as it may reasonably require.

B. Solely with respect to any **Non-Liability Coverage Part**, as a condition precedent to their rights under such Coverage Part, the **Insureds** shall give to the Insurer written notice of any **Coverage Event** pursuant to the applicable notice provision applicable to such **Non-Liability Coverage Part**.

C. Except as otherwise provided in this policy, all notices under any provision of this policy shall be in writing and given by prepaid express courier, certified mail, email or fax properly addressed to the appropriate party. Notice to the **Insureds** may be given to the **Policyholder** at the address as shown in Item 1 of the Declarations. Notice to the Insurer shall be given to the respective address shown in Item 4 of the Declarations. Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee

or in the case of courier, email or fax, one day following the date such notice is sent, whichever is earlier, subject to proof of transmittal.

IX. REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGES

A. REPRESENTATIONS

The **Insureds** represent and acknowledge that the statements and information contained in the **Application** are true and complete, are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy. This policy is issued in reliance upon the truth and completeness of such representations.

B. SEVERABILITY

The **Application** shall be construed as a separate application for coverage by each of the **Insured Persons**. In the event the **Application** contains any misrepresentation or omission: (i) made with the intent to deceive; or (ii) which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under a Coverage Part, then such Coverage Part shall be void *ab initio* as to:

1. any **Company** to the extent such **Company** indemnifies an **Insured Person** who knew the facts that were not truthfully disclosed in the **Application**; and

2. any **Company** and its **Subsidiaries** and **Plans** if: (a) an **Executive Officer** of such **Company**; or (b) the person(s) signing the **Application**, knew the facts that were not truthfully disclosed in the **Application**;

whether or not such **Executive Officer**, **Insured Person** or person(s) signing the **Application** knew the **Application** contained such misrepresentation or omission. No knowledge of one **Insured Person** shall be imputed to any other **Insured Persons** for purposes of this Section IX.

C. NON-RESCINDABLE COVERAGES

The Insurer shall not have the right to rescind or void, in whole or in part, the coverage provided under any **Liability Coverage Part** for any **Loss** incurred by the **Insured Persons** which is not indemnified by the **Company**.

X. TERRITORY AND VALUATION

Coverage under this policy shall extend to **Wrongful Acts** taking place, **Loss** incurred, or **Claims** made anywhere in the world, to the extent legally permitted.

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Loss** under this policy is stated in a currency other than United States dollars, payment under this policy shall be made in United States dollars at the rate of exchange on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Loss** is due, respectively.

XI. OTHER INSURANCE

If any matters covered under this policy are insured under any other valid and collectible policy(ies) issued to any **Insured**, then this policy shall act as an excess insurance policy and will provide coverage, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this policy.

XII. SUBROGATION

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery, including without limitation any right of recovery from the **Company** for **Loss** incurred by **Insured Persons** which is indemnifiable by the **Company**. The **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the **Insureds**. In any subrogation claim against the **Company** to enforce the **Insured Persons'** right of indemnification, the shareholder and board of director resolutions of the **Company** shall be deemed to provide indemnification to the fullest extent permitted by law.

The Insurer shall not exercise its right of subrogation against an **Insured Person** unless and to the extent one or more of the following events occur: (1) Exclusion I or J in Section IV of the Management Liability Coverage Part applies; (2) Exclusion F or G in Section V of the Public Company Securities Coverage Part or the Private Company Securities Coverage Part applies; (3) Exclusion G in Section IV of the Employment Practices and Third Party Discrimination Liability Coverage Part applies; (4) Exclusion E or F in Section III of the Fiduciary Liability Coverage

Part applies; (5) Exclusion H or I in Section III of the Professional Liability Coverage Part applies; (6) Exclusion G or H in Section III of the Lender Liability Coverage Part applies; (7) Exclusion G or H in Section III of the Trust Department Liability Coverage Part applies; or (8) Exclusion I or J in Section IV of the Security & Privacy Protection Coverage Part applies.

In the event the Fiduciary Liability Coverage Part has been purchased by an **Insured** other than a **Plan**, the Insurer shall not have any right of recourse against an **Insured** unless the **Claim** was made by an **Insured** against another **Insured** with the solicitation, active assistance or participation of such other **Insured**.

## XIII. ALTERATION, ASSIGNMENT AND HEADINGS

No change in, modification of, or assignment of interest under this policy shall be effective except when made by a written endorsement to this policy which is signed by an authorized representative of the Insurer.

The titles and headings to the various sections, subsections and endorsements of this policy, as well as the schedule of endorsements attached to this policy, are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions or existence of such sections, subsections or endorsements.

## XIV. PAYMENT PRIORITY

If the **Loss** due and owing by the Insurer under a **Liability Coverage Part** exceeds the then-remaining Limit of Liability applicable to such **Loss**, the Insurer shall pay such **Loss**, subject to the applicable Limits of Liability, in the following priority:

A. First, the Insurer shall pay such **Loss** which is incurred by **Insured Persons**, other than **Employees** and **Independent Contractors**, and which is not indemnified by the **Company** or an **Outside Entity**;

B. Second, the Insurer shall pay such **Loss** which is incurred by **Employees** and which is not indemnified by the **Company** or an **Outside Entity**;

C. Third, the Insurer shall pay all other **Loss** covered under the **Liability Coverage Part**.

Subject to the foregoing Paragraph, the Insurer shall, upon receipt of a written request from the **Policyholder**, delay any payment of **Loss** due and owing to the **Company** until such time as the **Policyholder** designates, provided the Insurer's liability with respect to any such delayed **Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

## XV. POLICY TERMINATION AND NONRENEWAL

This policy shall terminate at the earliest of the effective date of nonrenewal of the **Policy Period** shown in Item 2 of the Declarations or effective date of cancellation, as described below.

A. CANCELLATION

1. The **Policyholder** may cancel this policy by surrender of this policy to the Insurer or by giving prior written notice to the Insurer stating when such cancellation shall take effect.

2. If the **Policy Period** is one (1) year or less, this policy may be cancelled by or on behalf of the Insurer for nonpayment of premium. In such event, the Insurer shall mail written notice of cancellation for nonpayment of premium to the **Policyholder**. Such notice shall state the effective date of cancellation, which shall not be less than fifteen (15) days after mailing such notice.

3. If the **Policy Period** is greater than one (1) year, this policy may be cancelled by or on behalf of the Insurer by giving to the **Policyholder** written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective.

4. In the event of cancellation, the Insurer shall refund the unearned premium computed pro rata.

B. NONRENEWAL

If the Insurer elects not to renew this policy, the Insurer shall mail to the **Policyholder** written notice thereof at least sixty (60) days prior to the expiration of the **Policy Period**. The Insurer's offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute an election by the Insurer not to renew this policy.

C. NOTICE

The Insurer shall send all notices required under this Section XV by certified mail to the **Policyholder** at the address in Item 1 of the Declarations, and by mail or electronic mail to the **Policyholder's** authorized agent, if any. Proof of mailing will be sufficient proof of notice.

## XVI. AUTHORIZATION CLAUSE

By acceptance of this policy, the **Policyholder** agrees to act on behalf of the **Insureds** with respect to giving and receiving notices of **Claim** or termination, paying premiums and receiving any return premiums that may become due under this policy, agreeing to endorsements, and giving or receiving notices provided for in this policy (except notices to apply for the **Extended Reporting Period** or **Run-Off Coverage Period**), and the **Insureds** agree that the **Policyholder** shall act on their behalf.

## XVII. BANKRUPTCY OR INSOLVENCY

Bankruptcy or insolvency of any **Insured** or of the estate of any **Insured** shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this policy.

In the event a liquidation or reorganization proceeding is commenced by or against a **Company** pursuant to the United States Bankruptcy Code, as amended, or any similar foreign, state or local law or a conservator or receiver is appointed for the **Company**, the **Company** and the **Insureds** hereby: (1) waive and release any automatic stay or injunction which may apply in such proceeding to this policy or its proceeds under such bankruptcy law or due to the entry into conservatorship or receivership; and (2) agree not to oppose or object to any efforts by the Insurer, the **Company** or any **Insured** to obtain relief from any such stay or injunction.

## XVIII. ALTERNATIVE DISPUTE RESOLUTION

The **Insureds** and the Insurer shall submit any dispute or controversy arising out of or relating to this policy to non-binding mediation. Unless otherwise agreed by the parties, such non-binding mediation shall be administered by the American Arbitration Association in accordance with its then-prevailing Commercial Mediation Rules.

If the dispute is not resolved in the mediation, then either party to the mediation may thereafter commence a judicial proceeding against the other party with respect to such dispute, provided that neither party may commence such a judicial proceeding prior to ninety (90) days following termination of the mediation.

The parties to the mediation shall share equally the fees and expenses of the mediator as well as other common expenses of the mediation process.

# Financial Institutions Select™ Insurance Policy

**Management Liability Coverage Part**



## TABLE OF CONTENTS

I.   INSURING CLAUSES.................................................................................................................................1

    A.  INSURED PERSON LIABILITY COVERAGE............................................................................1

    B.  COMPANY REIMBURSEMENT COVERAGE...........................................................................1

    C.  RETIRED INDEPENDENT DIRECTORS LIABILITY COVERAGE ...........................................1

II. EXTENSIONS ...........................................................................................................................................1

    A. ENVIRONMENTAL MISMANAGEMENT COVERAGE.............................................................1

    B. OUTSIDE POSITION COVERAGE ..........................................................................................1

III. DEFINITIONS...........................................................................................................................................2

IV. EXCLUSIONS ..........................................................................................................................................3

# Management Liability Coverage Part



**ZURICH**®

## I. INSURING CLAUSES

### A. INSURED PERSON LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Insured Persons** all **Loss** for which the **Insured Persons** are not indemnified by the **Company** and which the **Insured Persons** become legally obligated to pay on account of any **Claim** first made against them, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**, subject to the applicable Limits of Liability set forth in the Declarations.

### B. COMPANY REIMBURSEMENT COVERAGE

The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** grants indemnification to the **Insured Persons**, as permitted or required by law, and which the **Insured Persons** have become legally obligated to pay on account of any **Claim** first made against them, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**, subject to the applicable Limits of Liability set forth in the Declarations.

### C. RETIRED INDEPENDENT DIRECTORS LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Retired Independent Directors** all **Loss** for which the **Retired Independent Directors** are not indemnified by the **Company** and which the **Retired Independent Directors** become legally obligated to pay on account of any **Claim** first made against them, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**, subject to the respective Limit of Liability set forth in the Coverage Schedule in Item 5 of the Declarations for such coverage. Such Limit of Liability shall be in addition to the Limits of Liability set forth in the Declarations for this entire Coverage Part. However, in the event that the Company Securities Coverage Part is purchased, the Limit of Liability set forth in the Coverage Schedule in Item 5 of the Declarations under this Insuring Clause C shall be part of and not in addition to the Limit of Liability set forth in the Coverage Schedule in Item 5 of the Declarations for Insuring Clause D of the Company Securities Coverage Part.

Coverage under this Insuring Clause C shall apply only if: (1) the **Retired Independent Director** is a **Retired Independent Director** when the **Claim** is first made; and (2) the Limit of Liability otherwise applicable to this Coverage Part is exhausted by reason of payment by the Insurer of **Loss**. Such coverage shall then be excess of all other insurance specifically excess of this policy as well as all other insurance described in Section XI of the General Terms and Conditions. If **Loss** is due and owing by the Insurer under both Insuring Clause A and this Insuring Clause C, then such **Loss** shall be allocated to and paid by the Insurer under the respective Limits of Liability in whatever portions will maximize the total amount of such **Loss** being paid under this Coverage Part.

## II. EXTENSIONS

### A. ENVIRONMENTAL MISMANAGEMENT COVERAGE

Subject to this policy's other terms and conditions, coverage under Insuring Clauses A, B and C for **Claims** against **Insured Persons** includes coverage for any **Environmental Mismanagement Claim** provided this extension shall not apply to Subsection II.B, Outside Position Coverage, below.

### B. OUTSIDE POSITION COVERAGE

Subject to this policy's other terms and conditions, Insuring Clause A and Insuring Clause B include coverage for **Insured Persons** while serving in an **Outside Position**. Such coverage shall be specifically excess of any indemnification and insurance available from or provided by the **Outside Entity** in which the **Insured Person** serves in the **Outside Position**. Payment by the Insurer or any affiliate of the Insurer under another policy as a

result of a **Claim** against an **Insured Person** in an **Outside Position** shall reduce, by the amount of such payment, the Insurer's Limit of Liability under this Coverage Part with respect to such **Claim**.

