UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 11 |
| | * | |
| FIRST NBC BANK HOLDING COMPANY, | * | CASE NO. 17-11213 |
| | * | |
| Debtor, | * | SECTION "A" |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | * * * * * * * * * * * * * * * * * * * * * * * * * * | |
| | * | |
| ZURICH AMERICAN INSURANCE COMPANY | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| VERSUS | * | |
| | * | |
| GREGORY ST. ANGELO, WILLIAM D. AARON, JR., HERBERT W. ANDERSON, DALE ATKINS, JOHN C. CALHOUN, WILLIAM CARROUCHE, LEANDER J. FOLEY, III, JOHN F. FRENCH, LEON GIORGIO, JR., SHIVAN GOVIDAN, LAWRENCE BLAKE JONES, LOUIS LAURICELLA, MARK MERLO, HERMAN MOYSE, III, GRISH LLOYD PANDIT, JAMES RODDY, DR. CHARLES TEAMER, JOSEPH TOOMY, RICHARD M. WILKINSON, LOUIS BALLERO, MARSHA CROWLE, MARY BETH VERDIGETS, FRANK FUGETTA AND MICHAEL LULICH | * | ADVERSARY PROCEEDING NO. 20-01005 |
| | * | |
| Defendants. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | * * * * * * * * * * * * * * * * * * * * * * * * * * | |

**MEMORANDUM IN SUPPORT OF GREGORY ST. ANGELO'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I. INTRODUCTION**

Gregory St. Angelo ("St. Angelo" or "Defendant") is entitled to partial summary judgment as to one of the issues raised in the Interpleader Complaint filed by Zurich American

1283151v.3

Insurance Company ("Zurich"), namely, who is entitled to receipt of the funds that Zurich deposited in the Court's registry when it initiated this adversary proceeding. Based on the undisputed facts and the controlling jurisprudence in this matter, only St. Angelo is entitled to those funds. For the following reasons, this Court should enter partial summary judgment in St. Angelo's favor and disburse the funds at issue to St. Angelo.

## II. FACTUAL BACKGROUND

This litigation arises out of a policy of insurance issued by Zurich, bearing number DOP 9311203-04, to provide coverage for the officers, directors, members of duly constituted committees, or their "functional equivalents" of First NBC Bank Holding Company ("FNBC") for wrongful acts committed by them in the course of their duties (the "Policy").[1] The Policy also requires Zurich to advance or pay Defense Costs on a current basis, including attorneys' fees, for claims brought against Insured Persons.

Since shortly after the founding of First NBC Bank (the "Bank"), a subsidiary of FNBC, St. Angelo's role there was akin to that of an in-house counsel.[2] Although not reduced to writing initially, his role was broadly framed as covering all of the Bank's internal legal needs.[3] This arrangement was memorialized through a Consulting Agreement between the Bank and St. Angelo dated March 18, 2010.[4] While the Consulting Agreement refers to St. Angelo as a "Consultant," it defines his duties as "those generally associated with the responsibilities of 'in-

---

[1] A copy of the Policy is attached as Exhibit A to Zurich's Interpleader Complaint.

[2] *See* the Affidavit of Gregory St. Angelo in support of this motion for summary judgment (the "St. Angelo Affidavit" or "St. Angelo Aff.") at ¶ 4.

[3] *See id.* at ¶ 5.

[4] *See id.* at ¶ 6, and the Consulting Agreement, which is attached as Exhibit A to the St. Angelo Affidavit.

house' counsel."[5] The contract further provides: "The scope shall include, but not be limited to, transactional and notarial work, legal research, litigation and collections."[6]

St. Angelo was assigned an office at the corporate headquarters of FNBC in New Orleans, which was furnished with a computer terminal owned by the Bank.[7] The Bank issued him a phone number and email address, with which to conduct business on behalf of the Bank.[8] He had several secretaries who were assigned to work for him, who were employees of the Bank and whose salaries were paid by the Bank.[9] His credentials authorized him to access all of the Bank's electronic information, and he was enabled to review any documents stored on the Bank's information technology systems.[10] In furtherance of this access, he was issued a portable token that would allow him to access the Bank's IT systems remotely.[11] Each year, he attended the Bank's annual retreat, which otherwise only included the Bank's executives.[12]

While not formalized initially, his title at the Bank was usually referred to as General Counsel.[13] This, too, was later memorialized, in this case pursuant to a certified resolution of the Bank's board of directors dated December 10, 2012 (the "Certified Board Resolution").[14] Through that instrument, the Bank's board of directors designated St. Angelo as the General

---

[5] *See* St. Angelo Aff. Ex. A (Consulting Agreement) at ¶ 3.

