UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 11 |
| | * | |
| FIRST NBC BANK HOLDING COMPANY, | * | CASE NO. 17-11213 |
| | * | |
| Debtor, | * | SECTION "A" |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | * * * * * * * * * * * * * * * * * * * * * * * * * | |
| | * | |
| ZURICH AMERICAN INSURANCE COMPANY | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| V. | * | |
| | * | |
| GREGORY ST. ANGELO, WILLIAM D. AARON, JR., HERBERT W. ANDERSON, DALE ATKINS, JOHN C. CALHOUN, WILLIAM CARROUCHE, LEANDER J. FOLEY, III, JOHN F. FRENCH, LEON GIORGIO, JR., SHIVAN GOVIDAN, LAWRENCE BLAKE JONES, LOUIS LAURICELLA, MARK MERLO, HERMAN MOYSE, III, GRISH LLOYD PANDIT, JAMES RODDY, DR. CHARLES TEAMER, JOSEPH TOOMY, RICHARD M. WILKINSON, LOUIS BALLERO, MARSHA CROWLE, MARY BETH VERDIGETS, FRANK FUGETTA AND MICHAEL LULICH | * * * * * * * * * * * * * * * * * | ADVERSARY PROCEEDING<br><br>NO. 20-01005 |
| Defendants. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | * * * * * * * * * * * * * * * * * * * * * * * | |

**STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF
GREG ST. ANGELO'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 7056-1 of the United States Bankruptcy Court for the

Eastern District of Louisiana, Defendant Greg St. Angelo ("St. Angelo"), through undersigned

1283281v.3

counsel, respectfully submits that there is no genuine issue of fact for trial with regard to the following factual matters underlying his Motion for Partial Summary Judgment:

1. This litigation arises out of a policy of insurance issued by Zurich, bearing number DOP 9311203-04, to provide coverage for the officers, directors, members of duly constituted committees, or their "functional equivalents" of First NBC Bank Holding Company ("FNBC") for wrongful acts committed by them in the course of their duties (the "Policy").

2. Zurich is the Insurer of FNBC Bank Holding Company, its officers and directors, and other individuals, as defined by and pursuant to the terms and conditions of Zurich's Policy No. DOP9311203-04 (the "Policy").

3. The Policy also requires Zurich to advance or pay Defense Costs on a current basis, including attorneys' fees, for claims brought against Insured Persons.

4. St. Angelo has had multiple claims asserted against him, both civil and criminal, in connection with his role at FNBC, as set forth in paragraph 45 of the Interpleader Complaint.

5. Zurich agreed to pay St. Angelo's defense costs under the Policy, pursuant to a reservation of rights, for certain of the FNBC Proceedings.

6. Zurich, which has stated that St. Angelo is an Insured Person under the Policy in paragraph 32 of its Interpleader Complaint, has paid $641,816.57 for defense cost to St. Angelo through July of 2019.

7. On March 22, 2019, the United States Attorney for the Eastern District of Louisiana filed a Bill of Information in the Eastern District of Louisiana charging St. Angelo with one count of conspiracy to commit bank fraud.

8. St. Angelo formally pled guilty to that one count on June 28, 2019.

1283281v.3

9. St. Angelo has not been sentenced yet.

10. St. Angelo has been cooperating with the federal government in its criminal investigations arising from FNBC's collapse.

11. The practice and custom in the U.S. District Court for the Eastern District of Louisiana and the U.S. Attorney's Office here is to sentence a cooperating defendant after he has been allowed to demonstrate the full extent of his cooperation.

12. On July 29, 2019, Zurich notified St. Angelo that it was going to deny coverage to him solely under two exclusions of the Policy (as set forth by Zurich in Paragraph 51 of the Interpleader Complaint) based on his guilty plea in federal court.

13. Both of those exclusions require a "final and non-appealable adjudication" adverse to the Insured Person to be applicable.

14. Zurich initiated this Adversary Proceeding by filing its Interpleader Complaint on January 24, 2020.

15. Zurich deposited $270,872.85 in proceeds from the Policy that make up a portion of the amount due and owing to St. Angelo.

16. St. Angelo entered into a Consulting Agreement with First NBC Bank (the "Bank"), a subsidiary of FNBC, dated March 18, 2010.

17. The Consulting Agreement refers to St. Angelo as a "Consultant," and defines his duties as "those generally associated with the responsibilities of 'in-house' counsel."

18. The contract further provides: "The scope shall include, but not be limited to, transactional and notarial work, legal research, litigation and collections."

19. St. Angelo was assigned an office at the corporate headquarters of FNBC in New Orleans, which was furnished with a computer terminal owned by the Bank.

20. The Bank issued him a phone number and email address, with which to conduct business on behalf of the Bank.

21. He had several secretaries who were assigned to work for him, who were employees of the Bank and whose salaries were paid by the Bank.

22. His credentials authorized him to access all of the Bank's electronic information, and he was enabled to review any documents stored on the Bank's information technology systems.

23. He was issued a portable token that would allow him to access the Bank's IT systems remotely.

24. Each year, St. Angelo attended the Bank's annual retreat, which otherwise only included the Bank's executives.

25. The Bank's board of directors entered a certified board resolution, dated December 10, 2012 (the "Certified Board Resolution"), that designated St. Angelo as the General Counsel and Agent of the Bank.

26. The Certified Board Resolution authorized St. Angelo "to execute in the name of the bank any of the instrument(s) enumerated in Article IV, Section 2 of the Bank's bylaws."

27. By the Certified Board Resolution, the Bank's board of directors also ratified any prior acts St. Angelo had previously executed as General Counsel and Agent of the Bank, including notes and loan documents.

28. St. Angelo oversaw litigation in which the Bank was involved as a party, whether as a plaintiff or defendant.

1283281v.3

29. To the extent he would engage outside counsel to represent the Bank in the proceedings, the outside counsel would report directly to St. Angelo, and he in turn would update the Bank's executives and/or its board.

30. When the Bank expanded to new branch locations, St. Angelo negotiated each location's lease arrangements.

31. St. Angelo was assigned clerical staff in the Bank's collection department, who reported directly to him with regard to collections.

32. For every loan charged off, the Bank required the transaction to be documented with St. Angelo's signature and that of two other Bank executives.

33. St. Angelo also served as a duly appointed standing member of two separate committees of the Bank: one that met monthly on credit review matters, and another that met weekly to review banking transactions related to federal compliance and banking security issues.

34. All of the other members of these two committees were executives and/or employees of the Bank.

Respectfully submitted,

By: */s/ Phillip A. Wittmann*
Phillip A. Wittmann (La. Bar No. 13625)
Paul J. Masinter (La. Bar No. 18324)
Peter M. Thomson (La. Bar No. 02147)
J. Dalton Courson (La. Bar No. 28542)
Bryant S. York (La. Bar No. 34165)
**STONE PIGMAN WALTHER WITTMANN L.L.C.**
909 Poydras Street, Suite 3150
New Orleans, LA 70112
Telephone: (504) 581-3200
Facsimile: (504) 581-3361
Email: pwittmann@stonepigman.com
pmasinter@stonepigman.com
pthomson@stonepigman.com
dcourson@stonepigman.com
byork@stonepigman.com

***Attorneys for Gregory St. Angelo***

1283281v.3