# STONE PIGMAN WALTHER WITTMANN L.L.C.

## COUNSELLORS AT LAW

909 POYDRAS STREET, SUITE 3150
NEW ORLEANS, LOUISIANA 70112-4042
(504) 581-3200

PHILLIP A. WITTMANN
DIRECT DIAL: (504) 593-0804
DIRECT FAX: (504) 596-0804
E-MAIL: pwittmann@stonepigman.com

www.stonepigman.com

OUR FILE NUMBER

66,238

August 8, 2019

**VIA EMAIL**

Michael B. Chester, Esq.
Skarzynski Black LLC
One Battery Park Plaza, 32nd Floor
New York, New York 10004
*mchester@skarzynski.com*

Re: Claim No. 9410548719; Policy No. DOP 9311203-04
<u>Insured: First NBC Bank Holding Company; Gregory J. St. Angelo</u>

Dear Mr. Chester:

I am writing to respond to your July 29, 2019 letter transmitting a supplemental coverage analysis on behalf of Zurich America of Illinois ("Zurich") with respect to the referenced policy ("the Policy") and Zurich's insured, Gregory J. St. Angelo. We have reviewed and analyzed your letter and the positions asserted there, as well as the policy provisions and cited case authorities that purportedly support Zurich's revised position. Based upon that review and analysis, it is clear that a final criminal adjudication based on a guilty plea occurs only at the time a defendant is sentenced. Hence, we strongly disagree with Zurich's action in denying coverage and ceasing to pay Mr. St. Angelo's defense costs based upon his guilty plea.

Zurich's precipitous action cannot be legally justified, and we have no alternative but to conclude that Zurich's decision at this time to deny coverage and to cease payment of Mr. St. Angelo's defense costs arising out of claims made under the Policy is motivated by bad faith. We therefore demand that Zurich reverse its supplemental coverage position and immediately resume payment of Mr. St. Angelo's defense costs on a current basis.

The provisions of the Policy cited in Zurich's letter require "a final and non-appealable adjudication" establishing (1) a deliberately fraudulent act or omission or willful violation of law or (2) that the Insured Person gained profit, remuneration or advantage to which he was not legally entitled. As clearly evidenced by the June 28, 2019 Minute Entry furnished to you with my July 3, 2019 letter, Mr. St. Angelo has pleaded guilty to one count of the bill of information charging him but he has not been sentenced. The law, including authority cited in your letter, unequivocally holds that there is no final adjudication based upon a guilty plea until sentence has been entered.

1272208v.2

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure permits a defendant to withdraw a plea of guilty if he can show a fair and just reason for requesting the withdrawal. Moreover, as recognized in the plea agreement attached to your July 29 letter, the Government also may withdraw from the agreement if it is dissatisfied with the defendant's performance of his obligations thereunder. The very essence of "finality" is the state of affairs when a matter no longer can be changed. In the case of an agreement between two parties, this occurs when neither party can change his mind and both are immutably bound. Rule 11(e), in fact, specifically defines finality in the context of a guilty plea and specifies when it occurs, leaving nothing to speculation:

> (e) **Finality of a Guilty or Nolo Contendere Plea.** <u>After the court imposes sentence</u>, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack. (Emphasis added).

Indeed, these principles of finality directly contradicting Zurich's position are clearly set forth in *In re Enron Corp. Securities, Derivative & "ERISA" Litigation.*, 391 F. Supp. 2d 541 (S.D. Tex. 2005), one of the three cases cited in your July 29 letter as authority for the action Zurich is taking in denying coverage and ceasing payment of defense costs for Mr. St. Angelo. Because the decision in this case is so strikingly inconsistent with Zurich's coverage denial at this stage of the criminal proceeding, we quote extensively from the opinion:

> The next issue is whether a guilty plea accepted in open court by a judge, where the defendant waives all right to appeal or to mount a collateral attack, but where the defendant has not yet been sentenced, is a "final adjudication." The Outside Directors insist that given the circumstances here, they are the same in all but name. Outside Directors have produced transcripts of the plea hearings demonstrating that those insureds who have pled guilty to criminal charges involving fraud and dishonesty on the record in open court, knowingly and voluntarily with assistance of counsel, waived their right to appeal and to collaterally attack that guilty plea, and that their counsel stated in open court that the pleas would not be withdrawn. . . . .
>
> Federal Rule of Criminal Procedure 32(d) states that a guilty plea does not become final and may be withdrawn for any fair or just reason before sentence is imposed by the court. The case law is clear that a criminal adjudication is not final until a sentence is imposed on the defendant. See, e.g., *Berman v. United States*, 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment."); *Teague v. Lane*, 489 U.S. 288, 314 n. 2, 109 S.Ct. 1060, 103 L.Ed.2d

