UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 11 |
| | * | |
| FIRST NBC BANK HOLDING COMPANY, | * | CASE NO. 17-11213 |
| | * | |
| Debtor, | * | SECTION "A" |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| VERSUS | * | |
| | * | |
| GREGORY ST. ANGELO, WILLIAM D. AARON, JR., HERBERT W. ANDERSON, DALE ATKINS, JOHN C. CALHOUN, WILLIAM CARROUCHE, LEANDER J. FOLEY, III, JOHN F. FRENCH, LEON GIORGIO, JR., SHIVAN GOVIDAN, LAWRENCE BLAKE JONES, LOUIS LAURICELLA, MARK MERLO, HERMAN MOYSE, III, GRISH LLOYD PANDIT, JAMES RODDY, DR. CHARLES TEAMER, JOSEPH TOOMY, RICHARD M. WILKINSON, LOUIS BALLERO, MARSHA CROWLE, MARY BETH VERDIGETS, FRANK FUGETTA AND MICHAEL LULICH | * | ADV. P. NO. 20-01005 |
| | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**OPPOSITION TO ST. ANGELO'S MOTION TO DISMISS
CROSSCLAIM FOR LACK OF SUBJECT-MATTER JURISDICTION**

NOW INTO COURT, through undersigned counsel, come Frank Fugetta and Michael Lulich ("Fugetta and Lulich"), who respectfully file this opposition to Gregory St. Angelo's ("St. Angelo") *Motion to Dismiss Crossclaim for Lack of Subject-Matter Jurisdiction* **[Doc. 84]** (the "Motion to Dismiss"), and submits to the Court the following:

I. **FACTS AND PROCEDURAL HISTORY**

Zurich instituted this Interpleader action by filing a *Complaint for Interpleader and for Declaratory Relief* [Doc. 1] wherein it deposited $270,872.85 (the "Proceeds") into the registry of this Court. Zurich is the insurer of First NBC Bank Holding Company, its officers and directors, as defined by and pursuant to the terms and conditions of Zurich Policy No. DOP 9311203-04 (the "Policy"). This Court has not yet determined if the Policy is property of the bankruptcy estate. However, this Court has on at least three occasions (**[P-325], [P-531], and [P-840]**) exercised jurisdiction over the Policy by issuing orders regarding the "soft cap" for Defense Costs under the Policy. To the extent that the Policy is property of the bankruptcy estate under § 541, so are its the Proceeds. Therefore, this Court has jurisdiction to determine what happens to the Proceeds.

By letter dated September 17, 2019, Zurich inquired whether any of the other twenty-three defendants currently receiving funds from the Policy had any objection to the continued payment of Defense Costs under the Policy for St. Angelo. Fugetta and Lulich, along with the other 21 defendants in this action other than St. Angelo (the "Objecting Insureds"), collectively made demands that Zurich not make any further payments from the Policy Proceeds to St. Angelo. The Objecting Insureds also demanded that Zurich recoup all fees that have been paid to date to St. Angelo. To date, Zurich has paid St. Angelo approximately $641,616.57 in defense costs related to his federal criminal investigation. *See* St. Angelo's Counterclaim for Declaratory Relief **[Doc. 66], ¶ 11**.

The amount paid by Zurich to St. Angelo plus the Proceeds deposited herein total almost one million dollars. This Court has issued three Orders in the Chapter 11 bankruptcy proceeding regarding distribution of proceeds from the Policy. The initial "soft cap" for Defense Cost was set at five (5) million dollars, then raised to nine (9) million dollars, and was recently increased to

twelve (12) million dollars. The Objecting Insureds continue to accrue additional attorney's fees, which are covered under the Policy.

II. **LAW AND ARGUMENT**

    A. **Fugetta and Lulich have standing and have suffered a concrete injury.**

"[S]tanding is… determined as of the commencement of the suit." *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F. 3d 453, 458 (5th Cir. 2005). Fugetta and Lulich have standing for their crossclaim as they have both suffered concrete injuries traceable to the challenged conduct of St. Angelo. In order "to qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. FEC,* 554 U.S. 724, 734 (2008). Further, "the injury required for standing need not be actualized. A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Id.*

