## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| **FIRST NBC BANK HOLDING COMPANY,** | * | **CHAPTER 11** |
| | * | |
| **DEBTOR.** | * | |
| | * | **CASE NO. 17-11213 – "A"** |
| * * * * * * * * * * * * * * * * * | * | |

ZURICH AMERICAN INSURANCE COMPANY,

           PLAINTIFF.

VERSUS

GREGORY ST. ANGELO, WILLIAM D. AARON,      ADV. P. NO. 20-01005
JR., HERBERT W. ANDERSON, DALE ATKINS,
JOHN C. CALHOUN, WILLIAM CARROUCHE,
LEANDER J. FOLEY, III, JOHN F. FRENCH,
LEON GIORGIO, JR., SHIVAN GOVINDAN,
LAWRENCE BLAKE JONES,
LOUIS LAURICELLA, MARK MERLO,
HERMAN MOYSE, III, GRISH LLOYD PANDIT,
JAMES RODDY, DR. CHARLES TEAMER,
JOSEPH TOOMY, RICHARD M. WILKINSON,
LOUIS BALLERO, MARSHA CROWLE,
MARY BETH VERDIGETS, FRANK FUGETTA
AND MICHAEL LULICH,

           DEFENDANTS.

* * * * * * * * * * * * * * * * * * * *

### THE DIRECTORS' MEMORANDUM IN SUPPORT OF THEIR
### MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
### OR, ALTERNATIVELY, MOTION TO STAY

NOW INTO COURT, through undersigned counsel, comes Defendants William D. Aaron,

Jr., Herbert W. Anderson, Dale Atkins, John C. Calhoun, William Carrouche, Leander Foley III,

John F. French, Leon Giorgio, Jr., Shivan Govindan, Lawrence Blake Jones, Louis Lauricella,

Mark Merlo, Herman Moyse, III, Grish Lloyd Pandit, James Roddy, Jr., Charles Teamer, Joseph

1

Toomy, and Richard M. Wilkinson (the "Directors") who file the instant Memorandum in Support

of their Motion to Dismiss, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for

lack of subject matter jurisdiction or, alternatively, Motion to Stay (the "Motion") in response to

the Complaint for Interpleader and for Declaratory Relief (the "Complaint") filed by Zurich

American Insurance Company ("Zurich") on or about January 24, 2020. As discussed below, this

case is subject to dismissal and/or a stay on a number of grounds. As an initial matter, this Court

lacks jurisdiction over this dispute because, while the insurance policy at issue may be property of

the bankruptcy estate, its proceeds – the subject of this matter – are not. Separately, Zurich's

Complaint does not *yet* present a ripe, justiciable controversy. As ripeness is a constitutional

prerequisite to jurisdiction, at the very least, this matter should be dismissed or stayed until such

time as it presents a ripe dispute.

Additionally, because defendant Gregory St. Angelo ("St. Angelo") has *already* moved to

stay other civil disputes in light of his ongoing criminal case – including a civil matter instituted

by an insurance carrier against him concerning his insurance coverage for his role at First NBC

Bank – the instant civil matter, which presents similar issues, should likewise be stayed.

For all the reasons discussed below, based on applicable case authorities, this matter should

be dismissed or stayed.

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Zurich's Complaint presents a strange case that, at this point, is not yet ripe for

adjudication. Zurich is the insurer of the movants herein, certain former Directors of the First

NBC Bank and/or its Holding Company (the "Bank"). Zurich is also purportedly the insurer of

St. Angelo, the Bank's former titular general counsel. Zurich's insurance funds are currently being

used by the Directors, among others, to defend against myriad investigations instituted in the

aftermath of the Bank's closure, which occurred in April 2017. In mid-2019, more than two years after the Bank's failure, St. Angelo pled guilty to engaging in a years-long intentional criminal scheme (along with others who were managing the Bank) to defraud the Bank, enriching himself in the process by tens of millions of dollars. As a result of his admitted criminal scheme, Zurich denied coverage for St. Angelo on the basis of an exclusion in the policy at issue precluding coverage for insureds who commit deliberate fraudulent acts, like those St. Angelo did. Notwithstanding this determination, St. Angelo threatened Zurich with a bad faith lawsuit if it did not pay his defense costs and Zurich subsequently threw up its hands: it deposited $270,872.85 in the registry of the Court (after already apparently paying St. Angelo $656,044.18 for costs and fees incurred in defending against the investigations regarding the Bank), and filed the instant Interpleader Complaint.

Zurich's Complaint, however, is subject to dismissal and/or being stayed on a number of grounds. *First,* this Court does not have jurisdiction to hear this dispute. As discussed below, while Zurich's policy may be property of the bankruptcy estate, the *proceeds* of that policy – what St. Angelo seeks – are not. Dismissal is thus warranted. *Second,* even assuming this Court has jurisdiction, the Directors are uncertain whether the funds will be needed by them – hence, their concerns over the justiciability of this matter. There are millions of dollars in insurance proceeds that are currently being utilized by the Directors (and others) to defend against the ongoing investigations and *if and only if* the $270,872.85 in the registry of the Court is needed by the insureds (to effectuate a settlement, for example) would those funds be subject to a live, ripe, and immediate controversy. As of now, the Directors are uncertain whether those funds are needed and thus, as presently positioned, Zurich's Complaint does not present a ripe, justiciable

3

controversy. As discussed below in detail, case authorities abound dismissing and/or staying disputes in analogous circumstances.

*Third*, at present, the Directors are uncertain whether he is even entitled to coverage *at all* from Zurich. Among other things, St. Angelo has recently pled guilty to participating in a long-term intentional criminal scheme to defraud the bank. Likewise, the Directors recently learned facts that raise a question as to whether St. Angelo improperly recovered insurance proceeds from Zurich while, at the same time, also sought and obtained insurance coverage from his malpractice carrier, Continental Casualty Insurance Company ("Continental"), for the very same investigations. Exclusions in Zurich's insurance policy could arguably preclude coverage (at least in part) for St. Angelo under *either* circumstance. Because further factual development (*i.e.* events would have to occur) is needed to determine these issues – and, indeed, those factual circumstances/events may never come to fruition – Zurich's Complaint again, does not present a ripe controversy (which requires only legal issues to prevail). Accordingly, this matter should be dismissed or, alternatively, stayed until the controversy is justiciable.

