**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 11 |
| FIRST NBC HOLDING COMPANY | | CASE NO. 17-11213 |
| Debtor | * | |
| | * | SECTION: "A" |
| ZURICH AMERICAN INS. CO. | | |
| Plaintiff | * | |
| | | ADV. P. NO. 20-01005 |
| VERSUS | * | |
| | | |
| GREGORY ST. ANGELO, ET AL | * | |
| Defendants | | |
| | * | |

\* \* \*

**UNITED STATES'S MEMORANDUM IN SUPPORT OF**
**ITS MOTION TO INTERVENE AND STAY ADVERSARY PROCEEDING**

The Attorney for United States of America, through the undersigned Assistant United States Attorneys (the "United States" or the "Government"), moves this Honorable Court to intervene under Rule 7024 of the Federal Rules of Bankruptcy Procedure for the purpose of staying the adversary proceeding until the conclusion of an ongoing related federal criminal investigation. The criminal investigation involves many of the same parties, facts, witnesses, and circumstances at issue in the instant adversary proceeding. Should this proceeding continue and involve discovery, as it threatens to do, it will interfere with the criminal investigation. Most imminently, two parties, Michael Lulich and Frank Fugetta, have sought to compel St. Angelo to testify about non-urgent issues that can wait until the resolution of the criminal matter. As explained below, a stay will not significantly prejudice the parties, but will irreparably harm the criminal case. Alternatively, the United States Requests a stay of all discovery, including the deposition of Gregory St. Angelo.

## I.      BACKGROUND

The United States is in the midst of an ongoing criminal investigation involving First NBC Bank, as evidenced by the publicly filed charges against three individuals, Jeffrey Dunlap ("Dunlap"), Gregory St. Angelo ("St. Angelo"), and Kenneth Charity ("Charity"). *See* Exhibit A, (Bill of Information in *United States v. Jeffrey Dunlap*, Criminal No. 18-99 "B" (E.D. La. May 14, 2018) (Lemelle, J.) (the "Dunlap Criminal Case"); Bill of Information in *United States v. Gregory St. Angelo*, Criminal No. 19-55 "J" (E.D. La. March 22, 2019) (Barbier, J.) (the "St. Angelo Criminal Case"); Bill of Information in *United States v. Kenneth Charity*, Criminal No. 19-90 "I" (E.D. La. May 14, 2018) (Africk, J.) (the "Charity Criminal Case")) (collectively, the "Bills of Information" and the "Charged Defendants"). The Charged Defendants have pleaded guilty and are cooperating in the larger investigation, which involves First NBC Bank employees, borrowers, and others. Relevant witnesses will include First NBC Bank employees, loan officers, borrowers, officers, directors, auditors, and regulators. In the St. Angelo criminal case (the "St. Angelo Criminal Case"), St. Angelo has pleaded guilty to conspiring with others, including Bank President A and Bank Officer B, to committing bank fraud against First NBC Bank. *See* Exhibit B, Plea Agreement and Factual Basis. In his factual basis, he has admitted to being the general counsel of the bank, operating under a consulting agreement with the bank, and to committing intentionally fraudulent acts. *Id.*

The Government's investigation is ongoing, and because of grand jury secrecy rules, facts beyond what has been publicly alleged in the Bills of Information and other public filings, cannot be disclosed. However, should other borrowers, First NBC Bank officers, directors, or employees be charged, the Government's proof will involve St. Angelo's testimony about his role at First NBC Bank as borrower and general counsel, and the wrongful acts he committed and/or witnessed.

