UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 11 |
| | * | |
| FIRST NBC BANK HOLDING COMPANY, | * | CASE NO. 17-11213 |
| | * | |
| Debtor, | * | SECTION "A" |
| | * | |
| * * * * * * * | * | |
| | * * * * * * |
| | * | |
| ZURICH AMERICAN INSURANCE COMPANY | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| VERSUS | * | |
| | * | |
| GREGORY ST. ANGELO, WILLIAM D. | * | |
| AARON, JR., HERBERT W. ANDERSON, | * | ADV. P. NO. 20-01005 |
| DALE ATKINS, JOHN C. CALHOUN, | * | |
| WILLIAM CARROUCHE, | * | |
| LEANDER J. FOLEY, III, JOHN F. FRENCH, | * | |
| LEON GIORGIO, JR., SHIVAN GOVIDAN, | * | |
| LAWRENCE BLAKE JONES, LOUIS | * | |
| LAURICELLA, MARK MERLO, | * | |
| HERMAN MOYSE, III, GRISH LLOYD | * | |
| PANDIT, JAMES RODDY, DR. CHARLES | * | |
| TEAMER, JOSEPH TOOMY, RICHARD M. | * | |
| WILKINSON, LOUIS BALLERO, MARSHA | * | |
| CROWLE, MARY BETH VERDIGETS, | * | |
| FRANK FUGETTA AND MICHAEL LULICH | * | |
| | * | |
| Defendants. | * | |
| * * * * * * * | * | |

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

MAY IT PLEASE THE COURT:

Plaintiff-in-Interpleader, Zurich American Insurance Company ("Zurich"), submits this Memorandum in Opposition to the Motion to Dismiss filed by certain Director Defendants.[1]

## BRIEF SUMMARY OF ARGUMENT

The Directors seek dismissal on two grounds. First, they contend the Court does not have jurisdiction because the policy proceeds at issue in the interpleader are not property of the estate. The Court does not have to reach that issue when determining jurisdiction. By previously issuing multiple "soft cap" orders governing the payment of Defense Costs from the Zurich policy on the application of these same Directors, this Court has already demonstrated that it has jurisdiction over the very funds at issue in the interpleader, even while expressly noting in each order that it was not ruling on whether the proceeds were property of the estate. Further, and in any event, pursuant to 28 U.S.C. § 1334 the Court has jurisdiction over the interpleader proceeding as an action "related to" the bankruptcy case, regardless of whether the proceeds are property of the estate.

The Directors also seek dismissal arguing that the interpleader is not "ripe" for adjudication. This is patently incorrect. Zurich is currently subject to inconsistent and conflicting demands with respect to the $270,872.85 which has been deposited into the Court's registry. On the one hand, Mr. St. Angelo has demanded that Zurich use these funds for payment of his incurred Defense Costs, or else he will file a lawsuit against Zurich for bad faith insurance practices. On the other hand, the Directors have objected to Zurich using those interpleaded funds to pay Mr. St. Angelo, thereby exposing Zurich to litigation if their demands are not met. Without more, these competing demands, threats of litigation, and potential for Zurich to be

---

[1] While the Motion to Dismiss is nominally brought on behalf of the "Directors," it is not on behalf of all defendants. Five of the defendants are not included in the motion and have already joined issue and filed answers. Additionally, defendant St. Angelo has already filed a motion for partial summary judgment seeking the interpleaded funds.

exposed to multiple or conflicting judgments present a justiciable controversy ripe for adjudication by the Court. Additionally, since this action was commenced, several other interpleader defendants have joined issue and have asserted competing claims to the funds. Mr. St. Angelo has filed a motion for partial summary judgment requesting the Court to disburse the interpleaded funds to him. These actions prove that the dispute is not abstract, speculative, or hypothetical.

As a disinterested stakeholder, Zurich is entitled to an adjudication from the Court as to the ownership of the funds deposited with the Court's Registry. The amounts deposited with the Court are real and concrete and not based on speculation or some other future factual development. Accordingly, this Court has jurisdiction over the instant case, and the Court can determine the ownership of the proceeds as a matter of law.

