UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 11 |
| | * | |
| FIRST NBC BANK HOLDING COMPANY, | * | CASE NO. 17-11213 |
| | * | |
| Debtor, | * | SECTION "A" |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| VERSUS | * | |
| | * | |
| GREGORY ST. ANGELO, WILLIAM D. AARON, JR., HERBERT W. ANDERSON, DALE ATKINS, JOHN C. CALHOUN, WILLIAM CARROUCHE, LEANDER J. FOLEY, III, JOHN F. FRENCH, LEON GIORGIO, JR., SHIVAN GOVIDAN, LAWRENCE BLAKE JONES, LOUIS LAURICELLA, MARK MERLO, HERMAN MOYSE, III, GRISH LLOYD PANDIT, JAMES RODDY, DR. CHARLES TEAMER, JOSEPH TOOMY, RICHARD M. WILKINSON, LOUIS BALLERO, MARSHA CROWLE, MARY BETH VERDIGETS, FRANK FUGETTA AND MICHAEL LULICH | * | ADV. P. NO. 20-01005 |
| | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN OPPOSITION TO GREGORY ST. ANGELO'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

In opposition to *Gregory St. Angelo's Motion for Partial Summary Judgment* **[Doc. 87]**, Defendants, Frank Fugetta and Michael Lulich ("Fugetta and Lulich"), through undersigned counsel, submit this Memorandum in Opposition along with an accompany Rule 56 Declaration, and respectfully represent as follows.

Page **1** of **11**

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 22, 2019, the United States Attorney for the Eastern District of Louisiana filed a Bill of Information in the Eastern District of Louisiana charging Gregory St. Angelo ("St. Angelo") with one count of conspiracy to commit bank fraud. St. Angelo formally pled guilty to that one count on June 28, 2019. By letter dated September 17, 2019, Zurich inquired whether any of the other twenty-three defendants currently receiving funds from the Policy had any objection to the continued payment of Defense Costs under the Policy for St. Angelo. Fugetta and Lulich, along with the other 21 defendants in this action other than St. Angelo (the "Objecting Insureds"), collectively made demands that Zurich not make any further payments from the Policy Proceeds to St. Angelo. The Objecting Insureds also demanded that Zurich recoup all fees that have been paid to date to St. Angelo. To date, Zurich has paid St. Angelo approximately $641,616.57 in Defense Costs related to his federal criminal investigation (the "Paid Proceeds"). *See* St. Angelo's Counterclaim for Declaratory Relief **[Doc. 66]**, ¶ 11.

Zurich subsequently instituted this Interpleader action by filing a *Complaint for Interpleader and for Declaratory Relief* **[Doc. 1]** wherein it deposited $270,872.85 (the "Interpleaded Proceeds") into the registry of this Court. Zurich is the insurer of First NBC Bank Holding Company, its officers, and directors, as defined by and pursuant to the terms and conditions of Zurich Policy No. DOP 9311203-04 (the "Policy"). This Court has issued three Orders in the Chapter 11 bankruptcy proceeding regarding distribution of proceeds from the Policy. The initial "soft cap" for Defense Cost was set at five (5) million dollars **[P-325]**, then raised to nine (9) million dollars **[P-531]**, and was recently increased to twelve (12) million dollars

**[P-840]**. The Objecting Insureds continue to accrue additional attorney's fees, which are covered under the Policy.

Fugetta and Lulich filed a Motion to Compel Discovery and requested that the Court order St. Angelo's deposition prior to the Motion for Summary Judgment **[P-107]**. The United States filed a Motion to Intervene and to Stay Adversary Proceeding **[P-111]**. The Motion to Compel has been continued pending the Court's ruling on the Motion to Stay. Fugetta and Lulich filed a response **[P-112]** in which they represented that they do not object to the stay of the whole Adversary but do object to a stay of only the discovery in the Adversary.

