UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 11 |
| | * | |
| FIRST NBC BANK HOLDING COMPANY, | * | CASE NO. 17-11213 |
| | * | |
| Debtor, | * | SECTION "A" |
| | * | |
| * * * * * * * | * | |
| | * | * * * * * |
| | * | |
| ZURICH AMERICAN INSURANCE COMPANY | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| VERSUS | * | |
| | * | |
| GREGORY ST. ANGELO, WILLIAM D. | * | |
| AARON, JR., HERBERT W. ANDERSON, | * | ADV. P. NO. 20-01005 |
| DALE ATKINS, JOHN C. CALHOUN, | * | |
| WILLIAM CARROUCHE, | * | |
| LEANDER J. FOLEY, III, JOHN F. FRENCH, | * | |
| LEON GIORGIO, JR., SHIVAN GOVIDAN, | * | |
| LAWRENCE BLAKE JONES, LOUIS | * | |
| LAURICELLA, MARK MERLO, | * | |
| HERMAN MOYSE, III, GRISH LLOYD | * | |
| PANDIT, JAMES RODDY, DR. CHARLES | * | |
| TEAMER, JOSEPH TOOMY, RICHARD M. | * | |
| WILKINSON, LOUIS BALLERO, MARSHA | * | |
| CROWLE, MARY BETH VERDIGETS, | * | |
| FRANK FUGETTA AND MICHAEL LULICH | * | |
| | * | |
| Defendants. | * | |
| * * * * * * * | * | |

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION
AND IN OPPOSITION TO REQUEST FOR ABSTENTION**

BRIEF SUMMARY OF ARGUMENT ...................................................................4

DISCUSSION ....................................................................................................6

I.     THIS COURT HAS ALREADY ESTABLISHED JURISDICTION
OVER PAYMENT OF DEFENSE COSTS FROM THE
ZURICH POLICY TO THESE DIRECTORS ...........................................6

*Response to Directors' Argument on the "soft cap" orders*.................................7

II.    THE COURT HAS "RELATED TO" SUBJECT MATTER JURISDICTION.................9

    A.    An interpleader of D&O policy proceeds at a minimum
has "related to" jurisdiction ..............................................10

    B.    The interpleader action will have a conceivable
effect on this bankruptcy case.............................................12

        *1.*    *The core versus non-core issue
demonstrates "related to" jurisdiction*....................................12

        *2.*    *A Bankruptcy Court Has Jurisdiction to
Enforce Its Own Orders*.......................................................14

        *3.*    *The Interpleader Action will have effects on the
Ongoing Claims against the Directors,
on the FDIC's claims, on the Ongoing Securities lawsuit,
and on the Litigation Trust created by the Plan* ......................15

            *a.*    *Claims of the unsecured creditors
committee against the directors*....................................15

            *b.*    *Claims of the FDIC-R against the Directors*..............16

            *c.*    *The pending securities litigation against
the debtor may be covered under the policy*
.........................................................................17

            *d.*    *The Plan makes specific reference to the
Zurich Policy and authorizes the
Litigation Trust to pursue recovery under
the Zurich policy*...........................................................17

            *e.*    *The Creditors and FDIC-R have argued that
distribution of the proceeds from the
Zurich policy is a core proceeding*............................20

III.     ALTERNATIVELY, SHOULD THE COURT FIND IT HAS NO
         SUBJECT MATTER JURISDICITON, THE COURT SHOULD
         TRANSFER THE CASE TO THE DISTRICT COURT, FOR
         THE EASTERN DISTRICT OF LOUISIANA ................................................................23

IV.      RESPONSE TO MR. ST. ANGELO'S REQUEST FOR ABSTENTION .....................25

         1.    *A Motion for Abstention is not Pending Before the Court*.....................................25

         2.    *Mr. St. Angelo Has Waived Abstention*..................................................................27

         3.    *Abstention Would be Futile and Costly* ..................................................................28

         4.    *This Interpleader Action Does Not Fall Within the*
               *Narrow Sphere of Cases for Abstention*..................................................................30

               *The goals of abstention would not be achieved* ......................................................30

               *Abstention is improper absent a remand or*
               *pending parallel state court action* ........................................................................32

               *Factors weigh in favor of declining abstention* ......................................................33

               *Response to Mr. St. Angelo's Abstention Cases* ......................................................36

CONCLUSION ...................................................................................................................................40

MAY IT PLEASE THE COURT:

Plaintiff-in-Interpleader, Zurich American Insurance Company ("Zurich"), submits this Memorandum in Opposition to the Motion to Dismiss for Lack of Subject Matter Jurisdiction and in Opposition to Gregory St. Angelo's Request for Abstention.

## BRIEF SUMMARY OF ARGUMENT

The Directors contend that the Court does not have subject matter jurisdiction, because the interpleader action is not "related to" the bankruptcy case. First, this Court already determined that it has jurisdiction over distribution of defense costs to these Directors and to Mr. St. Angelo when it issued three orders governing the payment of defense costs from this Zurich policy, and issued another order allowing the Creditors Committee to pursue the debtor's and bankruptcy estate's rights under the policy. When the Court issued those orders, it had necessarily determined that it had subject matter jurisdiction. Second, by purposely and expressly leaving open the issue of whether distribution of the policy proceeds was a core matter, the interpleader action involving those proceeds necessarily <u>could</u> have a conceivable effect on the bankruptcy case. Third, the bankruptcy court has jurisdiction to enforce, interpret and apply its own orders, which is what Zurich is requesting in this matter. Finally, and in any event, the interpleader action not only has a potentially conceivable effect but will have an actual effect on the ongoing claims of creditors against the Directors, on the FDIC's claims, on the ongoing securities class action lawsuit, and on the claims pursued by the litigation trust created by the plan, since all of those claims are potentially covered by the Zurich policy at issue in the interpleader action. Necessarily, any amount paid to Mr. St. Angelo in the interpleader action and will reduce the amount the litigation trust can recover.

In the alternative, should the Court rule that it does not have subject matter jurisdiction, then it should transfer the case to the district court for the Eastern District of Louisiana, because

the interpleader has two separate bases for federal jurisdiction.  The district court would have both diversity jurisdiction over the interpleader as well as jurisdiction pursuant to statutory interpleader, 28 U.S.C. §1335.  As such, the appropriate remedy in the event the Court finds that it does not have subject matter jurisdiction is not  dismissal but transfer of this matter to the district court.

Abstention: In his Supplemental Memorandum in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction, Mr. St. Angelo does not argue that the Court lacks subject matter jurisdiction, but rather for the first time argues that  the Court should exercise abstention.  First, by affirmatively invoking federal jurisdiction in the interpleader action when filing his motion for summary judgment on the merits, Mr. St. Angelo has waived any right to request abstention.

Second, abstention would be futile, inordinately inefficient and costly to the Court and parties.  This case was not removed from state court and nor is there a parallel action pending in state court.  Therefore, this Court cannot remand the interpleader action to state court, and nor can this Court abstain in favor of a parallel state court action.  Rather, because the Eastern District of Louisiana would also have diversity jurisdiction and federal interpleader jurisdiction, Zurich would simply re-file this matter in the Eastern District of Louisiana.  Not only would the goal of comity not be achieved, since the state court would not decide the action, but an abstention would cause undue delay, undue costs and inconvenience to the Court, and would be wasteful, since the parties would have to re-file all of the pleadings with the Eastern District of Louisiana  that they have already filed in the bankruptcy court.  Third and finally, the interpleader action does not fall within the narrow sphere of cases for abstention. The interpleader action would not be decided by a state court; does not involve unsettled questions of state law but does involve funds that could be paid to creditors;  was not removed from state court; there is no parallel state court action; and the interpleader action has two separate bases for federal jurisdiction.

## DISCUSSION

**I.     THIS COURT HAS ALREADY ESTABLISHED JURISDICTION OVER PAYMENT OF DEFENSE COSTS FROM THE ZURICH POLICY TO THESE DIRECTORS**

The Court already determined that it has jurisdiction over distribution of Defense Costs to these Directors and to Mr. St. Angelo when it issued orders governing the payment of Defense Costs from the Zurich Policy. In these orders, this Court expressly noted that it was not ruling on the issue of whether the proceeds were property of the estate – which of course it did not have to do in order to assert its "related to" jurisdiction over whether Zurich could make payments of Defense Costs.

More particularly, On January 28, 2018, this Court issued an order to allow Zurich (and other insurers) "to comply with the terms of the respective Policies including, without limitation, to advance, reimburse, or make payments on account of the Defense Costs (including, without limitation, attorneys' fees and expenses) and other Loss (as defined in the respective Policies)…" (Case 17-11213, R. Doc. 325 at p 2). The order further provided that the aggregate payments "permitted under the policies shall be subject to a 'soft cap' of $5 million." The Order also required the Directors and Officers to submit quarterly summaries of Defense costs paid by the policies. Finally, the order expressly noted that "Nothing in this order shall constitute a finding by the Court that the proceeds of the Policies are or are not property of the Debtor's estate…". The Court has issued two additional orders raising the "soft cap" to $9 million and then $12 million. (Case 17-11213, Docs. 531 and 840), each time again declining to rule on the proceeds issue.