## III. DEFINITIONS

When used in this Coverage Part, the following terms, whether in the singular or plural, are defined as follows below. Defined terms which do not appear below are defined in Section II, General Definitions, of the General Terms and Conditions of this policy.

A. **Claim** means:

1. a written demand against any **Insured Person** for monetary damages or non-monetary or injunctive relief commenced by the **Insured Person's** receipt of such demand, including a written demand that the **Insured Person** toll or waive a statute of limitations;

2. a civil proceeding against any **Insured Person** commenced by the service of a complaint or similar pleading;

3. a criminal proceeding against any **Insured Person** commenced by a return of an indictment, information or similar document;

4. an administrative or regulatory proceeding against any **Insured Person** commenced by the filing of a notice of charges or similar document;

5. a civil, criminal, administrative or regulatory investigation of any **Insured Person** commenced by the service upon or other receipt by the **Insured Person** of a target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

6. an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

7. an arbitration or mediation proceeding against any **Insured Person**;

for a **Wrongful Act**, including any appeal therefrom.

B. **Environmental Mismanagement Claim** means any **Claim** based upon, arising out of or attributable to an **Environmental Event** if and to the extent such **Claim**: (1) is against an **Insured Person** for **Wrongful Acts** in connection with misrepresenting or failing to disclose information related to **Greenhouse Gases** or actual or alleged global warming or climate changes; or (2) results in **Loss** incurred by **Insured Persons** for which the **Company** does not indemnify the **Insured Persons** either because the **Company** is neither permitted nor required to grant such indemnification or because of **Financial Impairment**. **Environmental Mismanagement Claim** shall not include any **Claim** against any **Insured Person** while serving in an **Outside Position**.

C. **Insured Persons** means:

1. any one or more natural persons who were, now are or shall become a duly elected or appointed director, trustee, governor, **Manager**, officer, advisory director, or member of a duly constituted committee or board of the **Company** or their functional equivalent;

2. any one or more natural persons not described in Subsection 1 above who were, now are or shall become **Employees** of the **Company**;

3. **Independent Contractors** only for purposes of Insuring Clause I.B; and

4. any one or more natural persons described in Subsection 1 above while serving in an **Outside Position**;

provided that **Employees** described in Subsection 2 above shall not be considered **Insured Persons** for purposes of Exclusions C or D in Section IV of this Coverage Part.

D. **Insureds** means the **Insured Persons**.

E. **Loss** means the total amount the **Insured Persons** become legally obligated to pay on account of **Claims** made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **Defense Costs** and civil money penalties assessed against an **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B)

or for a violation of any federal, state, local or foreign election law if such election law violation is not knowing or willful.

The insurability of such punitive, exemplary or multiple damages and civil money penalties shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insured Persons**, including without limitation the jurisdiction in which the **Company**, the **Insured Persons**, the Insurer, this policy or such **Claim** is located.

**Loss** does not include any of the following provided this sentence does not apply to **Defense Costs** with respect to any of the following:

1. any amount not indemnified by the **Company** for which the **Insured Persons** are absolved from payment by reason of any covenant, agreement or court order;

2. taxes, fines or penalties imposed by law, other than civil money penalties expressly referenced above;

3. any amount that represents or is substantially equivalent to an increase in the consideration paid or proposed to be paid by a **Company** in connection with its purchase of any securities or assets;

4. any amount incurred to comply with any injunctive or other equitable relief or any agreement to provide such relief;

5. any amount incurred as a result of an administrative or regulatory proceeding; or

6. matters uninsurable under the law pursuant to which this policy is construed.

F. **Outside Position** means the position of director, officer, manager, trustee, governor or other equivalent executive position in an **Outside Entity** held by an **Insured Person**, if service in such position is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the **Insured Person** by, the **Company**.

G. **Retired Independent Director** means any **Insured Person** who: (1) formerly served but no longer serves as a duly elected or appointed director, trustee, governor or functional equivalent executive of the **Policyholder**; (2) never has been an officer of any **Company**; and (3) no longer serves in any insured capacity under this policy.

H. **Wrongful Act** means:

1. any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by any of the **Insured Persons**, individually or otherwise, in their capacity as such, or in an **Outside Position**; or

2. any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity or in an **Outside Position**.

IV. EXCLUSIONS

The Insurer shall not be liable under this Coverage Part for **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured Person**:

A. based upon, arising out of or attributable to any fact, circumstance or situation which has been the subject of any written notice given prior to inception of this policy under any prior directors and officers liability policy or coverage part providing comparable insurance to this Coverage Part;

B. based upon, arising out of or attributable to any written demand, suit or proceeding pending, or order, decree or judgment entered against the **Company** or any **Insured Person** on or prior to the respective Pending or Prior Date set forth in the Coverage Schedule in Item 5 of the Declarations, or the same or substantially the same **Wrongful Act**, **Interrelated Wrongful Acts**, fact, circumstance or situation underlying or alleged therein;

C. brought or maintained by or on behalf of the **Company** or any **Insured Person** in any capacity, provided this exclusion shall not apply to:

1. a **Claim** brought or maintained by any **Insured Person** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this Coverage Part;

2. a **Claim** brought by an **Insured Person** who has not served as an **Insured Person** for at least three (3) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation or

active assistance or participation of the **Company** or any other **Insured Person** who is serving or has served as an **Insured Person** within such three (3) year period;

3. a **Claim** brought or maintained by or on behalf of a bankruptcy trustee, liquidating trustee or creditors committee for such **Company**, or any assignee of such trustee or creditors committee; or

4. a **Claim** by or on behalf of the **Company** brought and maintained in any non-common law jurisdiction outside the United States;

D. for a **Wrongful Act** by an **Insured Person** in an **Outside Position** if such **Claim** is brought or maintained by or on behalf of the **Outside Entity** in which the **Insured Person** serves, or by or on behalf of any past, present or future director, officer, manager, governor or trustee or equivalent position of such entity, except:

1. a **Claim** that is a derivative action brought or maintained on behalf of such **Outside Entity** by one or more persons who are not directors, officers, managers or trustees of the **Outside Entity** if the **Claim** is brought and maintained without the solicitation or active assistance or participation of the **Company**, any **Insured Person**, the **Outside Entity** or any director, officer, manager or trustee of the **Outside Entity** or if the only such solicitation, assistance or participation by the **Company**, any **Insured Person**, the **Outside Entity** or any director, officer, manager or trustee of the **Outside Entity** is: (a) solely pursuant to or in compliance with a subpoena or similar legal process; or (b) protected pursuant to any whistleblower statute;

2. a **Claim** for an employment-related **Wrongful Act** brought or maintained by a director, officer, manager, governor or trustee of such **Outside Entity**;

3. a **Claim** brought by a director, officer, manager, governor or trustee of such **Outside Entity** who has not served as such for at least three (3) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation by, or active assistance or participation of, such **Outside Entity** or any other director, officer, manager, governor or trustee of such **Outside Entity** who is serving or has served as such within such three (3) year period;

4. a **Claim** brought or maintained by or on behalf of a bankruptcy trustee, liquidating trustee or creditors committee for such **Outside Entity**, or any assignee of such trustee or creditors committee; or

5. a **Claim** by or on behalf of the **Company** brought and maintained in any non-common law jurisdiction outside the United States;

E. for an actual or alleged violation of the responsibilities, obligations or duties imposed by **ERISA** or similar provisions of any federal, state or local statutory law or common law with respect to any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to **Employees** of the **Company**;

F. for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person, false arrest, wrongful detention or imprisonment, malicious prosecution, wrongful eviction, wrongful entry, invasion of the right of private occupancy, oral or written publication in any manner or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, oral or written publication in any manner of material that violates a person's right of privacy, false light or false advertising or damage to or destruction of any tangible property including loss of use thereof;

G. based upon, arising out of or attributable to an **Environmental Event**, provided this exclusion shall not apply to **Environmental Mismanagement Claims**;

H. for service by the **Insured Person** in any position or capacity in any organization other than the **Company** even if the **Company** directed or requested the **Insured Person** to serve in such other position or capacity, provided this exclusion shall not apply to service by the **Insured Person** in an **Outside Position**;

I. based upon, arising out of or attributable to any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured Person**, if a final and non-appealable adjudication adverse to such **Insured Person** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent act or omission or willful violation;

J. based upon, arising out of or attributable to such **Insured Person** gaining any profit, remuneration or financial advantage to which such **Insured Person** was not legally entitled, if a final and non-appealable adjudication adverse to such **Insured Person** in any proceeding not brought by the Insurer establishes such **Insured Person** in fact gained any such profit, remuneration or advantage;

K.  which constitutes a **Securities Claim**;

L.  based upon, arising out of or attributable to the rendering of or failure to render **Professional Services** including **Broker Services**, **Insurance Agent Services**, and **IRA/Keogh Services** regardless of whether coverage for any of these services is purchased as indicated in the Coverage Schedule as set forth in Item 5 of the Declarations;

M.  which constitutes an **Employment Practices Claim** or **Third Party Discrimination Claim**;

N.  based upon, arising out of or attributable to the rendering of or failure to render **Trust Services**;

O.  based upon, arising out of or attributable to a **Lending Act**; or

P.  which constitutes an **Electronic Publishing Wrongful Act**, a **Privacy Wrongful Act** or a **Security Wrongful Act**.

For the purpose of determining the applicability of any exclusion set forth in this Section IV, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**.

# Financial Institutions Select™ Insurance Policy
Non-Indemnifiable Excess DIC Liability Coverage Part



**ZURICH**®

### TABLE OF CONTENTS

I.  INSURING CLAUSE ..................................................................................................................1

II.  ENVIRONMENTAL MISMANAGEMENT COVERAGE EXTENSION ..........................................1

III.  DEFINITIONS ..........................................................................................................................1

IV.  EXCLUSIONS ..........................................................................................................................3

V.  NON-RESCINDABLE COVERAGE ...........................................................................................4

VI.  BANKRUPTCY OR INSOLVENCY AND PAYMENT PRIORITY ................................................4

# Non-Indemnifiable Excess DIC Liability Coverage Part



## I. INSURING CLAUSE

The Insurer shall pay on behalf of the **Insured Persons** all **Non-Indemnifiable Loss** for which the **Insured Persons** become legally obligated to pay on account of any **Claim** first made against them, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**, subject to the Limit of Liability set forth in the Declarations only if and to the extent that:

A. any insurer(s) of the **Underlying Policies**:

1. wrongfully refuses to indemnify the **Insured Persons** as required under the terms of the **Underlying Policies**;

2. fails to indemnify the **Insured Persons** within sixty (60) days after the **Insured Persons'** request for such indemnification;

3. is financially unable to indemnify the **Non-Indemnifiable Loss**; or

4. commences an action to rescind or states in writing that it intends to rescind the **Underlying Policies**;

B. according to the terms and conditions of the **Underlying Policies**, the insurer(s) of the **Underlying Policies** is not liable for such **Non-Indemnifiable Loss**;

C. the limit(s) of liability of the **Underlying Policies** has been exhausted by reason of losses paid thereunder; or

D. a liquidation or reorganization proceeding is commenced by or against any **Company** pursuant to the U.S. Bankruptcy Code, as amended and as a result of such proceeding the proceeds of any **Underlying Policy** cannot legally be paid by the insurer thereof solely because such proceeds are subject to the automatic stay under the Code; provided that as a condition precedent to the Insurer being liable pursuant to this Subsection I.D, the **Insured Persons** or the **Company** shall request, or arrange for the insurer of the **Underlying Policy** to request, relief from the automatic stay with respect to such proceeds.

If and to the extent coverage for any **Non-Indemnifiable Loss** would not be provided under this Coverage Part pursuant to any of its terms, conditions and exclusions but is provided under the **Underlying Policies**, this Coverage Part is amended to follow the **Underlying Policies** with respect to such **Non-Indemnifiable Loss**. This Paragraph does not apply to the definition of **Policyholder**, **Policy Period** and **Policy Year** and Section VIII, Reporting and Notice, XIII, Alteration, Assignment and Headings and XIV, Payment Priority of the General Terms and Conditions of this policy or to the definition of **Underlying Policy(ies)** and Section V, Non-Rescindable Coverage and VI, Bankruptcy or Insolvency and Payment Priority of this Coverage Part and any endorsements to this policy affecting this Coverage Part.