[6] *See id.*

[7] *See* St. Angelo Aff. at ¶ 8.

[8] *See id.*

[9] *See id.* at 9.

[10] *See id.* at 10.

[11] *See id.*

[12] *See id.* at 11.

[13] *See id.* at 12.

[14] *See id.* at 13. A copy of the Certified Board Resolution is attached as Exhibit B to the St. Angelo Affidavit.

Counsel and Agent of the Bank.[15] It authorized him "to execute in the name of the bank any of the instrument(s) enumerated in Article IV, Section 2 of the Bank's bylaws."[16] By the Certified Board Resolution, the Bank's board of directors also ratified any prior acts he had previously executed as General Counsel and Agent of the Bank, including notes and loan documents.[17]

St. Angelo was responsible for overseeing any litigation in which the Bank was involved as a party, whether as a plaintiff or defendant.[18] To the extent a particular litigation involved one of his core areas of expertise and was lodged in a jurisdiction in which he was admitted, St. Angelo would serve as primary counsel on the matter.[19] Otherwise, he would engage outside counsel to represent the bank in the proceedings.[20] The outside counsel would report directly to St. Angelo, and he in turn would update the Bank's executives and/or its board as appropriate.[21]

Separately, St. Angelo was involved in the legal aspects of the Bank's transactional work.[22] For example, when the Bank expanded to new branch locations, St. Angelo served as the point person for negotiating each location's lease arrangements.[23] He was further tasked with oversight of the Bank's collections on loans.[24] He was assigned clerical staff in the Bank's

---

[15] *See* St. Angelo Aff. at ¶ 14, and Ex. B (Certified Board Resolution).

[16] *See* St. Angelo Aff. at ¶ 14, and Ex. B (Certified Board Resolution).

[17] *See* St. Angelo Aff. at ¶ 15, and Ex. B (Certified Board Resolution).

[18] *See* St. Angelo Aff. at ¶ 16.

[19] *See id.*

[20] *See id.*

[21] *See id.*

[22] *See id.* at 17.

[23] *See id.*

[24] *See id.* at 18.

collection department, who reported directly to him with regard to collections.[25] For every loan charged off, the Bank required the transaction to be documented with St. Angelo's signature and that of two other Bank executives.[26]

St. Angelo also served as a duly appointed standing member of two separate committees of the Bank: one that met monthly on credit review matters, and another that met weekly to review banking transactions related to federal compliance and banking security issues.[27] All of the other members of these two committees were executives and/or employees of the Bank.[28]

St. Angelo has had multiple claims asserted against him, both civil and criminal, in connection with his role at the Bank, as set forth in paragraph 45 of the Interpleader Complaint. (The federal criminal investigation involving FNBC and related government investigations and civil matters are collectively referred to as the "FNBC Proceedings").) Zurich agreed to pay St. Angelo's defense costs under the Policy, pursuant to a reservation of rights, for certain of the FNBC Proceedings. Zurich, which has admitted that St. Angelo is an Insured Person under the Policy, has in fact paid $641,816.57 for defense cost to St. Angelo through July of 2019.

On March 22, 2019, the United States Attorney for the Eastern District of Louisiana filed a Bill of Information in the Eastern District of Louisiana charging St. Angelo with one count of conspiracy to commit bank fraud. St. Angelo formally pled guilty to that one count on June 28, 2019. He has not been sentenced yet.

St. Angelo has been cooperating with the federal government in its criminal investigations arising from FNBC's collapse. The practice and custom in the U.S. District Court

---

[25] *See id.*

[26] *See id.* at 19.

[27] *See id.* at 20.

[28] *See id.*

for the Eastern District of Louisiana and the U.S. Attorney's Office here is to sentence a cooperating defendant only after he has been allowed to demonstrate the full extent of his cooperation. As a result, St. Angelo will likely be sentenced at some point in the future once his cooperation in the federal investigations is completed.

On July 29, 2019, Zurich notified St. Angelo that it was going to deny coverage to him solely under two exclusions of the Policy (as set forth by Zurich in Paragraph 51 of the Interpleader Complaint) based solely on his guilty plea in federal court.[29] Both of those exclusions, however, require a "final and non-appealable adjudication" adverse to the Insured Person to be applicable.