1272208v.2

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE
3

August 8, 2019

> 334 (1989) ("a criminal judgment necessarily includes the sentence imposed upon the defendant"); *Flynt v. Ohio*, 451 U.S. 619, 620, 101 S.Ct. 1958, 68 L.Ed.2d 489 (1981) ("Applied in the context of a criminal prosecution, finality is normally defined by the imposition of the sentence."); *Parr v. United States*, 351 U.S. 513, 518, 76 S.Ct. 912, 100 L.Ed. 1377 (1956) ("Final judgment in a criminal case means sentence."). In the only case this Court has found dealing with a dishonesty exclusion in an insurance contract similar to that in dispute here, a defendant who was president and CEO of a bank pled guilty to conspiracy to commit bank fraud, bank fraud, making false statements on a bank document, and violations of the currency reporting regulations. *First National Bank Holding Co. v. Fidelity and Deposit Co. of Md.*, 885 F.Supp. 1533 (N.D. Fla.1995). The imposition of a sentence on the defendant was necessary before the court concluded that the defendant's conviction constituted "final adjudication" precluding coverage for third-party claims of loss caused or contributed to by that dishonesty. *Id.*[1]
>
> 391 F. Supp. 2d at 575.

It is unnecessary to cite to the voluminous Louisiana case law holding that any ambiguities in an insurance policy, especially in an exclusion, are interpreted against the insurer. Here, the meaning of the term "final adjudication" applied in the context of a federal criminal conviction based on a guilty plea is patently clear and unambiguous.

The other two cases Zurich claims support its action at this stage of the criminal proceedings simply do not do so. In both *Herley Industries v. Federal Ins. Cos.*, 2009 WL 2596072

---

[1] *See also,* cases noted by the *Enron* Court that had been cited by the director and officer defendants, *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Brown*, 787 F.Supp. 1424, 1429 (S.D..Fla..1991)(without final adjudication that insured engaged in fraud, dishonesty or criminal acts, the policy exclusion for such conduct did not apply), aff'd, 963 F.2d 385 (11th Cir..1992); *United States v. Gottlieb*, 817 F.2d 475, 476 (8th Cir.1987) (orders regarding a guilty plea are not final decisions until after sentencing); *Aguilera-Enriquez v. INS*, 516 F.2d 565, 571 (6th Cir. 1975) ("Once sentencing [on guilty plea] is completed ... the conviction is final for deportation purposes"), cert. denied, 423 U.S. 1050, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); Fed. Rule of Crim. P. 11 (allowing a defendant to withdraw guilty plea; providing that a guilty plea is not final until "the court imposes sentence"). 391 F. Supp. 2d at 559.

1272208v.2

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE
4

August 8, 2019

(E.D. Pa. Aug. 21, 2009) and *First National Bank Holding Co. v. Fidelity & Deposit Co.*, 885 F. Supp. 1533 (N.D. Fla 1995), the issue before the courts was the correctness of the insured defendants' contention that a jury verdict after trial was required in order to meet the policy requirement that there be a "judgment or other final adjudication" triggering application of the "fraudulent acts" exclusion in the applicable policies. In both cases, the defendants **had been sentenced** so the relevant issue here—whether the adjudication was final—was not even before the court. The courts merely held that a final conviction (after sentencing) based upon a guilty plea could constitute a final adjudication for purposes of the exclusion.[2]

While ignoring entirely the portion of the *Enron* opinion relating to the one issue that is relevant for present purposes—the meaning of "final adjudication" in the context of a guilty plea—Zurich relies on that case's inapposite discussion regarding the doctrine of judicial estoppel:

> See also in re Enron Corp. Securities, Derivative & "ERISA" Litigation, 2005 WL 2230250 (S.D. Tex. Aug. 1, 2005 (holding that insureds would be judicially estopped from asserting that guilty pleas did not trigger the policy's exclusion for coverage of dishonest, fraudulent or criminal conduct.)

July 29, 2019 Chester Letter, p. 3

As recognized by the United States Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001), "[t]he doctrine of judicial estoppel prevents a party from asserting a claim *in a legal proceeding* that is inconsistent with a claim taken by that party *in a previous proceeding*," (emphasis added), citing 18 Moore's Federal Practice §134.30, p. 134-62 (3d ed. 2000). Judicial estoppel can be invoked only *in a pending legal proceeding* when a party is taking a position *in that proceeding* that is clearly inconsistent with a position taken in a prior proceeding which the party succeeded in persuading the prior court to accept and from which the party would

---

[2] Your letter makes statements regarding Mr. St. Angelo's waiver of appeal rights in the plea agreement. Under the Policy, to trigger the fraud exclusion, the adjudication must be both final and unappealable. Thus, even if Mr. St. Angelo had waived all of his appeal rights, it would be irrelevant because the adjudication based on his plea will not be final until sentencing. Moreover, although Mr. St. Angelo waived certain appellate and collateral attack rights in the plea agreement, he did not waive all of his rights to appeal or challenge his guilty plea or future sentence. Specifically, he retained the right to appeal a sentence which exceeds the statutory maximum and the right to challenge his conviction or sentence based on a claim of ineffective assistance of counsel; and, further, the plea agreement contains no waiver of his right to withdraw his plea under Rule 11.