Fugetta and Lulich's injuries are concrete and have actually already occurred, i.e. they have already incurred reimbursable Defense Costs under the Policy and St. Angelo has received/requested nearly one million dollars of Policy proceeds. Further, the injury is also prospective to the extent that St. Angelo seeks further proceeds from the Policy. St. Angelo has received proceeds from the Policy even though he does not qualify as an Insured Person under the Policy. All of the Objecting Insured are Insured Persons under the Policy because they were either Directors or Officers of First NBC Bank. This is especially true since in addition to the Defense Costs, the FDIC and other creditors have made claims against the policy well exceeding the Policy limits. Fugetta and Lulich's injuries are directly traceable to St. Angelo's conduct, accepting benefits from the Policy, which in turn is reducing the funds available to the Objecting Insureds and First NBC's creditors. Fugetta and Lulich' s injuries would be redressed by a favorable ruling

requiring St. Angelo to not receive any of the interpled funds and to repay the funds he has received from Zurich, as those funds would become available to pay the Defense Costs the Objecting Insureds continue to accrue, which are covered under the Policy. St. Angelo should not be allowed to drain the Policy's limit of liability funds, which he is contractually obligated to repay under the Policy, when those funds could have been used/can be used in the future for the benefit of Objecting Insureds.[1]

Defense Costs have already reached a previously set "soft cap" twice, and the Policy has a policy limit which almost certainly will be reached. The Policy provides that:

> **Defense Costs are part of and not in addition to the Limits of Liability** applicable to the Liability Coverage Parts, **and the payment by the Insurer of Defense Costs reduces such Limits of Liability**. If the applicable Limit of Liability is exhausted by payment of Loss, the Insurer's obligations, including without limitation any applicable duty to defend, shall be completely fulfilled and extinguished. Subject to Section XIV of these General Terms and Conditions, **the Insurer is entitled to pay Loss as it becomes due and payable by the Insureds, without consideration of other future payment obligations.**

(emphasis added). On top of payment of Defense Costs, Zurich is in the process of settlement negotiations regarding payment of other Claims allegedly covered under the Policy. St. Angelo avers that Fugetta and Lulich do not allege that the funds available to pay their defense costs are exhausted or imminently will be exhausted; however, that is precisely what has happened and will happen again. As noted, the Defense Costs have already been exhausted twice and the Objecting Insureds have had to seek authority to have the "soft cap" raised twice. Further, now that Zurich is in settlement negotiations with creditors having Claims under the Policy, the policy limits will very likely be reached imminently. Under St. Angelo's logic, he should be entitled Zurich's

---

[1] Policy, Section VII(c): "[a]ny advancement or payment of Defense Costs shall be repaid to the Insurer by the Insureds severally according to their respective interests if an to the extent the Insureds shall not be entitled under the terms and conditions of this policy to coverage for such Defense Costs."

payment for his defense just because "there are excess insurance policies that provide further funds to pay defense costs and resolve claims." All proceeds available under the Policy, and any excess policy, should be reserved for any Claims or Loss (including Defense Costs) incurred by Insured Persons.

Further, Fugetta averred that as of the commencement of the suit, Zurich had failed to fully reimburse him under the Policy[2] for his Defense Costs, and as of the date of the commencement of this suit owed him at least $9,887.50.[3]

Finally, St. Angelo has accepted and/or requested nearly one million dollars of policy Proceeds which he is not entitled to, when those funds could have and should have been used for the Objecting Insureds Defense Costs or the future settlement of the multiple cases.

**B. Gregory St. Angelo does not qualify as an "Insured Person" under the Policy and has received proceeds under the Policy which should be reserved for the Defense Costs of the Objecting Insureds. However, even if he is an Insured Person under the Policy, he is judicially estopped from receiving any further Proceeds from the Policy.**

St. Angelo served as First NBC Bank's general counsel. At no time was St. Angelo ever an officer, director, or employee of First NBC Bank. The Policy defines an Insured Person as:

1. any one or more natural persons who were, now or shall become a duly elected or appointed director, trustee, governor, Manager, officer, advisory director, or member of a duly constituted committee or board of the Company or their functional equivalent;
2. any one or more natural persons not described in Subsection 1 above who were, now are or shall become Employees of the Company;
3. Independent Contractors only for purposes of Insuring Clause I.B; and
4. Any one or more natural persons described in Subsection 1 above while serving in an Outside Position.

---

[2] A copy of the Policy is attached to the Complaint as Exhibit A.
[3] See ¶ 116 *Answer, Affirmative Defenses, Crossclaims and Counterclaims to Complaint for Interpleader and for Declaratory Relief* **[Doc. 67]**.

St. Angelo does not qualify as an "Insured Person" under any of these subcategories listed in the Policy. St. Angelo arrangement with First NBC was that of a consultant and his duties were akin to those of an in-house consul, not an officer or director. Therefore, St. Angelo was not and is not entitled to any proceeds from the policy for any defense costs which he has or may incur.