*Fourth* and finally, a stay of this matter is warranted for an entirely separate basis – that is, in view of St. Angelo's ongoing criminal case, this civil dispute, based on well-settled authorities, should be stayed. Indeed, in another insurance dispute with his malpractice carrier, St. Angelo himself sought (and obtained) a stay of those proceedings because, among other things, the issues in that insurance dispute overlapped with his criminal prosecution and ongoing cooperation with the U.S. Department of Justice. As discussed below, because St. Angelo himself sought a stay of a similar case for precisely the same reasons, this matter should be stayed pending the outcoming of his criminal case.

4831-0380-3066v3
2941996-000001 04/17/2020

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In or around 2006, First NBC Bank was founded in New Orleans.[1]  The movants herein are former Directors of the Bank (or its Holding Company).  For years, the Bank was a rousing success – growing from an entity with approximately $200 million in assets to a Bank with over $4 billion in assets by the end of 2015.[2]  During much of the Bank's life, St. Angelo functioned as its collections lawyer.[3]  During the years of 2015 and 2016, the Bank procured D&O insurance coverage from Zurich under Policy No. DOP 9311203-04 (the "Policy"), the insurance policy at issue here.[4]  In late April 2017, the Louisiana Office of Financial Institutions closed down the Bank, and had the Federal Deposit Insurance Corporation ("FDIC") named as receiver of the Bank.[5]  The Bank's closure led to the loss of hundreds of jobs in Gulf Coast region, millions of dollars in alleged losses to the FDIC, and resulted in the collective loss of millions of dollars amongst the Directors (who were also shareholders), who tried mightily to save this Bank.[6]

The aftermath of the Bank's failure brought numerous investigations including:

---

[1] *See* "Material Loss Review of First NBC Bank," FDIC-OIG, Report No. AUD-18-002, Nov. 2017, available at https://www.fdicoig.gov/sites/default/files/publications/18-002AUD.pdf (last visited Apr. 15, 2020) at p. i.  The Court may take judicial notice of this (and other) facts concerning the Bank because it is generally known within this Court's territorial jurisdiction and/or it can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned.  *See* FED. R. EVID. 201(b).  Further, because the Directors have supplied necessary information demonstrating this fact, the Court may judicially notice it.  *See* FED. R. EVID. 201(c).  Finally, because this information is available on the website of the Federal Deposit Insurance Corporation relating to the Bank, it is subject to being judicially noticed.  *See Swindol v. Aurora Flight Sci. Corp.*, 805 F.3d 516, 518-19 & n.2 (5th Cir. 2015) (taking judicial notice of facts on state government website); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of factual information on governmental agency website); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (taking judicial notice of factual information on a state government website); *Young v. Wells Fargo Bank, N.A.*, 3:15-CV-2289, 2017 WL 3722148, at *2 (N.D. Tex. Aug. 29, 2017) (taking judicial notice of information on FDIC website).
[2] *See id.* at p. 6.
[3] *See* Rec. Doc. No. 87-1 (St. Angelo's Memorandum in Support of Motion for Partial Summary Judgment) at p. 2.
[4] *See* Rec. Doc. No. 1 ("Zurich's Compl.") at p. 31.
[5] *See* "Failed Bank Information, First NBC Bank," available at https://www.fdic.gov/bank/individual/failed/firstnbc.html (last visited Apr. 15, 2020).
[6] *See* "Material Loss Review of First NBC Bank," FDIC-OIG, Report No. AUD-18-002, Nov. 2017, available at https://www.fdicoig.gov/sites/default/files/publications/18-002AUD.pdf  (last visited Apr. 15, 2020) at p. i.

4831-0380-3066v3
2941996-000001 04/17/2020

- A criminal investigation by the Department of Justice through the U.S. Attorney's Office in New Orleans ("DOJ investigation") that seeks to determine whether anyone associated with the Bank committed criminal conduct;[7]

- A civil investigation instituted by the FDIC in its corporate enforcement capacity (the "FDIC-C investigation") that seeks to determine whether any of the regulated parties affiliated with the bank (such as officers, directors, or counsel) engaged in "unsafe and/or unsound" banking practices, such that civil money penalties and/or orders prohibiting further participation in the banking industry are appropriate;[8]

- A civil investigation initiated by the FDIC in its capacity as receiver (the "FDIC-R" investigation") which seeks to determine whether any individuals affiliated with the bank engaged in gross negligence and are responsible for the losses allegedly suffered by the FDIC;[9] and

- An investigation being run by the Securities and Exchange Commission (the "SEC investigation") to determine whether any regulated parties engaged in securities violations.[10]

Other litigation, including civil litigation involving Bank borrowers, also was filed on the heels of the Bank's failure.[11]

As is now clear, and as is discussed below, it appears that (or at least there is a substantial question of whether) St. Angelo *simultaneously* sought coverage for the above-referenced investigations (and various tasks associated with those investigations, including responding to subpoenas issued by the aforementioned federal agencies) from *two* insurers – his malpractice carrier, Continental, and the Bank Holding Company's D&O carrier, Zurich.[12]

---

[7] *See Official Committee of Unsecured Creditors of First NBC Bank v. Ryan, et al.*, No. 19-CV-10341, 2019 WL 3858953, at *1-4 (E.D. La. Aug. 16, 2019) (discussing ongoing criminal proceedings involving failure of First NBC Bank) (attached as Exhibit A); Rec. Doc. No. 87-1 (St. Angelo's Memorandum in Support of Motion for Summary Judgment) at pp. 5-6 (discussing St. Angelo's cooperation in ongoing criminal investigation into Bank).

[8] *See* Zurich's Compl. at p. 10 (listing "noticed matters" including subpoenas issued by FDIC's Legal Division).

[9] *See id.* (listing "noticed matters" including FDIC-R demand letter and subpoenas issued by FDIC-R).

[10] *See id.* (listing "noticed matters" including subpoenas issued by the Securities and Exchange Commission).

[11] *See id.* (noting civil litigation filed in the aftermath of the Bank's failure).

[12] *See id.*; *Continental Casualty Co. v. St. Angelo, et al.*, No. 2:19-CV-13382 (E.D. La. Oct. 31, 2019) (Rec. Doc. No. 1 -- Malpractice Carrier's Complaint for Rescission, Declaratory Judgment, and Reimbursement).