In its Complaint, Zurich American Insurance Company ("Zurich") requests that this Court determine whom, among the defendants, is entitled to insurance proceeds amounting to $ 270,872.85, which St. Angelo claims are defense costs owed to him under the insurance policy. Rec. Doc. 1 at 1-2, ¶¶ 56, 61-63. The Complaint focuses on the controversy surrounding the payment of defense costs for Gregory St. Angelo. *Id.* at ¶ 50. Zurich alleges that it informed St. Angelo's attorneys that due to his guilty plea, it would no longer pay defense costs and would seek reimbursement for attorney's fees and costs it previously paid. *Id.* at ¶ 51. The Complaint alleges that in response to Zurich's decision to deny coverage, St. Angelo has threatened to initiate a lawsuit against Zurich. *Id.* at ¶ 53. Zurich alleges that it has a duty not to favor any one insured over another, that paying St. Angelo's costs may undermine its duty of good faith to other insureds, and that paying St. Angelo's costs would thus subject it to inconsistent and conflicting demands. *Id.* at ¶¶ 54-56.

All defendants have answered the Complaint and some have alleged cross-claims and counterclaims. As of May 4, 2020, defendants Fugetta and Lulich and Ballero withdrew their counterclaims against Zurich because Zurich recently paid their costs. The cross-claims filed by Fugetta and Lulich remain, and allege that St. Angelo should be denied coverage. Rec. Doc. 67. Gregory St. Angelo has filed a Motion to Dismiss the cross-claims filed by Lulich and Fugetta, and a Motion for Partial Summary Judgment on the issue of whether he is an insured defendant. Rec. Doc. 84 and 87.

The Board of Director Defendants have filed a Motion to Dismiss or Stay Adversary Proceedings. Rec. Doc. 92.

Lulich and Fugetta have requested discovery and to take the deposition of Gregory St. Angelo to resolve whether St. Angelo is an insured party and entitled to reimbursement for defense

costs. The deposition is tentatively set for May 19, 2020. Lulich and Fugetta have proposed 25

topics to cover in the deposition. The topics are broad in scope, cover vast areas of St. Angelo's

role at First NBC Bank, and seek to discuss the role he had on committees at First NBC Bank, one

which is a regulatory committee, subject to Bank Secrecy rules. Topics include "services

performed by St. Angelo for First NBC"; "St. Angelo's status as a member of any committee of

First NBC"; "St. Angelo's knowledge of the duties and responsibilities of the directors and officers

of First NBC"; St. Angelo's knowledge of bylaws and a 2012 board resolution; the basis for stays

filed in other cases where St. Angelo is a defendant; and "all issues raised by St. Angelo in his

affidavit for motion for summary judgment."

As recently as May 3, 2020, Lulich and Fugetta have filed a motion to compel St. Angelo's

deposition and have requested a hearing on an expedited basis. Rec. Doc. 107. Their motion

underscores the importance of a stay as it highlights in more detail the areas Lulich and Fugetta

plan to explore in his deposition. Those areas delve squarely into the substance of St. Angelo's

guilty plea and potential testimony in the ongoing criminal matter. *Id.* at 5-6. Lulich and Fugetta

have stated that they want to develop factual issues related St. Angelo's role as general counsel of

First NBC Bank, as a borrower, his actions in the conspiracy, the loans he had at the Bank, and the

$ 9.6 million dollars he received in purported tax credit investments from the Bank. *Id.* They also

seek to determine how much of St. Angelo's defense relates to his status as borrower or general

counsel. *Id.* All of these topics relate to St. Angelo's guilty plea, the factual basis for his guilty

plea, and his cooperation.

The Government has a significant interest in intervening in this case to stay discovery in

order to protect its law enforcement interest in managing the scope and manner of discovery in the

criminal case, the integrity of the criminal proceedings, and the truth-seeking process. The Fifth

Circuit and district courts have created a six-factor test based on *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962), that guides trial courts in determining whether a stay is warranted pending the outcome of a criminal proceeding. As discussed below, all six factors weigh toward granting a stay of this adversary case. Prejudice to Zurich and the other parties is speculative, at this point. Zurich seeks to force a decision from this Court on whether to pay St. Angelo's attorney's fees. However, whether this Court decides now, or after the resolution of the criminal case, will not affect the legal determination of whether St. Angelo is entitled to coverage. In addition, as the Board of Directors have pointed out in their Motion to Dismiss or Stay, Lulich and Fugetta have not alleged that insurance proceeds are in danger of being depleted, therefore their interests will not be prejudiced if this motion is stayed. In contrast, the criminal investigation will be prejudiced and its truth-seeking mission thwarted should the Court allow the exchange of discovery or taking of St. Angelo's deposition.