## FACTUAL BACKGROUND

Zurich issued a Financial Institution Select Insurance Policy to First NBC Bank Holding Company, No. DOP9311203-04, with a policy period of 06/09/2015 to 06/09/2016, which includes a Management Liability Coverage Part with an aggregate limit of liability of $15 million (the "Policy") (Policy attached as Exhibit "A" to Interpleader Complaint – R. 1). The Policy provides coverage to Insured Persons pursuant to its Coverage Part A for Management Coverage Liability. All of the Interpleader-Defendants are Insureds under the Policy, subject to the Policy's various terms, conditions, and exclusions.

The Defendants have cumulatively provided notice of multiple matters under the Policy to Zurich, and since the inception of these matters, the Defendants have sought coverage for the same under the Policy, including the advancement of Defense Costs.[2]

This Court has already exercised jurisdiction over the Policy and the distribution of its proceeds to these Directors by issuing three "soft cap" Orders in the Chapter 11 bankruptcy proceeding. On January 26, 2018, the Court ordered that the "2016-2017 insurers" are to "comply with the terms of their respective policies, including, without limitation, to advance, reimburse or make payments on account to Defense Costs (including and without limitation attorney's fees and expenses) and other Loss as defined in the respective policies. . .". The order further provided that "aggregate payments permitted in the policies shall be subject to a "soft cap" of $5 million." (Case 17-11213, R. Doc. 325 at p 2). The Court issued a second order on March 14, 2019, providing that "the aggregate payments permitted under the policy shall be subject to a "soft cap" of $9 million (an increase of $4 million from the original Soft Cap") (Case 17-11213, Doc. 531). The Court issued a third order on March 26, 2020, increasing the soft cap to $12 million. (Case 17-11213, Doc. 840).

The Court expressly provided in each of the "soft cap" orders: "Nothing in this order shall constitute a finding by the Court that the proceeds of the Policies are or are not property of the Debtor's estate."

---

[2] These matters include but are not limited to the following: a demand letter from the FDIC-R dated August 25, 2017, in which the FDIC-R indicates its intention to recover alleged damages in the amount of at least $250 million based on certain Defendants' alleged breaches of duty to the Bank and/or First NBC Bank Holding Company; a lawsuit filed by the Official Committee of Unsecured Creditors of First NBC Bank Holding Company (the "Committee"), entitled Official Committee of Unsecured Creditors of First NBC Bank Holding Company v. Ashton J. Ryan, Jr., et al., Case No. 2:19-cv-10341; a lawsuit entitled Academy Place LLC et al v. First NBC Bank et al, originally filed in Orleans Parish Civil District Court, Docket no 17-4057; multiple subpoenas issued by the Securities Exchange Commission; multiple federal grand jury subpoenas; a target letter issued by the U.S. Department of Justice; and multiple subpoenas issued by the FDIC-R.

**Guilty Plea by Defendant St. Angelo**

On March 22, 2019, a Bill of Information to Commit Bank Fraud and Notice of Forfeiture was filed against Gregory St. Angelo in the United States District Court for the Eastern District of Louisiana, No. 2:19-CR-00055, alleging that Mr. St. Angelo was the general counsel of First NBC Bank from September of 2006 through September of 2016, and alleging conspiracy to commit bank fraud. (See Case No. 2:19-CR-0055, R. Doc. 1, 03/22/2019).

Zurich had previously agreed to provide reimbursements for Defense Costs to Mr. St. Angelo pursuant to a Reservation of Rights.

On June 28, 2019, Mr. St. Angelo formally pled guilty to one count of conspiracy to commit mail fraud in violation of 18 U.S.C. §1349 and also admitted that he engaged in an intentional scheme along with two other unnamed officers at First NBC to defraud the bank. As part of his plea agreement, Mr. St. Angelo knowingly and voluntarily waived and has given up any right to appeal or contest his guilty plea, conviction, sentence, fine, supervised release and any restitution imposed by the Court, with the sole exception being sentenced to a term of imprisonment in excess of the statutory maximum.

On July 29, 2019, Zurich notified Mr. St. Angelo that it was going to deny coverage to him under two exclusions of the policy - which require a final and non-appealable adjudication of guilt – namely, Sections IV(I) and IV(J) of the Policy's Management Liability Coverage Part. In the same letter, Zurich also demanded that Mr. St. Angelo return all monies previously advanced by Zurich.

All defendants other than Mr. St. Angelo are either former directors of First NBC Bank and/or have asserted that they are Insured Persons under the Policy, and all have submitted claims under the Policy for reimbursement of their attorney's fees and expenses.