## II.     LAW AND ARGUMENT

### A.     Summary Judgment Standard

In accordance with Federal Bankruptcy Rule 7056, which makes Federal Rule of Civil Procedure 56 applicable in adversary proceedings, summary judgment is only appropriate when the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. The movant "bears the initial burden of proof to specify the basis upon which the Court should grant summary judgment and to identify portions of the record that demonstrate the absence of a genuine issue of material fact.[1] Summary judgment is only proper when there is no genuine issue for trial, i.e. where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."[2] Further, "the Court must resolve disputes over material facts in the non-movant's favor."[3] Finally, the Court "has the discretion to deny

---

[1] *In re Avery*, 2018 WL 6287988 (Bankr. S.D. Miss. 2018) and Federal Rule of Civil Procedure 56(a).
[2] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).
[3] *Sims v. City of New Orleans*, 2005 WL 1400440, at *14 (E.D. La. 2005).

motions for summary judgment and allow parties to proceed to trial so that the record might be more fully developed for the trier of fact."[4]

### B. There are factual issues as to whether the Policy Proceeds St. Angelo received from Zurich were in fact for attorney's fees covered under the Zurich Policy.

Counsel for St. Angelo represent St. Angelo in a number of legal proceedings related to his association with First NBC Bank in a number of different capacities, as more fully set forth in the accompanying Rule 56 Declaration of Eric J. Derbes and in Fugetta and Lulich's *Motion to Compel Deposition of Gregory St. Angelo* **[P-107]**. St. Angelo wears many hats in the myriad of investigations that have arisen from the downfall of First NBC Bank, and undoubtedly has incurred varying amounts of attorneys' fees in the different proceedings. A substantial portion of the other proceedings involving St. Angelo focus on, among other things the falsification of records associated with certain First NBC Bank **borrowers**; the concealing of the true financial status, and true performance, of certain First NBC Bank **borrowers**; the misrepresentation of the purpose of **loans**; the providing of **false and/or inaccurate financial statements** to First NBC Bank; and the creation of false tax credit investments in connection with certain First NBC Bank **loans**. A majority of St. Angelo's attorneys' fees undoubtedly related to his status as a **borrower** of First NBC Bank, which would not be covered by the Policy. Nothing in the Motion for Summary Judgment or the record shows the breakdown of St. Angelo's attorneys' fees. The record is simply devoid of any allegation from St. Angelo that the funds were exclusively incurred in representing St. Angelo for actions covered under the Zurich Policy. Therefore, a factual determination is necessary to verify what portion, if any, of the Zurich Policy proceeds paid or sought to be paid

---

[4] *In re Avery*, 2018 WL 6287988 (Bankr. S.D. Miss. 2018) (citing *In re Desper*, Adv. Proc. No. 09-05051-NPO, 2010 Bankr. LEXIS 588, at *6 (Bankr. S.D Miss. Feb 19, 2010).

are or were compensation for St. Angelo's attorneys' fees in defense of his actions as a borrower, or in any other capacity not covered under the Policy. Substantial discovery needs to take place prior to any possible summary judgment. Summary judgment is simply inappropriate.

        **C.    St. Angelo is not entitled to Summary Judgment on the grounds of judicial estoppel as a matter of law.**

St. Angelo is not entitled to Summary Judgment as a matter of law on the grounds of judicial estoppel. Judicial estoppel is an equitable doctrine that may be invoked by the Court, within its sound discretion, to prohibit parties from deliberately changing positions according to the exigencies of the moment in order to protect the integrity of the judicial process.[5] According to the Fifth Circuit, "[t]he purpose of the doctrine is to protect the essential integrity of the judicial process by reducing the risk of inconsistent court determinations."[6] It is well established in the Fifth Circuit that, in accordance with United States Supreme Court precedent, "Courts employ several factors in determining whether to apply the doctrine [of judicial estoppel]: **(1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position; (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."**[7] "The presence of one or more of these elements [for judicial estoppel to apply] does not mandate the invocation of [the doctrine]. Rather, courts should determine if applying judicial estoppel is appropriate in light of the specific facts of each case and the doctrine's purpose of protecting the integrity of the judicial process."[8]