Finally, in the Order itself, the Court retained jurisdiction over the distribution of Defense Costs to Mr. St. Angelo and these directors, as the Court ordered that the soft cap of $5 million

was "subject to further adjustment by . . . further Order of this Court."  (Case 17-11213, R. Doc.
325).  The Court has already determined it has jurisdiction over the very payments at issue.

The Court issued an additional order on May 6, 2019, authorizing the Creditors Committee
to pursue "any and all of FNBC's rights concerning coverage disputes regarding coverage afforded
FNBC or its bankruptcy estate under any and all relevant insurance policies."  (Doc. 563).  Again,
the Court exercised jurisdiction over the Zurich policy and authorized the Creditors Committee to
pursue coverage under the policy, including to pursue the "coverage disputes" with regard to the
coverage provided to the "bankruptcy estate."   Again, this reflects that the Court has already
determined that it has subject matter jurisdiction over the proceeds from the Zurich policy.  Further,
this shows that the interpleader action certainly is "related to" the bankruptcy case, based on that
order.

***Response to Directors' Argument***

The Directors argue that the Court somehow "waived the requirement for subject matter
jurisdiction in the main bankruptcy case" when it entered the previous "soft cap orders."  Zurich
carefully examined the previous orders and could find no language in those orders where the Court
stated that it was in some way waiving subject matter jurisdiction and nonetheless issuing orders
for which it had no authority.  Indeed, if the Court did not believe it had subject matter jurisdiction,
it could not and would not have issued the orders. When the Court issued the orders, it had
necessarily determined that it had subject matter jurisdiction, and it exercised that jurisdiction. The
Court did not "waive" jurisdiction and then issue the orders that were not within its authority.
Zurich wholly agrees with the Directors that subject matter jurisdiction cannot be waived.
However, their argument appears to be that the Court waived subject matter jurisdiction and then

issued the soft cap orders, an argument for which there is no basis in the orders themselves and which would be contrary to the authority of this Court.

Further, the Directors again argue that "because such soft cap orders in the main bankruptcy case do not hold that the proceeds are property of the debtor's estate, they cannot be used as precedent that the Court has subject matter jurisdiction over the proceeds in this adversary proceeding." Again, this Honorable Court expressly held that it was not determining whether the proceeds were or were not property of the estate but nonetheless *exercised subject matter jurisdiction* over distribution of the proceeds from the Zurich policy to the Directors. Numerous other bankruptcy courts have similarly held that a bankruptcy court does not have to reach the issue of whether proceeds are property of the estate in order to exercise "related to" jurisdiction over an adversary proceeding.[1] Indeed, at the phone hearing of May 13, the directors conceded that the only remaining issue was regarding "related to" jurisdiction.

The contention of Certain Directors that this Court lacks jurisdiction is particularly remarkable since they were the original movants and petitioned this Court to issue an Order authorizing Zurich to make these very payments of Defense Costs under the Zurich policy to them. The Certain Directors represented to this Court that it had jurisdiction over the distribution of defense costs from the Zurich policy to them: "This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334." (Doc. 178 at p. 2).[2]

---

[1]     See *infra* at pages 10-12.

[2]     Mr. St. Angelo's motion rings especially hollow since he did not initially file a Motion to Dismiss in this interpleader action, but rather filed an Answer joining issue; filed a counterclaim; and then filed a Motion for Summary Judgment affirmatively invoking the Court's jurisdiction seeking award of the interpleader proceeds to him, and thereby necessarily arguing that this Court indeed has subject matter jurisdiction.

Zurich respectfully submits that the Certain Directors cannot have it both ways.  They cannot seek to invoke this Court's jurisdiction to obtain Defense Cost payments from Zurich's policy on the one hand, and then suddenly argue that this Court lacks jurisdiction when Zurich seeks the Court's protection governing the payment of these exact Defense Costs.

In sum, this Court has already properly exercised jurisdiction over the policy and the payment of Defense Costs to these Certain Directors and to St. Angelo without having to make any determination regarding whether the proceeds are property of the estate.  These Certain Directors consented and were parties to the Order to allow them to receive Defense Costs under the policy.[3]

Finally, once the Court determined it had subject matter jurisdiction, it could not be divested of that jurisdiction by any subsequent events, including confirmation of the plan.[4]

Because this Court's jurisdiction has already been established, the Motion to Dismiss for Lack of Subject Matter Jurisdiction should be denied.

## II.   THE COURT HAS "RELATED TO" SUBJECT MATTER JURISDICTION

Notwithstanding that the Court has already established jurisdiction over payment to the Certain Directors  and to Mr. St. Angelo from the Zurich policy, a jurisdictional analysis likewise shows that the Court has jurisdiction over the interpleader as an action "related to" the bankruptcy case of First NBC.

In its original opposition memorandum, Zurich thoroughly briefed "related to" jurisdiction under 28 U.S.C. § 1334, and why this Court need only determine whether the interpleader "at least

---

[3]     If the Certain Directors and St. Angelo did not want the bankruptcy court to hear the interpleader action, the remedy was to file a Motion to Withdraw the Reference, since jurisdiction over payments to them from  the policy proceeds had already been established by the Court.

[4]     See Discussion *infra* at 17 – 18.

related to" the bankruptcy case and whether it had the "potential to conceivably affect" the debtor's rights, obligations, or freedom of action, or the administration of the bankruptcy estate. Zurich adopts its prior briefing on the jurisdictional analysis as if incorporated herein. (See Doc. 114 at pp. 8-9).

### A. An interpleader of D&O policy proceeds at a minimum has "related to" jurisdiction

The Court does not have to rule on whether the proceeds are the property of the estate to find that it has jurisdiction over the interpleader action as a "related" case. Indeed, all of the courts that have addressed this issue have found that interpleader actions involving policies are subject to bankruptcy jurisdiction without reaching the issue of whether the proceeds were property of the estate. For example, in *Mid-Continent Casualty Company v. Garrett*, 2017 Bankr. LEXIS 579 (B.R. E.D. Ok. 2017), an insurer had filed an interpleader action against non-debtor parties involving proceeds from a liability insurance policy. The court held that a determination of whether the proceeds are property of the estate is a core proceeding, but such a determination is unnecessary to determine if the interpleader was "related" to the bankruptcy case. Deferring a ruling on the proceeds issue, the court held: "The interpleader action could impact the handling and administration of Debtor's bankruptcy estate, and affect its rights, liabilities, options or freedom of action. Therefore, this Court finds that the Interpleader Action is, *at a minimum*, related to Debtor's bankruptcy case, and that it has subject matter jurisdiction over this proceeding pursuant to <u>28 U.S.C. § 1334(b)</u>." See also *Casona v. Ziff,* 2018 U.S. Dist. LEXIS 128972 (S.D.N.Y. 2018) (court found that claims against proceeds of D&O policy were sufficiently "related" to the bankruptcy in order to exercise jurisdiction, and declined to address issue of whether the proceeds were property of the estate); *In re J.F. Naylor and Company, Inc.,* 67 B.R. 184 (Bankr. M.D.LA. 1986 (interpleader constituted a "related" action over which the bankruptcy court could exercise

jurisdiction); *In re Strawberry,* 464 B.R. 443 (N.D.Fl. 2012)(court exercised jurisdiction over an interpleader finding it was related to the bankruptcy because it could conceivably have an effect on the estate being administered in bankruptcy); *FRNC, LLC v. Homelife at Folts, LLC,* 28 U.S. Dist. LEXIS 47597 (N.D.N.Y. 2018) ("Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of [the bankruptcy estate]… While related to jurisdiction is not limitless, . . . it is fairly capacious, and includes suits between third parties which have an effect on the bankruptcy estate]… [C]ontingent outcomes can satisfy the conceivable effects test, so long as there is the *possibility* of an effect on the estate… Here, "related to" jurisdiction exists because the instant interpleader action might have a conceivable effect on Debtors' estates").

All of the foregoing cases found that an interpleader action involving D&O policies was at least related to the bankruptcy case, without the need to determine whether the proceeds were property of the estate. In a confusing attempt to distinguish these cases, the Directors first acknowledge that the outcome of the interpleader in those cases could have conceivably affected the remaining balance of proceeds available to those respective estates, but then incredibly argue that the interpleader in this case would not potentially reduce the proceeds available for the estate. This argument is simply wrong on its face. Here, any recovery by St. Angelo would necessarily reduce the amount available under the policy to satisfy claims brought by the debtor's litigation trust against the bank holding company's directors. Additionally, any amounts paid to St. Angelo also potentially reduces funds available to resolve the amount available to creditors under the securities class action lawsuit currently pending against the debtor. As discussed in detail *infra* at pages 11 - 21, the policy covers the claims of the Creditors and the FDIC-R against these Directors; the policy covers the securities claims against the debtor, which is a direct insured under the Zurich

policy; and the bankruptcy plan creates the litigation trust which is authorized to proceed against and collect from the Zurich policy (and the Zurich policy and the D&O claims are expressly named and addressed in the plan). Necessarily, any amount paid to St. Angelo in the interpleader action will reduce the amount the litigation trust can recover in its claims against the Directors. Similarly, any amount awarded in the interpleader would reduce the assets available to the estate to pay the securities claims. The cases Zurich cited all held similarly, are all directly on point, and all provide that the interpleader certainly would have a conceivable effect on the bankruptcy case. Tellingly, the Directors fail to cite a single case where the court held that an interpleader action involving D&O proceeds was not conceivably related to the bankruptcy case.