## II. ENVIRONMENTAL MISMANAGEMENT COVERAGE EXTENSION

Subject to this policy's other terms and conditions, coverage for **Claims** against **Insured Persons** includes coverage for any **Environmental Mismanagement Claim**.

## III. DEFINITIONS

When used in this Coverage Part, the following terms, whether in the singular or plural, are defined as follows below. Defined terms which do not appear below are defined in Section II, General Definitions, of the General Terms and Conditions of this policy.

A. **Claim** means:

1. a written demand against any **Insured Person** for monetary damages or non-monetary or injunctive relief commenced by the **Insured Person's** receipt of such demand, including a written demand that the **Insured Person** toll or waive a statute of limitations;

2. a civil proceeding against any **Insured Person** commenced by the service of a complaint or similar pleading;

3. a criminal proceeding against any **Insured Person** commenced by a return of an indictment, information or similar document;

4. an administrative or regulatory proceeding against any **Insured Person** commenced by the filing of a notice of charges or similar document;

5. a civil, criminal, administrative or regulatory investigation of any **Insured Person** commenced by the service upon or other receipt by the **Insured Person** of a target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

6. an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

7. an arbitration or mediation proceeding against any **Insured Person**;

for a **Wrongful Act**, including any appeal therefrom.

B. **Environmental Mismanagement Claim** means any **Claim** based upon, arising out of or attributable to an **Environmental Event** if and to the extent such **Claim** results in **Loss** incurred by **Insured Persons** for which the **Company** does not indemnify the **Insured Persons** either because the **Company** is neither permitted nor required to grant such indemnification or because of **Financial Impairment**.

C. **Insured Persons** means any one or more natural persons who were, now are or shall become a duly elected or appointed director, trustee, governor, **Manager**, officer, advisory director, or member of a duly constituted committee or board of the **Company** or their functional equivalent.

D. **Insureds** means the **Insured Persons**.

E. **Non-Indemnifiable Loss** means the total amount the **Insured Persons** become legally obligated to pay on account of **Claims** made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, and any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **Defense Costs** and civil money penalties assessed against an **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B) or for a violation of any federal, state, local or foreign election law if such violation is not knowing or willful, and taxes imposed on **Insured Persons**, in their capacity as such, as a result of the bankruptcy of a **Company** except for knowing or willful misconduct, provided:

1. no **Company** is permitted nor required to indemnify the **Insured Persons** for such loss; or

2. if a **Company** is permitted or required to indemnify the **Insured Persons**, such **Company** fails or refuses to indemnify the **Insured Person** either within sixty (60) days after the **Insured Persons'** request for such indemnification or due to **Financial Impairment**.

The insurability of such punitive, exemplary or multiple damages, taxes and civil money penalties shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insured Persons**, including without limitation the jurisdiction in which the **Company**, the **Insured Persons**, the Insurer, this policy or such **Claim** is located.

**Non-Indemnifiable Loss** does not include any of the following provided this sentence does not apply to **Defense Costs** with respect to any of the following:

1. any amount not indemnified by the **Company** for which the **Insured Persons** are absolved from payment by reason of any covenant, agreement or court order;

2. taxes, fines or penalties imposed by law, other than taxes and civil money penalties expressly referenced above;

3.  any amount incurred to comply with any injunctive or other equitable relief or any agreement to provide such relief;

4.  any amount incurred as a result of an administrative or regulatory proceeding; or

5.  matters uninsurable under the law pursuant to which this policy is construed.

F.  **Underlying Policy(ies)** means:

1.  the other **Liability Coverage Parts** of this policy if purchased as set forth in the Coverage Schedule in Item 5 of the Declarations; and

2.  the insurance policies, if any, written as specifically excess to this policy or one or more other **Liability Coverage Parts** of this policy.

G.  **Wrongful Act** means:

1.  any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by any of the **Insured Persons**, individually or otherwise, in their capacity as such; or

2.  any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity.

IV. EXCLUSIONS

The Insurer shall not be liable under this Coverage Part for **Non-Indemnifiable Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured Person**:

A.  based upon, arising out of or attributable to any fact, circumstance or situation which has been the subject of any written notice given prior to inception of this policy under any prior directors and officers liability policy or coverage part providing comparable insurance to this Coverage Part;

B.  based upon, arising out of or attributable to any written demand, suit or proceeding pending, or order, decree or judgment entered against the **Company** or any **Insured Person** on or prior to the respective Pending or Prior Date set forth in the Coverage Schedule in Item 5 of the Declarations, or the same or substantially the same **Wrongful Act**, **Interrelated Wrongful Acts**, fact, circumstance or situation underlying or alleged therein;

C.  for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person, false arrest, wrongful detention or imprisonment, malicious prosecution, wrongful eviction, wrongful entry, invasion of the right of private occupancy, oral or written publication in any manner or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, oral or written publication in any manner of material that violates a person's right of privacy, false light or false advertising or damage to or destruction of any tangible property including loss of use thereof;

D.  based upon, arising out of or attributable to an **Environmental Event**, provided this exclusion shall not apply to **Environmental Mismanagement Claims**;

E.  for service by the **Insured Person** in any position or capacity in any organization other than the **Company** even if the **Company** directed or requested the **Insured Person** to serve in such other position or capacity;

F.  based upon, arising out of or attributable to any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured Person**, if a final and non-appealable adjudication adverse to such **Insured Person** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent act or omission or willful violation, provided this exclusion does not apply to **Defense Costs**;

G.  based upon, arising out of or attributable to such **Insured Person** gaining any profit, remuneration or financial advantage to which such **Insured Person** was not legally entitled, if a final and non-appealable adjudication adverse to such **Insured Person** in any proceeding not brought by the Insurer establishes such **Insured Person** in fact gained any such profit, remuneration or advantage, provided this exclusion does not apply to **Defense Costs**; or

H.  based upon, arising out of or attributable to:

1.  the actual, alleged or attempted purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities of the **Company**; or

2.  the actual or alleged violation of any federal, state, local or common or foreign law relating to debt or equity securities of the **Company**;

if the **Company** did not have any publicly traded debt or equity securities as of the inception of the **Policy Period**; provided this exclusion shall not apply to any **Claim**:

1. based upon, arising out of or attributable to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities of the **Company** in a private-placement transaction exempt from registration under the Securities Act of 1933, as amended;

2. based upon, arising out of or attributable to the failure of the **Company** to undertake or successfully complete a public offering of securities of the **Company**, including any "roadshow" disclosures or other activities in connection with such an unsuccessful public offering; or

3. if prior to such purchase or sale, or offer or solicitation of an offer to purchase or sell, securities: (a) the Insurer agrees in writing to delete this exclusion with respect to such purchase, sale, offer or solicitation; and (b) the **Company** pays any additional premium and agrees to any additional terms and conditions reasonably required by the Insurer for such deletion.

For the purpose of determining the applicability of any exclusion set forth in this Section IV, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**.

V. NON-RESCINDABLE COVERAGE

The Insurer shall not have the right to rescind or void, in whole or in part, the coverage provided under this Coverage Part.

VI. BANKRUPTCY OR INSOLVENCY AND PAYMENT PRIORITY

In addition to the terms set forth in Section XVII of the General Terms and Conditions of this policy, in the event of a liquidation or reorganization proceeding as described therein, the Insurer shall pay **Non-Indemnifiable Loss** arising from any **Claim** for which payment is due under this Coverage Part as follows:

A. first pay such **Non-Indemnifiable Loss** which is attributable to **Wrongful Acts** occurring prior to the effective date of such liquidation or reorganization proceeding, then

B. pay such **Non-Indemnifiable Loss** which is attributable to **Wrongful Acts** occurring after the effective date of such liquidation or reorganization proceeding.

# Financial Institutions Select™ Insurance Policy

**Public Company Securities Coverage Part**



## TABLE OF CONTENTS

I.  LIABILITY INSURING CLAUSES ......................................................................................................1

    A.  INSURED PERSON SECURITIES LIABILITY COVERAGE ........................................................1

    B.  COMPANY REIMBURSEMENT COVERAGE ..........................................................................1

    C.  COMPANY SECURITIES LIABILITY COVERAGE ...................................................................1

    D.  RETIRED INDEPENDENT DIRECTORS LIABILITY COVERAGE ..............................................1

II.  NON-LIABILITY INSURING CLAUSE ..............................................................................................1

    DERIVATIVE DEMAND INVESTIGATION EXPENSES COVERAGE ...............................................1

III.  ENVIRONMENTAL MISMANAGEMENT COVERAGE EXTENSION ....................................................2

IV.  DEFINITIONS ...............................................................................................................................2

V.  EXCLUSIONS ...............................................................................................................................3

VI.  CONDITIONS ................................................................................................................................4

    A.  NOTICE ....................................................................................................................................4

    B.  INVESTIGATION .......................................................................................................................4

# Public Company Securities Coverage Part


**ZURICH**®

## I. LIABILITY INSURING CLAUSES

### A. INSURED PERSON SECURITIES LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Insured Persons** all **Loss** for which the **Insured Persons** are not indemnified by the **Company** and which the **Insured Persons** become legally obligated to pay on account of any **Securities Claim** first made against them, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**, subject to the applicable Limits of Liability set forth in the Declarations.

### B. COMPANY REIMBURSEMENT COVERAGE

The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** grants indemnification to the **Insured Persons**, as permitted or required by law, and which the **Insured Persons** have become legally obligated to pay on account of any **Securities Claim** first made against them, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**, subject to the applicable Limits of Liability set forth in the Declarations.

### C. COMPANY SECURITIES LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** becomes legally obligated to pay on account of a **Securities Claim** first made against the **Company** during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**, subject to the applicable Limits of Liability set forth in the Declarations.

### D. RETIRED INDEPENDENT DIRECTORS LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Retired Independent Directors** all Loss for which the **Retired Independent Directors** are not indemnified by the **Company** and which the **Retired Independent Directors** become legally obligated to pay on account of any **Securities Claim** first made against them, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**, subject to the respective Limit of Liability set forth in the Coverage Schedule in Item 5 of the Declarations for such coverage. Such Limit of Liability shall be in addition to the Limits of Liability set forth in the Declarations for this entire Coverage Part. However, the Limit of Liability set forth in the Coverage Schedule in Item 5 of the Declarations under this Insuring Clause D shall be part of and not in addition to the Limit of Liability set forth in the Coverage Schedule in Item 5 of the Declarations for Insuring Clause C of the Management Liability Coverage Part.

Coverage under this Insuring Clause D shall apply only if: (1) the **Retired Independent Director** is a **Retired Independent Director** when the **Securities Claim** is first made; and (2) the Limit of Liability otherwise applicable to this Coverage Part is exhausted by reason of payment by the Insurer of **Loss**. Such coverage shall then be excess of all other insurance specifically excess of this policy as well as all other insurance described in Section XI of the General Terms and Conditions. If **Loss** is due and owing by the Insurer under both Insuring Clause A and this Insuring Clause D, then **Loss** shall be allocated to and paid by the Insurer under the respective Limits of Liability in whatever portions will maximize the total amount of such **Loss** being paid under this Coverage Part.

## II. NON-LIABILITY INSURING CLAUSE

### DERIVATIVE DEMAND INVESTIGATION EXPENSES COVERAGE

The Insurer shall pay on behalf of the **Company** all **Investigation Expenses** resulting from a **Securityholder Derivative Demand** first received by the **Company** during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** as defined in Subsections IV.H.1 and IV.H.2 below

taking place before or during the **Policy Period**, subject to the applicable Limit of Liability set forth in Item 5 of the Declarations. The Insurer's maximum aggregate liability for all **Investigation Expenses** on account of all **Securityholder Derivative Demands** shall be the Limit of Liability set forth in Item 5 of the Declarations, which shall be in addition to, and not part of, any Limit of Liability set forth in Item 7 of the Declarations.

III. ENVIRONMENTAL MISMANAGEMENT COVERAGE EXTENSION

Subject to this policy's other terms and conditions, coverage under Insuring Clauses A, B and C for **Securities Claims** against the **Insureds** includes coverage for any **Environmental Mismanagement Claim**.

IV. DEFINITIONS

When used in this Coverage Part, the following terms, whether in the singular or plural, are defined as follows below. Defined terms which do not appear below are defined in Section II, General Definitions, of the General Terms and Conditions of this policy.