On August 8, 2019, undersigned counsel Phillip A. Wittmann, on behalf of St. Angelo, forwarded correspondence to Zurich disputing its action on the basis that a guilty plea in federal court is not "a final and non-appealable adjudication," as the Policy's exclusions require.[30] In that letter, undersigned counsel provided Zurich with controlling legal citations that unequivocally hold there is no "final and non-appealable adjudication" based upon a plea until a sentence has been entered and a Judgement and Commitment Order is issued. Neither of those prerequisite events have occurred in this case. As a matter of law, St. Angelo's plea to the Bill of Information is not a final and non-appealable adjudication because sentencing has not yet been imposed. Zurich, therefore, was wrong to deny coverage based on those exclusions. This, in turn, has resulted in hardship for St. Angelo, who had been relying on the Policy's coverage for his extensive participation in the FNBC Proceedings.

---

[29] A copy of Zurich's July 29, 2019 letter is attached as Exhibit A to the Declaration of Phillip A. Wittmann in support of this motion for summary judgment (the "Wittmann Declaration" or "Wittmann Decl.").

[30] A copy of Mr. Wittmann's August 8, 2019 letter is attached as Exhibit B to the Wittmann Declaration.

Despite the controlling case law on the matter, Zurich initiated this Adversary Proceeding by filing its Interpleader Complaint on January 24, 2020. Further, Zurich deposited $270,872.85 in proceeds from the Policy that make up a portion of the amount due and owing to St. Angelo (the "Policy Proceeds").

### III. LAW AND ARGUMENT

By Zurich's own admission, the sole basis for withholding the Policy Proceeds from St. Angelo was Zurich's assessment that St. Angelo's guilty plea to the Bill of Information triggered the fraudulent conduct exclusions under the Policy. The issue before the Court can be resolved as a matter of law. It does not to present any triable issues of fact. Zurich has admitted that St. Angelo is an Insured Person under the Policy.[31] As the relevant jurisprudence makes clear, St. Angelo's guilty plea is not a final and non-appealable adjudication that would trigger the two Policy exclusions relied on by Zurich. As a result, Zurich had no legal basis for withholding the Policy Proceeds from St. Angelo. This Court, therefore, should grant partial summary judgment in St. Angelo's favor and award him the Policy Proceeds, which never should have been withheld. In the same vein, the Court should issue a judgment declaring that the two exclusions in the Policy cited in the Interpleader Complaint and relied on by Zurich for not paying St. Angelo's defenses costs and attorneys' fees do not apply presently because a "final adjudication" has not occurred.

### A. There is No Final and Non-Appealable Adjudication of Guilt

This motion for partial summary judgment turns on one legal issue: whether the two exclusions in the Policy relied on by Zurich may be applied to exclude St. Angelo from ongoing coverage under the Policy based on St. Angelo's guilty plea. The controlling case law affirmatively demonstrates that the answer is no. The two exclusions in the Policy cited in the

---

[31] *See* Zurich's Interpleader Complaint, at ¶ 32.

1283151v.3

Interpleader Complaint and relied on by Zurich for not paying St. Angelo's defenses costs and attorneys' fees do not apply presently because a "final adjudication" has not occurred.

The provisions of the Policy cited in Zurich's complaint require "a final and non-appealable adjudication" establishing (1) a deliberately fraudulent act or omission or willful violation of law or (2) that the Insured Person gained profit, remuneration or advantage to which he was not legally entitled.[32] As clearly evidenced by the June 28, 2019 Minute Entry, Mr. St. Angelo has pled guilty to one count of the bill of information charging him but he has not been sentenced.[33] The law unequivocally holds that there is no final adjudication based upon a guilty plea until sentence has been entered.

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure permits a defendant to withdraw a plea of guilty if he can show a fair and just reason for requesting the withdrawal. Moreover, the Government also may withdraw from the agreement if it is dissatisfied with the defendant's performance of his obligations thereunder. The very essence of "finality" is the state of affairs when a matter no longer can be changed.[34] In the case of an agreement between two parties, this occurs when neither party can change his mind and both are immutably bound. Rule 11(e), in fact, specifically defines finality in the context of a guilty plea and specifies when it occurs, leaving nothing to speculation:

> (e) **Finality of a Guilty or Nolo Contendere Plea.** <u>After the court imposes sentence</u>, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack. (Emphasis added).