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE
5

August 8, 2019

derive an unfair advantage. *New Hampshire v. Maine*, 532 U.S. at 750. The courts have uniformly recognized that the purpose of the doctrine is "to protect the integrity of the judicial process ... by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.*

The doctrine clearly is inapplicable to justify Zurich's denial of coverage and cessation of defense cost payment. Mr. St. Angelo is not attempting to assert in a legal proceeding any position that is inconsistent with his guilty plea. First, there is no second legal proceeding pending in which judicial estoppel is being or might be urged. For that reason alone, the doctrine is totally irrelevant to the situation at hand.

Second, if there were a second pending legal proceeding considering the effect of Mr. St. Angelo's guilty plea on the triggering of the final adjudication requirement of the Section IV (I) and (J) exclusions of Zurich's policy, Mr. St. Angelo's positions reflected by his guilty plea would not be inconsistent with his contention that such triggering simply has not occurred at this time and that any denial of coverage is premature under the plain meaning of the Policy terms. The question raised by Zurich's precipitous action is whether Mr. St. Angelo's plea has resulted in a final adjudication or whether such finality will only occur if and when Mr. St. Angelo is sentenced. The answer is obvious in that it is only after sentencing that neither Mr. St. Angelo nor the Government can abrogate the plea agreement and the adjudication would become final.

The obviousness of the answer, discernable from the very authorities Zurich cites, raises a strong presumption that the company in engaging in bad faith conduct in attempting to cut off Mr. St. Angelo's source of funds to defend himself. Surely, Zurich read the cases cited in your letter and must have been aware that they either clearly contradict Zurich's position that a final adjudication has already occurred or are clearly inapplicable to the circumstances at hand. Longstanding U.S. Supreme Court precedent unambiguously recognizes each of the legal principles that undermine Zurich's latest coverage position, so this is not by any means a close call.

We once again remind you of the penalties provided for in Louisiana's insurance bad faith statutes, which were enacted to "provide remedies to insureds whose insurance claims are improperly handled or to whom payment is unreasonably delayed." *See e.g, Lee v. Sapp*, 2017-0490 (La. App. 4 Cir 12/06/17), 234 So. 3d 122, 128. La. R.S. 22:1892 (B)(1) provides for imposition of penalties and award of attorney's fees against an insurer for failure to timely pay a claim when such failure is "arbitrary, capricious, or without probable cause. . . ." The Louisiana Supreme Court has adopted as the definition of an "arbitrary" act one that is "based on random choice or personal whim, rather than reason or system," and as the definition of "capricious" an act "given to sudden and unaccountable changes in behavior." *Reed v. State Farm Auto. Ins. Co*, 03-0107 (La. 10/21/03), 857 So. 2d 1012, 1020. The phrase "arbitrary, capricious, or without probable cause" is synonymous with "vexatious," and a "vexatious refusal to pay" means "unjustified, without reasonable or probable cause or excuse." *Id. at 1021*. Both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense. *Id. at 2021*.

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 6
August 8, 2019

The Louisiana Supreme Court has further held that Louisiana jurisprudence is clear that, when there is dispute over the extent of coverage afforded by an insurance policy, the insurer bears the risk of misinterpreting its own policy and will be liable for penalties for its errors. *La. Bag Co. v. Audubon Indemnity Co.*, 08-0453 (La. 12/02/08), 999 So. 2d 1104, 1117, citing *Carney v. Am. Fire & Indem. Co.*, 371 So. 2d 815, 819 (La. 1979). If the insurer "errs in interpreting its own insurance contract, such error will not be considered as a reasonable ground for delaying payment of benefits, and it will not relieve the insurer of the payment of penalties and attorney's fees." *Id.*

Given that none of the legal authorities cited by Zurich in your July 29th letter support your stated interpretation of the Policy term "final adjudication" and, in fact, that the *Enron* case and the authorities cited therein, in conformity with all the judicial precedent we have been able to locate, directly contradicts that interpretation, it is clear that Zurich's action is arbitrary, capricious and without probable cause as those terms have been defined by this State's highest Court.

Failure to comply immediately with Mr. St. Angelo's demands will result in extreme prejudice to him, particularly given his present circumstances, and will furnish strong grounds for assertion of a bad faith claim against Zurich. We demand that Zurich immediately revoke its supplemental coverage analysis, its denial of coverage and its determination that Zurich will no longer pay Mr. St. Angelo's defense costs on a current basis. We further demand that Zurich reinstate its most recent prior coverage positions, including those disclosed in your March 26, 2019 letter to me, and that such action be taken immediately.

Sincerely,

Phil Wittmann

Phillip A. Wittmann

PAW/blj
cc: Ms. Stephanie Helland (by email: shelland@mcgriff.com)
    Mr. David McMahan (by email: dmcmahan@mcgriff.com)

1272208v.2