However, even if St. Angelo is an Insured Person under the Policy, coverage of St. Angelo is excluded under the terms of Policy, namely Section IV (I) and (J), because St. Angelo has admitted to committing a deliberate fraudulent act -- conspiracy to commit bank fraud.

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742 (2001). In *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, the court adopted the position that even though "there has not been a final adjudication of the Criminal Defendants' guilt to trigger the exclusion from coverage, **those who pled guilty are judicially estopped from arguing to the contrary**" and applied the doctrine of judicial estoppel to the party who pled guilty. 391 F. Supp.2d 541, 575 (SD Tx. 2005) (emphasis added). The relevant portion of the *Enron* decision dealt with whether Andrew Fastow had insurance coverage despite his having plead guilty, but not having been sentenced, yet. A group of outside directors (other insureds under Enron's insurance policy) objected to Fastow's coverage under Enron's director's and officer's insurance policy. The court correctly determined that "Fastow's claims therefore are not covered under the policies … ." *Id*. at 577. The court reached its conclusion, not on the finality of the criminal proceedings, but on judicial estoppel. Here, just like in *Enron*, St. Angelo's guilty plea triggers the exclusions in the Policy for committing a deliberate fraudulent act.

At the time of his guilty plea, St. Angelo entered into a Factual Basis with the United States. A copy of the Factual Basis is attached as Exhibit A and is incorporated by reference. The Factual Basis is replete with admissions of fraudulent conduct. For instance, paragraph 16 states:

> Beginning at a time unknown to the United States Attorney, but no later than September 2006, through in and around April 2017, in the Eastern District of Louisiana and elsewhere, ST. ANGELO and others known and unknown to the United States Attorney, did knowingly and willfully combine, conspire, confederate, and agree to commit offenses against the United States of America, that is: to knowingly and with intent to defraud, execute and attempt to execute a scheme and artifice to defraud First NBC Bank, a financial institution, and to obtain any of the moneys, funds, credits, and assets, owned by, and under the custody or control of First NBC Bank, by means of false and fraudulent pretenses, representations, and promises, relating to a material fact, in violation of Title 18, United States Code, Section 1344.[4]

St. Angelo further gained a financial advantage to which he was not legally entitled through his admitted illegal actions, and he will continue to gain a financial advantage if he is allowed to maintain a clearly inconsistent position from that which he has taken in his criminal proceeding. St. Angelo is judicially estopped from contradicting the Factual Basis.

As such, the Policy Proceeds deposited herein do not belong to St. Angelo and instead belong to the Objecting Insureds. The Policy provides that's "[a]ny advancement or payment of Defense Costs shall be repaid to the Insurer by the Insureds severally according to their respective interests if an to the extent the Insureds shall not be entitled under the terms and conditions of this policy to coverage for such Defense Costs." Therefore, St. Angelo should be required to repay all policy proceeds he has already received so that those funds may be made available to the Objecting Insureds for payment of any Claims or Loss under the Policy.

### III. CONCLUSION

---

[4] United States v. St. Angelo, Case Number 19-00055, United States District Court for the Eastern District of Louisiana **[P-28]**.

Here, like in *Enron*, other insureds have standing to object to coverage from someone who is not an Insured Person under the Policy. Fugetta and Lulich have standing to bring these crossclaims against Gregory St. Angelo. Further, St. Angelo does not qualify as an Insured Person under the Policy, and therefore he has no right to receive any proceeds from the Policy. Alternatively, even if St. Angelo is an Insured Person, he is judicially estopped from arguing that Zurich has improperly determined that he is excluded under the Policy based on his admissions in a prior proceeding. For the foregoing reasons, the Court should dismiss St. Angelo's Motion to Dismiss Crossclaim for Lack of Subject-Matter Jurisdiction.

RESPECTFULLY SUBMITTED,

THE DERBES LAW FIRM, LLC

/s/ *Eric J. Derbes*
ERIC J. DERBES (La. Bar Roll No. 23464)
ALBERT J. DERBES, IV (La. Bar Roll No. 20164)
BRYAN J. O'NEILL (La. Bar Roll No. 37250)
3027 Ridgelake Drive
Metairie, LA 70002
Phone: (504) 837-1230 | Fax: (504) 832-0323
Email: EDerbes@derbeslaw.com
*Attorneys for Frank Fugetta and Michael Lulich*