6

Separately, on March 22, 2019, less than two years after the failure of the Bank, a Bill of Information was filed against St. Angelo by the U.S. Department of Justice, alleging that he had engaged in a years-long conspiracy to commit bank fraud, enriching himself in the process by tens of millions of dollars.[13]  Several months later, on June 28, 2019, St. Angelo formally pled guilty to one count of conspiracy to commit bank fraud acknowledging, under oath, that he engaged in a long-term intentional scheme (along with others) to defraud the Bank.[14]  Among many other things, St. Angelo admitted (a) providing materially false and fraudulent financial statements and other documents to Bank personnel, including the Directors; (b) obtaining loan proceeds from the Bank under false pretenses, including loans for certain nominee borrowers, some of which enriched St. Angelo himself; and (c) creating false tax credit investments for the Bank which were designed to funnel bank funds to St. Angelo and his related entities.[15]  St. Angelo's guilty plea was accepted by the Court on that date,[16] and he has since acknowledged he is cooperating with the U.S. Department of Justice and anticipates being sentenced on the basis of his criminal activity.[17]

In July 2019, Zurich apparently advised St. Angelo that he was no longer entitled to Policy proceeds in view of his guilty plea.[18]  Notwithstanding that determination, after St. Angelo threatened a bad faith lawsuit,[19] and being concerned over the potential claims of other insureds, including the Director-movants herein, Zurich threw up its hands and filed the instant interpleader

---

[13] *See United States v. St. Angelo*, No. 19-CR-00055 (E.D. La. 2019) (Mar. 22, 2019) (Rec. Doc. No. 1 – Bill of Information).

[14] *See id.* at Rec. Doc. No. 25 (June 28, 2019 Minute Entry referencing St. Angelo's guilty plea); *see also id.* at Rec. Doc. No. 28 (St. Angelo Factual Basis).

[15] *See id.* at Rec. Doc. No. 28 (St. Angelo Factual Basis) at pp. 5-6 (¶¶ 17-22).

[16] *See id.* at Rec. Doc. No. 25.

[17] *See* Rec. Doc. No. 87-1 (St. Angelo's Memorandum in Support of Motion for Partial Summary Judgment) at pp. 5-6 (stating that "St. Angelo has been cooperating with the federal government in its criminal investigations arising from FNBC's collapse.").

[18] *See* Rec. Doc. No. 87-4 (Ex. A to St. Angelo's Motion for Partial Summary Judgment) (July 29, 2019 correspondence from Zurich's Counsel to St. Angelo).

[19] *See* Rec. Doc. No. 87-5 (Ex. B to St. Angelo's Motion for Partial Summary Judgment) (Aug. 8, 2019 correspondence from St. Angelo to Zurich's Counsel).

in January 2020.[20] The point, apparently, of this lawsuit is to have this Court determine who is entitled to the approximately $270,872.85 sitting in the registry of the Court – funds that are Policy proceeds that Zurich had previously decided St. Angelo was not entitled to.

## III. THIS COURT LACKS JURISDICTION TO HEAR A DISPUTE OVER ZURICH'S INSURANCE POLICY PROCEEDS.

Zurich's Complaint presents a purported dispute over who is entitled to $270,872.85 in insurance proceeds currently sitting in the registry of the Court. However, while the Policy may be property of the bankruptcy estate, it does not follow that its *proceeds* are. According to the Fifth Circuit, the "overriding question" in determining whether proceeds of an insurance policy are part of the bankruptcy estate is whether the "debtor would have a right to receive and keep those proceeds when the insurer paid on a claim."[21] Applying that rationale, numerous courts have held that proceeds of insurance policies are not part of the bankruptcy estate. In *First Fidelity Bank v. McAteer*, 985 F.2d 114 (3d Cir. 1993), the Third Circuit held that proceeds of a life insurance policy were *not* property of the bankruptcy estate, even though the policy itself was.[22] Likewise, in *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987), the Fifth Circuit held that, even though the debtor had ownership over a liability policy, the proceeds of that policy were not part of the bankruptcy estate and the bankruptcy court could not halt the proceeds of that policy from being paid to the insureds.[23] Indeed, in *Louisiana World Exposition*, the Fifth Circuit expressly held that, like here, "liability proceeds payable to [] directors and officers are not part of the bankrupt's estate."[24] Other cases are in accord.[25]

---

[20] *See* Rec. Doc. No. 1 (Zurich's Interpleader Complaint).
[21] *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 53, 55 (5th Cir. 1993).
[22] *First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir. 1993).
[23] *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1400-01 (5th Cir. 1987).
[24] *Id.* at 1400.
[25] *See, e.g. In re World Health Alternatives, Inc.*, 369 B.R. 805, 811 (Bank. D. Del. 2007) ("[T]he proceeds of the Debtor's [D&O] insurance policy are not property of the estate."); *In re Daisy Sys. Secs. Litig.*, 132 B.R. 752, 755

8

Here, it is not the case that the debtor is entitled to receive and keep the proceeds of Zurich's Policy. Because this dispute centers on the proceeds of the Policy, and because those proceeds are not part of the bankruptcy estate, this Court lacks jurisdiction to hear this matter.

## IV.    ZURICH'S COMPLAINT DOES NOT PRESENT A RIPE CONTROVERSY AND THUS MUST BE DISMISSED.

Assuming this Court has jurisdiction to hear this dispute, it is clear that the issues presented by Zurich's Complaint do not currently present a ripe, justiciable controversy. Among other things, the funds deposited in the registry of the Court do not present an immediate controversy between the parties to this case because, *unless and until* those funds are needed by the various insureds (including the Directors) to defend, settle, or pay a claim, they are not subject to a live dispute. Further, it is unquestionable that further factual development would be needed to determine whether a ripe controversy exists – among other things, the Directors have concerns over St. Angelo's receipt of the funds in the registry of the Court in view of (a) his guilty plea which, as Zurich has already determined, should preclude his coverage; and (b) his apparent request for insurance proceeds from two insurers – for the same claims, at the same time which, again, should preclude some coverage from Zurich. Consistent with pertinent case authorities, Zurich's Complaint should be dismissed or, alternatively, the issues presented by the Complaint should be stayed until such time as they present a ripe controversy.