## II.     **ARGUMENT AND AUTHORITIES**

### A.     **The Court Should Grant the Government's Motion to Intervene.**

Rule 7024 which applies Rule 24 of the Federal Rules of Civil Procedure provides for intervention as "of right" and "permissive" intervention. Intervention as of right "must" be granted when the movant timely files a motion "claim[ing] an interest relating to the property or transaction which is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Permissive intervention may be granted where the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). The Government's Motion satisfies both of these provisions.

The Court should grant leave to intervene as of right because the Government has an interest in the adversary proceeding that is not adequately protected by the parties in this case. Specifically, the United States has a strong law enforcement interest in managing the scope and manner of discovery in the criminal case, protecting the integrity of the criminal proceedings and the truth-seeking process, and preventing the discovery process from impairing or influencing the evidence and testimony that is expected to be offered in the criminal case. *See, e.g.*, *SEC v. Mutuals.com, Inc.*, No. 3:03-CV-2912-D, 2004 WL 1629929, at *1-*2 (N.D. Tex. July 20, 2004) (granting U.S. Attorney leave to intervene as of right to stay discovery in SEC enforcement action in deference to related criminal case based on law enforcement interest, and inadequacy of SEC to protect U.S. Attorney's interest given SEC's obligation to follow civil discovery rules).

Alternatively, the Court should grant permissive intervention because this adversary proceeding and the criminal case share common questions of law and fact. Zurich's Complaint and the cross-claims filed by Lulich and Fugetta rely on the allegations in the St. Angelo Criminal Case where St. Angelo pleaded guilty to conspiracy to commit bank fraud. In the Bill of Information the Government alleges that St. Angelo conspired with Bank President A, Bank Officer B and others, including other bank employees, to commit fraud against First NBC Bank. St. Angelo's guilty plea admitting to the allegations in the Bill of Information and in the factual basis form the basis of Zurich's argument that it should deny St. Angelo coverage. Similarly, Fugetta and Lulich argue that St. Angelo's guilty plea supports their argument that St. Angelo should be denied coverage, and they should be able to develop facts through the discovery process to determine whether he is entitled to coverage.

The Government is not able to divulge specific facts about its ongoing investigation of bank fraud by individuals employed by First NBC Bank. However, St. Angelo's counsel has

previously confirmed in the press that he is cooperating with an ongoing investigation, so there is a high probability that his testimony will be likely, and will relate to the charges he pleaded guilty to, as well as any charges resulting from that cooperation. The Government confirms that as of this pleading, St. Angelo's cooperation remains active and ongoing.

Courts routinely allow the Government to seek a stay of discovery in civil cases until the resolution of related criminal cases because "the similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay." *Dominguez v. Hartford Fin. Servs. Grp., Inc.,* 530 F. Supp .2d 902, 906-07 (S.D. Tex. 2008); *see also Waste Management of Louisiana, LLC v. River Birch, Inc.*, Civil Action No. 11–24052012, 2012 WL 520660, at *4 (E.D. La. Feb. 15, 2012) (noting that the overlap of facts, issues, and conduct weigh heavily in favor of a stay); *Southeast Recovery Group, LLC v. BP America, Inc.*, 278 F.R.D. 162, 167 (E.D. La. 2012) (same).