**The Competing Claims**

Mr. St. Angelo has disputed Zurich's position denying him coverage and argued that a "final adjudication" under the Policy does not occur until he is sentenced by the Court, and he therefore contends that Zurich must continue to pay his fees up until his date of sentencing. Mr. St. Angelo has demanded payment for all outstanding Defense Costs not yet reimbursed to him under the Policy (a total of $270,872.85 to date). Mr. St. Angelo has further stated that if Zurich fails to pay, then he will commence a lawsuit against Zurich, including seeking bad faith damages. In light of Zurich's duty of good faith to all of its insureds, in light of its duty to safeguard against any potential claw back proceeding against Mr. St. Angelo, and to avoid potentially favoring the interests of any one Insured Person(s) over the interest of any other Insured Person(s), by letter dated September 17, 2019, Zurich inquired whether any of the other Insured Persons currently receiving funds from the Policy had any objection to the continued payment of fees for Mr. St. Angelo.

In response, Zurich received four letters on behalf of 23 individuals who comprise all defendants in this action other than Mr. St. Angelo, and who collectively made demands that Zurich not make any further payments from the Policy's Proceeds to Mr. St. Angelo (the "Objecting Insureds"). The Objecting Insureds also demanded that Zurich recoup all fees that have been paid to date to Mr. St. Angelo.

The Objecting Insureds contend that Zurich should not make any further reimbursements to Mr. St. Angelo under the Policy on multiple grounds. They contend that Mr. St. Angelo's guilty plea and admissions trigger the fraudulent conduct exclusions under the policy. Additionally, the Objecting Insureds contend that in light of Mr. St. Angelo's guilty plea, he should be judicially estopped from receiving further fees under the Policy. Further, they contend that Mr. St. Angelo

should not be allowed to drain the Policy's limit of liability funds, which he is contractually obligated to repay when those funds potentially could be used for the benefit of other insureds. Further, the Objecting Insureds contend that Mr. St. Angelo does not qualify as an Insured. Finally, the Objecting Insureds contend that Mr. St. Angelo has failed to comply with the applicable orders issued by the Court concerning the receipt of funds from the Policy. Notwithstanding Zurich's good faith efforts to resolve the controversy, the Objecting Insureds have declined to withdraw their demands and objections.

**The Interpleader Complaint**

Zurich is subject to inconsistent and conflicting demands with respect to the $270,872.85 that Mr. St. Angelo seeks from Zurich for payment of Defense Costs. Zurich cannot pay Mr. St. Angelo's continued Defense Costs or refuse to pay them without exposing Zurich to a lawsuit that it favors the rights of one Insured Defendant over the rights of another Insured Defendant. Zurich accordingly filed this interpleader complaint as an adversary proceeding in the bankruptcy case.

**I. THIS COURT HAS JURISDICTION OVER THE INTERPLEADER ADVERSARY PROCEEDING**

The Directors' Motion To Dismiss must fall because this Honorable Court has already determined that it has jurisdiction over payment to these Directors of Defense Costs from the Zurich Policy, and the Court has exercised this jurisdiction by issuing multiple "soft cap" orders, without having to rule on whether the proceeds were property of the estate. Additionally, this Court has jurisdiction over the interpleader as an action "related" to the bankruptcy case under 28 U.S.C. § 1334 regardless of whether the proceeds are property of the estate.

### A. Law Governing Jurisdiction

28 U.S.C. § 1334 provides in part: "(a)… the district courts shall have original and exclusive jurisdiction of all cases under title 11. (b) … the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Further, with regard to bankruptcy judges, 28 U.S.C. § 157(a) provides: "(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." The United States District Court for the Eastern District of Louisiana has referred all such cases and proceedings to this Court.

A proceeding is "related to" a bankruptcy case if it could have been commenced in federal or state court independently of the bankruptcy case, but the "outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir. 1987), adopting *Pacor Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir. 1984)("[T]he proceeding need not necessarily be against the debtor or against the debtor's property.").

The Supreme Court of the United States has noted that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate, and that the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995) (*citing with approval Pacor, Inc. v. Higgins*, 743 F.2d 98 (3d Cir. 1984)) (internal citations omitted).