---

[5] *See In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 332 (5th Cir. 2007).
[6] *See Prideaux v. Tyson Foods, Inc.,* 387 Fed. Appx. 474, 477 (5th Cir. 2010) (internal citations omitted).
[7] *See In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 332 (5th Cir. 2007) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-751 (2001) (emphasis added).
[8] *United States ex rel. Long v. GSDMIdea City, L.L.C.,* 798 F. 3d 265, 272 (5th Cir. 2015).

St. Angelo has pled guilty to a federal charge of conspiracy to commit bank fraud, which is inconsistent with his position in the instant litigation. A Court may judicially notice a fact that is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction.[9] Pursuant to Federal Rule of Evidence 201(c)(2), Fugetta and Lulich request this Court to take judicial notice of the *Factual Basis* filed in *United States of America v. Gregory St. Angelo*, United States District Court for the Eastern District of Louisiana, Criminal Docket No. 19-00055.[10] For example, St. Angelo has sworn to the following facts, *inter alia*:

(a) "St. Angelo and others known and unknown to the United States Attorney, did knowingly and willfully combine, conspire, confederate, and agree to commit offenses against the United States of America, that is: knowingly and with intent to defraud, execute and attempt to execute a scheme and artifice to defraud First NBC Bank, a financial institution, and to obtain any of the moneys, funds, credits, and assets, owned by, and under the custody or control of First NBC Bank, by means of false and fraudulent pretenses, representations, and promises…"

(b) "St. Angelo, Bank President A, Bank Officer B, and others provided First NBC Bank with materially false and fraudulent financial statements, collateral summaries, and other documents that, among other things, overstated the value of St. Angelo's and the Entities' assets and understated their liabilities. The materially false and fraudulent financial statements, collateral summaries, and other documents disguised St. Angelo's and the Entities' true financial condition."

(c) "St. Angelo and his co-conspirators obtained loans for individuals associated with St. Angelo as nominees ("the Nominee Loans"). These Nominee Loans benefitted St. Angelo and the nominees. Under this scheme, the nominees signed loan paperwork making it appear that the nominee was taking out the loan. In fact, some proceeds from the Nominee Loans were used by St. Angelo, not the nominees, to pay St. Angelo's existing debts to First NBC Bank for his and the Entities' expenses. St. Angelo, Bank President A, and Bank Officer B caused representatives of First NBC Bank to transfer the Nominee Loan proceeds to the Entities' deposit accounts."

(d) "Bank President A, St. Angelo, Bank Officer B, and others created fake tax credit investments that First NBC Bank made in entities owned or purportedly owned by St. Angelo. In reality, Bank President A, St. Angelo, Bank Officer B, and others designed the

---

[9] Fed. Rules Evid. R. 201(b)(1).
[10] Fed. Rules Evid. R. 201(c)(2) ("The Court must take judicial notice if a party requests it and the court is supplied with the necessary information.").

fake tax credit investments to funnel money from First NBC Bank's general ledger to St. Angelo and the Entities, so he could make loan payments and cover overdrafts."[11]

The only facts which there are no genuine dispute are those facts contained in the *Factual Basis*. The record, taken as a whole, clearly indicates that St. Angelo is not entitled to summary judgment on the grounds of judicial estoppel. Based on St. Angelo's judicial admissions, a rational trier of fact could find in favor of Fugetta and Lulich. In fact, St. Angelo points to such a rational trier of fact in his Memorandum in Support of Motion for Partial Summary Judgment.