Regardless of whether the proceeds are the property of the estate, the interpleader is necessarily a related action to the bankruptcy case, and the Court has jurisdiction pursuant to 28 U.S.C. § 1334. For this reason, the Motion to Dismiss should be denied.

**B. The interpleader action will have a conceivable effect on the bankruptcy case.**

The Directors argue that the outcome of this Adversary Proceeding can have no conceivable effect on the bankruptcy case. As set forth in the numerous examples below, not only does this interpleader action have a conceivable effect on the bankruptcy case – which is the test for "related to" jurisdiction – but it will necessarily have an actual and profound effect on the bankruptcy case.

*1.* ___*The core versus non-core issue demonstrates "related to" jurisdiction*___

The parties to the bankruptcy case extensively briefed whether the issue of distribution of the policy proceeds to these directors was a "core" proceeding.[5] Indeed, this issue is widely

---

[5]     See 17-11213, Doc. Nos. 62 Motion for Relief From Stay filed by Interested Party Ryan J. Ashton, 70 Ex Parte Motion for Relief from Stay to Apply Insurance Proceeds On Secured Obligations filed by Interested Party Mary Beth Verdigets, 85 Response filed by Creditor Lead

litigated in United States bankruptcy courts. The mere fact that debate exists as to whether the distribution of D&O policy proceeds constitutes a "core" or "non-core" proceeding inescapably means that the current interpleader is necessarily "related to" the bankruptcy case at a bare minimum. In fact, the issue of whether the D&O policy's proceeds are part of the estate has been expressly left open by the Court.[6]  Since the issue of whether the policy proceeds are property of the estate has been purposefully and expressly left open by the Court, the interpleader certainly could have a "conceivable effect" on the bankruptcy case. Further, every court that has addressed

---

Plaintiffs in Securities Class Action, 87 Objection filed by Creditor William D. Aaron, Interested Party William D. Aaron, 88 Objection filed by Creditor William D. Aaron, Interested Party William D. Aaron, 111 Reply filed by Interested Party Ryan J. Ashton, 113 Reply filed by Interested Party Ryan J. Ashton, 124 Objection filed by Creditor Committee Official Unsecured Creditors' Committee, 125 Objection filed by Creditor Committee Official Unsecured Creditors' Committee, 178 Motion for Declaratory Relief filed by Creditor Directors/Former Directors Group, Motion for Relief From Stay, 185 Support Memorandum filed by Interested Party Mary Beth Verdigets, Interested Party Marsha Crowle, 224 Support Memorandum filed by Creditor David W. Anderson, 244 Motion for Relief from Co-Debtor Stay filed by Interested Party Ryan J. Ashton, 269 Objection filed by Interested Party Federal Deposit Insurance Corporation (FDIC) as Receiver for First NBC Bank, 278 Objection filed by Creditor Committee Official Unsecured Creditors' Committee, 287 Response filed by Interested Party Directors and Former Directors Group).

[6]     Plan at section 14..2.2: Notwithstanding anything to the contrary in this Plan or any Plan Supplement, including, but not limited to, the Litigation and Distribution Trust Agreement, nothing herein or in such Plan Supplement shall: (a) affect, impair, modify, or otherwise alter the terms and conditions of any insurance policies, including the D&O Policies, that provide coverage to Debtor's and its subsidiaries' directors and officers, including, without limitation, the priority of payments set forth therein or with respect to any D&O Claim; or (b) constitute a finding or conclusion that the proceeds of such policies are property of the Estate or otherwise subject to the control of the Debtor or the Litigation and Distribution Trustee. All of the Debtor's and its subsidiaries', directors' and officers' rights, including, but not limited to, the rights, if any, of the holders of Allowed Indemnity Claims, in and to such policies are hereby preserved. For the avoidance of doubt, the insurance policies to which this paragraph relates include the D&O Policies as defined herein. (emphasis added).

this very issue has found that an interpleader involving a D&O policy of the debtor was at a minimum "related to" the bankruptcy case.

### 2. *A Bankruptcy Court Has Jurisdiction to Enforce Its Own Orders*

This Court has the inherent power to interpret, implement and enforce its own prior orders. The United States Supreme Court has previously held that a bankruptcy court retains jurisdiction to interpret and enforce its own orders:

> "The answer here is easy:  As the Second Circuit recognized, and respondents do not dispute, the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior order." *Travelers Indemnity Company v. Bailey*, 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009).

Simply, a Bankruptcy Court has continuing inherent jurisdiction pursuant to § 105 of the Bankruptcy Code to interpret, apply and enforce its own orders.  For example, in *Falck Properties LLC v. Parkvale Financial Corporation*, 469 B.R. 216 (Bankr. W.D. Pa. 2012), the Bankruptcy Court held that it has jurisdiction over a proceeding that is "interwoven and inseparable from the various orders this court has previously entered . . . as this squarely falls within the court's well-recognized power to interpret and enforce its own orders."  *Id.* at 223, citing *Travelers Indemnity*, *supra.*  See also *Gilbert v. North American Airlines*, 2014 WL 1271057 (E.D. N.Y. 2014), where the court held that "the Bankruptcy Court retains continuing jurisdiction over its prior orders."  As the court held:

> "It is difficult for this court to imagine how the Bankruptcy Court's interpretation of its own prior orders, both of which were integral to, and issued in due course of, a Chapter 11 proceedings, could be interpreted ex post facto as anything other than it related to the bankruptcy itself."

*Id.* at fn. 7, citing *In Re: Old Car Company LLC*, 2010 WL 9461648 at 9 (S.D. N.Y. July 2010), *aff'd*,  438 F.Appx. 30 (2nd Cir. 2011).  Here, Zurich seeks protection from the Court with regard to its prior "soft cap" orders.  Pursuant to both the Bankruptcy Code and the United States Supreme

Court rulings, the Bankruptcy Court has jurisdiction to enforce, implement, interpret and apply its prior orders. For this reason, the Motion to Dismiss should be denied.

**3.** ***The Interpleader Action will have effects on the Ongoing Claims against the Directors, on the FDIC's claims, on the Ongoing Securities lawsuit, and on the Litigation, Trust created by the Plan***

The funds on deposit in this interpleader action are potentially available for litigation costs and settlement in the pending claims that have been brought against the former directors, including claims being handled by the litigation trust, claims by the FDIC, and the securities claims against the debtor, all are which are potentially covered under the Zurich policy.

***a.   Claims of the unsecured creditors committee against the directors***

The Unsecured Creditors Committee filed a complaint in the Eastern District of Louisiana (No. 19-cv-10341), against many of the former officers and directors in this matter including Mr. St. Angelo. This action was brought on behalf of the bankruptcy estate "to recover damages suffered by First NBC Bank Holding Company ("FNBC" or the "Holding Company")[the debtor] resulting from the breach by the Officer Defendants, in their respective roles as the most senior officers of FNBC, of the fiduciary duties they owed directly to FNBC." (Complaint at page 1).

In addition to seeking recovery on behalf of the debtor that may be covered by the Zurich policy, the Complaint specifically alleges that this Court authorized the Committee to pursue the debtor's rights under all relevant policies (including the Zurich policy):

> Further, on May 6, 2019, the Bankruptcy Court expressly authorized the Committee … (v) any and all of FNBC's rights concerning coverage disputes regarding coverage afforded FNBC or its bankruptcy estate under any and all relevant insurance policies. (Id. at page 11).

*See also*, this Court's Order of May 6, 2029, authorizing the Committee to pursue the debtor's rights under the D&O policies, including the pursuit of "coverage issues." (Doc 563 in the Bankruptcy action). Based on this order alone, the interpleader action is "related to" the bankruptcy case, since

it pertains to a "coverage dispute" involving the very same policies subject to the Court's order of May 6, 2019. Indeed, the question of whether Mr. St. Angelo is entitled to coverage under the Zurich policy is at issue in this action and also at issue in the pending lawsuit by the Committee, a coverage issue that this Court has already ruled is related to the bankruptcy case.

In sum, depending on how the Court rules in the interpleader action, those proceeds could potentially be available for recovery by the debtor (through the Litigation Trust under the Plan) in the claims against the Directors. Further, the coverage issues the Court will address in the interpleader action regarding Mr. St. Angelo will be identical to those the Court will address in the Creditors Committee suit, and the Court has already ruled it has jurisdiction over those coverage disputes. The interpleader will not only have a conceivable effect on the bankruptcy case, it will have a definite and profound effect upon it.