A. **Claim** means:

1. a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief commenced by the **Insured's** receipt of such demand, including a written demand that the **Insured** toll or waive a statute of limitations;

2. a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

3. a criminal proceeding against any **Insured** commenced by a return of an indictment, information or similar document;

4. an administrative or regulatory proceeding against any **Insured** commenced by the filing of a notice of charges or similar document;

5. a civil, criminal, administrative or regulatory investigation of any **Insured Person** commenced by the service upon or other receipt by the **Insured Person** of a target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

6. an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

7. an arbitration or mediation proceeding against any **Insured**;

for a **Wrongful Act**, including any appeal therefrom.

B. **Environmental Mismanagement Claim** means any **Claim** based upon, arising out of or attributable to an **Environmental Event** if and to the extent such **Claim** is a **Securities Claim**.

C. **Insured Persons** means:

1. any one or more natural persons who were, now are or shall become a duly elected or appointed director, trustee, governor, **Manager**, officer, advisory director, or member of a duly constituted committee or board of the **Company** or their functional equivalent;

2. any one or more natural persons not described in Subsection 1 above who were, now are or shall become **Employees** of the **Company**; and

3. **Independent Contractors** only for purposes of Insuring Clause I.B;

provided that **Employees** described in Subsection 2 above shall not be considered **Insured Persons** for purposes of Exclusion C in Section V of this Coverage Part.

D. **Insureds** means the **Insured Persons** and, solely for purposes of Insuring Clause C, the **Company**.

E. **Investigation Expenses** means reasonable costs, charges, fees (including but not limited to attorneys' fees and expert's fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Company**) incurred by the **Company** (including its Board of Directors or any committee of its Board of Directors) in investigating or evaluating on behalf of the **Company** whether it is in the best interest of the **Company** to prosecute the claims alleged in a **Securityholder Derivative Demand**.

F. **Loss** means the total amount the **Insureds** become legally obligated to pay on account of **Claims** made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements and **Defense Costs**.

The insurability of such punitive, exemplary or multiple damages shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Insureds**, the Insurer, this policy or such **Claim** is located.

**Loss** does not include any of the following provided this sentence does not apply to **Defense Costs** with respect to any of the following:

1. any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

2. taxes, fines or penalties imposed by law;

3. any amount incurred by the **Company** that represents or is substantially equivalent to an increase in the consideration paid or proposed to be paid by a **Company** in connection with its purchase of any securities or assets;

4. any amount incurred by the **Company** to comply with any injunctive or other equitable relief or any agreement to provide such relief;

5. any amount incurred as a result of an administrative or regulatory proceeding; or

6. matters uninsurable under the law pursuant to which this policy is construed.

G. **Securityholder Derivative Demand** means:

1. any written demand, by a securityholder of a **Company**, upon the Board of Directors or Board of Managers of such **Company**, to bring a civil proceeding in a court of law against an **Insured Person** for a **Wrongful Act** as defined in Subsections IV.H.1 and IV.H.2 below; or

2. any lawsuit by a securityholder of a **Company**, brought derivatively on behalf of such **Company**, against an **Insured Person** for a **Wrongful Act** as defined in Subsections IV.H.1 and IV.H.2 below without first making a demand as described in Subsection 1 above.

H. **Wrongful Act** means:

1. any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by any of the **Insured Persons**, individually or otherwise, in their capacity as such;

2. any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity; or

3. any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by the **Company**.

V. EXCLUSIONS

The Insurer shall not be liable under this Coverage Part for **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured** or **Investigation Expenses**:

A. based upon, arising out of or attributable to any fact, circumstance or situation which has been the subject of any written notice given prior to inception of this policy under any prior directors and officers liability policy or coverage part providing comparable insurance to this Coverage Part;

B. based upon, arising out of or attributable to any written demand, suit or proceeding pending, or order, decree or judgment entered against the **Company** or any **Insured Person** on or prior to the respective Pending or Prior Date set forth in the Coverage Schedule in Item 5 of the Declarations, or the same or substantially the same **Wrongful Act**, **Interrelated Wrongful Acts**, fact, circumstance or situation underlying or alleged therein;

C. brought or maintained by or on behalf of the **Company** or any **Insured Person** in any capacity, provided this exclusion shall not apply to:

1. a **Claim** that is a derivative action brought or maintained on behalf of the **Company** by one or more persons who are not **Insured Persons** if the **Claim** is brought and maintained without the solicitation or active

assistance or participation of the **Company** or any **Insured Person** or if the only such solicitation, assistance or participation by the **Company** and **Insured Persons** is: (a) solely pursuant to, or in compliance with, a subpoena or similar legal process; or (b) protected pursuant to any whistleblower statute;

2. a **Claim** brought or maintained by any **Insured Person** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this Coverage Part; or

3. a **Claim** brought by an **Insured Person** who has not served as an **Insured Person** for at least three (3) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation or active assistance or participation of the **Company** or any other **Insured Person** who is serving or has served as an **Insured Person** within such three (3) year period;

D. for an actual or alleged violation of the responsibilities, obligations or duties imposed by **ERISA** or similar provisions of any federal, state or local statutory law or common law with respect to any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to **Employees** of the **Company**;

E. based upon, arising out of or attributable to an **Environmental Event**, provided this exclusion shall not apply to **Environmental Mismanagement Claims**;

F. based upon, arising out of or attributable to any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent act or omission or willful violation;

G. based upon, arising out of or attributable to such **Insured** gaining any profit, remuneration or financial advantage to which such **Insured** was not legally entitled, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such **Insured** in fact gained any such profit, remuneration or advantage; or

H. for any actual or alleged liability of the **Company** under any written contract or agreement, except to the extent that the **Company** would have been liable in the absence of such contract or agreement.

For the purpose of determining the applicability of any exclusion set forth in this Section V, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and under Insuring Clause C only the **Wrongful Act** or knowledge of an **Executive Officer** of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.

VI. CONDITIONS

A. NOTICE

1. As a condition precedent to the **Company's** rights under the Non-Liability Insuring Clause, the **Company** must give the Insurer written notice of any **Securityholder Derivative Demand** during the **Policy Period** as soon as practicable after it occurs, but in no event later than thirty (30) days after an **Insured** first becomes aware of such **Securityholder Derivative Demand**.

2. Following the furnishing of notice, the **Company** shall, as soon as practicable, furnish the Insurer with copies of reports, investigations and all other papers in connection therewith.

B. INVESTIGATION

The Insurer has no duty to investigate and evaluate any **Securityholder Derivative Demand**. It shall be the duty of the **Company** to investigate and evaluate any **Securityholder Derivative Demand**.

# Financial Institutions Select™ Insurance Policy
### Employment Practices and Third Party Discrimination Liability Coverage Part


**ZURICH**®

## TABLE OF CONTENTS

I.  INSURING CLAUSES..........................................................................................................................................1

    A.  EMPLOYMENT PRACTICES LIABILITY COVERAGE......................................................................1

    B.  THIRD PARTY DISCRIMINATION LIABILITY COVERAGE.............................................................1

II.  ENVIRONMENTAL MISMANAGEMENT COVERAGE EXTENSION...........................................................1

III.  DEFINITIONS....................................................................................................................................................1

IV.  EXCLUSIONS...................................................................................................................................................2

# Employment Practices and Third Party Discrimination Liability Coverage Part



**ZURICH**®

## I. INSURING CLAUSES

### A. EMPLOYMENT PRACTICES LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of any **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or during the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**, subject to the applicable Limits of Liability set forth in the Declarations.

### B. THIRD PARTY DISCRIMINATION LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of any **Third Party Discrimination Claim** first made against the **Insureds** during the **Policy Period** or during the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**, subject to the applicable Limits of Liability set forth in the Declarations.

## II. ENVIRONMENTAL MISMANAGEMENT COVERAGE EXTENSION

Subject to this policy's other terms and conditions, coverage under Insuring Clause A for **Claims** against **Insured Persons** includes coverage for any **Environmental Mismanagement Claim**.

## III. DEFINITIONS

When used in this Coverage Part, the following terms, whether in the singular or plural, are defined as follows below. Defined terms which do not appear below are defined in Section II, General Definitions, of the General Terms and Conditions of this policy.

### A. **Claim**, for purposes of the definitions of **Employment Practices Claim** and **Third Party Discrimination Claim** in the General Terms and Conditions, means:

1. a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief commenced by the **Insured's** receipt of such demand, including a written demand that the **Insured** toll or waive a statute of limitations;

2. a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

3. a criminal proceeding against an **Insured** commenced by a return of an indictment, information or similar document;

4. an administrative or regulatory proceeding against any **Insured**, including: (a) a proceeding before the Equal Employment Opportunity Commission or a similar state or local governmental body, commenced by the filing of a notice of charges or similar document; and (b) an audit conducted by the United States' Office of Federal Contract Compliance Programs commenced by the **Insured's** receipt of a Notice of Violation or Order to Show Cause;

5. a civil, criminal, administrative or regulatory investigation of any **Insured Person** commenced by the service upon or other receipt by the **Insured Person** of a target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

6. an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

7. an arbitration or mediation proceeding against any **Insured**;

for a **Wrongful Act**, including any appeal therefrom; provided **Claim** does not include a labor or grievance proceeding pursuant to a collective bargaining agreement.

B. **Environmental Mismanagement Claim** means any **Employment Practices Claim** based upon, arising out of or attributable to an **Environmental Event** if and to the extent such **Claim**: (1) is against an **Insured Person** for retaliatory treatment; or (2) results in **Loss** incurred by **Insured Persons** for which the **Company** does not indemnify the **Insured Persons** either because the **Company** is neither permitted nor required to grant such indemnification or because of **Financial Impairment**.

C. **Insured Persons** means:

1. any one or more natural persons who were, now are or shall become a duly elected or appointed director, trustee, governor, **Manager**, officer, **Employee**, advisory director, or member of a duly constituted committee or board of the **Company** or their functional equivalent; and

2. **Independent Contractors**.

D. **Insureds** means the **Insured Persons** and the **Company**.

E. **Loss** means the total amount the **Insureds** become legally obligated to pay on account of **Claims** made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages (including back pay, front pay and punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **Defense Costs**, prevailing plaintiff attorneys' fees awarded pursuant to Section 1988 of the Civil Rights Act, and liquidated damages awarded under the Age Discrimination in Employment Act, the Equal Pay Act or the Family Medical Leave Act or any similar state or local statutory law.

The insurability of such punitive, exemplary, liquidated and multiple damages or attorneys' fees shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Insureds**, the Insurer, this policy or such **Claim** is located.

**Loss** does not include any of the following provided this sentence does not apply to **Defense Costs** with respect to any of the following:

1. any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

2. taxes, fines or penalties imposed by law; or

3. matters uninsurable under the law pursuant to which this policy is construed.

F. **Wrongful Act** means:

1. any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by any of the **Insured Persons**, individually or otherwise, in their capacity as such;

2. any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity; or

3. any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by the **Company**.