---

[32] *See* Zurich's Interpleader Complaint Ex. A (the Policy) at Sections IV(I) and IV(J) of the Management Liability Coverage Part. *See also* Zurich's Interpleader Complaint, at ¶ 51.

[33] *See* the June 28, 2019 Minute Entry attached as Exhibit C to the Wittmann Declaration.

[34] *See* FED. R. CRIM. PROC. 11(e) (prohibiting withdrawal of guilty plea after the court imposes sentencing).

These principles of finality directly contradicting Zurich's Interpleader Complaint are clearly set forth in *In re Enron Corp. Securities, Derivative & "ERISA" Litigation.*, 391 F. Supp. 2d 541 (S.D. Tex. 2005). Because the decision in this case is so strikingly inconsistent with Zurich's coverage denial at this stage of the criminal proceeding, we quote extensively from the opinion:

> The next issue is whether a guilty plea accepted in open court by a judge, where the defendant waives all right to appeal or to mount a collateral attack, but where the defendant has not yet been sentenced, is a "final adjudication." The Outside Directors insist that given the circumstances here, they are the same in all but name. Outside Directors have produced transcripts of the plea hearings demonstrating that those insureds who have pled guilty to criminal charges involving fraud and dishonesty on the record in open court, knowingly and voluntarily with assistance of counsel, waived their right to appeal and to collaterally attack that guilty plea, and that their counsel stated in open court that the pleas would not be withdrawn. . . .
>
> Federal Rule of Criminal Procedure 32(d) states that a guilty plea does not become final and may be withdrawn for any fair or just reason before sentence is imposed by the court. The case law is clear that a criminal adjudication is not final until a sentence is imposed on the defendant. See, e.g., *Berman v. United States*, 302 U.S. 211, 212, 58 S. Ct. 164, 82 L.Ed. 204 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment."); *Teague v. Lane*, 489 U.S. 288, 314 n. 2, 109 S. Ct. 1060, 103 L.Ed.2d 334 (1989) ("a criminal judgment necessarily includes the sentence imposed upon the defendant"); *Flynt v. Ohio*, 451 U.S. 619, 620, 101 S. Ct. 1958, 68 L.Ed.2d 489 (1981) ("Applied in the context of a criminal prosecution, finality is normally defined by the imposition of the sentence."); *Parr v. United States*, 351 U.S. 513, 518, 76 S. Ct. 912, 100 L.Ed. 1377 (1956) ("Final judgment in a criminal case means sentence."). In the only case this Court has found dealing with a dishonesty exclusion in an insurance contract similar to that in dispute here, a defendant who was president and CEO of a bank pled guilty to conspiracy to commit bank fraud, bank fraud, making false statements on a bank document, and violations of the currency reporting regulations. *First National Bank Holding Co. v. Fidelity and Deposit Co. of Md.*, 885 F. Supp. 1533 (N.D. Fla. 1995). **The imposition of a sentence on the defendant was necessary before the court concluded that the defendant's conviction constituted "final adjudication" precluding coverage**

**for third-party claims of loss caused or contributed to by that dishonesty.**[35]

It is unnecessary to cite to the voluminous Louisiana case law holding that any ambiguities in an insurance policy, especially in an exclusion, are interpreted against the insurer. Here, the meaning of the term "final adjudication" applied in the context of a federal criminal conviction based on a guilty plea is patently clear and unambiguous – it means the person has been convicted *and sentenced.* The sentencing of St. Angelo has not occurred yet. Therefore, the exclusions cited by Zurich as its sole justification for denying ongoing coverage do not apply here. Accordingly, Zurich had no legal basis for withholding the Policy Proceeds from St. Angelo.

### B. Zurich Admits St. Angelo Is an Insured Person under the Policy

This adversary proceeding does not present an issue of whether St. Angelo qualifies as an Insured Person under the Policy. Rather, Zurich has admitted to this Court from the outset that St. Angelo is, in fact, an Insured Person.