### A.    Governing Law

A declaratory judgment action – the nature of Zurich's Complaint – requires the court to determine (a) whether the declaratory action is justiciable; (b) whether the court has the authority to grant the declaratory relief requested; and (c) how to exercise its broad discretion to decide or

---

(N.D. Cal. 1991) ("[T]he proceeds of the three D&O policies in this case are not simply assets of Daisy's bankruptcy estate.").

dismiss the declaratory judgment action.[26] Before engaging in this three-step inquiry, however, the Court must satisfy itself that the controversy at issue is ripe for adjudication.[27] Indeed, ripeness – whether the controversy presents a real dispute made up of purely legal issues (requiring no further factual development or events) – is "a constitutional prerequisite."[28]

The Fifth Circuit has been clear that "applying the ripeness doctrine in the declaratory judgment context presents a unique challenge."[29] This is so because, among other things, "declaratory judgments are typically sought before a completed 'injury-in-fact has occurred… but still must be limited to the resolution of an 'actual controversy.'"[30] Notwithstanding these challenges, "a declaratory judgment action, like any other action, must be ripe in order to be justiciable."[31] To be a ripe controversy, the action must present be "real and substantial" that is "of sufficient immediacy" such that "it can presently be litigated and decided" not based on "hypothetical, conjectural, [or] conditional" circumstances "that may never develop."[32] Thus, the ultimate hurdle for Zurich's Complaint – which seeks this Court's intervention as to whether St. Angelo is entitled to the funds deposited in the registry of the Court – is whether it presents a real (as opposed to hypothetical) dispute, whether it is of sufficient immediacy to be decided, whether the dispute is based on actual circumstances (or whether the controversy is dependent on

---

[26] *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (citing *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 27-28 (5th Cir. 1989); *In re Canion*, 196 F.3d 579, 584 (5th Cir. 1999); *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993)).

[27] *See id.* (citing cases).

[28] *Id.* (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967)).

[29] *Id.* at 896 (citing cases).

[30] *Id.* (quoting *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000)).

[31] *Id.* (citation omitted).

[32] *Hanover Ins. Co. v. Superior Labor Servs.*, No. 11-2375, 2018 WL 2056173, at *4 (E.D. La. Mar. 13, 2018) (quoting *Aetna Life Ins. Co. of Hartford, Conn. V. Haworth*, 300 U.S. 227, 240 (1937); *Scottsdale Ins. Co. v. Bayou Land & Marine*, No. 98-3668, 1999 WL 777714, at *2 (E.D. La. Sept. 30, 1998); *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989)).

hypothetical or conjectural issues), and whether only legal issues (as opposed to factual ones) prevail.

**B.** **The Directors Are Uncertain Whether The Funds At Issue Will Be Needed By Actual Insureds And Accordingly, The Instant Controversy Is Not Presently Ripe Or Justiciable.**

According to the Complaint, Zurich filed this action because it is "facing competing demands from multiple Insured Persons under its Policy, which may expose Zurich to potentially duplicative litigation, and to the risk of conflicting judgments."[33]  More specifically, Zurich implies that St. Angelo is an insured, and contends that he demanded the immediate reimbursement of $270,872.85 in funds sitting in the registry of the Court from Zurich's Policy proceeds, while the other named defendants in this action – including movants here (the Directors) – have allegedly demanded that the reimbursement not be made, but instead be used to pay their own losses incurred under Zurich's policy.[34]  The Directors did advise Zurich that it intended to reserve all rights under the Policy at issue, and expressed concerns over Zurich (its insurer) covering the losses allegedly incurred by St. Angelo as a result of the investigations arising from the failure of the Bank in view of, among other things, his guilty plea and other limitations and/or exclusions to covering St. Angelo's purported claim(s).

Notwithstanding those concerns (which are discussed in more detail below),[35] it is clear that Zurich's Complaint – and the funds in the registry of the Court which are available to Zurich's insureds – do not present a real case or controversy at the present time because the Directors do not yet know whether the funds at issue will be needed for their losses (and will not know for months).  For example, if the named defendants need those funds – to satisfy a judgment, reach a

---

[33] Rec. Doc. No. 1 (Zurich's Compl.) at p. 2 (¶ 3).
[34] *Id.* at pp. 2-3 (¶ 3).
[35] *See infra*, Part IV.C.

11

settlement, or be used for defense costs, for instance, as a result of the investigations currently ongoing – then the funds at issue, which St. Angelo currently seeks, would be subject to dispute. Alternatively, if the funds at issue are not needed by the defendants during the ongoing investigations, then no dispute would be present. This is the essence of deciding whether a dispute is ripe: where events *could* take place that render the controversy "abstract or hypothetical," then a controversy is not ripe.[36] Indeed, in seeking dismissal of the counterclaims advanced by former Bank loan officers Frank Fugetta and Michael Lulich (filed in this adversary proceeding), St. Angelo himself acknowledged that those individuals had *yet* to suffer any injury (because they failed to allege, for example, that the payment of the insurance proceeds to St. Angelo would result in the "imminent… exhaustion" of the proceeds) and therefore, had no standing to advance those claims,[37] recognizing that no justiciable dispute was present. The same holds true with Zurich's Complaint.

Case law is replete with examples of analogous circumstances where courts have dismissed similar declaratory actions that present factual matters which are not ripe for adjudication. For example, insurance companies that seek a declaration that they have no obligation to indemnify an insured in the event of a judgment routinely are turned away by district courts because *unless and until* a judgment is rendered, adjudication of that matter is hypothetical and speculative, *i.e.* unripe.[38] Likewise, litigants who seek a declaration that a former employers' non-compete clause

---

[36] *See Orix Credit Alliance*, 212 F.3d at 896 (citing *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000)).
[37] *See* Rec. Doc. No. 84-1 (St. Angelo's Memorandum in Support of Motion to Dismiss Crossclaim for Lack of Subject Matter Jurisdiction) at p. 5.
[38] *See, e.g. Coregis Ins. Co. v. School Bd. Of Allen Parish*, 2008 WL 2325632, at *1-3 (5th Cir. 2008) (finding further factual development was required in connection with duty-to-indemnify declaratory judgment matter) (citing cases); *Hanover Ins. Co. v. Superior Labor Servs., Inc.*, No. 11-2375, 2018 WL 2056173, at *4-5 (E.D. La. Mar. 13, 2018) (dismissing insurer's declaratory judgment case that sought declaration with respect to right of contribution from other insurers in the event original insurer is required to defend and/or indemnify insured); *National Casualty Co. v. Tom's Welding, Inc.*, No. 11-3101, 2012 WL 2064451, at *3-4 (E.D. La. June 7, 2012) (dismissing as non-justiciable insurer's declaratory judgment case that sought declaration concerning insurer's duty to indemnify) (citing cases).

4831-0380-3066v3
2941996-000001 04/17/2020

in a prior employment contract is void are also turned away because *unless and until* the former

employer chooses to enforce such a provision, the declaratory judgment action is not a live

controversy.[39]  Other courts have dismissed similar cases where the relief sought was dependent

on other, future events that had yet to occur – and may never occur.[40]  Here, the scenario is

analogous: whether the funds deposited in the registry of the Court are needed by the Directors

(and other insureds) for defense costs, to pay a judgment, or for a settlement, may not be

determined for a matter of months and *unless and until* they are needed, there is no, live, actual

dispute present here.  Accordingly, the instant controversy presented by Zurich's Complaint is

theoretical, and thus subject to dismissal.