Intervention is especially justified where, as here, the Government seeks to intervene to stay discovery in order not to disrupt the progress of a criminal investigation. *Warren v. Geller,* No. CIV. 11-2282, 2013 WL 1455688, at *1 (E.D. La. Apr. 9, 2013) (granting government's motion to intervene and stay civil proceedings, and noting that allowing discovery to continue could disrupt the progress of the criminal investigation); *see also SEC v. Stanford International Bank No.* 3:09-CV-298-N, 2010 WL 11492395, at *3 (N.D. Tex. Jan. 5, 2010) (granting government's motion to intervene and stay discovery because the balance of interests weighed in favor of staying discovery pending resolution of the parallel criminal case). Accordingly, the Court should grant the Government's Motion to Intervene.

**B.      Courts Routinely Grant Stays of Civil Proceedings Pending the Outcome of Criminal Investigations.**

This Court has the authority to stay civil proceedings pending the outcome of an ongoing criminal investigation. *See, e.g. United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *Waste Management of Louisiana, LLC v. River Birch, Inc.*, Civil Action No. 11–24052012, WL 520660, at *3-6 (E.D. La. Feb. 15, 2012); *Southeast Recovery Group, LLC v. BP America, Inc.*, 278 F.R.D. 162, 165-168 (E.D. La. 2012); *S.E.C. v. Offill*, Civil Action No. 3:07–CV–1643–D, 2008 WL 958072, at *1 (N.D. Tex. Apr. 9, 2008); *Dominguez*, 530 F. Supp. 2d at 903-08 (S.D. Tex. 2008); *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992). The seminal case on this issue in this circuit is *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962), wherein the government sought a stay of discovery from individual plaintiffs who filed a tax refund case. In *Campbell*, Judge Wisdom outlined the following roadmap for the trial courts considering whether to grant a stay civil discovery proceedings pending the result of an ongoing criminal investigation or prosecution:

> There is a clearcut distinction between private interests in civil litigation and the public interest in a criminal prosecution, between a civil trial and a criminal trial, and between the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure. [B]ut these distinctions do not mean that a civil action and a criminal action involving the same parties and some of the same issues are so unrelated that in determining good cause for discovery in the civil suit, a determination that requires the weighing of effects, the trial judge in the civil proceeding should ignore the effect discovery would have on a criminal proceeding that is pending or just about to be brought. The very fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.

*Id.* at 487. *Campbell* advised trial courts to be sensitive to the differences of the policies and objectives of the "well-stocked battery of discovery procedures" of the Federal Rules of Civil Procedure and the "far more restrictive" rules governing criminal procedure. *Id.* Otherwise,

defendants in a criminal proceeding may be able to receive information through the civil discovery period that they would not have been privy to under the more stringent criminal discovery rules. *Id.* at n. 12. It is this concern that courts have repeatedly stressed present serious danger in permitting parallel cases. *See, e.g. Campbell*, 307 F.2d at 487; *Southeast Recovery Group*, 278 F.R.D. at 167 (citations omitted); *Dominguez*, 530 F. Supp. 2d at 907-08; *S.E.C. v. Mutuals.com, Inc.*, No. Civ.A.3:03-CV-2912-D, 2004 WL 1629929, *2 (N.D. Tex. July 20, 2004); *Agran v. City of New York*, 1996 WL 263023, at *2 (S.D.N.Y. May 16, 1996); *LaBianca*, 801 F. Supp. at 1010; *In re Ivan F. Boesky Secs. Litig.*, 128 F.R.D. 47, 50 & n.2 (S.D.N.Y. 1989) (citing cases); *In re Ahead by a Length, Inc.*, 78 B.R. 708, 711-12 (Bankr. S.D.N.Y. 1987).

District courts within the Fifth Circuit have considered several factors in determining whether a stay should be granted, including: "(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest." *Heller Healthcare Finance, Inc. v. Boyes,* No. Civ.A. 300CV1335D, 2002 WL 1558337, at *2 (N.D. Tex. July 15, 2002); *see also Waste Management*, 2012 WL 520660, at *3-4; *Southeast Recovery Group*, 278 F.R.D. at 166-67; *Dominguez*, 530 F. Supp. 2d at 905; *Mutuals.com*, 2004 WL 1629929, at *3; *State Farm Lloyds v. Wood*, Civil Action No. H-06-503, 2006 WL 3691115, at *2 (S.D. Tex. Dec. 12, 2006).