As summarized by the Bankruptcy Court for the Middle District of Louisiana:

It must be noted that the references in 28 U.S.C. § 1334 to "under," "arising under," "arising in," and "related to" operate disjunctively to define the scope of federal court jurisdiction. Therefore, only one premise need be present for jurisdiction to attach. As the phrase "related to cases under title 11" is the broadest of the specified categories in 28 U.S.C. § 1334, this Court need only determine whether the removed State Court proceeding is at least "related to" the NEG bankruptcy to determine whether federal jurisdiction attaches. This Court, therefore, must examine whether the facts alleged in the removal petition indicate that the outcome of the State Court lawsuit has the potential to affect the debtor's rights, obligations, or freedom of action, and could affect the administration of the NEG bankruptcy estate. *Landry v. Exxon Pipeline Co. Mendoza, Inc.* 260 B.R. 769 (Bankr. MDLA 2001).

For this Court to exercise jurisdiction, the interpleader action need only be "related" to the bankruptcy case.

### B. The Court has already established jurisdiction over payment of Defense Costs from the Zurich Policy to these Directors

The sole ground argued by the Directors in support of their motion to dismiss for lack of jurisdiction is that the proceeds of the Policy are not property of the estate. However, the Court does not have to reach this issue when determining jurisdiction. The Court has already determined that it has jurisdiction over distribution of Defense Costs to these Directors when it issued orders governing the payment of Defense Costs from the Zurich Policy to these Directors. In these orders, this Court expressly noted that it was not ruling on the issue of whether the proceeds were property of the estate – which of course it did not have to do in order to assert its jurisdiction over whether Zurich could make payments of Defense Costs.

The Directors' contention that this Court lacks jurisdiction is particularly remarkable, since the Directors themselves were the original movants who petitioned this Court to issue an order authorizing Zurich to make payments of Defense Costs under the Policy. Zurich respectfully submits that the Directors cannot have it both ways – they cannot seek to invoke this Court's jurisdiction to approve Defense Costs payments from Zurich's Policy on the one hand, and then

9

suddenly argue that this Court lacks jurisdiction when Zurich seeks the Court's protection governing the payment of those exact Defense Costs.

More particularly, On January 28, 2018, this Court issued an order to allow Zurich (and other insurers) "to comply with the terms of the respective Policies including, without limitation, to advance, reimburse, or make payments on account of the Defense Costs (including, without limitation, attorneys' fees and expenses) and other Loss (as defined in the respective Policies)…" (Case 17-11213, R. Doc. 325 at p 2). The order further provided that the aggregate payments "permitted under the policies shall be subject to a 'soft cap' of $5 million." The Order also required the Directors and Officers to submit quarterly summaries of Defense costs paid by the policies. Finally, the order expressly noted that "Nothing in this order shall constitute a finding by the Court that the proceeds of the Policies are or are not property of the Debtor's estate…". The Court has issued two additional orders raising the "soft cap" to $9 million and then $12 million. (Case 17-11213, Docs. 531 and 840), each time again declining to rule on the proceeds issue.

In sum, the Directors failed to address these "soft cap" orders in their motion to dismiss, relying solely on the argument that the Court lacks jurisdiction because the policy proceeds are not property of the estate. The Court has already properly exercised its jurisdiction over the policy and the payment of Defense Costs to these Directors without having to make any determination regarding the proceeds. These Directors consented and were parties to the Orders that allowed them to receive Defense Costs from the Policy.[3] The interpleader is nothing more than a "related" case seeking further guidance on complying with the Court's previous bankruptcy orders. Because

---

[3] If the Directors did not want the bankruptcy court to hear the interpleader action, their remedy was to file a motion to withdraw the reference, since jurisdiction over payments to them from the Policy proceeds had already been established by the Court.

this Court's jurisdiction has already been established, the Directors' Motion to Dismiss on the issue of jurisdiction should be denied.

### C. The Court has jurisdiction over the interpleader action as a "related" case pursuant to 28 U.S.C. § 1334

Notwithstanding that the court has already established jurisdiction over payments to the Directors from the Zurich Policy, a jurisdictional analysis likewise shows that the Court has jurisdiction over the interpleader as an action "related to" the bankruptcy case of First NBC without the need for the Court to rule on whether the proceeds are property of the estate.