St. Angelo "quotes extensively from" *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*; however, St. Angelo fails to bring the next two paragraphs and that court's holding to this Court's attention. Fugetta and Lulich provide the remaining pertinent analysis here:

> Nevertheless, Outside Directors argue that in the event the Court agrees, that there has not been a final adjudication of the Criminal Defendants' guilt to trigger the exclusion from coverage, those who pled guilty are judicially estopped from arguing to the contrary. "Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *In re Superior Crewboats, Inc*., 374 F.3d 330, 334-35 (5th Cir. 2004). "The purpose of judicial estoppel is to protect the integrity of the judicial process by preventing the parties from playing fast and loose with the courts to suit the exigencies of self interest." *Id.* at 334. The three elements of judicial estoppel are (1) the party's position is clearly inconsistent with a previous one; (2) the court accepted the previous position; and (3) the previous position must not have been inadvertent. *Id.* at 335. Moreover, **judicial estoppel "does not require a formal judgment; rather, it only requires that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition**." *Id.* at 335. Outside Directors maintain that all these requirements have been met in the adjudication of Fastow's guilty plea and that he should be precluded from "playing fast and loose with the courts to suit the exigencies of self interest." *In re Superior Crewboats, Inc*., 374 F.3d at 334-36 (holding that "as a matter of law" a personal injury plaintiff was judicially estopped from suing on that claim after he did not disclose it to a bankruptcy court that had granted the plaintiff/debtor a "no asset" discharge). *See also, e.g., Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996); *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396-97 (5th Cir. 2003).

---

[11] *See Factual Basis* **[P-28]**, *United States of America v. Gregory St. Angelo*, United States District Court for the Eastern District of Louisiana, Criminal Docket No. 19-00055, attached hereto as **Exhibit A** and incorporated by reference.

> **This Court agrees and applies the doctrine of judicial estoppel here as to Fastow.** The United States Supreme Court has opined, **"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position. . . ."** *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)...[12]

Here, Zurich has correctly determined that coverage of St. Angelo is excluded under the terms of Policy, namely Section IV (I) and (J), because St. Angelo has admitted to committing a deliberate fraudulent act. St. Angelo's contention that solely because he has not been sentenced is purely playing semantics as St. Angelo has admitted conduct specifically excluded under the Policy in an earlier proceeding. In *Enron*, the court adopted the position that even though "there has not been a final adjudication of the Criminal Defendants' guilt to trigger the exclusion from coverage, **those who pled guilty are judicially estopped from arguing to the contrary**" and applied the doctrine of judicial estoppel to the party who pled guilty.[13] St. Angelo's adamant stance on the "final adjudication" issue is a red herring designed to sweep his admitted fraudulent and criminal acts under the rug. The United States District Court for the Eastern District of Louisiana[14] has adopted a position urged by St. Angelo himself, and now he is asking this Court to adopt a clearly inconsistent position. St. Angelo would derive an unfair advantage if he is allowed to claim such inconsistent positions (i.e. receipt of the Interpleaded Proceeds to which he is not entitled) which would impose an unfair detriment on the Objecting Insured if not estopped (i.e. the Interpleaded Proceeds should be reserved for any Claims or Loss (including Defense Costs)

---

[12] *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 391 F. Supp.2d 541, 575-576 (SD Tx. 2005) (emphasis added).
[13] *Id.* at 575 (emphasis added).
[14] *United States of America v. Gregory St. Angelo*, United States District Court for the Eastern District of Louisiana, Criminal Docket No. 19-00055

incurred by the Objecting Insureds). Therefore, the Interpleaded Proceeds deposited herein belong to the Objecting Insureds.

Further, under the terms of the Policy, St. Angelo is contractually obligated to repay the proceeds which he has already received from Zurich. The Policy provides that's "[a]ny advancement or payment of Defense Costs shall be repaid to the Insurer by the Insureds severally according to their respective interests if and to the extent the Insureds shall not be entitled under the terms and conditions of this policy to coverage for such Defense Costs." As set forth above, St. Angelo is not entitled to the proceeds he has already received from Zurich based on his admitted fraudulent and criminal acts. Therefore, St. Angelo is obligated to repay Zurich for all Defense Costs advanced to him.