### b. *Claims of the FDIC-R against the Directors*

The FDIC-R filed a motion to intervene into the suit against the Directors in order to assert its own claims. (See Doc. 75, case no. 2:19-cv-10341). These claims also may be covered under the Zurich policy, and these claims also raise the same coverage issues raised in the interpleader action. In its motion, the FDIC-R references the D&O policies, noting that: "Both the FDIC-R's potential claims and the Committee's claims in this case are covered by common "wasting" insurance policies: D&O policies (in the case of the Officer Defendants)." (Id. at p. 15). As noted by the FDIC-R, any recovery by St. Angelo in the interpleader lawsuit would reduce the amount available for recovery in the Creditors Committee lawsuit. Any recovery by the FDIC-R would lessen the amount of available insurance for recovery by the Litigation Trust. And any amount that may be awarded in the interpleader, would lessen the amount available for recovery to the FDIC-R and the Litigation Trust. Again, not only is there a conceivable effect, but the ruling in the

interpleader case will have a direct impact on the amount of insurance available for recovery to the Litigation Trust.

### c.   *The pending securities litigation against the debtor may be covered under the policy*

There is a pending securities class action lawsuit against the debtor styled *Kinzler v. First NBC Bank Holding Company et al,* no. 16-cv-04243 (E.D.La.) which is now pending on appeal (but stayed) in the Fifth Circuit.  The Zurich policy provides direct coverage to the debtor for this matter, for which Zurich has previously reimbursed defense costs.  The plaintiffs in *Kinzler* have also filed a prof of claim in this court. Thus, the plaintiffs in *Kinzler* are also ostensibly creditors of the debtor.  Therefore, any payments in the interpleader action would: (1) necessarily reduce the potential recovery for these creditors;  and (2) also reduce the potential assets available to the estate for payment of these securities claims.

### d.   *The Plan makes specific reference to the Zurich Policy and authorizes the Litigation Trust to pursue recovery under the Zurich policy*

The Court may recall that during the first telephone hearing on the motion to dismiss for lack of subject matter jurisdiction on May 13, 2020, the Directors argued (but had not briefed) that the plan had recently been confirmed, and that the plan does not address the proceeds of the Zurich policy, and therefore there was no "related to" jurisdiction.  Based on that argument, the Court allowed the Directors to file a supplemental brief. However, the Directors' supplemental brief is devoid of any such argument.  The Directors no doubt discovered after research, that the Fifth Circuit has ruled that a bankruptcy court cannot be divested of jurisdiction over an adversary proceeding by the subsequent confirmation of the plan:

> Plaintiffs cannot point to a single case in which we have held that plan confirmation divests a district court of bankruptcy jurisdiction over pre-confirmation claims based on pre-confirmation activities that properly had been removed pursuant to "related to" jurisdiction.  We likewise find none. … [I]f "related to" jurisdiction actually existed at the time of removal; subsequent events cannot divest the district

court of that subject matter jurisdiction. *Newby v. Enron,* 535 F.3d 325, 336 (5th Cir. 2008) (citations omitted).

See generally, *In re Blast Energy Services*, 396 B.R. 676, 684 (S.D.Tx. 2008) ("bankruptcy courts generally retain jurisdiction over pre-confirmation claims based on pre-confirmation activities even though the actual dispute is tried post-confirmation"); *In re MSB Energy, Inc*., 438 B.R. 571, 587 (Bankr. S.D. Tex. 2010) ("In the suit at bar, this Court is addressing pre -confirmation claims based on pre-confirmation activities and, thus—according to the Fifth Circuit's analysis set forth in *Enron*—retains bankruptcy jurisdiction over the Adversary Proceeding without consideration of the third factor presented in *Craig's Stores*, 266 F.3d at 390").

Therefore, to the extent this Court had jurisdiction when the interpleader was filed, it cannot be divested of that jurisdiction by the subsequent confirmation of the plan. This Court could not and has not been divested of the jurisdiction it exercised over distributions from the Zurich Policy to the Directors when it issued the "soft cap" orders.

More importantly though, is that the plan specifically references the Zurich Policy and authorizes the Litigation Trust created by the plan to pursue proceeds covered under the Zurich Policy, and expressly reserves all rights to coverage that the debtor has under the Zurich policy. Accordingly, an interpleader action that concerns both the coverage under that policy and the distribution under that policy necessarily could conceivably impact, and indeed necessarily will impact, the rights and claims under that policy that were reserved to the debtor under the plan.  As the plan provides:

> 1.1.32 D&O Policies means any Insurance Policy insuring the Debtor's officers and/or directors, including the Financial Institutions Select Insurance Policy, Number DOP 9311203-04, **issued by Zurich American Insurance Company**, with a policy period of June 9, 2015 through December 31, 2016…

*** 

18

1.1.31 D&O Claims means any and all rights and claims against the Debtor's current and/or former directors and officers for pre-petition acts of whatever nature and the proceeds of any such claims, **including any D&O Policies** or other Insurance Policies associated therewith.

\*\*\*

1.1.59 Insurance Policies means, collectively, any policies of insurance coverage of any kind (including any and all amendments, endorsements, renewals, and extensions thereof) that at any time belonged or belong to or included or include the Debtor as a named insured, additional insured, or beneficiary, including, without limitation, **the D&O Policies**.

\*\*\*

1.1.96 Tort Claims means any and all claims of the Debtor based on any tort, including, but not limited to, **D&O Claims** and all Causes of Action at law and equity (including those based on breach of contract and based on tortious conduct) against all current and former auditors and accountants.

\*\*\*

8.6 D&O Claims and D&O Policies. For the avoidance of doubt, and notwithstanding anything to the contrary set forth in this Plan, including this Article VIII, no release, exculpation, injunction, or waiver set forth in this Plan shall apply to any D&O Claims (or **claims relating to any D&O Policies**) belonging to or pursuable by the Committee or the Litigation and Distribution Trust or Litigation and Distribution Trustee, and all such claims and related Causes of Action are expressly reserved and preserved as set forth in Section 6.3 above.

\*\*\*

Notwithstanding anything to the contrary in this Plan or any Plan Supplement, including, but not limited to, the Litigation and Distribution Trust Agreement, nothing herein or in such Plan Supplement shall: (a) affect, impair, modify, or otherwise alter the terms and conditions of any insurance policies, **including the D&O Policies, that provide coverage to Debtor's** and its subsidiaries' directors and officers, including, without limitation, the priority of payments set forth therein or with respect to any D&O Claim; or (b) constitute a finding or conclusion that the proceeds of such policies are property of the Estate or otherwise subject to the control of the Debtor or the Litigation and Distribution Trustee. All of the Debtor's and its subsidiaries', directors' and officers' rights, including, but not limited to, the rights, if any, of the holders of Allowed Indemnity Claims, in and to such policies are hereby preserved. For the avoidance of doubt, the insurance policies to which this paragraph relates include the D&O Policies as defined herein.

***

6.8 Preservation of Causes of Action.

The retained claims and Causes of Action, include, without limitation:

***

Any claims asserted in the litigation styled, Eric R. Kinzler, Individually and on Behalf of All Others Similarly Situated, v. First NBC Bank Holding Company, Ashton J. Ryan, Jr. and Mary Beth Verdigets, Case No. 16-04243, U.S. District Court, Eastern District of Louisiana

***

• Any Cause of Action included within the suit styled Official Committee of Unsecured Creditors of First NBC Bank Holding Company v. Ashton J. Ryan, Mary Beth Verdigets, William J. Burnell, Gregory St. Angelo, Officer Does 1-20, Ernst & Young, LLP, Mark Bell, and Auditor Does 1-20, Case No. 2:19-cv-10341, U.S. District Court, Eastern District of Louisiana.

(Second Amended Chapter 11 Plan, NO. 17-11213, Doc. No. 621)(emphasis added). These provisions leave no doubt that the interpleader action could conceivably affect – and indeed certainly will affect --  the rights granted to the debtor/Litigation Trust to pursue claims covered by the Zurich Policy as expressly provided for under the bankruptcy plan.

### e. *The Creditors and FDIC-R have argued that distribution of the proceeds from the Zurich policy is a core proceeding*

When the Directors first moved for a "soft cap," the Creditors and FDIC-R filed several memoranda arguing how the distribution of the proceeds from the Zurich policy would impact the bankruptcy case. Zurich will set forth a few examples below and then adopt and incorporate their briefing by reference:[7]

---

[7]     See fn.1, *supra,* for a listing of the memoranda filed by the Creditors and the FDIC-R.

1.  Doc 124 LIMITED OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO ASHTON J. RYAN'S MOTION FOR AN ORDER FOR RELIEF FROM THE AUTOMATIC STAY

    The Committee's concern about any payments to Ryan or for the benefit of claimants against Ryan is that the Committee believes First NBC Bank Holding Company (the "Debtor") has significant claims against, inter alia, Ryan, that may be covered under the insurance policies from which Ryan seeks payment. Recoveries on the insurance policies on account of these claims would be among the larger sources of funds for distribution to creditors holding allowed claims in this case. The Committee is concerned about any payments on account of these insurance policies that would reduce coverages available to satisfy the Debtor's claims against Ryan. Thus, the primary focus of the Committee's analysis is whether and to what extent payments made on account of the policies reduce coverage available to satisfy the Debtor's claims that also may be covered by the policies.