IV. EXCLUSIONS

The Insurer shall not be liable under this Coverage Part for **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

A. based upon, arising out of or attributable to any fact, circumstance or situation which has been the subject of any written notice given prior to inception of this policy under any prior employment practices liability policy or coverage part providing comparable insurance to this Coverage Part;

B. based upon, arising out of or attributable to any written demand, suit or proceeding pending, or order, decree or judgment entered against the **Insureds** on or prior to the respective Pending or Prior Date set forth in the Coverage Schedule in Item 5 of the Declarations, or the same or substantially the same **Wrongful Act**, **Interrelated Wrongful Acts**, fact, circumstance or situation underlying or alleged therein;

C. for an actual or alleged violation of the responsibilities, obligations or duties imposed by:

1. any law governing workers' compensation, unemployment insurance, social security, disability benefits or similar law;

2. **ERISA**, except an adverse employment action interfering with rights in violation of Section 510 thereof;

3. the Fair Labor Standards Act (except the Equal Pay Act) and any other law concerning wage and hour practices, including but not limited to any **Claim** for off-the-clock work, failure to provide rest or meal periods, failure to reimburse expenses, improper classification of employees as exempt or non-exempt, failure to timely pay wages, conversions, unjust enrichment, or unfair business practices;

4. the National Labor Relations Act;

5. the Worker Adjustment and Retraining Notification Act;

6. the Consolidated Omnibus Budget Reconciliation Act of 1985;

7. the Occupational Safety and Health Act; or

8. rules or regulations promulgated under any of such statutes or laws, amendments thereto or similar provisions of any federal, state, local or foreign statutory law or common law;

but this exclusion shall not apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to any such law, rule or regulation or for any other actual or alleged violation of any whistleblower statute or law;

D. for bodily injury, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof; provided this exclusion shall not apply to any **Claim** for emotional distress, mental anguish or humiliation;

E. based upon, arising out of or attributable to an **Environmental Event**, provided this exclusion shall not apply to any **Environmental Mismanagement Claim**;

F. based upon, arising out of or attributable to any actual or alleged breach of any contract or agreement specifying the terms of the **Company's** engagement with an **Independent Contractor**;

G. for any deliberately fraudulent or deliberately criminal act or omission committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent act or omission;

H. based upon, arising out of or attributable to the employment reinstatement or continued employment of the claimant by the **Company** or, if the **Company** has the option pursuant to an adjudication or settlement to reinstate the claimant as an **Employee** but fails to do so, any **Loss** constituting front pay, future damages or other future economic relief or the equivalent thereof with respect to such claimant;

I. if such **Loss** constitutes:

1. the cost of any non-monetary relief, including without limitation: (a) any costs associated with compliance with any injunctive relief of any kind or nature imposed by any judgment or settlement; or (b) any costs associated with providing any reasonable accommodations required by, made as a result of, or to conform with the requirements of, the Americans with Disabilities Act and any amendments thereto or any similar federal, state, local or foreign statute, regulation, or common law;

2. compensation earned by the claimant in the course of employment but not paid by the **Company,** including any unpaid salary, bonus, hourly pay, overtime pay, severance pay, retirement benefits, vacation days, sick days, prerequisites, stock options or similar rights; provided this exclusion shall not apply to any back pay or front pay or any additional compensation allegedly due as a result of alleged discrimination or wrongful dismissal, discharge or termination of employment;

3. amounts owing under or assumed by the **Insureds** pursuant to a written contract with or written severance obligation of the **Company**; but this exclusion shall not apply if and to the extent that liability would have attached to the **Insureds** in the absence of the written contract with or obligation of the **Company**; or

4. medical, insurance or other benefits (or the equivalent value thereof) to which the claimant allegedly was entitled or would have been entitled had the **Company** provided the claimant with a continuation or conversion of insurance;

provided this exclusion shall not apply to **Defense Costs**;

J. based upon, arising out of or attributable to the rendering of or failure to render **Professional Services** including **Broker Services**, **Insurance Agent Services**, and **IRA/Keogh Services** regardless of whether coverage for any of these services is purchased as indicated in the Coverage Schedule as set forth in Item 5 of the Declarations;

K. based upon, arising out of or attributable to the rendering of or failure to render **Trust Services**;

L. based upon, arising out of or attributable to a **Lending Act**; or

M. which constitutes an **Electronic Publishing Wrongful Act**, a **Privacy Wrongful Act** or a **Security Wrongful Act**.

For the purpose of determining the applicability of any exclusion set forth in this Section IV, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the **Wrongful Act** or knowledge of an **Executive Officer** of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.

# Financial Institutions Select™ Insurance Policy

**Fiduciary Liability Coverage Part**



**ZURICH**®

## TABLE OF CONTENTS

I.   INSURING CLAUSES.................................................................................................................................1

    A.  FIDUCIARY LIABILITY COVERAGE ...............................................................................................1

    B.  VOLUNTARY SETTLEMENT PROGRAMS .....................................................................................1

II.  DEFINITIONS............................................................................................................................................1

III. EXCLUSIONS ...........................................................................................................................................3

# Fiduciary Liability Coverage Part



**ZURICH**®

I. INSURING CLAUSES

   A. FIDUCIARY LIABILITY COVERAGE

     The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of a **Claim** first made against the **Insureds** during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**, subject to the applicable Limits of Liability set forth in the Declarations.

   B. VOLUNTARY SETTLEMENT PROGRAMS

     The Insurer shall pay on behalf of the **Insureds** all **Loss** which the **Insureds** become legally obligated to pay resulting from a **Settlement Program Notice** first given to the Insurer during the **Policy Period**, subject to the applicable Limits of Liability set forth in the Declarations, provided such **Loss** is incurred after such **Settlement Program Notice** is first given to the Insurer.

II. DEFINITIONS

   When used in this Coverage Part, the following terms, whether in the singular or plural, are defined as follows below. Defined terms which do not appear below are defined in Section II, General Definitions, of the General Terms and Conditions of this policy.

   A. **Administration** means: (1) counseling **Employees**, beneficiaries or **Plan** participants with respect to any **Plan**; (2) providing interpretations with respect to any **Plan**; (3) handling records in connection with any **Plan**; and (4) enrolling, terminating or cancelling **Employees**, beneficiaries or participants under any **Plan**.

   B. **Claim** means:

     1. a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief commenced by the **Insured's** receipt of such demand, including a written demand that the **Insured** toll or waive a statute of limitations;

     2. a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

     3. a criminal proceeding against any **Insured** commenced by a return of an indictment, information or similar document;

     4. an administrative or regulatory proceeding against any **Insured** commenced by the filing of a notice of charges or similar document;

     5. a civil, criminal, administrative or regulatory investigation (including a fact-finding investigation by the Department of Labor, Pension Benefit Guaranty Corporation or similar authority) of any **Insured** commenced by the service upon or other receipt by the **Insured** of a target letter or other written notice from the investigating authority identifying by name the **Insured** as an individual against whom a proceeding may be commenced;

     6. an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

     7. an arbitration or mediation proceeding against any **Insured**;

     for a **Wrongful Act**, including any appeal therefrom; or

     8. Solely with respect to Insuring Clause B, a **Settlement Program Notice**.

   C. **HIPAA Penalties** means civil penalties imposed upon an **Insured** for violation of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, or the privacy provisions of the Health Insurance Portability and Accountability Act of 1996, as amended.

D. **Insured Persons** means any one or more natural persons who were, now are or shall become duly elected or appointed directors, trustees, governors, **Managers**, officers, **Employees**, **Independent Contractors**, advisory directors or members of a duly constituted committee or board of any **Company** or **Plan** or their functional equivalent.

E. **Insureds** means:

1. the **Insured Persons**;

2. the **Company**; and

3. the **Plans**.

F. **Loss** means the total amount the **Insureds** become legally obligated to pay on account of **Claims** made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **Defense Costs**, and:

1. the five percent (5%) or less or the twenty percent (20%) or less civil penalties imposed under §502(i) or (l) of **ERISA**; or

2. **HIPAA Penalties** subject to the applicable Limits of Liability set forth in the Declarations.

Solely with respect to Insuring Clause B, **Loss** means a **Voluntary Settlement** and **Defense Costs**.

The insurability of such punitive, exemplary or multiple damages, civil penalties or **Voluntary Settlements** shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Insureds**, the Insurer, this policy or such **Claim** is located.

**Loss** does not include any of the following provided this sentence does not apply to **Defense Costs** with respect to any of the following:

1. any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

2. taxes, fines or penalties imposed by law, other than civil penalties expressly referenced in Subsections 1 or 2 above;

3. any costs incurred by the **Company** or **Plan** to comply with any injunctive or other non-monetary relief or any agreement to provide such relief; or

4. matters uninsurable under the law pursuant to which this policy is construed.

G. **Plan** means:

1. any Employee Benefit Plan, Pension Benefit Plan or Welfare Benefit Plan, as each is defined in **ERISA**, which was, is now, or hereafter becomes sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of the **Employees**;

2. any other employee benefit plan or program not subject to **ERISA** sponsored solely by the **Company** for the benefit of the **Employees**, including any fringe benefit, excess benefit plan or voluntary employees' beneficiary association;

3. any employee benefit plan or program otherwise described in Subsections 1 or 2 above while such plan or program is being actively developed, formed or proposed by any **Company** prior to the formal creation of such plan or program; provided, however, no coverage is afforded under this Coverage Part for any **Claim** against an **Insured** in a settlor or similar uninsured capacity with respect to any plan or program; and

4. any government-mandated insurance program for workers' compensation, unemployment, social security or disability benefits for **Employees**.

**Plan** shall not include any "multiemployer plan" or "employee stock ownership plan" as defined by **ERISA**, unless such plan is specifically included as a **Plan** by endorsement to this policy.

H. **Settlement Program** means any voluntary compliance resolution program or similar voluntary settlement program administered by the United States Internal Revenue Service, United States Department of Labor or any other domestic or foreign governmental authority. Such programs include, without limitation, the Employee Plans Compliance Resolution System, Audit Closing Agreement Program, Voluntary Compliance Resolution Program, Walk-in Closing Agreement Program, Administrative Policy Regarding Self-Correction, Tax Sheltered Annuity Voluntary Correspondence Program, Delinquent Filer Voluntary Compliance Program and Voluntary Fiduciary Correction Program.

I. **Settlement Program Notice** means prior written notice to the Insurer by any **Insured** of the **Insured's** intent to enter into a **Settlement Program**.

J. **Voluntary Settlement** means any fees, fines or penalties paid by an **Insured** to a governmental authority pursuant to a **Settlement Program** for the actual or alleged inadvertent non-compliance by a **Plan** with any statute, rule or regulation; provided, however, **Voluntary Settlement** shall not include: (1) any costs to correct the non-compliance, or any other charges, expenses, taxes or damages; or (2) any fees, fines or penalties relating to a **Plan** which, as of the earlier of the inception date of this policy or the inception date of the first policy in an uninterrupted series of policies issued by the Insurer of which this policy is a direct or indirect renewal or replacement, any **Insured Person** knew to be actually or allegedly non-compliant.

K. **Wrongful Act** means:

1. any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by the **Insureds** in the discharge of their duties as, or solely by reason of their status as, fiduciaries of any **Plan**; or

2. any negligent act, error or omission actually or allegedly committed or attempted by the **Insureds** in the **Administration** of a **Plan**.

## III. EXCLUSIONS

The Insurer shall not be liable under this Coverage Part for **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

A. based upon, arising out of or attributable to any fact, circumstance or situation which has been the subject of any written notice given prior to inception of this policy under any prior fiduciary liability policy or coverage part providing comparable insurance to this Coverage Part;

B. based upon, arising out of or attributable to any written demand, suit or proceeding pending, or order, decree or judgment entered against the **Insureds** on or prior to the respective Pending or Prior Date set forth in the Coverage Schedule in Item 5 of the Declarations, or the same or substantially the same **Wrongful Act**, **Interrelated Wrongful Acts**, fact, circumstance or situation underlying or alleged therein;

C. for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof; provided this exclusion shall not apply to any **Defense Costs** on account of a **Claim** for emotional distress or mental anguish;

D. based upon, arising out of or attributable to an **Environmental Event**, provided this exclusion shall not apply to any **Claim** by or on behalf of a beneficiary or participant in a **Plan** for diminution in value of any securities owned by the **Plan**;

E. based upon, arising out of or attributable to any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent act or omission or willful violation;

F. based upon, arising out of or attributable to such **Insured** gaining any profit, remuneration or financial advantage to which such **Insured** was not legally entitled, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such **Insured** in fact gained any such profit, remuneration or advantage;

G. for liability of others assumed by the **Insured** under any oral, written or implied contract or agreement, but this exclusion shall not apply to the extent: (1) the **Insured** would have been liable in the absence of such contract or agreement; or (2) the liability was assumed in accordance with or under the trust agreement or equivalent document pursuant to which the **Plan** was established;

H. based upon, arising out of or attributable to any actual or alleged obligation of any **Insured** pursuant to any government-mandated insurance for worker's compensation, unemployment, social security or disability benefits; provided this exclusion shall not apply to any actual or alleged obligation of any **Insured** pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 or Health Insurance Portability and Accountability Act of 1996, as amended;

I. for discrimination in violation of any law other than **ERISA**; or

J. if such **Loss** constitutes:

    1. (a) benefits due or to become due under any **Plan**, or (b) benefits which would be due under any **Plan** if such **Plan** complied with all applicable law, or (c) that portion of any settlement or judgment which constitutes such benefits; provided this exclusion shall not apply to the extent that recovery for such benefits is based upon a covered **Wrongful Act** by an **Insured Person** and such benefits are payable as a personal obligation of such **Insured Person**;

    2. contributions owed by the **Company** to any **Plan** for which any of the **Insureds** failed to collect from the **Company** unless the failure is because of the negligence of an **Insured**; or

    3. the return or reversion to an employer of any contribution or asset of a **Plan**;

provided this exclusion shall not apply to **Defense Costs**.