Zurich alleges in paragraph 32 of its Interpleader Complaint that St. Angelo is an "Insured Person" under the Policy. Indeed, the Policy itself defines an Insured Person as "any one or more natural persons who were, now are or shall be come a duly elected or appointed director,

---

[35] 391 F. Supp. 2d at 575 (emphasis added). *See also,* cases noted by the *Enron* Court, 391 F. Supp. 2d at 559, that had been cited by the director and officer defendants: *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Brown*, 787 F. Supp. 1424, 1429 (S.D. Fla. 1991) (without final adjudication that insured engaged in fraud, dishonesty or criminal acts, the policy exclusion for such conduct did not apply), aff'd, 963 F.2d 385 (11th Cir. 1992); *United States v. Gottlieb*, 817 F.2d 475, 476 (8th Cir. 1987) (orders regarding a guilty plea are not final decisions until after sentencing); *Aguilera-Enriquez v. INS*, 516 F.2d 565, 571 (6th Cir. 1975) ("Once sentencing [on guilty plea] is completed ... the conviction is final for deportation purposes"), cert. denied, 423 U.S. 1050, 96 S. Ct. 776, 46 L. Ed. 2d 638 (1976); Fed. Rule of Crim. P. 11 (allowing a defendant to withdraw guilty plea; providing that a guilty plea is not final until "the court imposes sentence").

trustee, governor, **Manager,** officer, advisory director, or member of a duly constituted committee or board of the Company or their **functional equivalent**."[36]

Having judicially admitted that St. Angelo is an Insured Person under the Policy, Zurich cannot now use the complaints that it solicited from other interpled parties to deny him coverage. In attempting to do so, Zurich in effect has abdicated its obligation to make a coverage decision by seeking objections from the other insureds and then relying on those manufactured complaints as a pretext for bringing this interpleader action. In short, Zurich has never seriously questioned St. Angelo's status as an Insured Person under the Policy, and in fact has admitted as such to this Court.[37] On that basis alone, the Court should find in St. Angelo's favor and order Zurich to pay his losses, including attorneys' fees.[38]

### C. St. Angelo Is Entitled to Obtain the Policy Proceeds

On July 29, 2019, Zurich issued its notice to St. Angelo that it would no longer provide insurance coverage to him under the Policy in light of St. Angelo's guilty plea. Zurich has now placed the Policy Proceeds in the Court's registry, which consist of the funds it would have paid to St. Angelo but for its decision to decline coverage, totaling $270,872.85. As demonstrated above, Zurich's decision to decline coverage had no legal basis.

Moreover, the other interpled parties have no claim to the Policy Proceeds deposited with the court as these funds are due to St. Angelo for his defense costs. Zurich is

---

[36] *See* Zurich's Interpleader Complaint Ex. A (the Policy) at p. 24 (Management Liability Coverage Part III(C)); *see also* Zurich's Interpleader Complaint at ¶ 36.

[37] *See* Zurich's Interpleader Complaint at ¶ 32.

[38] Despite the bald assertions of some of the interpled defendants, there can be no good faith dispute as to St. Angelo's status as an Insured Person in light of the undisputed facts that demonstrate his role as the "functional equivalent" of an officer of the Bank. The Bank's board of directors designated him as General Counsel and Agent of the Bank. *See* St. Angelo Aff. Ex. B (Certified Board Resolution). Likewise, the functions he performed for the Bank were consistent with that of its officers. *See* St. Angelo Aff. at ¶¶ 4-20.

separately providing funds for the defense costs of the other interpled parties, and they are not asserting a claim to the interpleaded funds. The Court, therefore, should release the Policy Proceeds to St. Angelo.

### IV. **CONCLUSION**

For all the foregoing reasons, in the absence of a triable issue of fact, this Court should grant partial summary judgment in St. Angelo's favor by (1) finding only St. Angelo is entitled to receipt of the Policy Proceeds, (2) disbursing the Policy Proceeds in their entirety to St. Angelo, and (3) issue a judgment declaring that the two exclusions in the Policy cited in the Interpleader Complaint and relied on by Zurich for not paying St. Angelo's defenses costs and attorneys' fees do not apply presently because a "final adjudication" has not occurred.

Respectfully submitted,

By: _*/s/ Phillip A. Wittmann*_
Phillip A. Wittmann (La. Bar No. 13625)
Paul J. Masinter (La. Bar No. 18324)
Peter M. Thomson (La. Bar No. 02147)
J. Dalton Courson (La. Bar No. 28542)
Bryant S. York (La. Bar No. 34165)
**STONE PIGMAN WALTHER WITTMANN L.L.C.**
909 Poydras Street, Suite 3150
New Orleans, LA 70112
Telephone: (504) 581-3200
Facsimile: (504) 581-3361
Email: pwittmann@stonepigman.com
pmasinter@stonepigman.com
pthomson@stonepigman.com
dcourson@stonepigman.com
byork@stonepigman.com

*Attorneys for Gregory St. Angelo*

1283151v.3