### C.  Further Factual Development And Circumstances Are Required To Determine Whether A Controversy Exists.

Separate from whether the funds at issue will ever be needed by the Directors (and other

insureds), it is unquestionable that further factual development is required to determine whether

St. Angelo is entitled to the funds he seeks.  Because applicable case authorities require that a

"ripe" controversy only present legal issues, and require no further factual development,[41] Zurich's

Complaint does not present a justiciable controversy.

---

[39] *See, e.g. Boudreaux v. OS Restaurant Servs., LLC*, No. 13-5333, 2013 WL 5722714, at *1-6 (E.D. La. Oct. 21, 2013) (dismissing, as not justiciable, former employee's declaratory judgment action seeking to declare non-compete clause unenforceable).

[40] *See, e.g. TOTAL Gas & Power North Am., Inc. v. Federal Energy Regulatory Commission*, 859 F.3d 325, 332-339 (5th Cir. 2017) (affirming dismissal of case brought by regulated energy company against governmental regulator where energy company sought declaration against regulator that it was prohibited from imposing monetary penalties through administrative in-house proceedings because regulator had not yet brought such proceedings, rendering the dispute unripe); *ACH Properties, Inc. v. Contreras-Sweet*, No. 16-200, 2017 WL 1396093, at *3-5 (S.D. Tex. Jan. 19, 2017) (dismissing declaratory judgment case where plaintiffs sought declaration that Small Business Administration was precluded from enforcing loan guarantee where SBA had not yet sought to enforce such guarantee).

[41] *Orix Credit Alliance*, 212 F.3d at 895 (quoting *New Orleans Public Service, Inc. v. Council of New Orleans*, 833 F.2d 583, 586-87 (5th Cir. 1987)).

4831-0380-3066v3
2941996-000001 04/17/2020

1.    **St. Angelo's Guilty Plea Appears To Prohibit His Receipt Of The Funds At Issue.**

St. Angelo pled guilty to committing serious felonies in connection with his role at the Bank and the Directors thus understandably question whether St. Angelo is entitled to Policy proceeds in light of his intentional criminal misconduct. Indeed, Zurich apparently previously advised St. Angelo he was *not* entitled to the $270,872.85 it subsequently deposited in the registry of the Court in light of his admitted misconduct and requested a claw back of the $656,044.18 in Policy proceeds it had previously paid.[42] The basis for Zurich's position was an exclusion in the Policy which prohibits coverage for an insured who engages in a deliberately fraudulent act or willful violation, or gains any remuneration to which the insured is not legally entitled.[43] Pertinent case law has upheld similar exclusions when insureds – like St. Angelo – have pled guilty.[44]

A single case from a Texas district court has held otherwise, stating that the insurance exclusion is not triggered until "final adjudication" which that court interpreted as a defendant's sentencing.[45] However, to claim, as St. Angelo apparently did to Zurich, that he has yet to receive a "final adjudication" of his guilt is farcical. On June 28, 2019, when St. Angelo pled guilty, the Court accepted St. Angelo's guilty plea with the Government and "adjudged" him guilty on that date.[46] St. Angelo himself acknowledges he is actively cooperating with the Government, recognizing his sentencing date will likely occur after his cooperation has ceased.[47] There is no suggestion, for example, that St. Angelo intends to withdraw from his guilty plea or suddenly

---

[42] *See* Rec. Doc. No. 87-4 (Ex. A to St. Angelo's Motion for Partial Summary Judgment) at p. 4.

[43] *See id.*

[44] *See Herley Industries, Inc. v. Federal Ins. Cos., Inc.*, No. 08-5377, 2009 WL 2596072, at *7-10 (E.D. Pa. Aug. 21, 2009) (finding insured's guilty plea not distinct from a final adjudication); *First Nat'l Bank Holding Co. v. Fidelity & Deposit Co. of Md.*, 885 F. Supp. 1533, 1537 (N.D. Fla. 1995) (finding frivolous plaintiff's contention that criminal convictions were not final adjudications because they were based on guilty pleas, rather than jury verdicts).

[45] *See In re Enron Corp. Secs., Derivative, and ERISA Litig.*, 391 F. Supp. 2d 541, 575 (S.D. Tex. 2005).

[46] *See United States v. St. Angelo*, No. 19-CR-00055 (E.D. La. 2019) (Rec. Doc. No. 25 – Minute Entry noting Court's acceptance of St. Angelo's guilty plea).

[47] *See, e.g.* Rec. Doc. No. 87-1 (St. Angelo's Memorandum in Support of Motion for Summary Judgment) at pp. 5-6.

contradict his prior sworn admissions of criminal conduct. Thus, the claim that he has not received a final adjudication of his guilt is simply semantics.

Furthermore, even if this Court were to follow *Enron* (and disregard the other cases that hold otherwise), judicial estoppel precludes St. Angelo from collecting the funds currently in the registry of the Court. In *Enron*, though the district court held that an insured's guilty plea is not considered a "final adjudication," it nonetheless held that the insured at issue there (Andrew Fastow) was not entitled to coverage because principles of judicial estoppel prevented him from taking contrary positions in litigation – acknowledging his guilt in the criminal proceedings while maintaining his innocence in parallel civil proceedings – to maximize insurance proceeds.[48] Here, St. Angelo has pled guilty and acknowledged a slew of intentional, criminal wrongdoing in connection with his guilty plea – a position that was accepted by that court in June 2019.[49] Several months later, however, St. Angelo asserted he did not materially misrepresent anything to his malpractice carrier (Continental) – including St. Angelo's underlying knowledge of, or participation in, criminality in connection with his role at the Bank – in procuring that insurance coverage.[50] Likewise, less than two months after pleading guilty, St. Angelo moved to dismiss the case brought against him by the Bank's Committee of Unsecured Creditors arguing, among other things, that it had failed to state a claim against him, including any claim arising from St. Angelo's wrongful conduct associated with prior role and relationship at the Bank.[51] Advancing inconsistent positions – *e.g.*, on the one hand, acknowledging committing a years-long criminal scheme to

---

[48] *See In re Enron*, 391 F. Supp. 2d at 576-77.

[49] *See United States v. St. Angelo*, No. 19-CR-00055 (E.D. La. 2019) (Rec. Doc. No. 25 – Minute Entry) (Rec. Doc. No. 28 – St. Angelo Factual Basis).