C.      **The Government Has Demonstrated the Special Circumstances and Prejudice Necessary to Support a Stay in This Matter.**

As set forth below, application of the factors noted above and the spirit of, among others, *Campbell,* weighs in favor of the Government's request to intervene and stay this adversary proceeding.

1.      **The facts of the criminal investigation are similar overlap with issues raised by the Complaint and Cross-Claim.**

Courts are clear that the similarities in the facts and issues between a civil suit and a criminal matter are a compelling if not "the most important" factor in the analysis of whether to grant a stay. *Waste Management,* 2012 WL 520660, at *4 (citing cases); *Dominguez,* 530 F. Supp. 2d at 907-08 ("the similarities of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay."); *Wood,* 2006 WL 3691115, at *2 (same); *Librado,* 2002 WL 31495988, *2 ("the most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues"). Here, there is a common nucleus of operative in the St. Angelo Criminal Case, the ongoing criminal matter, and the adversary proceeding. *See* Ex. A (Bills of Information). Specifically, the St. Angelo Criminal Case involves allegations that St. Angelo engaged in a conspiracy to defraud First NBC Bank.

While the ongoing investigation is broader than the facts alleged in the Bills of Information, the substance of the St. Angelo Criminal Case consists of the very same wrongful acts that Zurich relies on to deny coverage to St. Angelo. Similarly, the deposition of Gregory St. Angelo and any discovery that Fugetta and Lulich plan to take, will encroach on the same topics that St. Angelo pleaded guilty to: his role as borrower and general counsel at the Bank, and his actions in conspiring with others to defraud the Bank. Therefore, the identity of the factual allegations between the criminal investigation and the facts at issue in this adversary proceeding counsels strongly in favor of a stay. *See, e.g.*, *Waste Management,* 2012 WL 520660, at *4 (noting that the

10

similarities of the facts, issues, and conduct weigh heavily in favor of a stay); *Southeast Recovery Group,* 278 F.R.D. at 168; *Dominguez,* 530 F. Supp. 2d at 907-08 (granting motion to stay civil proceedings in part because of the "substantial overlap" of the issues in the civil and criminal matters).

**2. The criminal investigation is active and ongoing.**

The second factor - the status of the criminal investigation - also supports a stay. While the criminal investigation has produced charges against the Charged Defendants, the investigation into potential criminal violations of other First NBC Bank employees has been ongoing and is yet to result in other indictments. Courts, including the Fifth Circuit, are clear that the fact that a criminal investigation is still ongoing does not foreclose the availability of a stay of parallel civil proceedings in light of the other cited factors. *See, e.g.*, *Wehling v. Columbia Broadcasting System,* 608 F.2d 1084, 1089 (5th Cir.1979) (discovery stayed for three years during ongoing criminal investigation); *Waste Management,* 2012 WL 520660, at *3-6 (granting stay prior to indictment); *Mutuals.com,* 2004 WL 1629929, at *3 (noting that civil cases may be stayed where there is the possibility of a criminal charge); *Brumfield*, 727 F. Supp. at 284 (granting motion to stay where civil litigant was involved in criminal investigation). Indeed, grounds for granting a stay prior to an indictment are "often strongest before an indictment is handed down" because it is necessary to "protect an ongoing criminal investigation[] and pending grand jury hearings." *See Southeast Recovery Group*, 278 F.R.D.162, 167-68 (E.D. La. 2012) (citation omitted).