Here, the interpleader is "related" to the bankruptcy case. The debtor is the named insured on the Policy. All of the defendants in the interpleader action are parties to the bankruptcy case. The Court has issued orders regarding the payments of Defense Costs from the policy. The interpleader complaint seeks the Court's guidance on which directors should receive the Defense Costs that are the subject of previous Court Orders. The Court does not have to rule on whether the proceeds are the property of the estate to find that it has jurisdiction over the interpleader action as a "related" case. Indeed, many courts have found that interpleader actions involving policies are subject to bankruptcy jurisdiction without reaching the issue of whether the proceeds were property of the estate. For example, in *Mid-Continent Casualty Company v. Garrett*, 2017 Bankr. LEXIS 579 (B.R. E.D. Ok. 2017), an insurer had filed an interpleader action against non-debtor parties involving proceeds from a liability insurance policy. The court held that a determination of whether the proceeds are property of the estate is a core proceeding, but such a determination is unnecessary to determine if the interpleader was "related" to the bankruptcy case. Deferring a ruling on the proceeds issue, the court held: "The interpleader action could impact the handling and administration of Debtor's bankruptcy estate, and affect its rights, liabilities, options or freedom of

11

action. Therefore, this Court finds that the Interpleader Action is, *at a minimum*, related to Debtor's bankruptcy case, and that it has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b)." See also *Casona v. Ziff,* 2018 U.S. Dist. LEXIS 128972 (S.D.N.Y. 2018) (court found that claims against proceeds of D&O policy were sufficiently "related" to the bankruptcy in order to exercise jurisdiction, and declined to address issue of whether the proceeds were property of the estate); *In re J.F. Naylor and Company, Inc.,* 67 B.R. 184 (Bankr. M.D.LA. 1986 (interpleader constituted a "related" action over which the bankruptcy court could exercise jurisdiction); *In re Strawberry,* 464 B.R. 443 (N.D.Fl. 2012)(court exercised jurisdiction over an interpleader finding it was related to the bankruptcy because it could conceivably have an effect on the estate being administered in bankruptcy); *FRNC, LLC v. Homelife at Folts, LLC,* 28 U.S. Dist. LEXIS 47597 (N.D.N.Y. 2018) ("Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of [the bankruptcy estate]… While related to jurisdiction is not limitless, . . . it is fairly capacious, and includes suits between third parties which have an effect on the bankruptcy estate]… [C]ontingent outcomes can satisfy the conceivable effects test, so long as there is the *possibility* of an effect on the estate… Here, "related to" jurisdiction exists because the instant interpleader action might have a conceivable effect on Debtors' estates").

Regardless of whether the proceeds are property of the estate, the interpleader is necessarily a related action to the bankruptcy case, and the Court has jurisdiction pursuant to 28 U.S.C. 1334. For this second reason the Motion to Dismiss should be denied.

## II. THE INTERPLEADER COMPLAINTS PRESENTS A RIPE AND JUSTICIABLE CONTROVERSY

Zurich is subject to inconsistent and conflicting demands with respect to the $270,872.85 that Mr. St. Angelo seeks from Zurich for payment of Defense Costs. Zurich cannot pay Mr. St. Angelo's continued Defense Costs, which Mr. St. Angelo contends are due and owing now, or refuse to pay them without exposing Zurich to a lawsuit that it favors the rights of one Insured Defendant over the rights of another Insured Defendant. The Directors are currently objecting to any payments by Zurich to St. Angelo and demanding Zurich not to pay these invoices. This controversy is current, immediate and substantial, and is in no way purely abstract or hypothetical and is not dependent on any future hypothetical factual development.

### A. Standard for Ripeness of a Controversy

Pursuant to the Federal Interpleader Act, 28 U.S.C. § 1335, a court "shall have original jurisdiction of any civil action of interpleader filed by any person, firm, or corporation… having issued… policy of insurance… of value or amount of $ 500 or more…" The interpleader statute further provides that the case is ripe and justiciable if two are more claimants are claiming or may claim to be entitled to the money deposited into the registry of the court: "**(1)** Two or more adverse claimants, of diverse citizenship … are claiming *or may claim* to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation… b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another." *Id.* (emphasis added).

Courts have held that insurers have stated a ripe controversy if they are subject to multiple actions and potentially multiple liabilities:

> "[Insurer] was faced with liability in this action, … [and] was subject to multiple actions, and potentially multiple liabilities. [Insurer] has standing to seek the court to adjudicate the [interpleader suit] regarding the payment of the policy proceeds." *Primerica Life Ins. V. Raine*, 2008 U.S. Dist. LEXIS 16084 (E.D. LA. 2008)."