### D. Gregory St. Angelo does not qualify as an "Insured Person" under the Policy and he has received proceeds under the Policy which should be reserved for the Defense Costs of the Objecting Insureds

St. Angelo served as First NBC Bank's general counsel. At no time was St. Angelo ever an officer, director, or employee of First NBC Bank. The Policy defines an Insured Person as:

1. any one or more natural persons who were, now or shall become a duly elected or appointed director, trustee, governor, Manager, officer, advisory director, or member of a duly constituted committee or board of the Company or their functional equivalent;
2. any one or more natural persons not described in Subsection 1 above who were, now are or shall become Employees of the Company;
3. Independent Contractors only for purposes of Insuring Clause I.B; and
4. Any one or more natural persons described in Subsection 1 above while serving in an Outside Position.

St. Angelo does not qualify as an "Insured Person" under any of these subcategories listed in the Policy.[15] St. Angelo avers that he qualifies as an Insured under the "functionally equivalent"

---

[15] As Insured Persons under the Policy, Fugetta and Lulich have standing to raise this issue. *See* the Memorandum in Opposition to St. Angelo's Motion to Dismiss filed concurrently with this Memorandum.

language of the Policy; however, the totality of St. Angelo's duty listed in his Memorandum in Support of Motion for Partial Summary Judgment show that he was not akin to an officer or director. St. Angelo admits that his arrangement with FNBC was memorialized through a Consulting Agreement which referred to him as a "Consultant" and defined his duties as "those generally associated with the responsibilities of 'in-house' counsel." St. Angelo does not claim to have ever signed an employment agreement with the company nor does he claim that he was ever referred to or designated as an officer or director. Therefore, St. Angelo was not and is not an Insured Person under the Policy and is not entitled to any proceeds from the policy for any defense costs which he has or may incur.

### E. The Objecting Insured are Entitled to the Policy Proceeds.

Fugetta and Lulich continue to accrue additional attorney's fees, which they aver are covered under the Policy and will be submitted to Zurich for reimbursement. St. Angelo simply avers that Zurich is separately providing funds for the defense costs of the other Objecting Insureds; however, he completely ignores the fact that the source of these funds is not unlimited. On top of these Defense Costs, Zurich is in the process of settlement negotiations regarding payment of other Claims allegedly covered under the Policy. As noted above, the "soft-cap" related to Defense Costs has already been exhausted twice and the Objecting Insureds have had to seek authority to have the "soft cap" raised twice. Further, now that Zurich is in settlement negotiations with creditors having Claims under the Policy, the policy limits may be reached imminently. The Interpleaded Proceeds and all other available proceeds under the Policy should be reserved for any Claims or Loss (including Defense Costs) incurred by the Objecting Insureds.

### III. CONCLUSION

For all of the foregoing reasons, if this Court does not stay these proceedings as requested by the United States, this Honorable Court should deny *Gregory St. Angelo's Motion for Partial Summary Judgment* **[Doc. 87]** on the reasons stated above.

RESPECTFULLY SUBMITTED,

THE DERBES LAW FIRM, LLC

/s/ *Eric J. Derbes*
ERIC J. DERBES (La. Bar Roll No. 23464)
ALBERT J. DERBES, IV (La. Bar Roll No. 20164)
BRYAN J. O'NEILL (La. Bar Roll No. 37250)
3027 Ridgelake Drive
Metairie, LA 70002
Phone: (504) 837-1230
Fax: (504) 832-0323
Email: EDerbes@derbeslaw.com
*Attorneys for Frank Fugetta and Michael Lulich*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served via email through the Court's CM/ECF Electronic Notification System to all counsel of record who are receiving notice through this Court's CM/ECF Electronic Notification System.

Metairie, Louisiana, this 12th day of May, 2020.

/s/ *Eric J. Derbes*
Eric J. Derbes