                                                        ***

2.  Doc 269 LIMITED OMNIBUS OBJECTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST NBC BANK TO THE MOTIONS AND JOINDERS OF DIRECTORS AND OFFICERS   In essence, Movants seek blank check authority from this Court. Such relief is inappropriate where other parties in interest, including the bankruptcy estate, have rights under the same insurance policies. Complicating these issues further is the fact that the failed Bank, is being separately administered by the FDIC-R and is not under the jurisdiction of the Court. …. But, as this Court has already noted, the bankruptcy estate, like the FDIC-R, has an interest in ensuring that the funds available for payment of claims are not dissipated by the unconstrained payment of legal fees

3.  Doc 278 LIMITED OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF FIRST NBC BANK HOLDING COMPANY TO THE MOTIONS AND JOINDERS OF DIRECTORS AND OFFICERS   Moreover, the Debtor is a direct insured under the Public Company Securities Coverage Part.  Under this coverage, the Policies (both Zurich and U.S. Specialty Insurance Company), provide direct coverage to the Company for Securities Claims. The Committee is aware of at least one pending securities claim styled, Kinzler v. First NBC Bank Holding Company, et al., No. 16-cv-04243-KDE-JVM, USDC, ED La., which is now pending on appeal (but stayed) in the Fifth Circuit. The plaintiffs in such action are ostensibly creditors of the Debtor whose claims may be covered by insurance, and if so, payments under the insurance would reduce the volume of claims asserted directly against other assets of the Debtor's estate. If the proceeds of the Policies are depleted ahead of coverage afforded the Debtor under these policies for payment of these types of claims, the estate will be diminished. P. 6

In all, the estate has a direct, presently existing, non-speculative interest in the proceeds of these Policies. … The Zurich Policy, for example, contains separate coverage limits applicable to each coverage part according to the Declarations page. However, the Zurich Policy also provides for a Shared Aggregate Limit of Liability covering claims made under both the Management Liability (D&O) part and the Securities Part. Thus, Loss paid on account of one part could eliminate or reduce coverage applicable to a separate part due to the Shared Aggregate Limit clause. … That Movants have a competing claim to these Policy proceeds does not mean that the estate's interests should be ignored. C.f., In re MF Global Holdings, Ltd., 469 B.R. 177, 190-191 (Bankr. S.D.N.Y. 2012).7 Granting a "blank check" to Movants for future, yet-to-be-identified, possible defense costs may very well have an "adverse effect" by diminishing the coverage directly afforded the Debtor and the estate under these same policies. See, In re Sacred Heart Hosp. of Norristown, 182 B.R. 413, 420 (Bankr. E.D.Pa. 1995) (debtor's direct interest in proceeds of policy under both liability and indemnity provisions sufficient basis for finding proceeds of D&O policy were property of the estate); see also, Circle K Corp. v. Marks, (In re Circle K Corp.), 121 B.R. 257 (Bankr. D.Ariz. 1990) (indemnity coverage to debtor under D&O policy basis for finding proceeds of D&O policy property of the estate); In re CyberMedica, Inc., 280 B.R. 12, 17 (Bankr. D.Mass. 2002) (D&O proceeds property of the estate). …

The Debtor in this case clearly has an interest in the proceeds of the policy due to its competing claims for coverage and the shared limits of liability between applicable coverage parts. These interests require protection from depletion and, according to authority cited by Movants, overrides the interest of the directors and officers advanced within the Motions.

And furthermore, the Debtor itself is a defendant in a securities matter subject to a shared aggregate limit of liability under the policy. …

The reasonableness and application of those defense costs to matters actually covered by the Policies is well within what this Court should maintain control over, since carte blanche payment of Movants' future Loss claims may very well have a direct effect on claims the Debtor and estate have against the very same coverages under the Policies.

In sum, the interpleader action conceivably could affect the bankruptcy case, and almost certainly will directly impact the bankruptcy case. The interpleader is "related to" the bankruptcy case, and this Honorable Court has subject matter jurisdiction to hear the interpleader.

### III.   ALTERNATIVELY, SHOULD THE COURT FIND IT HAS NO SUBJECT MATTER JURISDICITON, THE COURT SHOULD TRANSFER THE CASE TO THE DISTRICT COURT, FOR <u>THE EASTERN DISTRICT OF LOUISIANA</u>

While Zurich's argument above conclusively demonstrates that this Court has subject matter jurisdiction, in the event this Court determines that jurisdiction does not exist, then this case should be transferred to the U.S. District Court for the eastern District of Louisiana. The Eastern District of Louisiana has original diversity jurisdiction pursuant to rule interpleader and also has jurisdiction pursuant to statutory interpleader.  The Bankruptcy Court, which is a unit of the Eastern District, should transfer the case to the district court if it finds it does not have subject matter jurisdiction.

In addition to averring in its Interpleader Complaint that this Court has jurisdiction pursuant to 28 U.S.C. § 1334, Zurich also noted that jurisdiction existed under Federal Rule of Civil Procedure Rule 22 (via diversity jurisdiction) and the Federal Interpleader Statute, 28 U.S.C. § 1335.[8]

For a federal court to exercise jurisdiction pursuant to Rule 22 interpleader, a stakeholder must be diverse from all claimants.  See generally *Weaver v. Metro Life Insurance Company*, 939 F.3d 618, 623 (5th Cir. 2019), citing *Travelers Insurance Company v. First National Bank of Shreveport*, 675 F.2d 633, 637, n. 9 (5th Cir. 1982) (district court had jurisdiction over Rule 22 interpleader because stakeholder was diverse from all claimants even though the claimants were not diverse from each other); see *Eikel v. States Marine Line Inc.*, 473 F.2d 959, 964, n. 5 (5th Cir.

---

[8]      While Zurich sought this Court's jurisdiction pursuant to bankruptcy jurisdiction under 28 U.S.C. § 1334, Zurich noted that this case  is also governed by F.R.C.P. Rule 22  (rule interpleader diversity jurisdiction) and 28 U.S.C. §1335 (Federal Interpleader Act).  (Complaint at paragraphs 3 and 5).

1973). Here, as alleged in the Interpleader Complaint, Zurich is a New York corporation with its principal place of business in Illinois.  All of the defendants are residents of Louisiana except one, who is a resident of Colorado.  Therefore, the stakeholder is diverse from all claimants, satisfying subject matter jurisdiction.

Additionally, a statutory interpleader requires minimal diversity.  The citizenship of the stakeholder is not involved in statutory interpleader.  Rather, the jurisdictional requirements of 28 U.S.C. § 1335 required diversity of citizenship between two or more of the adverse claimants and that the amount in controversy is $500 or more.  *S. Farm Bureau Life Insurance Company v. Brown*, No. CV 18-0429, 2019 WL 908221, at *2 (W.D. La. February 22, 2019) (minimal diversity among claimants required for statutory interpleader jurisdiction). Here, as alleged in the Interpleader Complaint, one of the claimants is a Colorado resident, and the rest are Louisiana residents, thereby satisfying the minimal diversity requirement needed for subject matter jurisdiction.

When a bankruptcy court determines it does not have subject matter jurisdiction, if the action has a separate basis for federal jurisdiction, then the bankruptcy court should transfer the action to the district court. For example, in *Rajala v. Guaranty Bank & Trust*, 191 B.R. 445 (Bankr. D. KS. 1996), after finding that it had no subject matter jurisdiction over a claim, the bankruptcy court "transferred the proceeding … to the district court for consideration, because that court had independent federal question jurisdiction."). Similarly, in *Estate of Fisher v. JPMorgan Chase Bank, NA*, 406 B.R. 741 (Bankr. N.D.Tx. 2009), where the bankruptcy court determined it did not have subject matter jurisdiction but that the district court had diversity jurisdiction, it held that the adversary proceeding "must be transferred" to the district court. See also, *Cataldi v. Olo Corporation*, 2007 WL 4191946 (Bankr. N.D.Tx. 2007) (after the bankruptcy court held that it did

not have subject matter jurisdiction, it held that the district court should determine if there was diversity jurisdiction); *In re Wernick*, 242 B.R. 194 (S.D.Fl. 1999) (bankruptcy court which did not have subject matter jurisdiction could not transfer case to the district court because there was no "support for which a federal court could assert federal jurisdiction"); *Moyer v. Walter Idus Geer, III*, 2014 WL 2557132 (Bankr. N.D. Ga 2014) (district court had jurisdiction to hear claim over which the bankruptcy court held it had no subject matter jurisdiction).

In sum, in the event this Honorable Court should find that it has no subject matter jurisdiction over the interpleader action, the appropriate remedy is not dismissal but transfer to the district court, since there are two separate bases on which the district court could exercise jurisdiction.

## IV.     RESPONSE TO MR. ST. ANGELO'S REQUEST FOR ABSTENTION

In his "Supplemental Brief in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction," Mr. St. Angelo, oddly enough,  does not brief any reason why this Honorable Court does not have subject matter jurisdiction. Rather, he suggests that in the event the Court *does* have subject matter jurisdiction, then the Court should abstain from hearing this matter.  As discussed below, there are multiple fatal problems with Mr. St. Angelo's suggestion of abstention.