For the purpose of determining the applicability of any exclusion set forth in this Section III, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the **Wrongful Act** or knowledge of an **Executive Officer** (1) of a **Company** shall be imputed to such **Company** and its **Subsidiaries**, and (2) of a **Plan** shall be imputed to such **Plan**.

# Financial Institutions Select™ Insurance Policy
## Professional Liability Coverage Part



## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INSURING CLAUSES | 1 |
| | A. PROFESSIONAL LIABILITY | 1 |
| | B. BROKER SERVICES LIABILITY | 1 |
| | C. INSURANCE AGENT SERVICES LIABILITY | 1 |
| | D. IRA/KEOGH SERVICES LIABILITY | 1 |
| II. | DEFINITIONS | 1 |
| III. | EXCLUSIONS | 2 |

# Professional Liability Coverage Part



**ZURICH**®

## I. INSURING CLAUSES

Coverage is provided under Insuring Clauses A through D, if purchased as provided in the Coverage Schedule set forth in Item 5 of the Declarations only on account of a **Claim** first made against the **Insureds** during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**, subject to the applicable Limits of Liability set forth in the Declarations.

### A. PROFESSIONAL LIABILITY

1. The Insurer shall pay on behalf of the **Insured Persons** all **Loss** for which the **Insured Persons** are not indemnified by the **Company** and which the **Insured Persons** become legally obligated to pay on account of any **Claim** for a **Wrongful Act** in connection with the rendering of or failure to render **Professional Services**.

2. The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** grants indemnification to the **Insured Persons**, as permitted or required by law, and which the **Insured Persons** have become legally obligated to pay on account of any **Claim** for a **Wrongful Act** in connection with the rendering of or failure to render **Professional Services**.

3. The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** becomes legally obligated to pay on account of a **Claim** for a **Wrongful Act**, including **Wrongful Acts** in connection with the rendering of or failure to render **Professional Services**.

### B. BROKER SERVICES LIABILITY

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of a **Claim** for a **Wrongful Act** in connection with the rendering of or failure to render **Broker Services**.

### C. INSURANCE AGENT SERVICES LIABILITY

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of a **Claim** for a **Wrongful Act** in connection with the rendering of or failure to render **Insurance Agent Services**.

### D. IRA/KEOGH SERVICES LIABILITY

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of a **Claim** for a **Wrongful Act** in connection with the rendering of or failure to render **IRA/Keogh Services**.

## II. DEFINITIONS

When used in this Coverage Part, the following terms, whether in the singular or plural, are defined as follows below. Defined terms which do not appear below are defined in Section II, General Definitions, of the General Terms and Conditions of this policy.

### A. **Claim** means:

1. a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief commenced by the **Insured's** receipt of such demand, including a written demand that the **Insured** toll or waive a statute of limitations;

2. a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

3. a criminal proceeding against any **Insured** commenced by a return of an indictment, information or similar document;

4. an administrative or regulatory proceeding against any **Insured** commenced by the filing of a notice of charges or similar document;

5. a civil, criminal, administrative or regulatory investigation of any **Insured Person** commenced by the service upon or other receipt by the **Insured Person** of a Wells notice, target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

6. an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of a ny **Insured Person** where such execution is an element of **Extradition**; or

7. an arbitration or mediation proceeding against any **Insured**;

for a **Wrongful Act**, including any appeal therefrom.

B. **Insured Persons** means:

1. any one or more natural persons who were, now are or shall become a duly elected or appointed director, trustee, governor, **Manager**, officer, advisory director, or member of a duly constituted committee or board of the **Company** or their functional equivalent;

2. any one or more natural persons not described in Subsection 1 above who were, now are or shall become **Employees** of the **Company**; and

3. **Independent Contractors** only for purposes of Insuring Clause A.2.

C. **Insureds** means the **Insured Persons** and, solely with respect to Insuring Clauses A.3, B, C and D, the **Company**.

D. **Loss** means the total amount the **Insureds** become legally obligated to pay on account of **Claims** made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages (including punitive, ex emplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **Defense Costs** and civil money penalties assessed against an **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B).

The insurability of such punitive, exemplary or multiple damages and civil money penalties shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Insureds**, the Insurer, this policy or such **Claim** is located.

**Loss** does not include any of the following provided this sentence does not apply to **Defense Costs** with respect to any of the following:

1. any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

2. taxes, fines or penalties imposed by law, other than civil money penalties expressly referenced above;

3. any amount incurred by the **Company** to comply with any injunctive or other equitable relief or any agreement to provide such relief;

4. any amount incurred as a result of an administrative or regulatory proceeding; or

5. matters uninsurable under the law pursuant to which this policy is construed.

E. **Wrongful Act** means:

1. any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by any of the **Insured Persons**, individually or otherwise, in their capacity as such;

2. any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity; or

3. any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by the **Company**.

III. EXCLUSIONS

The Insurer shall not be liable under all Insuring Clauses of this Coverage Part for **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

A.  based upon, arising out of or attributable to any fact, circumstance or situation which has been the subject of any written notice given prior to inception of this policy under any prior liability insurance policy or coverage part providing comparable insurance to this Coverage Part;

B.  based upon, arising out of or attributable to any written demand, suit or proceeding pending, or order, decree or judgment entered against the **Company** or any **Insured Person** on or prior to the respective Pending or Prior Date set forth in the Coverage Schedule in Item 5 of the Declarations, or the same or substantially the same **Wrongful Act**, **Interrelated Wrongful Acts**, fact, circumstance or situation underlying or alleged therein;

C.  brought or maintained by or on behalf of the **Company** or any **Insured Person** in any capacity, provided this exclusion shall not apply to:

   1.  a **Claim** brought or maintained by any **Insured Person** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this Coverage Part; or

   2.  a **Claim** brought by an **Insured Person** solely in their capacity as a customer of the **Company** and only if the **Claim** is first made after such **Insured Person** no longer serves as an **Insured Person**;

D.  for an actual or alleged violation of the responsibilities, obligations or duties imposed by **ERISA** or similar provisions of any federal, state or local statutory law or common law with respect to any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to **Employees** of the **Company**;

E.  for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof;

F.  based upon, arising out of or attributable to an **Environmental Event**;

G.  for false arrest, wrongful detention or imprisonment, malicious prosecution, wrongful eviction, wrongful entry, invasion of the right of private occupancy, oral or written publication in any manner or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, oral or written publication in any manner of material that violates a person's right of privacy, false light or false advertising provided this exclusion shall not apply to a **Claim** for a **Wrongful Act** in connection with the rendering of or failure to render **Professional Services**;

H.  based upon, arising out of or attributable to any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent act or omission or willful violation;

I.  based upon, arising out of or attributable to such **Insured** gaining any profit, remuneration or financial advantage to which such **Insured** was not legally entitled, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such **Insured** in fact gained any such profit, remuneration or advantage;

J.  for any actual or alleged liability of the **Company** under any written contract or agreement including liability of others assumed under contract, except to the extent that the **Company** would have been liable in the absence of such contract or agreement;

K.  based upon, arising out of or attributable to any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress or service mark, or the actual or alleged misappropriation of ideas or trade secrets or the unauthorized disclosure of or access to confidential information;

L.  which constitutes an **Employment Practices Claim** or **Third Party Discrimination Claim**;

M.  based upon, arising out of or attributable to the rendering of or failure to render **Broker Services**, **Insurance Agent Services**, and **IRA/Keogh Services** unless coverage for any of these services is purchased as indicated in the Coverage Schedule as set forth in Item 5 of the Declarations;

N.  based upon, arising out of or attributable to: (1) medical or health care services; (2) real estate appraisal services; (3) architectural or construction management services; (4) the practice of law or the rendering of legal services for others; or (5) actuarial services for others;

O.  based upon, arising out of or attributable to the rendering of or failure to render **Trust Services**;

P.  based upon, arising out of or attributable to a **Lending Act**;

Q. which constitutes a **Securities Claim**;

R. which constitutes an **Electronic Publishing Wrongful Act**, a **Privacy Wrongful Act** or a **Security Wrongful Act**;

S. based upon, arising out of or attributable to any mechanical or electronic failure or breakdown or malfunction of any machine or computer or systems of machines or computers including related peripheral components, or of any systems, applications software, terminal devices or related communications networks;

T. based upon, arising out of or attributable to:

1. the underwriting, syndicating, securitizing, market making or promoting any debt or equity security;

2. participating in or providing services in connection with any merger, acquisition, divestiture, tender offer, proxy contest, leveraged buyout, "going private" transaction, spin-off, offering of debt or equity securities, bankruptcy proceeding, reorganization, capital restructuring or recapitalization, dissolution or sale of all (or substantially all) of the assets or stock of any entity, effort to provide capital or financing for any enterprise or entity; or

3. the rendering of any fairness opinion regarding the valuation of any assets or entity (except in connection with the **Company's** administration of any customer account)

including any disclosure requirements in connection with any of the foregoing;

U. for safe deposit box operations;

V. based upon, arising out of or attributable to any decrease in value, or failure to appreciate in value, of money, securities, real or personal property or other investment, unless such decrease (or failure to appreciate) was caused by a **Wrongful Act** in the administration of any customer account;

W. based upon or attributable to or arising from any dispute involving fees or charges for the services of the **Company**;

X. based upon, arising out of or attributable to any bankruptcy of or suspension of payment by any financial institution or banking firm or any broker or dealer in securities or commodities, other than the **Company**, provided that this exclusion shall not apply to a **Claim** based upon the **Company's** investment on behalf of the claimant in any security issued by any of the foregoing entities;

Y. based upon, arising out of or attributable to the acquisition or sale by any **Company** or **Insured Person** of securities for their own account;

Z. based upon, arising out of or attributable to the ownership, operation, management or control of any entity or property acquired by the **Company** as security or collateral for any loan, lease or extension of credit or any services performed by or for any such entity;

AA. based upon, arising out of or attributable to any function of the **Company** or any **Insured Person** as a receiver, trustee in bankruptcy or assignee for the benefit of creditors; or

BB. based upon, arising out of or attributable to written or verbal, misrepresentations, promises or guarantees regarding the past performance or future value of any investment product.

The Insurer shall not be liable under Insuring Clause B for **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

CC. based upon, arising out of or attributable to the actual or alleged purchase or sale or giving advice regarding viatical or life settlements, viatical insurance benefits, viatical investment pools, Stranger Originated Life Insurance, Speculation Initiated Life Insurance or any security backed by any of the foregoing; or

DD. based upon, arising out of or attributable to the making, on behalf of a client or customer, an investment in five percent (5%) or more of the stock or ownership rights or interests of any one entity; provided, however, this exclusion shall not apply if: (1) such investment was at the specific written instruction of a client or customer to whom an agreement has granted power to direct the **Company** with respect to such investment; and (2) the **Company** has no discretion with respect to such investment.

The Insurer shall not be liable under Insuring Clause C for **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

EE. based upon, arising out of or attributable to the actual or alleged purchase or sale or giving advice regarding viatical or life settlements, viatical insurance benefits, viatical investment pools, Stranger Originated Life Insurance, Speculation Initiated Life Insurance or any security backed by any of the foregoing;

FF. based upon, arising out of or attributable to any commingling of funds or accounts; provided, however, that this exclusion shall not apply to **Defense Costs**;

GG. based upon, arising out of or attributable to warranties or representations made in connection with safety inspections, loss control or safety engineering services;

HH. based upon, arising out of or attributable to any agreement or other arrangement between an insurance broker or insurance agent and an insurance carrier involving the payment of increased fees, commissions or other compensation based on the volume, profitability or type of business referred to the insurance carrier; or

II. based upon, arising out of or attributable to disputes over taxes or the failure to collect, pay or return premiums.

For the purpose of determining the applicability of any exclusion set forth in this Section III, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and under Insuring Clauses A.3, B, C and D only the **Wrongful Act** or knowledge of an **Executive Officer** of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.

# Financial Institutions Select™ Insurance Policy
**Lender Liability Coverage Part**



**ZURICH**®

## TABLE OF CONTENTS

I.   INSURING CLAUSE...............................................................................................................................1

II.  DEFINITIONS......................................................................................................................................1

III. EXCLUSIONS .....................................................................................................................................2

# Lender Liability Coverage Part


ZURICH®

## I. INSURING CLAUSE

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** becomes legally obligated to pay on account of a **Claim** first made against the **Insureds** during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period** in connection with a **Lending Act**, subject to the applicable Limits of Liability set forth in the Declarations.