[50] *See Continental Casualty Co. v. St. Angelo, et al.*, No. 19-CV-13382 (E.D. La. 2019) (Rec. Doc. No. 12-1 – St. Angelo's Memorandum in Support of his Motion to Stay Civil Proceeding at p. 2 n. 1) (denying he deceived his malpractice carrier concerning any criminality) (attached as Exhibit B).

[51] *See Official Committee of Unsecured Creditors of First NBC Bank Holding Co. v. Ryan, et al.*, No. 2:19-CV-10341 (E.D. La. 2019) (Rec. Doc. No. 81-1 – St. Angelo's Memorandum in Support of Motion to Dismiss).

4831-0380-3066v3
2941996-000001 04/17/2020

defraud the Bank in criminal litigation, and on the other hand, simultaneously arguing that he did not do anything wrong in parallel civil litigation – impermissibly allows litigants, like St. Angelo, to "play[] fast and loose with the courts to suit the exigencies of self-interest," and is precisely the reason why the doctrine of judicial estoppel exists.[52]  At a minimum, further factual development (including discovery as to St. Angelo's positions in these varying litigation matters) is required to determine whether he is entitled to the funds in the registry of the Court; accordingly, the present controversy is not ripe.

### 2. St. Angelo's Apparent Receipt Of Insurance Proceeds From A Separate Carrier Also Precludes His Receipt Of The Funds At Issue.

The Directors are also concerned about St. Angelo's potential receipt of insurance proceeds from another carrier for the same claim(s) and/or loss(es), a circumstance precluded by Zurich's Policy.  St. Angelo's malpractice insurance carrier, Continental, has filed suit against him, laying out in detail the claims St. Angelo made for proceeds from Continental.  More specifically, Continental has alleged that, in June of 2017, St. Angelo advised Continental of a potential claim as a result of the investigation that was then-ongoing by the FDIC in its capacity as receiver.[53]  Several months later, St. Angelo furthered this noticed claim by providing Continental an FDIC Order of Investigation, a subpoena issued by the FDIC, and correspondence from the FDIC in its capacity as receiver.[54]  Three months after that, St. Angelo provided another set of FDIC subpoenas to Continental, again advancing his claim against that carrier.[55]  In the months thereafter, St. Angelo continued to keep Continental informed as to the nature the claims, including providing a

---

[52] *Enron*, 391 F. Supp. 2d at 576 (citing *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004).
[53] *See Continental Casualty Co. v. St. Angelo, et al.*, No. 2:19-CV-13382 (E.D. La. 2019) (Rec. Doc. No. 1 – Continental Casualty Company's Complaint at ¶ 50).
[54] *See id.* at ¶¶ 52-53.
[55] *See id.* at ¶¶ 55-57.

4831-0380-3066v3
2941996-000001 04/17/2020

demand letter issued by the FDIC, in its capacity as receiver, against St. Angelo.[56] For these activities, including specifically the FDIC-R investigation, Continental agreed to cover St. Angelo's claim.[57]

The problem presented by Continental's covering of St. Angelo's claim is obvious: Zurich was apparently paying St. Angelo's claim for the very same activities. As detailed in Zurich's Interpleader Complaint, St. Angelo provided notice to Zurich – and Zurich apparently covered – his claims for activities associated with, among other things, the FDIC-R demand letter and subpoenas issued by the FDIC-R.[58] Zurich's Policy specifically provides:

> If any matters covered by this policy are insured under any other valid and collective policy(ies) issued to any Insured, then this policy shall act as an excess insurance policy and will provide coverage, subject to limitations, conditions, provisions and other terms, only to the extent that the amount is in excess of the amount of such other insurance whether such other insurance…[59]

In other words, if another policy – like St. Angelo's malpractice carrier, Continental – was covering the same insured (St. Angelo) for the same matter(s) (like the FDIC-R investigation, demand letter, and subpoenas), the Zurich Policy is to act as an "excess insurance policy," only to provide coverage to the extent that the amount is in excess of the other insurance.[60] It thus appears – at least at this point without any further factual development, which would be required – that St. Angelo may have "double dipped" into multiple insurance policies for the same matters, including (importantly), using Policy proceeds the Directors (and other insureds) would be entitled to use to defend against the aforementioned investigations. At the barest minimum, to determine whether it was appropriate for Zurich to have paid St. Angelo previously (including the $656,044.18 it

---

[56] *See id.* at ¶¶ 58-62.
[57] *See id.* at ¶¶ 51, 54, 61, 63.
[58] *See* Rec. Doc. No. 1 (Zurich's Compl.) at p. 10 (¶¶ 45-46).
[59] *See* Rec. Doc. No. 1-1 (Ex. A to Zurich's Compl. at p. 20) (Zurich Policy No. DOP 9311203-04 at General Terms (p. 13 of 15), § XI "Other Insurance").
[60] *Id.*

acknowledged paying as of July 2019), and to determine whether St. Angelo is entitled to the

$270,872.85 currently deposited in the registry of the Court, further factual development

(including discovery in the *Continental Casualty* litigation concerning what was represented to

Zurich and Continental by St. Angelo) would be required.  Thus, for this separate reason, Zurich's

Complaint does not currently present a ripe controversy.

## V.     ALTERNATIVELY, THIS MATTER SHOULD BE STAYED UNTIL THE CONTROVERSY IS RIPE.

### A.     A Stay Is Warranted Until Such Time As The Dispute Ripens.

In all events, even if this matter is not subject to dismissal because *at some point* it may be

ripe, the case should be stayed *until that point*.  In other words, as discussed at length above, the

instant controversy may be ripe *if* the funds deposited in the registry of the Court are needed by

the Directors; at that point, the matters presented by Zurich's Complaint – whether St. Angelo is

entitled to those funds, or whether the other insureds (the Directors) are entitled to them – are

properly justiciable.  Likewise, because further factual development is required (for example, to

determine the scope of St. Angelo's guilty plea, whether judicial estoppel prevents St. Angelo from

taking contrary positions, and whether St. Angelo improperly double-dipped from multiple

insurance policies), St. Angelo should not, at this point, receive the funds deposited in the registry

of the Court.