**3. The prejudice to the parties based on a delay of the adversary proceedings will not be substantial.**

While Zurich, the Plaintiff, has a financial incentive to proceed expeditiously in this matter, any delay caused by a stay will not significantly prejudice them. Indeed, they have already deposited money into the registry of the Court. They merely seek an order determining who is

entitled to the funds. Alternatively, they can seek judgment from the Court on the legal issues that can be ruled on based on the facts known to date, without the need for discovery or depositions. Similarly, Fugetta and Lulich will not suffer significant prejudice if a stay is granted. Indeed, they have not alleged with any detail how they would be prejudiced by a stay, but even if they had, it would necessarily involve substantial speculation. Whatever their predictions may be about some future deficiency in the insurance fund or about what percentage of St. Angelo's covered fees should be reimbursed, that uncertainty weighs in favor of grating a stay based on the Government's existing and established interests in preventing discovery in this bankruptcy action. This is made clear by the fact that Fugetta and Lulich request discovery to even determine whether, or to what extent, they are allegedly prejudiced by the stay of their dispute with St. Angelo. The Government needs no new facts to know that it would be prejudiced by a civil party deposing a defendant who is cooperating in an investigation into that same subject matter.

### 4.      The interests of the defendants support the Government's request for a stay.

The fourth factor - the interest of the defendants - cuts in favor of the United States' request for a stay. The Board of Director Defendants, who comprise 19 of the 24 defendants, have filed a motion to dismiss or stay the proceedings on the grounds that (1) the insurance policy is not property of the bankruptcy estate; (2) the controversy is not ripe because it is uncertain as to whether the directors will need the funds deposited by the directors since there are millions of dollars of insurance available; and (3) the adversary proceeding threatens to interfere with the criminal investigation. Rec. Doc. 92 at 3-4.

St. Angelo also will not be prejudiced by a stay of this matter since testifying in a deposition will only interfere with his ongoing cooperation with the United States. St. Angelo, despite having pleaded guilty, still has criminal exposure, as his plea agreement only protects him from liability

12

in the Eastern District of Louisiana. *See* Ex. B, Rec. Doc. 23-1, (St. Angelo Plea Agreement). A

stay of this adversary proceeding would allow St. Angelo to properly address any criminal

culpability first, prior to any civil liability. *See Waste Management,* 2012 WL 520660, at \*5 (noting

that stay was appropriate so that civil defendants may decide how to handle their criminal

exposure). It is conceivable that any deposition of St. Angelo could cause him to invoke his Fifth

Amendment rights, thus complicating efforts to resolve the issues in this adversary proceeding, as

well as cause problems in the criminal investigation.

### 5. The public's interests, as well as this Court's interests, weigh in favor of a stay.

As to the fifth and sixth factors, the role of the United States as prosecutor of federal crimes

is designed to serve not only the private victims of the crime, but also the general public. In that

sense, it can be fairly stated that "the public interest in [a] criminal case is entitled to precedence

over...civil litigation." *In re Ivan F. Boesky Securities Litig.,* 128 F.R.D. 47, 49 (S.D.N.Y. 1989)

(alteration not in original); *see Campbell,* 307 F.2d at 487 ("administrative policy gives priority to

the public interest in law enforcement"). In this case, the public interest in law enforcement greatly

outweighs any interest in resolving this civil action.

First, allowing deposition discovery to proceed in this case would damage the integrity of

the criminal case by inhibiting the Government's ability to preserve the usefulness of its

anticipated trial witnesses. *See, e.g.*, *WorldCom Sec. Litig.*, No. 02 CIV. 3288(DLC), 2002 WL