A case is not "ripe" when it is "abstract" or "hypothetical." A declaratory judgment action is ripe for adjudication when there is an "actual controversy, which is "where a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891 (5th Cir. 2000), citing, *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986). As the Fifth Circuit has held:

> "As a general rule, an actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests…. The threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based…. The fact that the filing of the lawsuit is contingent upon certain factors does not defeat jurisdiction over a declaratory judgment action." *Orix Credit* at 897 (citations omitted).

As discussed below, the controversy in the interpleader complaint is neither abstract or hypothetical, but rather is a substantial controversy of immediate and substantial reality.[4]

### B. The Interpleader Complaint is Ripe and Justiciable

*1. Multiple defendants have already joined issue and asserted competing claims to the interpleaded funds*

---

[4] In all of the cases cited by the Directors, some future uncertain factual development must occur before the case is ripe (e.g. insurer's claim seeking it has not duty to indemnify *in the event* of a judgment against the insured; or insurer's claim for contribution against other insurers *in the event* the insurer is found to owe coverage to the insured). Here, no such uncertain future events exist. St. Angelo has submitted invoices and demanded payment from Zurich, asserting that they are currently covered under the policy. The other defendants have objected to those payments. The Court can determine this issue now, without waiting on any hypothetical future event or development.

The "Directors" who filed the motion to dismiss do not constitute all of the defendants in the interpleader suit. Their contention that the controversy is speculative and abstract is contrary to the status of the pleadings. Several other interpleader defendants have already joined issue and have asserted competing claims to the funds. Mr. St. Angelo has filed a motion for partial summary judgment requesting the Court to disburse the interpleaded funds to him. He argues that Zurich should not *currently* be withholding payment. (R. 87). Similarly, three other defendants have filed answers and asserted competing claims to the funds. Defendants Fugetta and Lulich filed a cross-claim against Defendant St. Angelo alleging that he does not qualify as an insured under the Zurich policy and that he is "not entitled to receive any proceeds under the Policy for Defense Costs." (R. 67). Similarly, Defendant Ballero has filed an answer praying that "there be judgment in his favor and against Gregory St. Angelo, denying St. Angelo reimbursement under the Policy and awarding Policy proceeds to Louis Ballero, to the extent required under the Policy." (R. 69).

2. *The Directors have objected to any further payments to Mr. St. Angelo*

Further, the Directors themselves have objected to Zurich paying the invoices for Defense Costs from St. Angelo. In their supporting memorandum the Directors suggest that they advised Zurich they were simply "reserving" all of their rights under the Policy. In fact, they not only reserved rights but *objected* to Zurich paying the Defense Costs that St. Angelo contends are due and owing:

> "Please be advised that our clients object to any additional funds being paid on behalf of Mr. St. Angelo. … Mr. St. Angelo was never an officer, director or employee of First NBC, and he should be judicially estopped from receiving any benefits payable under the Policy." (Oct. 8, 2019 correspondence from counsel of the Directors to counsel for Zurich, attached has Exhibit "A").

All of the other defendants sent Zurich letters joining in the "objection" of the Directors. To date, *the Objecting Insureds have declined to withdraw their demands and objections*. As such, they are

15

not merely reserving their rights, but as insureds under the Policy they have demanded that Zurich not pay the interpleaded funds to St. Angelo. This is not a speculative or abstract controversy. One insured is demanding payment now, and other insureds have notified Zurich that they object to that payment. The Directors have the option of formally withdrawing their objections and their demand that Zurich not reimburse St. Angelo, and if they do so, then the interpleader could potentially be dismissed as against those defendants.

The interpleader action is justiciable. The Defense Costs at issue are not future costs and are not speculative. The dispute arises from the objecting insureds demanding that Zurich not pay St. Angelo's fees *at all*. Because Zurich's policy has a finite $15 million limit of liability, every dollar paid to St. Angelo is a dollar less for the Objecting Insureds. Zurich has duties to all insureds. As a disinterested stakeholder it is entitled to an adjudication from the Court as to the ownership of the stake. Otherwise, Zurich would now be forced to choose between competing demands and risk bad faith suits. Zurich is subject to inconsistent and conflicting demands with respect to the $270,872.85 that Mr. St. Angelo seeks from Zurich for payment of Defense Costs, and accordingly the interpleader suit is ripe for adjudication.