### 1.   *A Motion for Abstention is not Pending Before the Court*

While Mr. St. Angelo's memorandum is titled "Supplemental Brief in Support of Motion to Dismiss for Subject Matter Jurisdiction," the only substantive argument in the brief is the request for the Court to abstain *presuming* it has subject matter jurisdiction.  At the hearing on the Motion to Dismiss for Lack of Subject Matter Jurisdiction on May 13, 2020, the Court continued the hearing on the subject matter jurisdiction issue to allow the Directors (and Mr. St. Angelo) the opportunity to brief whether the Court had "related to" jurisdiction, and continued all other motions

set for that date.   In its Minute Entry of 5/19/20, this Honorable Court continued the following hearings to June 30, 2020:

> Hearing continued (re: related document(s) 84 Motions to Dismiss Counterclaim [of Gregory St. Angelo]; 84 Motions to Dismiss Counterclaim [of Gregory St. Angelo]; 87 Motion for Partial Summary Judgment [of Gregory St. Angelo]; 92 Motion to Dismiss Adversary Proceeding [of the Directors]; 107 Motion to Compel [of Messrs. Lulich and Fugetta]; 111 Motion to Intervene [by the United States]. Hearing continued to 6/30/2020 at 2:00 p.m.

To date, the Court has not raised the issue of abstention *sua sponte*,  as it is allowed to do, and nor did Mr. St. Angelo raise it at the May 13 hearing.   In fact, Mr. St. Angelo affirmatively invoked this Court's jurisdiction by filing a counterclaim and filing a motion for summary judgment, and only after this Court indicated during the May 13 hearing that the United States' Motion to Stay may have merit did Mr. St. Angelo request abstention in his supplemental memorandum filed two weeks ago.   Mr. St. Angelo is of course free to file a Motion for Abstention and notice it for hearing, and of course the Court in its discretion may raise the issue *sua sponte*. However as discussed below, it would be futile  because: (1) Mr. St. Angelo has waived abstention; (2) to do so would be futile, costly, and violate the principles of judicial economy; and (3) this is not the type of case that would warrant abstention.

While not set for hearing before this Honorable Court, and with no indication by the Court that it intends to raise this issue *sua sponte*, in an abundance of caution, Zurich will brief below why any request for extension should be denied.[9]

---

[9]      The courts of the Fifth Circuit generally will not consider arguments first raised in reply briefs.  For example, in *Brown & Root Industrial Services LLC v. Nelson*, 2017 WL 7693163 (M.D. La. 2017), a state court action had been removed to the federal district court pursuant to both diversity and "related-to" bankruptcy jurisdiction.   The plaintiff filed a Motion to Remand. For the first time in its reply memorandum, the plaintiff requested the court exercise its discretion to abstain and remand the suit.   The district court held that typically the courts do not consider

## 2. *Mr. St. Angelo Has Waived Abstention*

Mr. St. Angelo has acquiesced to and has affirmatively invoked federal jurisdiction in the interpleader action, and as such, he has waived any right to request abstention.  In this interpleader case, Mr. St. Angelo initially filed an Answer, thereby joining issue.   Further, he filed a counterclaim against Zurich, affirmatively requesting this Court exercise its jurisdiction in this matter.  More significantly, Mr. St. Angelo has filed a Motion for Summary Judgment on the merits requesting that this Honorable Court award him the funds that have been deposited into the Registry of the Court, affirmatively invoking the Court to exercise its jurisdiction and to decide the interpleader case on the merits.  Based on these actions, as a matter of law, Mr. St. Angelo has waived the right to seek abstention.

"It is settled that when a party undertakes affirmative action in the federal district court, she has acquiesced in the federal court's jurisdiction and waived objection to the removal." *Lanier v. American Board of Endodontics*, 843 F.2d 901 (6th Cir. 1988), citing  *In Re: Moore*, 28 S.Ct. 706, 52 L.Ed. 904 (1908)(Plaintiffs "consented to jurisdiction of the [federal] court" by requesting the court to determine the action on the merits); *Harris v. Edward Hyman Company*, 664 F2d 943 (5th Cir. 1981).  See also *Randall Lemmo & ANPI LLC v. NOS Communications Inc.*, *et al*, No. 2014 WL 69034 (E.D. Tx. 2014) (a party waives the right to abstention "if that party urges the

---

arguments that are first raised in reply briefs, and further noted that because diversity jurisdiction also existed the issue of abstention was not present:

> "It is the practice of the [Fifth Circuit] and the district courts to refuse to consider arguments raised for the time in reply briefs." *Gillaspy v. Dallas Independent School District*, 278 Fed. Appx. 307, 315 (5th Cir. 2008); (citing *Peteet v. Dow Chemical Company*, 868 F.2d. 1428, 1437 (5th Cir. 1989).

Similarly, here, Mr. St. Angelo first raised the issue of abstention in the supplemental brief in support of the Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Court to consider the merits before asking the Court to abstain."), citing *Ohio Civil Rights Commission v. Dayton Christian Schools Inc.*, 477 U.S. 619, 626 (1986)(court found right to seek abstention waived when party had requested court "to proceed to adjudication" on the merits); *Koehnen v. Herald Fire Insurance Company*, 89 F.3d 525 (8th Cir. 1996) ("a party that engages in affirmative activity in federal court typically waives the right to seek remand"); *Riggs v. Plaid Pantries Inc.*, 233 F.Supp.2d 1260 (D. Ore. 2001) (court found plaintiff had waived right to seek remand by filing a Motion to Default, noting that plaintiffs "had availed themselves of the jurisdiction of the federal court and then sought an Order of Default." Citing *Giraudo v. Hankels & McCoy*, 1993 WL 302354 (D. Or. 1993)); *In re U.S. Physicians, Inc.,* 2000 WL 1140294 (E.D Pa. 2000)(invocation of 1334(c)(1) abstention waived if untimely invoked after merits determination); *In re Chadwick*, 66 B.R. 942 (Bankr. D. Montana 1986)(party waived 1334(c)(1) abstention by requesting decision on the merits).

Here, Mr. St. Angelo has filed a counterclaim against Zurich and has a filed a Motion for Summary Judgment requesting the Court to exercise its jurisdiction and award him the funds on deposit with the Registry of the Court.  He has clearly acquiesced to and indeed affirmatively invoked federal court jurisdiction to decide the merits of the interpleader and has accordingly waived any possible request for abstention.

### 3.   *Abstention Would be Futile and Costly*

Typically, when invoking the doctrine of abstention, a federal court abstains from considering a removed action or abstains in favor of a parallel proceeding in state court. Neither circumstance exists here. This interpleader was originally filed with the bankruptcy court, and no parallel state court action exists.   Further, there are two additional and separate bases for federal jurisdiction (i.e., diversity and the federal interpleader statute). If this Honorable Court abstains, it

cannot remand the interpleader to state court (since it has not been removed); nor can it abstain in favor of a parallel state court action (since there is no parallel state court action). Rather, if the Court abstains, Zurich would have to re-file the interpleader a second time with the Eastern District of Louisiana.  As discussed in Section III, *supra*, the Eastern District of Louisiana has diversity jurisdiction over this interpleader action as well  as federal interpleader statutory jurisdiction.

Therefore,  none of the abstention goals of convenience, comity and economy would be achieved in the event the Court were to abstain.  To the contrary, an abstention would cause undue delay, undue cost and inconvenience to the Court and the parties and would be wasteful.  First, there would be no comity, since the state court would not actually decide the interpleader, rather the Eastern District would still decide this case, just not its bankruptcy section.  Further, an abstention would require the parties to re-file all of the pleadings already filed to date in this same jurisdiction.  It would thwart judicial efficiency by requiring the Eastern District of Louisiana to re-litigate the identical issues that are currently pending in its bankruptcy section, when this Honorable Court is already very well familiar with the relevant issues and parties involved. Indeed, it seems nonsensical for Mr. St. Angelo to ask this Court to abstain from hearing this case when the orders of any other court regarding this matter will have to be subject to the Bankruptcy Court's prior orders and rulings. This Court is unquestionably in the best position to ensure that the outcome of this case is done in accordance with the Court's prior orders concerning the bankruptcy. Finally, it would cost all of the parties and the Court unnecessary time, effort and expenses should the Court abstain, while not achieving a single goal of abstention.

In sum, abstention would not only be futile, but would actually be counter-productive, costly, wasteful, and thwart all of the goals of abstention.

#### 4.    This Interpleader Action Does Not Fall Within the Narrow Sphere of Cases for Abstention

Finally, the interpleader action does not fall within the narrow types of cases in which the courts have exercised permissive abstention. This case was not removed from state court but rather was originally filed in the bankruptcy court; there is no parallel state court proceeding; there are no unsettled issues of state law; the interpleader claim has separate bases for federal jurisdiction; all of the parties have appeared in the bankruptcy case; the bankruptcy court has previously issued orders regarding distribution of the proceeds to these directors; and even if the motion were granted, the interpleader would simply be re-filed in the federal district court.