## II. DEFINITIONS

When used in this Coverage Part, the following terms, whether in the singular or plural, are defined as follows below. Defined terms which do not appear below are defined in Section II, General Definitions, of the General Terms and Conditions of this policy.

A. **Claim** means:

1. a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief commenced by the **Insured's** receipt of such demand, including a written demand that the **Insured** toll or waive a statute of limitations;

2. a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

3. a criminal proceeding against any **Insured** commenced by a return of an indictment, information or similar document;

4. an administrative or regulatory proceeding against any **Insured** commenced by the filing of a notice of charges or similar document;

5. a civil, criminal, administrative or regulatory investigation of any **Insured Person** commenced by the service upon or other receipt by the **Insured Person** of a target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

6. an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

7. an arbitration or mediation proceeding against any **Insured**;

for a **Wrongful Act**, including any appeal therefrom.

B. **Insured Persons** means:

1. any one or more natural persons who were, now are or shall become a duly elected or appointed director, trustee, governor, **Manager**, officer, advisory director, or member of a duly constituted committee or board of the **Company** or their functional equivalent;

2. any one or more natural persons not described in Subsection 1 above who were, now are or shall become **Employees** of the **Company**; and

3. **Independent Contractors**.

C. **Insureds** means the **Insured Persons** and the **Company**.

D. **Loss** means the total amount the **Insureds** become legally obligated to pay on account of **Claims** made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements and **Defense Costs**.

The insurability of such punitive, exemplary or multiple damages shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Insureds**, the Insurer, this policy or such **Claim** is located.

**Loss** does not include any of the following provided this sentence does not apply to **Defense Costs** with respect to any of the following:

1. any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

2. taxes, fines or penalties imposed by law;

3. any principal, interest or other monies paid, accrued or due as the result of any loan, lease or extension of credit;

4. any amount incurred by the **Company** to comply with any injunctive or other equitable relief or any agreement to provide such relief;

5. any amount incurred as a result of an administrative or regulatory proceeding; or

6. matters uninsurable under the law pursuant to which this policy is construed.

E. **Wrongful Act** means:

1. any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by the **Insured Persons**, individually or otherwise, in their capacity as such;

2. any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity; or

3. any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by the **Company**.

III. EXCLUSIONS

The Insurer shall not be liable under this Coverage Part for **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

A. based upon, arising out of or attributable to any fact, circumstance or situation which has been the subject of any written notice given prior to inception of this policy under any prior liability insurance policy or coverage part providing comparable insurance to this Coverage Part;

B. based upon, arising out of or attributable to any written demand, suit or proceeding pending, or order, decree or judgment entered against the **Company** or any **Insured Person** on or prior to the respective Pending or Prior Date set forth in the Coverage Schedule in Item 5 of the Declarations, or the same or substantially the same **Wrongful Act**, **Interrelated Wrongful Acts**, fact, circumstance or situation underlying or alleged therein;

C. brought or maintained by or on behalf of the **Company** or any **Insured Person** in any capacity, provided this exclusion shall not apply to:

1. a **Claim** brought or maintained by any **Insured Person** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this Coverage Part; or

2. a **Claim** brought by an **Insured Person** solely in their capacity as a customer of the **Company** and only if the **Claim** is first made after such **Insured Person** no longer serves as an **Insured Person**;

D. for an actual or alleged violation of the responsibilities, obligations or duties imposed by **ERISA** or similar provisions of any federal, state or local statutory law or common law with respect to any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to **Employees** of the **Company**;

E. for bodily injury, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof;

F. based upon, arising out of or attributable to an **Environmental Event**;

G. based upon, arising out of or attributable to any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent act or omission or willful violation;

H. based upon, arising out of or attributable to such **Insured** gaining any profit, remuneration or financial advantage to which such **Insured** was not legally entitled, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such **Insured** in fact gained any such profit, remuneration or advantage;

I. for any actual or alleged liability of others assumed by the **Company** pursuant to a contract, except liability which would have attached to the **Company** in the absence of such contract;

J. based upon, arising out of or attributable to any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress or service mark, or the actual or alleged misappropriation of ideas or trade;

K. which constitutes a **Securities Claim**;

L. based upon, arising out of or attributable to:

1. the underwriting, syndicating, securitizing, market making or promoting any debt or equity security;

2. participating in or providing services in connection with any merger, acquisition, divestiture, tender offer, proxy contest, leveraged buyout, "going private" transaction, spin-off, offering of debt or equity securities, bankruptcy proceeding, reorganization, capital restructuring or recapitalization, dissolution or sale of all (or substantially all) of the assets or stock of any entity, effort to provide capital or financing for any enterprise or entity; or

3. the rendering of any fairness opinion regarding the valuation of any assets or entity (except in connection with the **Company's** administration of any customer account)

including any disclosure requirements in connection with any of the foregoing;

M. based upon, arising out of or attributable to any decrease in value, or failure to appreciate in value, of money, securities, real or personal property or other investment, unless such decrease (or failure to appreciate) was caused by a **Wrongful Act** in the administration of any customer account;

N. based upon or attributable to or arising from any dispute involving fees or charges for the services of the **Company**; or

O. which constitutes an **Electronic Publishing Wrongful Act**, a **Privacy Wrongful Act** or a **Security Wrongful Act**.

For the purpose of determining the applicability of any exclusion set forth in this Section III, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the **Wrongful Act** or knowledge of an **Executive Officer** of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.



# Financial Institutions Select™ Insurance Policy
**Trust Department Liability Coverage Part**

### TABLE OF CONTENTS

I.   INSURING CLAUSE ...................................................................................................................1

II.  DEFINITIONS ...........................................................................................................................1

III. EXCLUSIONS ...........................................................................................................................2

# Trust Department Liability Coverage Part



**ZURICH**®

## I. INSURING CLAUSE

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** becomes legally obligated to pay on account of a **Claim** first made against the **Insureds** during the **Policy Period** or the **Extended Reporting Period** or **Run-Off Coverage Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period** in connection with **Trust Services**, subject to the applicable Limits of Liability set forth in the Declarations.

## II. DEFINITIONS

When used in this Coverage Part, the following terms, whether in the singular or plural, are defined as follows below. Defined terms which do not appear below are defined in Section II, General Definitions, of the General Terms and Conditions of this policy.

A. **Claim** means:

1. a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief commenced by the **Insured's** receipt of such demand, including a written demand that the **Insured** toll or waive a statute of limitations;

2. a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

3. a criminal proceeding against any **Insured** commenced by a return of an indictment, information or similar document;

4. an administrative or regulatory proceeding against any **Insured** commenced by the filing of a notice of charges or similar document;

5. a civil, criminal, administrative or regulatory investigation of any **Insured Person** commenced by the service upon or other receipt by the **Insured Person** of a target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

6. an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

7. an arbitration or mediation proceeding against any **Insured**;

for a **Wrongful Act**, including any appeal therefrom.

B. **Insured Persons** means:

1. any one or more natural persons who were, now are or shall become a duly elected or appointed director, trustee, governor, **Manager**, officer, advisory director, or member of a duly constituted committee or board of the **Company** or their functional equivalent;

2. any one or more natural persons not described in Subsection 1 above who were, now are or shall become **Employees** of the **Company**; and

3. **Independent Contractors**.

C. **Insureds** means the **Insured Persons** and the **Company**.

D. **Loss** means the total amount the **Insureds** become legally obligated to pay on account of **Claims** made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements and **Defense Costs**.

The insurability of such punitive, exemplary or multiple damages shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Insureds**, the Insurer, this policy or such **Claim** is located.

**Loss** does not include any of the following provided this sentence does not apply to **Defense Costs** with respect to any of the following:

1. any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

2. taxes, fines or penalties imposed by law;

3. any amount otherwise payable to the **Insureds** from a trust, estate, plan, fund or any similar entity;

4. any amount incurred by the **Company** to comply with any injunctive or other equitable relief or any agreement to provide such relief;

5. any amount incurred as a result of an administrative or regulatory proceeding; or

6. matters uninsurable under the law pursuant to which this policy is construed.

E. **Wrongful Act** means:

1. any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by the **Insured Persons**, individually or otherwise, in their capacity as such;

2. any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity; or

3. any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by the **Company**.

III. EXCLUSIONS

The Insurer shall not be liable under this Coverage Part for **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

A. based upon, arising out of or attributable to any fact, circumstance or situation which has been the subject of any written notice given prior to inception of this policy under any prior liability insurance policy or coverage part providing comparable insurance to this Coverage Part;

B. based upon, arising out of or attributable to any written demand, suit or proceeding pending, or order, decree or judgment entered against the **Company** or any **Insured Person** on or prior to the respective Pending or Prior Date set forth in the Coverage Schedule in Item 5 of the Declarations, or the same or substantially the same **Wrongful Act**, **Interrelated Wrongful Acts**, fact, circumstance or situation underlying or alleged therein;

C. brought or maintained by or on behalf of the **Company** or any **Insured Person** in any capacity, provided this exclusion shall not apply to:

1. a **Claim** brought or maintained by any **Insured Person** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this Coverage Part; or

2. a **Claim** brought by an **Insured Person** solely in their capacity as a customer of the **Company** and only if the **Claim** is first made after such **Insured Person** no longer serves as an **Insured Person**;

D. for an actual or alleged violation of the responsibilities, obligations or duties imposed by **ERISA** or similar provisions of any federal, state or local statutory law or common law with respect to any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to **Employees** of the **Company**;

E. for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person, false arrest, wrongful detention or imprisonment, malicious prosecution, wrongful eviction, wrongful entry, invasion of the right of private occupancy, oral or written publication in any manner or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, oral or written publication in any manner of material that violates a person's right of privacy, false light or false advertising or damage to or destruction of any tangible property including loss of use thereof;

F. based upon, arising out of or attributable to an **Environmental Event**;

G.  based upon, arising out of or attributable to any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent act or omission or willful violation;

H.  based upon, arising out of or attributable to such **Insured** gaining any profit, remuneration or financial advantage to which such **Insured** was not legally entitled, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such **Insured** in fact gained any such profit, remuneration or advantage;

I.  for any actual or alleged liability of others assumed by the **Company** pursuant to a contract, except liability which would have attached to the **Company** in the absence of such contract;

J.  based upon, arising out of or attributable to any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress or service mark, or the actual or alleged misappropriation of ideas or trade secrets;

K.  which constitutes a **Securities Claim**;

L.  based upon, arising out of or attributable to any mechanical or electronic failure or breakdown or malfunction of any machine or computer or systems of machines or computers including related peripheral components, or of any systems, applications software, terminal devices or related communications networks;

M.  based upon, arising out of or attributable to:

   1.  the underwriting, syndicating, securitizing, market making or promoting any debt or equity security;

   2.  participating in or providing services in connection with any merger, acquisition, divestiture, tender offer, proxy contest, leveraged buyout, "going private" transaction, spin-off, offering of debt or equity securities, bankruptcy proceeding, reorganization, capital restructuring or recapitalization, dissolution or sale of all (or substantially all) of the assets or stock of any entity, effort to provide capital or financing for any enterprise or entity; or

   3.  the rendering of any fairness opinion regarding the valuation of any assets or entity (except in connection with the **Company's** administration of any customer account)

   including any disclosure requirements in connection with any of the foregoing;

N.  for safe deposit box operations;

O.  based upon, arising out of or attributable to any decrease in value, or failure to appreciate in value, of money, securities, real or personal property or other investment, unless such decrease (or failure to appreciate) was caused by a **Wrongful Act** in the administration of any customer account;

P.  based upon or attributable to or arising from any dispute involving fees or charges for the services of the **Company**;

Q.  based upon, arising out of or attributable to any bankruptcy of or suspension of payment by any financial institution or banking firm or any broker or dealer in securities or commodities, other than the **Company**, provided that this exclusion shall not apply to a **Claim** based upon the **Company's** investment on behalf of the claimant in any security issued by any of the foregoing entities;

R.  based upon, arising out of or attributable to the acquisition or sale by any **Company** or **Insured Person** of securities for their own account;

S.  based upon, arising out of or attributable to the ownership, operation, management or control of any entity or property acquired by the **Company** as security or collateral for any loan, lease or extension of credit;

T.  based upon, arising out of or attributable to any function of the **Company** or any **Insured Person** as a receiver, trustee in bankruptcy or assignee for the benefit of creditors; provided, however, that this exclusion shall not apply to functions or activities of the **Company** as a trustee under a trust indenture;

U.  based upon, arising out of or attributable to written or verbal misrepresentations, promises or guarantees regarding the past performance or future value of any investment product;

V. based upon, arising out of or attributable to the making, on behalf of a client or customer, an investment in five percent (5%) or more of the stock or ownership rights or interests of any one entity; provided, however, this ex clusion shall not apply if: (1) such investment was at the specific written instruction of a client or customer to whom an agreement has granted power to direct the **Company** with respect to such investment; and (2) the **Company** has no discretion with respect to such investment;

W. based upon, arising out of or attributable to any failure or omission to effect or maintain insurance or adequate insurance; or

X. which constitutes an **Electronic Publishing Wrongful Act**, a **Privacy Wrongful Act** or a **Security Wrongful Act.**

For the purpose of determining the applicability of any exclusion set forth in this Section III, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the **Wrongful Act** or knowledge of an **Executive Officer** of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.