### B.     A Stay Is Warranted In View Of St. Angelo's Ongoing Criminal Case.

As noted above, the United States is currently conducting an investigation relating to

potential criminal activities by officers and employees of the Bank.  In other civil cases in this

district involving the Bank's failure, the Government and others (*including St. Angelo*) have

intervened and sought a stay of proceedings so as to not prejudice the criminal investigation which

apparently focuses on, among other things, the falsification of records associated with certain Bank

4831-0380-3066v3
2941996-000001 04/17/2020

borrowers; the concealing of the true financial status, and true performance, of certain Bank borrowers; the misrepresentation of the purpose of loans; the providing of false and/or inaccurate financial statements to the Bank; the creation of false tax credit investments in connection with certain Bank loans; and the unjust enrichment of certain Bank officers and/or employees.[61] During the pertinent time period, St. Angelo served as the Bank's general counsel, was a substantial borrower of Bank funds, and played a substantial role in connection with the functioning of the Bank.[62] Indeed, St. Angelo's guilty plea reveals as much. This case – and its thorny issues of whether St. Angelo is entitled to coverage, what acts may exclude his coverage, and whether Zurich wrongfully paid Policy proceeds to him – presents issues that directly overlap with the criminal case and would prejudice that ongoing investigation. As courts from this district have already recognized, a stay is warranted.[63]

"[I]t is within the power of the district curt, and in accord with common practice, to stay [a] civil action until the criminal case or the likelihood of a criminal case is ended."[64] In the Fifth Circuit, courts consider the following six factors in deciding whether to stay a civil action in favor of a criminal proceeding: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously weighed against the prejudice to the plaintiff caused by the delay; (4) the private interests of and burden on the

---

[61] *See* Ex. B (*Continental Casualty Co. v. St. Angelo, et al.*, No. 19-CV-13382 (E.D. La. 2019) (Rec. Doc. No. 12-1 – St. Angelo's Memorandum in Support of his Motion to Stay Civil Proceeding at pp. 3-4)).

[62] *See United States v. St. Angelo*, No. 19-CR-00055 (E.D. La. 2019) (Rec. Doc. No. 28 – St. Angelo Factual Basis).

[63] *See Continental Casualty Co. v. St. Angelo, et al.*, No. 19-CV-13382, 2020 WL 425865 (E.D. La. Jan. 27, 2020) (Order Granting St. Angelo's Motion to Stay) (attached as Exhibit C); Exhibit A (*Official Committee of Unsecured Creditors of First NBC Bank v. Ryan, et al.*, No. 19-CV-10341, 2019 WL 3858953, at *1-4 (E.D. La. Aug. 16, 2019) (discussing ongoing criminal proceedings involving failure of First NBC Bank); *Academy Place LLC v. Ryan, et al.*, No. 2:18-CV-10881, 2019 WL 3974793 (E.D. La. Aug. 22, 2019) (Order Granting Motion to Stay) (attached as Exhibit D).

[64] *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007); *see also SEC v. First Fin. Grp, Inc.*, 659 F.2d 660, 668 (5th Cir. 1981); *Wehling v. CBS*, 608 F.2d 1084 (5th Cir. 1980).

4831-0380-3066v3
2941996-000001 04/17/2020

defendant; (5) the interests of the courts; and (6) the public interest.[65] Application of these six

factors – as St. Angelo himself acknowledged in seeking (and obtaining) a stay in the civil case

brought by his malpractice carrier, Continental – counsels in favor of a stay here.

**1.     Substantial Overlap Exists Between This Proceeding And the
Ongoing Criminal Investigation And Thus, A Stay Is Warranted.**

First, substantial overlap exists between the criminal and civil proceedings.  The criminal

case brought by the Government (to which St. Angelo has pled guilty) involves St. Angelo's

intentional fraudulent activities (including falsifying records concerning tax credits and loans),

while this civil proceeding concerns whether those same activities preclude his insurance coverage

under Zurich's Policy and/or whether St. Angelo is entitled to the funds in the registry of the Court

notwithstanding his criminal activities.   A determination, therefore, of whether St. Angelo is

entitled to the relief he seeks will necessarily entail discovery into St. Angelo's activities –

including the very same ones he has been charged with in his criminal case (and may therefore

require an invocation of the Fifth Amendment by St. Angelo).  Thus, substantial overlap between

the two matters exist, weighing in favor of a stay.[66]  Importantly, St. Angelo likewise argued that

his criminal case was nearly identical to a civil suit brought by his malpractice carrier, thus

asserting this factor counseled in favor of a stay in that suit.[67]

**2.     The Criminal Case Is Ongoing, Weighing in Favor Of A Stay.**

The second factor (the status of the criminal case) likewise counsels in favor of a stay.

"[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings

---

[65] *See, e.g. Southeast Recovery Group, LLC v. BP America, Inc.*, 278 F.R.D. 162, 166-67 (E.D. La. 2012) (quoting *Securities & Exchange Commission v. Offill*, No. 3:07-CV-1643, 2008 WL 958072, at *2-3 (N.D. Tex. Apr. 9, 2008)).

[66] *See, e.g. Southeast Recovery Group*, 278 F.R.D. at 168 (where substantial overlap between criminal case and civil case existed, stay was warranted).

[67] *See* Ex. B (*Continental Casualty Co. v. St. Angelo, et al.*, No. 19-CV-13382 (E.D. La. 2019) (Rec. Doc. No. 12-1 – St. Angelo's Memorandum in Support of Motion to Stay Civil Proceeding at pp. 6-7)).

20

is whether a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter."[68]   Here, as noted above, St. Angelo has been charged with and pled guilty to serious felony offenses and will be required to defend those actions under oath should discovery proceed in this case.  For example, for the Directors to fully ascertain whether Zurich's exclusions apply (including its exclusion precluding coverage to an insured who engages in deliberate fraud), should discovery move forward, St. Angelo will be required to discuss those activities – likely in advance of his testimony (and ongoing cooperation with the United States) in any criminal proceeding.  This places St. Angelo in an untenable position, potentially interferes with the ongoing criminal investigation, and renders this factor in favor of a stay.  Once again, in his malpractice lawsuit, St. Angelo argued the same – that the second factor presented a strong case for a stay.[69]

### 3.      St. Angelo's Interests Also Counsel In Favor Of A Stay.

The third factor – plaintiff's interest (presumably, the party seeking relief, St. Angelo here) – also weighs in favor of a stay.  While St. Angelo may want the funds sitting in the registry of the Court, he clearly has an interest in avoiding this matter moving into discovery – and exposing himself to deposition where he will have to either plead the Fifth Amendment or discuss his criminal activities (in advance of his cooperation with the U.S. Department of Justice).  That, of course, is the same position St. Angelo took in his malpractice case arguing, for example, that he should not be required to choose between discovery obligations and the exercise of his Fifth Amendment rights.[70]  Thus, this factor counsels in favor of a stay.