31729501, at \*9 (S.D.N.Y. Dec. 5, 2003) (observing that U.S. Attorney "has a significant interest

in preserving the usefulness of cooperating defendants as Government witnesses"). Whereas in a

criminal case the United States can carefully interview and prepare anticipated trial witnesses in a

manner designed to avoid educating those witnesses about matters outside of the scope of their

personal knowledge to preserve their usefulness and avoid confusion, discovery in this adversary

proceeding affords litigants broad rights to examine non-party witnesses under oath about "any non-privileged matter that is relevant to any party's claim or defense" or, for good cause, "any matter relevant to the subject matter involved in the action[,]" even if the information would not be admissible at trial. *See* Fed. R. Bankr. P. 7026; *see also* Fed. R. Civ. P. 26(b)(1). Even if a deposition question calls for speculation and objections are made, the party is permitted to ask the question and the witness is required to answer. *See* Fed. R. Bankr. P. 7030; Fed. R. Civ. P. 30(c)(2). The party is thus permitted to show the witness documents that the witness has never seen and ask questions about them, ask about meetings or conversations that they were not privy to, and inquire about other matters outside the scope of the witness's personal knowledge. This procedure upsets the truth-seeking process by polluting the witness's memory with information outside of his personal knowledge. Zealous advocacy on behalf the plaintiffs and defendants in this advocacy proceeding contravenes the Government's compelling law enforcement interest in preserving, untainted, the integrity of anticipated trial witness's memory, perception, and personal knowledge necessary for the criminal proceedings.

Additionally, interests of judicial economy counsel in favor of a stay of these adversary proceedings pending the outcome of an ongoing criminal matter. Permitting the criminal matter to proceed may streamline proceeding since there will be no need to make rulings which may be disposed of by the criminal matter. *See, e.g.*, *Waste Management,* 2012 WL 520660, at *5 (noting that stay of civil case was warranted because criminal matter may streamline the civil case). For example, the finality of any convictions in the criminal matter may affect Zurich's request for a declaratory judgment here.

Finally, other courts in the Eastern District of Louisiana have agreed to stay civil proceedings related to First NBC Bank in favor of this criminal investigation, based on similar arguments advanced here. *See Official Committee of Unsecured Creditors of First NBC Bank Holding Company v. Ryan, et al*, CA. No. 19-10341 (E.D. La.), Rec. Doc. 90 (Order Staying Case); *see also Academy Place, LLC v. Ryan, et al,* CA. No. 18-10881 (E.D. La.), Rec. Doc. 48 (Order Staying Case). Those courts have recognized the government's interest in controlling the discovery process and the threat of harm a parallel civil proceeding would do. *See Official Committee of Unsecured Creditors,* Rec. Doc. 90 at 8 ("[T]he public has a well-deserved interest in seeing that criminal matters are handled thoroughly and expeditiously, without being compromised by concurrent civil matters. The public also has a strong interest in allowing law enforcement officials to perform their jobs, uncover evidence of criminal activity, and bring those persons responsible for criminal activity to justice"); *Academy Place*, Rec. Doc. 48 at 6-7 (same).

> **D.**     **If the Court denies this motion to stay the proceedings, the United States requests that the Court stay depositions and discovery, and only allow the resolution of legal issues.**

Should this Court deny the motion of the United States to stay this adversary proceeding, the United States requests that the Court impose a stay of all discovery in this proceeding, and permit only the resolution of legal issues that do not require additional discovery.

## III.     CONCLUSION

For the reasons stated in this memorandum, grounded in well-established Fifth Circuit law, the United States respectfully requests that this Court grant its motion to intervene and stay this adversary proceeding until the conclusion of the parallel criminal matter.

Respectfully submitted,

MICHAEL M. SIMPSON
Attorney for the United States
Acting Under the Authority Conferred
by 28 U.S.C. § 515

*s/Sharan E. Lieberman*
SHARAN E. LIEBERMAN
NICHOLAS D. MOSES
MATTHEW R. PAYNE
J. RYAN MCLAREN
Assistant United States Attorneys
U.S. Attorney's Office (E.D. La.)
650 Poydras Street, Suite 1600
New Orleans, Louisiana  70130
Telephone:  (504) 680-3129
E-Mail: sharan.lieberman@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*s/ Sharan E. Lieberman*
SHARAN E. LIEBERMAN
Assistant United States Attorney