*3. Fact discovery is not the same as future hypothetical/abstract fact development*

The Directors argue that "further factual development and circumstances are required to determine whether a controversy exists." The Directors have appeared to conflate the concept of "fact discovery" on the merits of the interpleader with the concept of hypothetical future "fact development." Simply because the parties might have to conduct discovery on the merits of the competing claims in no way makes an action non-justiciable. Indeed, most declaratory action claims require typical litigation fact discovery. Rather, a claim is not ripe only if *future uncertain factual development* must occur (i.e. future occurrences that are dependent on hypothetical or

abstract circumstances). Here, the issue of whether St. Angelo should receive the Defense Costs from the policy "can be presently litigated and decided." That controversy is not premised in any way on hypothetical or conjectural circumstances. Certainly, the parties may have to conduct discovery into St. Angelo's alleged past misrepresentations to his malpractice carrier, and/or whether he previously received payments from another carrier. However, this entails typical litigation discovery of *existing* facts. The discovery is not based on future hypothetical "factual developments". The question presented is a "purely legal one" and is not premised on any speculative or hypothetical occurrences that might develop in the future or are contingent on a future event that may not take place. Whether St. Angelo is entitled to the Defense Costs from the Zurich policy is an issue that this Court can decide now as a matter of law.

4. *Responses to specific arguments regarding ripeness*

First, the Directors contend that it is unknown whether they would need the policy funds in the future, and therefore the dispute is not ripe. Whether the Directors will ultimately need the funds is not relevant to justiciability. St. Angelo is demanding that these Defense Costs are due and owing and that Zurich must pay them *now*, while the other defendants, including these Directors, have notified Zurich that they object to Zurich making these payments *now* and demand that Zurich not release the funds to St. Angelo. Zurich can neither pay Mr. St. Angelo's continued Defense Costs nor refuse to pay those costs without exposing Zurich to a lawsuit that it favors the rights of one Insured Defendant over the rights of another Insured Defendant. As noted by the Fifth Circuit, "The threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based," and simply because the interpleader "is contingent upon certain factors [that] does not defeat jurisdiction over a declaratory judgment action." *Oriz* at 897. Indeed, as noted above, some of the defendants have already filed cross-claims and answers

17

asserting that St. Angelo should not receive the funds and asserting that the proceeds should be awarded to them, to the extent provided by the policy. Whether the Directors will ultimately need the funds is not at issue and does not affect ripeness.

Second, the Directors argue that St. Angelo's guilty plea "appears to prohibit his receipt of the funds at issue." This argument underscores the justiciability of the claim and goes to the merits of the interpleader: whether St. Angelo is entitled to the funds. The Directors spend many pages in their brief arguing *why* St. Angelo is not entitled to the funds, and then argue that "fact discovery" must take place on these issues. Zurich takes no position on this. Fact discovery can be entirely appropriate in an interpleader. That the Directors dispute St. Angelo's current entitlement to the funds only demonstrates why the case is ripe.

Third, the Director's argue that "St. Angelo's receipt of insurance proceeds from a separate carrier also precludes his receipt of the funds at issue." Again, this argument goes to the merits of the interpleader. The Directors again confuse and/or conflate future *fact development* (e.g. some abstract or hypothetical future occurrence)—which might affect ripeness-- with ordinary litigation *fact discovery* which does not impact justiciability.

In sum the interpleader presents the Court with a ripe controversy that is not dependent on future hypothetical or abstract factual development and can be decided as a matter of law.

**III.    RESPONSE TO DIRECTORS' ALTERNATIVE MOTION TO STAY**

In the event the Motion to Dismiss is denied, Zurich does not take a position on the Directors' alternative motion for a stay. However, should the Court issue a stay, Zurich requests that as the stakeholder which has already deposited the funds into the registry of the Court, it be allowed to seek an order discharging Zurich of all liability to the defendants with regard to the

issue of payments to Mr. St. Angelo under the policy, as provided by the federal interpleader statutes.

## CONCLUSION

This Honorable Court should deny the Directors' Motion to Dismiss.

Respectfully submitted,

Salley, Hite, Mercer & Resor LLC
**JOHN W. HITE III (17611)**
**GLEN E. MERCER (21752)**
**MARCEL MOULLEDEAUX (30339)**
**JAMES G. ALBERTINE III (32053)**
One Canal Place
365 Canal Street, Suite 1710
New Orleans, LA 70130
Telephone: 504/566-8800
Facsimile: 504/566-8828
**BY: /s/ John W. Hite III**
JOHN W. HITE III
**ATTORNEYS FOR ZURICH AMERICAN INSURANCE COMPANY**