#### The goals of abstention would not be achieved

The decision of whether to abstain pursuant to 28 U.S.C. § 1334(c)(1) is committed to the discretion of the district court. *The Matter of Gober*, 100 F.3d 1195, 1207 (5th Cir. 1996).  Section 1334(c)(1) was intended to codify the judicial abstention doctrine, and the courts will look to the jurisprudence regarding permissive abstention when applying the statute.  *Coker v. Pan American World Airways Inc.* (*In Re: Pan American Corp.*), 950 F.2d 839, 835 (2nd Cir. 1991).  "Courts interpreting 1334(c) have held that provision summarizes and incorporates federal non-bankruptcy abstention doctrines." *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 833 (5th Cir. 1993). The discretionary abstention should be narrowly construed and should be exercised "sparingly and cautiously." *In Re: Hilsborough Holdings Corp.*, 123 B.R. 1004, 1010 (Bankr. N.D. Fla. 1990), citing *In Re: Charter Company*, 82 B.R. 602, 603 (Bankr. M.D. Fla. 1988)( "abstention is an extraordinary exception to the general rule that courts should adjudicate matters properly before them and as such be exercised sparingly and cautiously"). When determining abstention under 1334(c)(1), "courts are guided by notions of judicial abstention which include the premise that

30

federal courts should exercise their jurisdiction if it exists, and that abstention is the exception rather than the rule." *In re Wayne Engineering Corp.*, 2008 WL 2356673 (N.D. Iowa 2008).

A court should not apply abstention if the goals of abstention will not be obtained. "This abstention provision should only apply if the interests of the entities seeking abstention will be promoted by abstention and when they override the court's presumptive duty to hear and resolve matters which are properly before it." *In Re: Hillsborough Holdings Corp.*, 123 F.R. 1004, 1013 (Bank.R.D. Fla. 1990), *aff'd*, 123 B.R. 1018 (N.D. Fla. 1991). As the Fifth Circuit has held "the federal courts have a virtually unflagging obligation to exercise the jurisdiction conferred upon them. Abstention from the exercise of federal jurisdiction is the exception not the rule." *Bank One, N.A. v. Boyd*, 288 F.3d 181 (5th Cir. 2002): "Abdication of the obligation to decide cases under the doctrine of abstention can be justified 'only in the exceptional circumstances where the order to the parties to repair to state court would clearly serve an important countervailing interest." As the Court held "the decision whether to dismiss a federal action because of a parallel state-court litigation does not rest on a mechanical chest list, but on care balancing of the important factors as apply in the given case, with the balance heavily weighted in favor of the exercise of jurisdiction.".

As discussed below, comity will not be served here. Not only would the case not be refiled in state court, but this suit does not involve issues of state law coupled with constitutional or other federal questions. Nor does it involve any basic state policy consideration calling for the exercising of comity. There is no suggestion that the state law issues are novel or unsettled; nor that they are exceptionally difficult or complex. The court in *In Re: Direct Response Media Inc.*, 466 B.R. 626 (Bankr. D.Del. 2012), denied a request for abstention in a case which had a very similar procedural posture:

> The court will exercise its discretion and deny the defendants' request for
> permissive abstention. The trustee's claims do not involve difficult issues of state

law to which this Court is unaccustomed. Moreover, no matters had been removed from state court and there is no parallel state court action. Finally, this is not a case with particularly novel legal issues. . . . The issues in this case are not encompass, and the 'narrow sphere' of cases where the discretionary abstention should be granted under § 1334(c)(1).

### Abstention is improper absent a remand or pending parallel state court action

As an initial matter, as noted *supra,* this interpleader was originally filed in the bankruptcy court. It was not removed from state court, and there is no parallel action pending in state court. If this Court abstains, it would not be doing so in favor of a parallel state action. For this reason alone, this Court should deny the abstention request. Indeed, several bankruptcy courts have held that the court is either precluded from applying permissive abstention if there is not a remand or parallel state court action, or at a minimum it is a fatal defect to a request for abstention.[10] See, *e.g., In re Blixseth,* 463 B.R. 896 (Bankr. D. Montana 2012)("Absent a parallel state court action, this court is precluded from exercising its discretion to abstain."); *Carpenters Pension Trust for Southern California v. Ebbers,* 299 B.R. 610 (C.D. Cal. 2003)("permissive abstention under 1334(c)(1) can only exist where there is a parallel proceeding in state court… Because the plaintiff has not identified any parallel state court proceeding, the court declines to abstain."); *Bell on behalf of Eco Science Solutions Inc. v. Taylor,* 2018 WL 3852088 (D. Hawaii 2018)("insufficient [state court] parallelism may preclude abstention").

Louisiana federal courts have held similarly. See, *e.g., John and Melanie Hotop v. Wells Fargo Bank, NA,* 2015 WL 3793102 at p.4 (Bankr. E.D.La. 2015) (bankruptcy court denied permissive abstention when case had not been removed: "If this were a case that had been removed

---

[10] There is a dispute in the circuits as to whether a bankruptcy court can abstain when a case has been removed. The majority view, including the Fifth Circuit, is that abstention applies to removed cases. Since the interpleader was not removed from state court, this issue is not present here.

from state court to the bankruptcy court this argument might have some appeal, and the Court might consider permissive abstention ... Because there is no state court suit to abstain in favor of, however, the court does not accept Wells Fargo's argument in favor of abstention."); *Couple v. Falterman*, 2015 WL 1117354 (E.D. La. March 9, 2019) (where the court, after going through the multiple factors for abstention held that "upon considering the factors above and circumstances of this case, the court declined to abstain from hearing the . . . adversary proceeding.  The subject matter of this proceeding is an ordinary boundary dispute over the ownership of certain real property; this is not a case involving difficult or unsettled state laws."  The court also noted that no parallel state court proceeding presently existed).

### Factors weigh in favor of declining abstention

With regard to the fourteen factors courts often consider when determining whether to permissively abstain, virtually all of the factors here weigh in favor of not abstaining.

1. *The effect or lack thereof on the efficient administration of the estate that the court recommends remand or abstention*:  This Court would be able to adjudicate the interpleader fairly quickly.  Indeed, Mr. St. Angelo has already filed a Motion for Summary Judgment, and only limited discovery has been requested by any party with regard to that Motion for Summary Judgment.  It is unlikely that a state court would be able to resolve this matter as quickly, as it would have to lean the history of this case from scratch. Further, as discussed *supra*, the interpleader directly relates to the claims reserved for the litigation trust in the plan and will impact the amount of funds available to creditors.

2. *The extent to which state law issues predominate over bankruptcy issues*:  Obviously, the interpleader case involves state law rather that federal law, though coverage issues are routinely decided by federal courts, and this Court has previously issued an order with regard to coverage under this policy.  Moreover, since these funds could be used to pay bankruptcy creditors, Zurich suggests that federal bankruptcy issues are similarly important.

3. *Difficult or unsettled nature of applicable law*:  These are no difficult issues of state law.  Bankruptcy and federal courts deal with coverage issues frequently.

33

4.     *Presence of related proceeding commenced in state court or other non-bankruptcy proceeding.* This matter was not removed, and there is no state court proceeding or any other sort of parallel or related state court proceeding. The Court would not be abstaining in favor of any pending state court action. Courts typically deny abstention based on this consideration alone.

5.     *Jurisdictional basis, if any, other than Section 1334*: There is both federal diversity jurisdiction in this matter and federal interpleader jurisdiction. As such, this matter will ultimately be decided by a federal court. Again, courts typically deny abstention based on this consideration alone.

6.     *Degree of relatedness or remoteness of proceeding to main bankruptcy case*: The interpleader is quite related, and indeed seeks the Court's protection concerning certain orders issued by the bankruptcy court regarding the distribution of proceeds from this policy to these directors. Further, these funds could potentially be used to pay creditors of the bankruptcy estate. The plan itself identifies this policy and reserves the litigation trust's right to pursue recovery under this policy.

7.     *The substance rather than form of the court proceeding*: Not applicable.

8.     *The feasibility of severing state law claims from court bankruptcy matters to allow judgments to be entered in state court with enforcement left to bankruptcy court*: Not applicable.

9.     *The burden of the bankruptcy court's docket*: Zurich is unaware of whether the bankruptcy court is overburdened. However, unlike any state court, this Court has familiarity with the parties and the disputes and would be the most efficient forum.

10.     *The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties*: Zurich suggests that the request for abstention is tantamount to forum shopping. Mr. St. Angelo originally requested this Honorable Court to exercise its jurisdiction, and only after the United States sought to intervene, did he request the Court to abstain from exercising the very same jurisdiction he has already invoked.

11.     *The existence of the right to trial by jury*: Mr. St. Angelo did not request a jury trial in his answer. Further, Zurich's complaint for interpleader only seeks declaratory relief as a matter of law, and such coverage disputes are typically decided by the judge.

12.     *The presence in the proceeding of non-debtor parties*: There are non-debtor parties, but all have participated in the bankruptcy case and would not be inconvenienced by this or the district court forum.

13.    *Comity:*  Because Zurich would simply re-file an interpleader in federal district court, the goal of comity would not be achieved, and for this reason alone the abstention request should be denied.

14.    *The possibility of prejudice to other parties in the action*:  Zurich is unaware of any evidence of prejudice to Mr. St. Angelo of having his claim heard in a federal forum as opposed to a state forum, especially since there is no parallel state court proceeding.