Endorsement #  01

# Financial Institutions Select™ Insurance Policy

**Acquisition, Creation, Assumption Endorsement**



| THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY. If this form is issued concurrently with the policy, this Attaching Clause need not be completed. | |
|---|---|
| Policy No.   DOP 9311203-04 | Effective Date:   06/09/2015 |

In consideration of the premium charged:

1.  This policy is amended as indicated below:

    It is acknowledged that the **Policyholder** has acquired, assumed the assets or liabilities of or created the entity identified below on the date identified below:

    Entity:   Central Progressive Bank
    Date:   11/18/2011

2.  This policy is amended as indicated by an "X" below:

    ☐ It is understood and agreed that coverage under this policy is amended and coverage shall be afforded, subject to the other terms and conditions of this policy, for:

    (i)  **Claims** for **Wrongful Acts** made; and

    (ii)  **Coverage Events**

    made or occurring subsequent to the date identified in Paragraph 1 above based upon, attributable to or arising from the acquisition or assumption of the assets or liabilities of or creation of the entity identified in Paragraph 1 above but only for **Wrongful Acts** or **Coverage Events** occurring prior to the date identified in Paragraph 1 above.

    This Paragraph shall apply to the following Coverage Part(s):  N/A

    ☒ It is understood and agreed that coverage under this policy is amended and coverage shall be afforded, subject to the other terms and conditions of this policy, for **Claims** made for **Wrongful Acts** subsequent to the date identified in Paragraph 1 above based upon, attributable to or arising from the acquisition or assumption of the assets or liabilities of or creation of the entity identified in Paragraph 1 above.

    This Paragraph shall apply to the following Coverage Part(s):  **MANUALLY REPLACE THIS FORM**

    ☐ It is understood and agreed that coverage under this policy is amended and coverage shall be afforded, subject to the other terms and conditions of this policy, to the **Insured Persons** of the entity identified in Paragraph 1 above as it existed prior to the date identified in Paragraph 1 above for **Wrongful Acts** committed before the date identified in Paragraph 1 above.

    This Paragraph shall apply to the following Coverage Part(s):  N/A

3.  The definition of **Application** in the General Terms and Conditions is amended to include the supplemental application dated 12/19/2011 and is considered as incorporated in and constituting part of this policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Endorsement #02

# Financial Institutions Select™ Insurance Policy
**Definition of Plan Amended Endorsement**



| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. |
|---|
| If this form is issued concurrently with the policy, this Attaching Clause need not be completed. |

| Policy No.   DOP 9311203 04 | Effective Date:   06/09/2015 |
|---|---|

This endorsement modifies insurance provided under the following:

**Fiduciary Liability Coverage Part**

It is agreed that:

Subsection II.G is deleted and replaced with the following:

G.  Plan means:

1.  any Employee Benefit Plan, Pension Benefit Plan or Welfare Benefit Plan, as each is defined in **ERISA**, which was, is now, or hereafter becomes sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of the **Employees**;

2.  any other employee benefit plan or program not subject to **ERISA** sponsored solely by the **Company** for the benefit of the **Employees**, including any fringe benefit, excess benefit plan or voluntary employees' beneficiary association;

3.  any employee benefit plan or program otherwise described in Subsections 1 or 2 above while such plan or program is being actively developed, formed or proposed by any **Company** prior to the formal creation of such plan or program; provided, however, no coverage is afforded under this Coverage Part for any **Claim** against an **Insured** in a settlor or similar uninsured capacity with respect to any plan or program;

4.  any government-mandated insurance program for workers' compensation, unemployment, social security or disability benefits for **Employees**; and

5.  The Employee stock ownership plan ('ESOP") know as First NBC Bank Holding Company ESOP.

**Plan** shall not include any "multiemployer plan" unless such plan is specifically included as a **Plan** by endorsement to this policy.


ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Endorsement #03

# Financial Institutions Select™ Insurance Policy
**Prior or Pending Date Amended Endorsement**

**ZURICH**

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. |
|---|
| If this form is issued concurrently with the policy, this Attaching Clause need not be completed. |

| Policy No.   DOP 9311203 04 | Effective Date:   06/09/2015 |
|---|---|

This endorsement modifies insurance provided under the following:

**Management Liability Coverage Part**

It is agreed that:

Section IV. EXCLUSIONS of the Management Liability Coverage Part is amended to include the following:

The Insurer shall not be liable under this Coverage Part for **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured Person** based upon, arising out of or attributable to any written demand, suit or proceeding pending, or order, decree or judgment entered against the **Company** or any **Insured Person** on or prior to 06/09/2014 or the same or substantially the same **Wrongful Act**, **Interrelated Wrongful Acts**, fact, circumstance or situation underlying or alleged therein; provided this exclusion shall apply only to Limits of Liability of $5,000,000 in excess of $10,000,000 in the Aggregate for each **Policy Year**.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Endorsement #04

# Financial Institutions Select™ Insurance Policy
Prior or Pending Date Amended Endorsement

**ZURICH**

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. |
|---|
| If this form is issued concurrently with the policy, this Attaching Clause need not be completed. |

| Policy No.  DOP 9311203 04 | Effective Date:   6/9/2015 |
|---|---|

This endorsement modifies insurance provided under the following:

Public **Company Securities Coverage Part**

It is agreed that:

Section V. EXCLUSIONS of the Public Company Securities Coverage Part is amended to include the following:

The Insurer shall not be liable under this Coverage Part for **Loss** on account of, and shall not be obligated to defend, any **Securities Claim** made against any **Insured** based upon, arising out of or attributable to any written demand, suit or proceeding pending, or order, decree or judgment entered against the **Company** or any **Insured Person** on or prior to 6/9/2015 or the same or substantially the same **Wrongful Act**, **Interrelated Wrongful Acts**, fact, circumstance or situation underlying or alleged therein; provided this exclusion shall apply only to Limits of Liability of $5,000,000 in excess of $10,000,000 in the Aggregate for each **Policy Year**.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Endorsement #05

# Financial Institutions Select™ Insurance Policy

**Prior or Pending Date Amended Endorsement**

**ZURICH**

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. | |
|---|---|
| If this form is issued concurrently with the policy, this Attaching Clause need not be completed. | |
| Policy No. DOP 9311203 04 | Effective Date: 6/9/2015 |

This endorsement modifies insurance provided under the following:

**Lender Liability Coverage Part**

It is agreed that:

Section III. EXCLUSIONS of the Lender Liability Coverage Part is amended to include the following:

The Insurer shall not be liable under this Coverage Part for **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured** based upon, arising out of or attributable to any written demand, suit or proceeding pending, or order, decree or judgment entered against the **Company** or any **Insured Person** on or prior to 6/9/2015 or the same or substantially the same **Wrongful Act**, **Interrelated Wrongful Acts**, fact, circumstance or situation underlying or alleged therein; provided this exclusion shall apply only to Limits of Liability of $5,000,000 in excess of $5,000,000 in the Aggregate for each **Policy Year**.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Endorsement # 06

# Financial Institutions Select™ Insurance Policy



Louisiana Amendatory Endorsement

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. If this form is issued concurrently with the policy, this Attaching Clause need not be completed. | |
|---|---|
| Policy No.    DOP 9311203-04 | Effective Date:    06/09/2015 |

It is agreed that:

The General Terms and Conditions are amended as follows:

I.    Section XV is replaced with the following:

POLICY TERMINATION, NONRENEWAL AND CONDITIONAL RENEWAL

This policy shall terminate at the earliest of the effective date of nonrenewal of the **Policy Period** shown in Item 2 of the Declarations or the effective date of cancellation, as described below.

A.   Cancellation

1.   The **Policyholder** may cancel this policy by surrender of this policy to the Insurer or by giving prior written notice to the Insurer stating when such cancellation shall take effect.  In such event, the Insurer shall refund the unearned premium computed pro rata within thirty (30) days following such cancellation.

2.   The Insurer may cancel this policy only for nonpayment of premium.  In such event, the Insurer shall mail written notice of cancellation for nonpayment of premium to the **Policyholder**.  Such notice shall state the effective date of cancellation, which shall not be less than fifteen (15) days after mailing such notice.  In such event, the Insurer shall refund the unearned premium computed pro rata as soon as practicable following such cancellation.

B.   Nonrenewal

If the Insurer elects not to renew this policy, the Insurer shall mail to the **Policyholder** written notice of nonrenewal at least sixty (60) days prior to the expiration of the **Policy Period**.  Such notice shall include loss information for the period the policy has been in force within, but not to exceed, the last three (3) years of coverage.

If the notice is mailed less than sixty (60) days before expiration, coverage shall remain in effect under the same terms and conditions until sixty (60) days after the notice is mailed or delivered.  Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the previous year's rate.

If the Insurer or another company within the same insurance group has offered to issue a renewal policy or the **Insureds** have obtained replacement coverage or agreed in writing to do so, notice of nonrenewal shall not be required.

C.   Conditional Renewal

If the Insurer elects to renew the policy subject to a rate increase, a change in Retention or a reduction limits or coverage, the Insurer shall mail to the **Policyholder** written notice of the change(s) at least thirty (30) days prior to the expiration of the **Policy Period**.

D.   Notice

The Insurer shall deliver all notices required under this Section XV by certified mail to the **Policyholder** at the address in Item 1 of the Declarations, and by mail or electronic mail to the **Policyholder's** authorized agent, if any and to any person known by the Insurer to have an interest in any **Loss** which may occur under the policy as of the effective date of cancellation.  Proof of mailing will be sufficient proof of notice.

II. Subsection IX.B is replaced with the following:

   B. Severability

   The **Application** shall be construed as a separate application for coverage by each of the **Insured Persons**. In the event the **Application** contains any misrepresentation or omission (i) made with the intent to deceive and (ii) which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under this policy, then this policy shall be void *ab initio* as to:

   a. any **Company** to the extent such **Company** indemnifies an **Insured Person** who knew the facts that were not truthfully disclosed in the **Application**; and

   b. any **Company** and its **Subsidiaries** and **Plans** an **Executive Officer** of such **Company** knew the facts that were not truthfully disclosed in the **Application**;

   whether or not such **Executive Officer** or **Insured Person** knew the **Application** contained such misrepresentation or omission. No knowledge of one **Insured Person** shall be imputed to any other **Insured Persons** for purposes of this Subsection IX.B.

III. The following is added after the first paragraph in Section XVII. BANKRUPTCY:

   Any judgment which may be rendered against the **Insured** for which the Insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the **Insured** and an action may thereafter be maintained within the terms and limits of the policy by the injured person, or his or her survivors, mentioned in Civil Code Art. 2315.1, or heirs, against the Insurer.

IV. Section XVIII is deleted.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Endorsement # 07



# Sanctions Exclusion Endorsement

**Policyholder:** FIRST NBC BANK HOLDING COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided. Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

## ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

## Important Notice - In Witness Clause



**ZURICH**®

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

Nancy D. Mueller

President

Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?** Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours: 8 a.m. - 4 p.m. [CT])
**Email:** info.source@zurichna.com

Endorsement #  08

# Cap On Losses From Certified Acts Of Terrorism



**ZURICH**®

| Insured's Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| FIRST NBC BANK HOLDING COMPANY | DOP 9311203-04 | 06/09/2015 | 08 |

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies your insurance.
**General Terms and Conditions**

### A. Cap on Losses From Certified Terrorism Losses

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

**1.** To be an act of terrorism;

**2.** To be a violent act or an act that is dangerous to human life, property or infrastructure;

**3.** To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

**4.** To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

### B. Application of Other Exclusions

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY SHALL APPLY AND REMAIN UNCHANGED.**

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.