---

[68] *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980); *see also United States v. Fresenius Medical Care*, 571 F. Supp. 2d 758, 762-63 (W.D. Tex. 2008).

[69] *See* Ex. B (*Continental Casualty Co. v. St. Angelo, et al.*, No. 19-CV-13382 (E.D. La. 2019) (Rec. Doc. No. 12-1 – St. Angelo's Memorandum in Support of Motion to Stay Civil Proceeding at pp. 8-9)).

[70] *See id.* (*Continental Casualty Co. v. St. Angelo, et al.*, No. 19-CV-13382 (E.D. La. 2019) (Rec. Doc. No. 12-1 – St. Angelo's Memorandum in Support of Motion to Stay Civil Proceeding at pp. 9-10)).

4. **The Directors' Interests Support A Stay.**

The interests of the defendants (including movants here) also weigh in favor of a stay. As noted above, the amount deposited in the registry of the Court may *never* result into a ripe controversy in this case. The Directors do not wish to continue to expend time and money to litigate an issue that is squarely in the province of Zurich, and one that may never present an immediate controversy. This factor thus weighs in favor of a stay.

5. **The Court's Interests and The Public's Interests Counsel In Favor Of A Stay.**

The last two factors – the court's interest and the public's interest – also support a stay. In view of the fact that the controversy at issue is not yet ripe and may never be ripe, it would be a waste of judicial resources to litigate this case, particularly if it places St. Angelo in the untenable position of having to assert his Fifth Amendment rights during the pendency of his criminal case. As noted above, in a matter of months, the dispute presented by Zurich's Complaint may be resolved and thus, judicial economy counsels in favor of a stay.

As it relates to the public's interest, as courts have held, the public has an interest in ensuring that the criminal process is not subverted by ongoing civil cases; indeed, "administrative policy gives priority to the public interest in law enforcement."[71] Where, as here, there are parallel civil and criminal proceedings, "the criminal case is of primary importance to the public," whereas the civil case, which will result in only monetary damages, "is not of an equally pressing nature."[72] Thus, this factor weighs in favor of a stay.

---

[71] *Southeast Recovery Group*, 278 F.R.D. at 169 (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962)).

[72] *Square 1 Bank v. Lo*, No. 12-CV-5595, 2014 WL 7206874, at *5 (N.D. Cal. Dec. 17, 2014) (quoting *SEC v. Alexander*, No. 10-CV-4535, 2010 WL 5388000, at *6 (N.D. Cal. Dec. 22, 2010)).

6.      **St. Angelo Has Previously Requested A Stay Of Civil Proceedings Involving His Insurers.**

As noted above, in 2019, St. Angelo was sued by his malpractice carrier, Continental, which sought to rescind his coverage in light of his guilty plea and admitted criminal conduct. In addressing the very same factors above, St. Angelo took the position the Directors have taken here – that a stay of that civil matter is warranted given the factual overlap, the interests of the parties, the interest of the Court, and the public's interest. In light of this prior position, St. Angelo should not be permitted to use his criminal case as a sword and shield – seeking to stay certain civil matters that place him on the defensive, while seeking to advance certain civil matters as a claimant. The same rationale applies and, because St. Angelo's Fifth Amendment right against self-incrimination continues to apply through the duration of his criminal case (including pre-sentencing activity[73] and sentencing)[74] this matter should be stayed until the conclusion of the criminal proceeding. Indeed, in other cases involving the failure of the Bank and St. Angelo, courts in this district have done just that.[75]

## VI.      CONCLUSION

For all the reasons set forth above, this matter should be dismissed and/or stayed. First, this Court does not have jurisdiction over the Policy proceeds at issue in Zurich's Complaint, mandating dismissal. Second, assuming this Court does have jurisdiction, Zurich's Complaint does not yet present a ripe, justiciable controversy and, accordingly, it should be dismissed. Alternatively, because the controversy at issue *may* become ripe in the future, should certain

---

[73] *See, e.g. Estelle v. Smith*, 451 U.S. 454, 463 (1981); *Jones v. Cardwell*, 686 F.2d 754, 756 (9th Cir. 1982).

[74] *See, e.g. Mitchell v. United States*, 526 U.S. 314, 324-25 (1999).

[75] *See* Ex. C (Order Granting Motion to Stay Civil Case in *Continental Casualty Co. v. St. Angelo, et al.*, No. 19-CV-13382 (E.D. La. Jan. 27, 2020)); Exhibit A (*Official Committee of Unsecured Creditors of First NBC Bank v. Ryan, et al.*, No. 19-CV-10341, 2019 WL 3858953, at *1-4 (E.D. La. Aug. 16, 2019) (discussing ongoing criminal proceedings involving failure of First NBC Bank); Exhibit D (Order Granting Motion to Stay in *Academy Place LLC v. Ryan, et al.*, No. 2:18-CV-10881 (E.D. La. 2018).

23

contingent events occur, the Court should stay this matter for further development of these proceedings. Finally, as a separate request, and pursuant to St. Angelo's *own* positions, the Court should stay this case in view of St. Angelo's ongoing criminal case.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

*s/ Brian M. Ballay*
JAN M. HAYDEN (#06672)
NANCY SCOTT DEGAN (#01819)
BRIAN M. BALLAY (#29077)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
jhayden@bakerdonelson.com
ndegan@bakerdonelson.com
bballay@bakerdonelson.com

**COUNSEL FOR WILLIAM D. AARON, JR.,
HERBERT W. ANDERSON, DALE B.
ATKINS, JOHN C. CALHOUN, WILLIAM
CARROUCHE, LEANDER J. FOLEY, JOHN
FENNER FRENCH, LEON L. GIORGIO, JR.,
SHIVAN GOVINDAN, LAWRENCE BLAKE
JONES, LOUIS LAURICELLA, MARK
MERLO, HERMANN B. MOYSE, III, GRISH
ROY B. PANDIT, JAMES C. RODDY,
CHARLES C. TEAMER, SR., JOSEPH F.
TOOMY, RICHARD M. WILKINSON**

4831-0380-3066v3
2941996-000001 04/17/2020

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served via email through the Court's

CM/ECF Electronic Notification System to all counsel of record who are receiving notice through

this Court's CM/ECF Electronic Notification System and by First Class Mail upon the parties on

the attached service list who do not receive notice through the CM-ECF system.

New Orleans, Louisiana, this 17th day of April 2020.

*s/ Brian M. Ballay*
Brian M. Ballay

4831-0380-3066v3
2941996-000001 04/17/2020