St. Angelo also suggests in his memorandum that the Court consider an "equitable" abstention. Technically, 1334 does not provide for an equitable abstention.  Rather, 28 U.S.C. 1452(b) allows a bankruptcy court to remand based on equitable considerations. Since this case was not removed, it cannot be remanded. Further, and in any event,  Zurich submits that none of the eight factors the Fifth Circuit has suggested for equitable remand are present here: (1) *Forum non conveniens*; (2) the civil action had been bifurcated by the removal; (3) whether a state court is better able to respond to questions involving state law; (4) the expertise of a particular court; (5) duplicative and un-economic effort of judicial resources in two forums; (6) prejudice to the involuntarily removed parties; (7) comity considerations; and (8) a lessened possibility of inconsistent results.  *Sonnier v. Hesco Bastian LLC*, 2013 WL 5350853 (N.D. La.) citing *Terral v. SCH Management Solutions Inc.*, 2004 WL 2115486 (E.D. La. September 21, 2004), citing *Browning v. Navarro*, 743 F.2d 1069, 1076, n. 21 (5trh Cir. 1994).

Here: 1) there has been no showing of *forum non conveniens*, as the relevant state court is literally down the street; 2) there was no bifurcation and indeed no removal of the interpleader from state court (which is why equitable remand is not truly before the Court); 3) there is no question of unsettled state law; 4) this matter does not involve the expertise of any particular court; 5) there is no parallel suit and therefore no duplicative and un-economic efforts of judicial resources in two forums; 6) there is no prejudice to any involuntarily removed parties, since this

35

matter was not removed; 7) there are no comity considerations, because a dismissal would not result in the interpleader being filed in state court, but rather it would again be filed in this federal court; and 8) there are no possibilities of inconsistent results because there is no parallel state court action.  As such, not merely a majority, but all of the factors militate in favor of denying equitable abstention.

Finally, Mr. St. Angelo argues that "equity weighs in favor of abstention because the United States has filed a Motion to Stay."  The Motion to Stay is wholly irrelevant to the question of abstention.  Indeed, if the court grants abstention, then the United States will simply file the identical Motion to Stay in whatever venue Zurich would re-file the interpleader, which would be the district court for the Eastern District of Louisiana. Abstention would simply cause judicial inefficiency, waste and delay.  Rather, this appears to be an attempt by Mr. St. Angelo to forum shop, which is actually one of the grounds for denying a proper motion for abstention.

In sum, the factors weigh against this Court voluntarily abstaining, especially because in the end it would be futile, inefficient and costly to the parties and the Court, and because there is no state court proceeding in favor of which to abstain.  The most efficient and expeditious resolution of the interpleader claim is for this Court to hear the dispute and decide the controversy. The Court has presided over the bankruptcy for a lengthy period and is familiar with the parties and the nature of this dispute, especially where it has previously issued orders involving the payment of Defense Costs from this policy to these defendants.  In sum, there is no cause for this Honorable Court to deviate from the settled proposition that abstention should be exercised as the exception and not the rule.

### Response to Mr. St. Angelo's Abstention Cases

Mr. St. Angelo relies heavily on the case of *Collins v. Sydow*, (In re NC12, Inc.), 478 B.R.

820 (Bankr. S.D. Tex. 2012). First, it should be noted that the *Collins* case wholly undermines Mr. St. Angelo's "me too" argument with regard to subject matter jurisdiction, because the court in *Collins* held that the claim had "related to" bankruptcy jurisdiction because it "could affect the amount of proceeds available to the estate for its own claims against officers and directors." *Id.* at 839.  By citing this case, Mr. St. Angelo has essentially conceded that this Honorable Court has subject matter jurisdiction.

Further, the *Collins* case is the far more typical matter where a bankruptcy court might exercise abstention than the case at bar. First, the *Collins* case was originally filed in state court and then removed to federal court, unlike the interpleader case here that was filed directly in federal court.  As such, the bankruptcy court was able to abstain and remand the case back to state court (which cannot happen here).  Further, the claims in *Collins* dealt primarily with fraud and with breach of fiduciary duty claims that had nothing to do with the bankruptcy case.  Here, the interpleader seeks protection and clarification of the orders issued by the bankruptcy court with regard to the distribution of proceeds from the policy, and does not have any stand-alone state law causes of action like fraud or breach of fiduciary duty.  Finally, and perhaps most significantly, the court held that "there is no jurisdictional basis other than bankruptcy related to jurisdiction." Here, of course, in this matter there are separate jurisdictional bases of diversity and federal interpleader, which is another reason why abstention is not appropriate.  As such, none of the reasons for which the court abstained in the *Collins* case apply in this case, and further, the *Collins* case fully supports this Court's subject matter jurisdiction.

Mr. St. Angelo also relies on the case of *In Re: Wood*, 84 B.R. 432 (F.D. Mass. 1998). Again, this was a state law claim based on breach of fiduciary duty.  As the court noted "it is simply a state contract action that, had it not been in bankruptcy, would have proceeded in state

court," and that the claims could be "equally resolved elsewhere." *Id*. at 434.  Again, here this interpleader will not proceed in state court in the event the bankruptcy court abstains. Rather, the "elsewhere" would be the district court for the Eastern District of Louisiana, unlike the adversary proceeding in *In RE: Wood*.  Moreover, as noted above, the interpleader does not contain claims of breach of fiduciary duty or fraud, but rather contains a claim requesting the Court to further interpret its previous orders issued with regard to the distribution of these very funds to these very directors.

Mr. St. Angelo also relies on the case of *Gulf Fleet Tiger Acquisition LLC v. Thoma-C Shipbuilders LLC*, 282 F.R.D. 146 (E.D. La. 2012).  In that case, the claim was originally filed in federal district court pursuant to diversity jurisdiction.  A second complaint was filed alleging that the district court also had subject matter jurisdiction of "related-to" bankruptcy jurisdiction.  The court found that the claim did not have diversity jurisdiction, and therefore the only possible jurisdiction was "related-to" jurisdiction.  Because there was no longer a separate basis for jurisdiction other than "related-to" jurisdiction, the court felt abstention was appropriate.  The court held "first, there is no independent basis for jurisdiction other than . . . 'related-to' bankruptcy." *Id*. at 160.  The court further noted that "there is no reason to believe that this action could not be adjudicated timely in state court." *Id*.  Here, of course, the action would not be filed in state court, and there would be no state court adjudication.  The court concluded that "the parties may proceed with the merits of this case – albeit in state court." *Id*.  Again, the interpleader here would not proceed in state court, and therefore the very basis for the abstention in *Gulf Fleet* is absent here, and would simply be a waste of time, effort, resources, and ultimately futile, since the interpleader

would be re-filed in the Eastern District of Louisiana.[11]

Finally, Mr. St. Angelo cites *Barbee v. Colonial Healthcare Center Inc.*, No. 3:03-CV-1658-N, 2004 US. Dist. LEXIS 4868 (N.D. Tex. March 22, 2004), for the proposition that the existence of the diversity jurisdiction does not preclude the exercise of permissive abstention. This is certainly accurate. Mr. St. Angelo has requested "permissive" abstention, which is wholly within the discretion of this Honorable Court. However, when there are independent bases for federal jurisdiction, bankruptcy courts (as directed by the Fifth Circuit, see *supra* at 30-31) typically do not abstain since the goals of abstention would not be achieved. Indeed, in the *Barbee* case, the sole basis for jurisdiction was "related-to" jurisdiction. The court abstained because "absent a bankruptcy case, there would be no federal jurisdiction," and because parallel "litigation had been pending in state court," and finally because there was a settlement agreement that allowed the parties "to pursue their claims … in state court." None of those factors upon which the court based abstention exist here.

Mr. St. Angelo's request for abstention should be denied.

---

[11] Mr. St. Angelo, in footnote 1 of his supplemental memorandum, cites the case of *In Re: Rosales*, NO. 12-30590-RBK, 2012 Bankr. LEXIS 4366 (Bankr. W.D. Tex. September 21, 2012). That case involved removal of the lawsuit from state court to federal court. The court found that "the applicable state law in these adversary proceedings is somewhat difficult and unsettled." Further, the court noted that there was no other basis for federal jurisdiction other than the "related-to" bankruptcy jurisdiction. The court further noted that there was virtually no relationship between the bankruptcy case and the claims in the removed state court action, unlike the present case which flowed directly from this court's prior orders. The court further found that under comity, the bankruptcy court "should defer to the state court." Again, comity will not be achieved here since the interpleader will not be filed in state court. None of the reasons for abstention in that case are present here.

## <u>CONCLUSION</u>

This Honorable Court should deny the motion to dismiss for lack of subject matter jurisdiction, and in the alternative, transfer this matter to the District Court.

This Honorable Court should deny Mr. St. Angelo's request for abstention.

Respectfully submitted,

 /s/ John W. Hite III
Salley, Hite,  Mercer & Resor LLC
**JOHN W. HITE III (17611)**
**GLEN E. MERCER (21752)**
**MARCELLE P.  MOULEDOUX (30339)**
**JAMES G. ALBERTINE III (32053)**
One Canal Place
365 Canal Street, Suite 1710
New Orleans, LA 70130
Telephone: 504/566-8800
Facsimile:  504/566-8828
**BY:   /s/ John W. Hite III**
        JOHN W. HITE III
**ATTORNEYS FOR ZURICH AMERICAN**
**INSURANCE COMPANY**