### UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF LOUISIANA

### LAFAYETTE

| | | |
|---|---|---|
| IN RE: | * | LEAD CASE NO. |
| | * | 17-11213 |
| FIRST NBC BANK HOLDING | * | |
| COMPANY, | * | CHAPTER 11 |
| | * | |
| DEBTOR. | * | |
| * * * * * * * * * * * | * | |
| | * | |
| ZURICH AMERICAN INSURANCE | * | ADVERSARY NO. |
| COMPANY, ET AL, | * | 20-01005 |
| | * | |
| Plaintiffs, | * | Lafayette, Louisiana |
| | * | October 6, 2020 |
| v. | * | |
| | * | |
| ST. ANGELO, ET AL, | * | |
| | * | |
| Defendants. | * | |
| * * * * * * * * * * * | * | |

(BY TELEPHONE)
ORAL RULINGS,
BEFORE THE HONORABLE JOHN W. KOLWE,
UNITED STATES BANKRUPTCY JUDGE

<u>APPEARANCES</u>:

For the Plaintiff, Zurich      Salley Hite Mercer & Resor LLC
American Insurance Company:    BY:  JOHN HITE, III, ESQ.
                                    (BY TELEPHONE)
                               365 Canal Street
                               Suite 1710
                               New Orleans, Louisiana 70130

For the Defendant,            Stone Pigman Walther Wittmann LLC
Gregory St. Angelo:           BY:  PHILLIP A. WITTMANN, ESQ.
                                   (BY TELEPHONE)
                              909 Poydras Street
                              Suite 3150
                              New Orleans, Louisiana 70112

2

APPEARANCES (CONT'D.):

For the Defendant,            Stone Pigman Walther Wittmann LLC
Gregory St. Angelo:           BY:  J. DALTON COURSON, ESQ.
                                   (BY TELEPHONE)
                              546 Carondelet Street
                              New Orleans, Louisiana 70130

For Certain Former            Baker Donelson
Directors of First NBC:       BY:  JAN M. HAYDEN, ESQ.
                                   (BY TELEPHONE)
                              BY:  NANCY S. DEGAN, ESQ.
                                   (BY TELEPHONE)
                              201 St. Charles Avenue
                              Suite 3600
                              New Orleans, Louisiana 70170

For Frank Fugetta and         The Derbes Law Firm
Michael Lulich:               BY:  ERIC J. DERBES, ESQ.
                                   (BY TELEPHONE)
                              3027 Ridgelake Drive
                              Metairie, Louisiana 70002

Court Audio Operator:         Christine Fontenot, E.C.R.O.

TRANSCRIPTIONIST:             Sherryl Robinson
                              3704 Chadwood Drive
                              Harvey, Louisiana 70058
                              (504) 348-3704

Proceedings recorded by electronic sound recording, transcript

produced by transcription service.

# I N D E X

Page
Number:

**Judge's Ruling**                                    **6**

4

1                   **P R O C E E D I N G S**

2              (Tuesday, October 6, 2020)

3               (Court is in Session)

4             *   *   *   *   *

5                 **ORAL RULINGS**

6             *   *   *   *   *

7        THE COURT:  And now, we are going to move to my

8 next matter, which was set for 3:30, and this is in the

9 Eastern District of Louisiana, it's in the *First NBC Bank*

10 *Holding Company* bankruptcy, Case Number 17-11213 is the case

11 there.

12        But actually, this is an opinion that the Court is

13 going to render in the *Zurich American Insurance Company v.*

14 *Gregory St. Angelo, et al.*  That's Adversary Proceeding Number

15 20-1005.

16        And if I can get appearances of Counsel, please?

17        MR. HITE:  Good morning Your Honor, John Hite here

18 for the Plaintiff, Zurich American Insurance Company.

19        THE COURT:  Good afternoon.

20        MR. HITE:  Oh, good afternoon, I'm sorry.

21        THE COURT:  No worries.

22        MR. HITE:  Thank you.

23        MS. DEGAN:  Good afternoon Your Honor, Nancy Degan

24 and Jan Hayden here for Certain Former Directors of First

25 NBC.

1                THE COURT:  Good afternoon.

2                MR. WITTMANN:  Phil Wittmann and Dalton Courson for

3   Gregory St. Angelo.

4                THE COURT:  Good afternoon.

5                MR. DERBES:  Eric Derbes.  Eric Derbes for Fugetta,

6   Frank Fugetta and one other former officer.

7                THE COURT:  Mr. Lulich?

8                MR. DERBES:  Yes, sir.  Thank you.

9                THE COURT:  Okay, you're welcome.

10               Is there anyone else on the line?  I'm going to ask

11  everyone in a moment to mute their lines, because I've got

12  some background noise.  But is there anyone else that wants to

13  make an appearance?

14      (Pause.)

15               THE COURT:  Okay.  I'm going to ask -- I think I

16  know whose line that is.  Okay.  If you don't mind, I think I

17  muted the one line that had the background noise, but I'm

18  going to ask everyone to mute their line.

19               And again, I want to thank everyone for being here

20  this afternoon.  I had intended to hopefully issue a written

21  opinion but as I worked through this, you know, I don't know

22  if this is something that deserves a written opinion.  It's an

23  interesting issue, and it would probably take me a little

24  while longer to get it polished up, but I think it's wise for

25  me to go ahead and get this decision out there so we can move

1  forward.

2          So this is the Court's decision, Ruling on the

3  various matters that are before the Court today, and so I'm

4  going to be reading this in.  It's my memorandum opinion.

5                      *   *   *   *   *

6                            **RULING**

7                      *   *   *   *   *

8          THE COURT:  Zurich American Insurance Company, which

9  I'll refer to as Zurich, filed this adversary proceeding as a

10 complaint for Interpleader and for declaratory relief against

11 the putative insureds under a Directors and Officers liability

12 policy after it allegedly received competing demands to the

13 policy proceeds.

14         Zurich's complaint has spawned numerous motions, all

15 of which are presently before the Court.  Included in these

16 motions is a Motion to Dismiss filed by a certain subset of

17 the Defendants, I'll refer to collectively as the Directors,

18 which challenges the Court's subject matter jurisdiction and

19 claims that even if jurisdiction exists, Zurich's complaint

20 fails to present a ripe controversy.  Additionally, the United

21 States of America has filed a Motion to Intervene and Stay the

22 adversary proceeding.

23         And I needed to add that also the Directors have

24 also indicated that if the Court finds it has jurisdiction and

25 that this matter is ripe, that they would also ask that this

1  matter be stayed.

2          This opinion focuses only on the threshold issues

3  raised in these two motions, because the Court finds both that

4  it has related to subject matter jurisdiction over this matter

5  under 11 USC Section 1334 and that the complaint presents a

6  ripe controversy.  The Directors Motion to Dismiss will be

7  denied.

8          However, the Court will grant the United States'

9  Motion to Intervene and Stay because it agrees with the United

10  States' assertion that this matter should be stayed pending

11  the resolution of certain criminal proceedings involving

12  Mr. St. Angelo.  The following represents the basis and

13  reasoning for the Court's decision on these matters.

14          The next section of this opinion is called the

15  background section.  The Debtor procured a financial

16  institution select insurance policy from Zurich, which

17  includes a management and liability coverage part with an

18  aggregate limit of liability of $15 million.  And I'm going to

19  refer to that as the D&O policy.

20          In this complaint Zurich claims it has received

21  notice from multiple insureds under the D&O policy, who are

22  all named as Defendants in this action of various claims

23  relating to the bank's failure including a claim against the

24  Defendants by the Federal Deposit Insurance Corporation in its

25  capacity as receiver, which I'm going to refer to as the

1  FDIC-R, in the amount of at least $250 million and a lawsuit

2  against the Defendants filed by the Committee, as well as

3  other matters including subpoenas from the Securities

4  Exchange Commission, a federal grand jury and various other

5  agencies.

6        The specific dispute raised in the complaint

7  concerns George (sic) St. Angelo, who was general counsel for

8  the bank.  According to the complaint, Zurich has been paying

9  defense costs on behalf of St. Angelo under a reservation of

10  rights.  He recently pleaded guilty to one count of

11  conspiracy to commit mail fraud in violation of 18 United

12  States Code Section 1349 in connection with his decade long

13  role in a fraudulent scheme involving the bank.  He has agreed

14  to waive his any right to appeal except to challenge any

15  sentence above a statutory maximum.

16        On July 29, 2019 Zurich notified St. Angelo that it

17  was going to deny coverage to him under certain exclusions of

18  the D&O policy.  In the same letter, Zurich also demanded that

19  St. Angelo return all monies previously advanced by Zurich.

20  According to Zurich St. Angelo disputes Zurich's position

21  denying him coverage under the policy, claiming Zurich must

22  continue to pay his defense costs up until his date of

23  sentencing.

24        Zurich alleges that St. Angelo has demanded payment

25  for all outstanding defense costs not yet reimbursed to him

1  under the policy, a total of $270,872.85 to date.  St. Angelo

2  also informed Zurich that if it failed to pay, that he would

3  commence a lawsuit against Zurich including seeking bad faith

4  damages.

5       Zurich decided to file this complaint when after

6  notifying all other insureds under the policy of St. Angelo's

7  demand, all the other insureds demand that Zurich cease

8  paying St. Angelo's expenses and some of those other insureds

9  demanded that Zurich obtain reimbursement from St. Angelo of

10  the amounts that are already paid.

11       Thus Zurich claims that it is faced with competing

12  claims for the same policy proceeds.  Set forth in the

13  following sections, in chronological order, are the

14  Defendant's various responses to Zurich's complaint, all of

15  which are currently before the Court.

16       First, we have Fugetta and Lulich's answer and

17  cross-claim, which is ECF Number 67.  Frank Fugetta and

18  Michael Lulich filed an answer and a cross-claim against

19  St. Angelo, and the answer, Fugetta and Lulich argue that

20  St. Angelo is not an insured under the D&O policy based on

21  the policy's definition of, quote, "insured person," closed

22  quote.

23       Thus they claim the unpaid defense costs at issue in

24  the Interpleader should go to the other Defendants.  Fugetta

25  and Lulich's cross-claim asserts that because St. Angelo was

1    never an insured person under the policy, Zurich never

2    should have paid any of his defense costs, and St. Angelo

3    should be required to repay Zurich the amounts already paid to

4    St. Angelo under the policy, alleged to be $641,616.57, so

5    that the funds can be utilized by the other insureds under the

6    policy that are seeking declaratory relief.

7            Next, we have St. Angelo's Motion to Dismiss the

8    cross-claim which is ECF Number 84.  St. Angelo filed a Motion

9    to Dismiss Fugetta and Lulich's cross-claim for lack of

10   subject matter jurisdiction.  St. Angelo asserts two

11   arguments:

12           First, St. Angelo claims that Fugetta and Lulich

13   lack standing to assert the cross-claim because they cannot

14   show they sustained an actual or imminent injury traceable to

15   Zurich's payment of St. Angelo's defense costs.

16           Second, St. Angelo argues that Fugetta and Lulich

17   cannot assert claims on behalf of Zurich, but only on their

18   own behalf.  St. Angelo points out that Zurich's Interpleader

19   only seeks determination of what to do with the amounts that

20   Zurich has not yet paid to St. Angelo.  Zurich does not seek

21   to recover amounts already paid.

22           St. Angelo argues that if Fugetta and Lulich are not

23   happy with how Zurich has interpreted its own policy in the

24   past, their remedy is to sue Zurich under Louisiana law, not

25   sue St. Angelo for Zurich's actions.  Fugetta and Lulich

1 oppose the motion.

2 Next, we have St. Angelo's Motion for Partial

3 Summary Judgment, which is ECF Number 87. St. Angelo also

4 filed a Motion for Partial Summary Judgment arguing that he

5 and he alone is entitled to receipt of the policy proceeds at

6 issue in Zurich's Interpleader, and that he is not subject to

7 exclusions in the D&O policy until there is a final

8 adjudication in his criminal case, which St. Angelo claims

9 will not occur until he is sentenced on his guilty plea. The

10 Directors, Fugetta and Lulich, oppose St. Angelo's motion.

11 Next, we have the Directors Motion to Dismiss, which

12 is ECF Number 92. The Directors filed a Motion to Dismiss for

13 lack of subject matter jurisdiction or alternatively, Motion

14 to Stay, which is the primary focus of this ruling. The

15 Directors first argue that the Court lacked subject matter

16 jurisdiction over this dispute.

17 While they admit that the D&O policy is property of

18 the bankruptcy estate, they claim the proceeds are not, and on

19 that sole basis they claim that this Court is without subject

20 matter jurisdiction.

21 Second, they argue that even if the Court has

22 jurisdiction, the complaint does not yet present a ripe

23 controversy because:

24 A, it has not been established that the money in the

25 registry of the Court is needed by the insureds;

1          And B, it is not clear whether St. Angelo is

2     entitled to the funds at all through his pleading -- due to

3     his pleading guilty in the criminal case;

4          Third and finally, the Directors argue that this

5     case should be stayed until St. Angelo's criminal case has

6     concluded, noting that St. Angelo himself obtained a similar

7     stay in a coverage dispute with his malpractice carrier.

8          Zurich opposes the Motion to Dismiss, arguing that

9     this Court has, quote, "related to," closed quote, subject

10    matter jurisdiction under 11 United States Code Section 1334.

11    It points to the lawsuit filed by the Unsecured Creditors'

12    Committee on behalf of the Debtor against the Defendants in

13    this action, as well as other litigation against the Debtor

14    that involves claims under the D&O policy.

15         Zurich contends that any recovery by St. Angelo in

16    this Interpleader action will necessarily reduce amounts

17    available to the estate for the benefit of creditors in those

18    other actions.  It may also reduce coverage available to the

19    Debtor for certain claims.

20         For all of these reasons Zurich contends this

21    action certainly could conceivably have an effect on the

22    Debtor's bankruptcy estate and the administration of the

23    bankruptcy case, thus establishing, quote, "related to,"

24    closed quote, jurisdiction under 11 USC Section 1334.  Zurich

25    also contends its complaint presents a ripe controversy

13

1 pointing to the competing demands it has received. Zurich

2 does not oppose the Directors request for a stay.

3          Next, we have Fugetta and Lulich's Motion to Compel

4 the deposition of St. Angelo, which is ECF Number 107.

5 Fugetta and Lulich moved to compel the deposition of

6 St. Angelo prior to the anticipated hearings on various

7 motions scheduled for May 19, 2020. St. Angelo opposes this

8 motion. The Court has not ruled on the motion and at issue in

9 both the Directors Alternative Motion to Stay and the United

10 States motion discussed next, as whether discovery should

11 proceed at all.

12          Next, we have the United States Motion to Intervene

13 and stay the adversary proceeding, which is ECF Number 111.

14 The United States seeks to intervene or stay the entire

15 adversary proceeding or in the alternative to stay all

16 discovery, including the deposition of St. Angelo until the

17 federal criminal proceeding against him has concluded.

18          It is the position of the United States that

19 proceeding with the adversary proceeding, especially

20 discovery, may interfere with the criminal case. Thus the

21 United States seeks to intervene for the sole purpose of

22 requesting that this proceeding be stayed. St. Angelo opposes

23 the motion.

24          The United States supplemented its motion with a

25 memorandum, which is ECF Number 121, informing this Court

14

1 that to date, four courts in the Eastern District of

2 Louisiana have granted complete stays of civil proceedings

3 pending the outcome of the certain related criminal

4 investigations concerning the Debtor and his former Officers

5 and Directors.

6    And those four cases are:  The Federal Deposit

7 Insurance Corporation v. Ernst & Young, LLP, which is Civil

8 Action 20-1259, and the opinion staying it is at 2020 WESTLAW

9 3960345 Eastern District of Louisiana, July 13, 2020, and in

10 that particular ruling the stay was -- the Court granted a

11 stay of the entire proceeding.

12    Next we have Continental Casualty Company v.

13 St. Angelo, which is Case 19-13382, also pending in the

14 Eastern District of Louisiana.  And the decision is reported

15 at 2020 WESTLAW 425865, January 27, 2020 decision, also

16 staying the entire proceeding.

17    We have Academy Place v. Ryan, which is Civil Action

18 18-10881.  And the Eastern District on August 22nd, 2019

19 issued a decision also staying the entire proceeding.  That's

20 at 2019 WESTLAW 3974793.

21    And then we have the Official Committee of Unsecured

22 Creditors of First NBC Bank Holding Company v. Ryan, 2019

23 WESTLAW 3858953, again an Eastern District of Louisiana

24 decision from August 16, 2019, which also stays the entire

25 proceeding.

1           Finally, a brief review of the procedural history

2 of this matter.  All of these various motions came up for

3 hearing on May 19th, 2020.  The Court heard argument and

4 requested additional briefing on the issue of subject matter

5 jurisdiction after the Directors asserted that the Court was

6 without jurisdiction over this case once the Debtor's plan was

7 confirmed.

8           The parties submitted additional briefing after

9 which the Court took this matter under advisement.  Having

10 considered all the relevant pleadings and facts, the Court

11 concludes that it possesses subject matter jurisdiction, and

12 that this dispute is ripe, but that it should stay the

13 proceedings pending the resolution of the criminal

14 proceedings against St. Angelo, as all will be explained

15 below.

16           The next section of the opinion is the law governing

17 the bankruptcy jurisdiction question.  And you're going to

18 have to bear with me, because this is somewhat extensive.  But

19 the bankruptcy court jurisdiction is determined under 28

20 United States Code Section 1334, which provides in relevant

21 part as follows:

22           Section A provides, except as provided in Subsection

23 B of this section, the district court shall have original and

24 exclusive jurisdiction of all cases under Title 11.

25           Subsection B provides, except as provided in

16

1    Subsection E(2), and notwithstanding any act of Congress

2    that confers exclusive jurisdiction on the Court or courts

3    other than the district courts; the district courts shall have

4    original but not exclusive jurisdiction of all civil

5    proceedings arising under Title 11 or arising in or related to

6    cases under Title 11.

7         Taken together, 11 USC Section 1334(a) and (b)

8    provide four types of matters upon which federal jurisdiction

9    may be grounded:

10        One, cases under Title 11;

11        Two, civil proceedings arising under Title 11;

12        Three, civil proceedings arising in cases under

13   Title 11;

14        And four, civil proceedings related to cases under

15   Title 11.  See Landry v. Exxon Pipeline Company, 260

16   Bankruptcy Reporter 769.  I'm quoting from Page 776.  That's

17   a bankruptcy case from the Middle District of Louisiana from

18   2001.

19        There the Court is citing Randall & Blake, Inc. v.

20   Evans, or it's In Re: Canion, C-A-N-I-O-N.  That's found at

21   196 Federal Reporter 3d Series Page 579, quoting from Page

22   584.  That's a Fifth Circuit decision from 1999.

23        And Wood v. Wood, known as In Re: Wood, 825 Federal

24   Reporter 2d Series Page 90, quoting from Page 92, a Fifth

25   Circuit decision from 1987.

1          The Fifth Circuit has defined a phrase, quote,

2     "All cases under Title 11," closed quote, as meaning the

3     bankruptcy petition itself.  Again, see <u>Landry</u> above, also

4     citing <u>In Re: Wood</u> at 825 Federal 2d at 92.

5          But the phrase, quote, "All civil proceedings

6     arising under Title 11 or arising in or related to cases

7     under Title 11," closed quote, was meant to identify a wide

8     range of matters subject to bankruptcy court jurisdiction.

9          The Fifth Circuit has interpreted the phrase,

10    quote, "arising under Title 11," as including those matters

11    which -- that involve a cause of action created or determined

12    by a statutory provision under Title 11.  While the phrase,

13    quote, "arising in cases under Title 11 refers to

14    administrative matters that arise only in bankruptcy cases,"

15    closed quote.  And again, see the <u>Landry v. Exxon</u> case at

16    Page 776.

17         The phrase, quote, "related to cases under Title 11"

18    is much broader.  And now, I'm going to be quoting directly

19    from the <u>Celotex Corp. v. Edwards</u> case.  It's a Supreme Court

20    case found at 115 Supreme Court Reporter 1493, and I'm quoting

21    from Pages 1498 to 1499.  That's a 1995 decision.  And that

22    quote is as follows:

23         "Congress did not delineate the scope of, quote,

24    "related to," closed quote jurisdiction, but its choice of

25    words suggest a grant of some breadth.  The jurisdictional

18

1    grant in Section 1334(b) was a distinct departure from the

2    jurisdiction conferred under previous acts which had been

3    limited to either possession of property by the debtor or

4    consent as a basis of jurisdiction."

5         "Congress intended to grant comprehensive

6    jurisdiction to bankruptcy courts so that they might deal

7    efficiently and expeditiously with all matters connected with

8    the bankruptcy estate, and that the, quote, "related to,"

9    closed quote, language of 1334(b) must be read to give

10   district courts and bankruptcy courts under Section 157(a),

11   jurisdiction over more than simple proceedings involving

12   property of the debtor or the estate."  Again, quoting from

13   Celotex v. Edwards.

14        See also Packer v. Higgins, 743 Federal Reporter 2d

15   984 Page 994, a Third Circuit decision from 1984.  And also,

16   the Landry decision, 260 Bankruptcy Reporter at Page 776.

17        Thus, in Celotex Corp., the Supreme Court

18   established in clear and unambiguous terms that bankruptcy

19   courts have related to jurisdiction over more than just

20   proceedings involving property of the debtor or the estate.

21        But a bankruptcy court's related to jurisdiction is

22   not limitless.  It has a causal component.  See Landry, 260

23   Bankruptcy Reporter at Page 777, citing Bass v. Denney, known

24   as In Re: Bass, 171 Federal Reporter 3d series Page 1016,

25   quoting from Page 1022.  That's a Fifth Circuit decision from

19

1    1999.

2           That causal component exists if the proceeding may

3    have an effect on the Debtor and the administration of the

4    Debtor's bankruptcy estate.

5           And now next, is going to be a quote from the

6    In Re: Bass decision, 171 Federal Reporter 3d series at Page

7    1022, and the quote is as follows:

8           "An action is related to a bankruptcy if the

9    outcome could alter the debtor's rights, liabilities, options

10   or freedom of action either positively or negatively, and in

11   any way impacts upon the handling and administration of the

12   bankruptcy estate.  This test is obviously conjunctive.  For

13   jurisdiction to attach the anticipated outcome of the action

14   must both, one, offer the rights, obligations and choices of

15   action of the debtor.  And two, have an effect on the

16   administration of the estate."  Again, I'm quoting from In Re:

17   Bass.

18          Conversely, the bankruptcy court has no

19   jurisdiction over a matter that does not affect the debtor.

20   See In Re: Zale Corp., 62 Federal Reporter 3d Series, Page

21   746, quoting from Page 752 to 753.  That's a Fifth Circuit

22   decision from 1995.

23          And in that case the Court is citing the Celotex v.

24   Edwards decision, 115 Supreme Court Reporter at Page 1499,

25   and also we're citing the Pacor test and commenting that,

20

1    quote, "Whatever test is used, these cases make clear that

2    the bankruptcy courts have no jurisdiction over proceedings

3    that have no effect on the debtor," closed quote.

4             In determining whether a proceeding may have an

5    effect on a debtor, there is no requirement that such effect

6    be definite.  Quote, "The effect on the estate and the

7    Debtor's rights need not be proven with certainty.  It is

8    sufficient for jurisdictional purposes that the outcome of

9    the suit or proceeding could conceivably have an effect on the

10   debtor or the estate," closed quote.  I'm quoting from Landry,

11   260 Bankruptcy Reporter at Page 777.

12            And there the Court was citing In Re: Canion, 196

13   Federal Reporter 3d series at 587.  See also In Re: Wood, 825

14   Federal Reporter 2d series at 94, quote, "Although we

15   acknowledge the possibility that this suit may ultimately

16   have no effect on the bankruptcy, we cannot conclude on the

17   facts before us that it will have no conceivable effect."

18   See also National Union Fire Insurance Company v. Titan Energy

19   Inc., In Re: Titan Energy Inc., 837 Federal Reporter 2d

20   series, Page 325, quoting from Page 330.

21            That's an Eighth Circuit decision from 1988 and the

22   quote is as follows:

23            "Even a proceeding which portends a mere contingent

24   or tangential effect on a debtor's estate meets the broad

25   jurisdictional test for "related to" jurisdiction.  Since

21

1  "related to" jurisdiction is the broadest of the specified

2  grounds for federal court jurisdiction under 28 USC Section

3  1334, this Court need only to determine whether Zurich's

4  Interpleader proceeding is at least related to FNBC's

5  bankruptcy to determine whether federal jurisdiction

6  attaches."  See Landry, 260 Bankruptcy Reporter at 778.

7        In making this determination in the face of a Motion

8  to Dismiss for lack of subject matter jurisdiction, quote, "A

9  district court may consider, one, the complaint alone;

10        "Two, the complaint supplemented by undisputed

11  facts evidenced in the record;

12        "Or three, if the complaint is supplemented by

13  undisputed facts, plus the Court's resolution of disputed

14  facts."  I'm quoting from U.S. v. Renda Marine, Inc., 657

15  Federal Reporter 3d, 651.  I'm quoting from Page 654.  That's

16  a Fifth Circuit case from 2012.  There, the Court was quoting

17  Rodriguez v. Christus Spohn Health System Corporation, 628

18  Federal Reporter 3d, 731, Page 734, also a Fifth Circuit

19  decision from 2010.

20        As pointed out by Zurich, the Court has s plethora

21  of information before it, including filings and facts

22  established in this adversary proceeding in the main

23  bankruptcy case, and related proceedings in the Eastern

24  District of Louisiana to assist the Court in deciding whether

25  subject matter jurisdiction exists.

22

1          One fact from FNBC's bankruptcy case that the

2    Directors claim will impact the Court's jurisdictional

3    analysis is this Court's order confirming the plan, FNBC's

4    plan in the bankruptcy case.

5          During the initial hearing on the various matters

6    before the Court the Directors asserted that if this Court

7    had, quote, "related to," closed quote, jurisdiction over this

8    matter, it was divested of that jurisdiction when the plan in

9    FNBC's bankruptcy case was confirmed.

10         The Directors assertion is simply wrong.  The Fifth

11   Circuit squarely addressed and rejected this argument in

12   In Re: Enron Securities, 535 Federal Reporter 3d Series Page

13   325.  There, the Fifth Circuit stated:

14         "Fleming cannot point to a single case in which we

15   have held that plan confirmation divests a district court of

16   bankruptcy jurisdiction over pre-confirmation claims based on

17   pre-confirmation activities that properly have been removed

18   pursuant to "related to" jurisdiction.  We likewise find

19   none.

20         "Accordingly, we hold that the district court had

21   bankruptcy jurisdiction over the Fleming plaintiffs' claims at

22   the time it issued its decision dismissing them with

23   prejudice."  See Celotex, 124 Federal Reporter 3d at 626.

24         Holding that, quote, "If related to jurisdiction

25   actually existed at the time of removal," closed quote,

23

1   subsequent events, quote, "cannot divest the district court

2   of that subject matter jurisdiction," closed quote.  See

3   Enron Securities, 535 Federal Reporter 3d at Page 336.

4           Thus, the fact that the Court confirmed the plan in

5   FNBC's bankruptcy case does not in and of itself impact the

6   jurisdictional analysis.

7           Finally, if the Court determines subject matter

8   jurisdiction exists over this matter, the question then

9   becomes whether Zurich's complaint presents a ripe

10  controversy.  Courts find a ripe controversy exists when a

11  party may face multiple liability.  Quote, "Insurer was faced

12  with liability in this action and was subject to multiple

13  actions and potentially multiple liabilities.  Insurer has

14  standing to seek the Court to adjudicate the Interpleader

15  suit regarding the payment of the policy proceeds," closed

16  quote.

17          See Primerica Life Insurance v. Raine, 2008

18  WESTLAW -- it's an unreported decision, but it's in WESTLAW,

19  2008 WESTLAW 609955, Eastern District of Louisiana and it's

20  the March 3, 2008 decision.

21          The Fifth Circuit indicates that a case is ripe

22  when, quote, "An actual controversy exists where a substantial

23  -- or a substantial controversy has sufficient immediacy and

24  reality exists between parties having adverse legal interests.

25  The threat of litigation, if specific and concrete, can

1   indeed establish a controversy upon which declaratory

2   judgment can be based. The fact that the filing of the

3   lawsuit is contingent upon certain factors does not defeat

4   jurisdiction over a declaratory judgment action."

5         See <u>Orix Credit Alliance, Inc. v. Wolfe</u>, 212 Federal

6   Reporter 3d Page 891, Fifth Circuit 2000, citing <u>Middle South</u>

7   <u>Energy, Inc. v. City of New Orleans</u>, 800 Federal Reporter 2d

8   488 Page 490, Fifth Circuit, 1986 decision.

9         That's essentially the governing law for the

10   Court's analysis, and now I'm going to move to the analysis

11   decision. And under this broad section, it's going to be

12   entitled where the Court finds that it possesses related to

13   jurisdiction.

14         The Directors argue in both their memorandum in

15   support of Motion to Dismiss, which is ECF Number 92-1 and

16   reply, which is ECF Number 118, that the Court lacks subject

17   matter jurisdiction to decide this Interpleader. While they

18   acknowledge the insurance policy may be property of the

19   bankruptcy estate, they claim that proceeds of the policy are

20   not, because they are payable only to the Directors and

21   Officers of the Debtor, not the Debtor itself.

22         The Directors primarily rely on <u>In Re: Louisiana</u>

23   <u>World Exposition, Inc.</u> found at 832 Federal Reporter 2d series

24   1391, and look at Page 1394, that's a Fifth Circuit decision

25   from 1987. There, the Court held under the facts of that

25

1  case that the proceeds of the Director and Officers policy

2  were not property of the bankruptcy estate.

3       The Directors argue that Louisiana World Exposition

4  establishes a bright line division between ownership of the

5  policy and ownership of the proceeds.  Under the Directors

6  interpretation, if the policy proceeds are not property of the

7  estate there is no related to jurisdiction under 11 USC

8  Section 1334(b).

9       The problem with the Directors argument is that

10  related to jurisdiction does not turn on whether the dispute

11  involves property of the estate.  Rather, related to

12  jurisdiction exists if a dispute may have a conceivable effect

13  on the bankruptcy case.  As noted above, quote, "The related

14  to language of Section" --

15       MS. HAYDEN:  Judge?

16       THE COURT:  Yes?

17       MS. HAYDEN:  This is Jan.  I think your mike has

18  messed up.

19       THE COURT:  Oh, I think you're right, and I thank

20  you for pointing that out to me.  I must have hit my button.

21       Let me pick up with the paragraph I was in.  I

22  think I just talked about the World Exposition case and I

23  think my mike might have been out, I think I accidentally

24  touched it.

25       MS. HAYDEN:  Yes, you got through that and you went

1  on to the next paragraph, Judge.

2         THE COURT:  Thank you Ms. Hayden.  I'll go on with

3  the next paragraph.

4         The problem with the Directors argument is that

5  related to jurisdiction does not turn on whether the dispute

6  involves property of the estate.  Rather, related to

7  jurisdiction exists if a dispute may have a conceivable effect

8  on the bankruptcy case.  As noted above, quote, "The related

9  to language of Section 1334(b) must be read to give district

10  courts and bankruptcy courts under Section 157(a) jurisdiction

11  over more than simple proceedings involving property of the

12  debtor or the estate."  See Celotex Corp. v. Edwards, 514 U.S.

13  at 307 through 308.

14         Moreover, the Fifth Circuit noted in Zale that,

15  quote, "We do not decide whether the proceeds or property of

16  the estate if we find that the disputes over the Directors

17  and Officers insurance policy can have an effect on the

18  estate," closed quote.  See 62 Federal Reporter 3d at 758.

19  Again, that's from the Zale decision.

20         Thus the Court may possess related to jurisdiction

21  even if, as the Directors contend, the policy proceeds are not

22  property of the estate, provided a resolution of this dispute

23  could conceivably impact the bankruptcy estate and the

24  debtor's rights.

25         And before moving to the analysis of that, I want

27

1   to make this comment, and this would actually be a

2   footnote.

3       It says furthermore, even if the classification of

4   the policy proceeds as estate or non-estate property were

5   determinative, the law is more nuanced than the Directors

6   claim.  In In Re: OGA Charters, LLC, 901 Federal Reporter 3d

7   Page 599, that's a Fifth Circuit case from 2018.

8       The Fifth Circuit summarized the law of D&O policy

9   proceeds including the Fifth Circuit opinions from Louisiana

10  World Exposition and the decision in Houston v. Edgeworth,

11  which is 993 Federal Reporter 2d Page 51.  That's a Fifth

12  Circuit case from 1993.

13      In OGA, or OGA, the Fifth Circuit noted that the

14  inquiry is fact specific and it left open the possibility

15  that policy proceeds might be property of the estate if, e.g.,

16  there are, quote, "secondary impacts," closed quote on the

17  estate.  The court did not address that issue here.

18      Moving on with the analysis, I note that Zurich

19  claims that this Interpleader could have a conceivable impact

20  on the Debtor and the bankruptcy estate, and its opposition

21  appropriately focuses on those potential impacts.  See ECF

22  Number 120.

23      Zurich points to three matters that arose during

24  FNBC's bankruptcy case that show that the Interpleader action

25  could conceivably affect the Debtor and this estate.

28

1          One, is claims asserted by the Committee on

2     behalf of the Debtor against the Officers and the Directors;

3          Second, is the FDIC-R's claims against the

4     Directors and the D&O policies, including Zurich's;

5          And the third is the ongoing securities lawsuit

6     relating to the failure of the bank.

7          Additionally, Zurich points to the disclosure

8     statement and plan in FNBC's bankruptcy case which show that

9     recovery if any on these claims may be the only avenue for

10    creditors to receive a payout beyond the initial cash payout

11    provided under the plan.

12         And any potential payout would likely be funded in

13    large part by the various insurance policies covering the

14    Officers and Directors in the various matters, including

15    Zurich's policy at issue in this case.  The Court will

16    examine these claims and the Debtor's confirmed plan to

17    determine if this action could conceivably impact the Debtor

18    and its bankruptcy estate.

19         First, I'm going to look at the Committees and the

20    FDIC-R's claims against the Officers and Directors.  On

21    December 1, 2017 the bankruptcy court granted the Committee,

22    quote, "standing to assert, commence, prosecute and if

23    appropriate, settle with Court approval any and all claims of

24    any nature whatsoever, known or unknown, which the Debtor has

25    or may have or may have had against its Officers and

29

1   Directors, whether or not apparent or yet to be discovered

2   or which may hereinafter develop on behalf of and for the

3   benefit of the Debtor's estate."  And I'm quoting there from

4   FNBC's bankruptcy case, ECF Number 261.

5            On May 6, 2019 the bankruptcy court entered an

6   order granting a motion by the Official Committee of

7   Unsecured Creditors of First NBC Bank Holding Company to

8   assert and pursue claims on behalf of the estate.  This order

9   authorized the Committee to assert and pursue five classes of

10  claims as follows, quote:

11           Romanette i:  "The claims of FNBC and its

12  bankruptcy estate against the current and former Officers and

13  Directors thereof for breach of fiduciary duty in similar

14  matters."

15           Romanette ii:  "The Claims of FNBC and its

16  bankruptcy estate against Ernst & Young and any other current

17  or former auditor or accountant of FNBC."

18           Romanette iii:  "Claims regarding FNBC's breach of

19  various securities laws, statutes and regulations that are

20  property of FNBC and its bankruptcy estate."

21           Romanette iv:  "Disputes, including with the Federal

22  Deposit Insurance Corporation regarding competing claims to

23  the ownership of FNBC, its bankruptcy estate or their standing

24  to assert any of the foregoing."

25           And Romanette v:  "Any and all of FNBC's rights

1    concerning coverage disputes regarding coverage afforded to

2    FNBC or its bankruptcy estate under any and all relevant

3    insurance policies."

4         And there I'm quoting from the FNBC bankruptcy case,

5    and which I'm quoting from ECF Number 563.

6         Under these orders the Committee was authorized to

7    pursue claims belonging to the Debtor against the Officers

8    and the Directors of the Debtor, the Debtor's auditors Ernst

9    & Young, and others.  Additionally, the Committee was

10   authorized to pursue any and all of FNBC's rights concerning

11   insurance afforded to FNBC in its bankruptcy estate and

12   disputes as to coverage that may exist with the insurers

13   and/or the Federal Deposit Insurance Corporation.

14        Based on these orders, the Committee on May 10,

15   2019 filed a complaint in the Eastern District of Louisiana,

16   Docket Number 19-10341 -- I'm going to refer to this as the

17   Eastern District action -- against several former Officers

18   and Directors of the Debtor, including St. Angelo and Ernst &

19   Young, and certain individual auditors.

20        And I'm going to refer you to the complaint in the

21   Eastern District action, Paragraphs 39 and 40 in which the

22   Plaintiffs affirmatively state there that they're bringing

23   that action on behalf of the Debtor as authorized by the

24   bankruptcy court.

25        With respect to the Officer and Director

1   Defendants, the Committee alleges that they breached

2   certain fiduciary and other duties owed to the Debtor.  Since

3   the claims made by the Committee in the Eastern District

4   action are those belonging to the Debtor, if proven it could

5   result in a recovery to FNBC, which would increase the assets

6   available for administration in FNBC's bankruptcy case, which

7   obviously would potentially increase the recovery for

8   creditors of the estate.

9           Thus, the Eastern District action is at least

10  related to FNBC's bankruptcy case and indeed, subject matter

11  jurisdiction of that case is alleged to be based on 11 USC

12  Section 1334.  And again, I'll refer you to the complaint in

13  the Eastern District action.  It's Number 1.

14          The FDIC-R filed a Motion to Intervene in that case,

15  that's ECF Number 75 in the Eastern District action, seeking

16  to assert claims against the Officers and Directors and

17  noting that, quote, "Both the FDIC-R's potential claims and

18  the Committee's claims in this case are covered by common

19  wasting insurance policies, D&O policies in the case of the

20  Officer Defendants."

21          And there, I'm quoting from FDIC-R's memorandum in

22  support of Motion to Intervene, Page 15, and that's found in

23  ECF Number 75-1 in the Eastern District action.

24          The FDIC-R claims it's acceded to any rights or

25  recovery against the D&O policies covering both the holding

32

1   company and bank Directors and Officers, because the holding

2   company's competing right to that coverage is a claim of a

3   stockholder with respect to an asset of the bank under

4   statutory law.

5          Again, see the FDIC's memorandum in support of the

6   Motion to Intervene.  And there, the FDIC is quoting Zucker v.

7   Rodriguez, 919 Federal Reporter 3d Page 649.  That's a First

8   Circuit decision from 2019.

9          The FDIC-R asserts in the Eastern District action

10  that, quote, "The claims in this case are not only owned

11  exclusively by the FDIC-R, but the claims are draining a

12  recovery source, i.e., the D&O policies that would otherwise

13  be available to satisfy the claims of the FDIC-R, that the

14  FDIC-R may ultimately bring."  Again, see the brief of the

15  FDIC-R in the Eastern District action, which is Number 75-1.

16         And there, when I was giving that quote, they're

17  quoting from Lane v. Hoskins, it's another action from the

18  District of Nebraska and it's found at 2012 WESTLAW 5874335.

19         The Eastern District has not ruled on the FDIC-R's

20  Motion to Intervene or on any other issues in the case,

21  because the district court entered an order on August 16,

22  2019, which is ECF Number 90 in that action, staying the

23  action in its entirety until the conclusion of the criminal

24  proceeding against St. Angelo.

25         However, the FDIC-R recently filed a Motion to

33

1    Partially Lift Stay for the limited purpose of determining

2    the ownership of claims and to intervene in the Eastern

3    District action, alleging in its supporting memorandum that

4    at least one of the Defendants in the Eastern District action

5    had reached a settlement that would be funded by the

6    insurance companies providing coverage to the Directors and

7    Officers.  See ECF Number 92-1 in the Eastern District action,

8    which is the FDIC-R's request that the stay be lifted.

9         Thus the FDIC-R requested the Court to lift the

10   stay to determine the ownership of the claims in order to

11   protect the FDIC-R's access to the insurance proceeds.  By

12   order dated December 31, 2020 the district court denied the

13   FDIC-R's motion.  See ECF Number 102 in the Eastern District

14   action.

15        The Eastern District action and the FDIC-R's Motion

16   to Intervene illustrate the importance of the D&O policies

17   including Zurich's policy to any recovery by either the

18   Committee or the FDIC-R.

19        Clearly, if Zurich was a party to that Eastern

20   District action -- and I'm not even saying that they could

21   be, but if they were and this dispute arose between

22   St. Angelo, I don't think there would be any doubt that there

23   would continue to be related to jurisdiction for the Court to

24   resolve that dispute, because as pointed out by Zurich in

25   their brief, any decision regarding the funds at issue could

34

1   impact the bankruptcy case.

2            So here though, since Zurich isn't a party to that,

3   we've got essentially a claim by Zurich against the Officers

4   and Directors, it's essentially a third party claim, that's

5   not directly involving the Debtor.  So then the question

6   becomes whether related to jurisdiction exists over this

7   separate action, notwithstanding the fact that neither the

8   Committee nor the Debtor are parties to the action.

9            The Court finds that it does have related to

10  jurisdiction over this action simply because a decision in

11  this matter could have a conceivable effect on the Debtor and

12  its bankruptcy estate.  As noted by Zurich, depending on how

13  the Court rules in the Interpleader action, the proceeds of

14  the Zurich policy could potentially be available for recovery

15  by the Debtor through the Committee's action against the

16  Directors in the Eastern District action.

17           While it's conceivable that the policy proceeds at

18  issue in this Interpleader could be used to pay the defense

19  costs of St. Angelo and/or the other Directors and Officers

20  of the Debtor, or even the FDIC-R on their intervention; it's

21  just as conceivable that those proceeds could be used to

22  increase the assets of the estate through a settlement or

23  judgment rendered in the Eastern District action, which

24  certainly would have an effect on both the Debtor and the

25  Debtor's bankruptcy estate.  Thus, based on this analysis,

1  the Court finds that it has related to jurisdiction over

2  this Interpleader action.

3       I'm going to continue to analyze the other

4  arguments that were raised though by Zurich.  The next one

5  that they point to is the ongoing securities lawsuit.  Zurich

6  also points to a pending securities class action lawsuit

7  against the Debtor, that's Kinzler v. First NBC Bank Holding

8  Company, Docket Number 16-04243, which is pending in the

9  Eastern District of Louisiana, which is on appeal to the

10  Fifth Circuit but currently stayed.

11       Zurich asserts that the policy at issue in this

12  Interpleader provides direct coverage to the Debtor rather

13  than to the Officers and Directors for that action.  And

14  Zurich has previously reimbursed defense costs making the

15  Kinzler plaintiffs creditors of the debtor.  Zurich therefore

16  argues that any payments in this Interpleader action will

17  necessarily reduce recovery for the Kinzler creditors and

18  reduce the potential assets available to the estate for

19  payment of the securities claims.

20       Zurich however does not cite the specific documents

21  to support this argument in their brief analysis.  If true,

22  this could also give rise to related to jurisdiction but it

23  is unnecessary for the Court to address this fact because it

24  has already concluded that it has at least related to

25  jurisdiction on the other grounds as I've previously noted.

36

1          Finally, the Court is going to consider Zurich's

2    argument regarding the litigation trust established by the

3    Chapter 11 plan.  The Court notes that the second amended

4    joint Chapter 11 plan of reorganization for First NBC Bank

5    Holding Company, ECF Number 621, the plan as immaterially

6    modified, ECF Number A-16 was confirmed by the Court on May

7    15, 2020.  And I will acknowledge that it's currently up on

8    appeal.  But the confirmation is order -- ECF Number 863 in

9    the bankruptcy case.

10          A review of the disclosure statement and the plan

11   though further supports this Court's conclusion that related

12   to jurisdiction exists over Zurich's Interpleader action.  As

13   noted by Zurich, the plan establishes a litigation trust and

14   specifically authorizes it to pursue claims based on policy

15   coverages and specifically references the D&O policy issued

16   by Zurich that is at issue in this Interpleader.

17          Zurich's opposition also excerpts the relevant

18   sections of the plan on Pages 18 through 20 of its brief, see

19   ECF Number 120 for all of those provisions.

20          The plan repeatedly references D&O policies which

21   are defined in the plan and specifically states that, quote,

22   "No release, exculpation, injunction or waiver as set forth in

23   this plan shall apply to any D&O claim or claims related to

24   any D&O policies belonging to or pursuable by the Committee,

25   or litigation and distribution trust, or litigation and

1    distribution trustee and all such claims and related causes

2    of action are expressly reserved and preserved.

3           See the plan at Paragraph 8.6, which is found in ECF

4    Number 621 in the bankruptcy case.

5           The plan also retains certain claims and causes of

6    action including the suit by the Committee against Certain

7    Directors in the Eastern District that we referred to them

8    and have been discussing thus far, and the securities class

9    action lawsuit which was also discussed above.

10          Because the plan itself contemplates that the

11   litigation trust and/or Committee will either pursue or

12   continue pursuing the claims based on coverage issues under

13   the D&O policies, including the Zurich policy, and reserves

14   any and all rights under the D&O policy.  The Court finds that

15   the interpretation and administration of the D&O policy, as

16   the Court is being asked to do in this Interpleader action,

17   could conceivably effect the bankruptcy case, including

18   possible recovery for creditors from the policy proceeds.

19          Indeed, creditors voting on the plan had every

20   reason to assume that any recoveries to come from the

21   litigation trust, or come to the litigation trust would be

22   funded by the D&O policies, including the Zurich policy

23   referenced in the plan.

24          The Fifth Circuit in In Re: Zale Corp., 62 Federal

25   Reporter 3d 746, that's a Fifth Circuit case from 1995,

1  considered whether a reference to a potential recovery under

2  a Director and Officer policy and a disclosure statement and

3  plan could give the bankruptcy court related to jurisdiction

4  over third party claims involving the policy.

5          And here, in Zale, the debtor had procured a $10

6  million Directors and Officers policy from CIGNA and a $25

7  million excess policy from National Union Fire Insurance

8  Company.  After three of Zale's four Directors reached a

9  settlement with Zale and CIGNA, requiring CIGNA to remit its

10 policy limits, the parties filed a motion seeking Court

11 approval of the settlement and set that motion for hearing on

12 the same day as the hearing on confirmation of the plan.

13         The one non-settling Director, Alan D. Feld, and the

14 National Union Fire Insurance Company who had the excess

15 coverage, opposed the settlement.  The bankruptcy court

16 approved the settlement and entered an order that enjoined

17 and barred Feld and National Union from pursuing claims

18 directly against CIGNA for bad faith and for breach of

19 contract.  At the same time the bankruptcy court confirmed

20 Zale's plan.

21         Under the terms of the plan the CIGNA proceeds were

22 to be used to pay claims of unsecured creditors.  Feld and

23 National Union appealed the bankruptcy court orders, and they

24 raised various issues regarding jurisdiction.  One of the

25 issues raised in the appeal was whether the bankruptcy court

1   had jurisdiction over Feld's and National Union's breach of

2   contract claims.  And those were claims that -- they were

3   bringing future contract claims in an opposition to the

4   settlement.

5          Feld and National Union argued that the contract

6   claims had no effect on Zale's bankruptcy estate, claiming

7   that because the creditors approved and confirmed the plan

8   prior to settlement approval, they assumed that the estate

9   had not included any insurance proceeds, and therefore the

10  settlement could not have affected the estate.  And there,

11  I'm referencing Page 758 from the Zale decision.

12         The Fifth Circuit rejected this argument.  The Court

13  noted that the disclosure statement and the plan made

14  reference to the claims against the Directors and that there

15  could be a recovery for the Directors in the CIGNA policy.

16         Based on these disclosures the Court concluded that

17  the creditors likely voted to approve the plan based on the

18  insurance proceeds flowing into the estate.  The Court stated,

19  quote:

20         "Thus we infer that the creditors approved the plan

21  on the assumption that some amount of proceeds from CIGNA

22  would flow into the estate.  Moreover, the plan intertwines

23  these claims with other provisions of the plan.  Suits over

24  the CIGNA policy will tie up the policy assets and the other

25  assets of the litigation entity due to the litigation and its

40

1   attendant expenses.  For these reasons we hold that Feld

2   and National Union's claims had an effect on the estate.

3   Accordingly, the bankruptcy court had, quote, "related to,"

4   closed quote, subject matter jurisdiction over the contract

5   claims." closed quote.  There, I'm quoting from the Zale

6   decision from Pages 758 through 759.

7           And in summary, the Court found that there was

8   subject matter jurisdiction on the contract claim, but I do

9   want to add that the Court did find that there would not be

10  subject matter jurisdiction in the bankruptcy over the tort

11  claim for bad faith that was being alleged by Feld and

12  National Union in the settlement.  So the Court did -- kind

13  of had a split decision there, but it definitely found that

14  there was jurisdiction over the contract claim.

15          So that takes us to where we are now.  The plan in

16  this case indicates that any recovery to the Unsecured

17  Creditors from the litigation trust would likely come from

18  the D&O policies, including the Zurich policy at issue in this

19  case.  Thus, when the creditors voted on the plan in this case

20  they likely assumed that some amount of proceeds, assuming

21  that their litigation would be successful, would come from

22  Zurich's policy and that it would flow into the estate.

23          Thus Zurich's Interpleader action which in essence

24  sets forth a contractual dispute with regards to coverage, is

25  related to the Debtor and his bankruptcy estate in such a way

1   that it makes it sufficient for the Court to exercise

2   related to jurisdiction over this matter.

3          So in conclusion, in talking about the related to

4   jurisdiction, for all of the reasons that I've given, the

5   Court finds that it has related to jurisdiction in this case.

6          Next, I'm going to consider whether the case is

7   ripe.  In their Motion to Dismiss, ECF Number 92, the

8   Directors argue that even if the Court has subject matter

9   jurisdiction, the Interpleader should be dismissed because

10  there is no ripe case or controversy.  See the Directors

11  memorandum in support of Motion to Dismiss, Pages 9 -- on

12  Page 9, that's ECF Number 92-1.  Actually, see Pages 9 through

13  18.

14         The Directors cite general case law concerning

15  ripeness, but the crux is that ripeness depends on the facts

16  of each case.  The essence of the Directors argument is that

17  because it is uncertain whether the funds will be needed by

18  actual insureds under the policy, there is presently no ripe or

19  justiciable case or controversy.

20         The Court rejects this argument.  First, the D&O

21  policy offers a total of $15 million in coverage and the

22  claims asserted against the Directors and Officers exceed that

23  by a considerable margin.

24         Second, Zurich has demonstrated that there is an

25  existing controversy as to payment of the Interpleader funds

42

1    deposited into the registry of the Court, because

2    St. Angelo and the other parties opposite positions.  Indeed,

3    even while arguing that there is no ripe case or controversy,

4    the Directors argue that St. Angelo is not entitled to the

5    funds at issue, because he has pled guilty to intentional

6    criminal misconduct.  See their brief at Page 14.

7         Whether St. Angelo is entitled to receive ongoing

8    insurance coverage is the essence of the dispute in this

9    Interpleader by Zurich.  By arguing against St. Angelo's

10   entitlement to the funds, the Directors demonstrate that

11   there is in fact a ripe controversy.  Accordingly, the Court

12   denies the Directors Motion to Dismiss on the grounds of

13   ripeness.

14        Next, the Court is going to address whether the

15   action should be stayed.  In their Motion to Dismiss, ECF

16   Number 92, the Directors argue in the alternative that this

17   Interpleader should be stayed pending final resolution of

18   St. Angelo's criminal proceeding as other courts have done in

19   litigation involving St. Angelo.  See the Directors

20   memorandum in support of Motion to Dismiss, Pages 18 to 23,

21   ECF Number 92-1.

22        The United States has filed a Motion to Intervene

23   and stay adversary proceeding, which is ECF Number 111,

24   seeking a stay on the same grounds or in the alternative, a

25   stay of discovery for the same period.  The Court finds that

43

1   such a stay is warranted for the reasons set out in the

2   briefs by the Directors and the United States as other courts

3   have also found.

4          Accordingly, this Court will grant the Directors

5   alternative Motion to Stay and the United States' Motion to

6   Intervene and Stay, which is ECF Number 11, staying the

7   Interpleader until the criminal proceeding against St. Angelo

8   is concluded.

9          Accordingly, this Court will hold all other matters

10  in this case that were before today, or is currently before

11  it, in abeyance until the stay is lifted upon the conclusion

12  of St. Angelo's criminal proceeding.

13         So to sum it up, for the reasons set out, the

14  Directors Motion to Dismiss, ECF Number 92 is denied.  The

15  Directors alternative Motion to Stay, ECF Number 92 and then

16  United States' Motion to Intervene and Stay, which is ECF

17  Number 111, are granted.

18         All further matters in this adversary proceeding are

19  hereby stayed until the conclusion of the criminal proceeding

20  against St. Angelo.

21         Thanks for bearing with me.  That's the decision of

22  the Court.  I am going to reserve my right over the next ten

23  days -- ten days or so.  I won't change my decision, of

24  course, but I'm going to reserve my right to publish a

25  written opinion that would be in accordance with the Ruling

44

1  that the Court has put on the record today.

2          Thank you for your attention.  The Court is going

3  to be adjourned.

4      (All Counsel respond, "Thank you Judge.")

5          THE COURT:  Thank you.

6                      *    *    *    *    *

7                   (Hearing is Concluded)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

       I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.

**S/Sherryl P. Robinson**                  **_11/20/2020_**
**Sherryl P. Robinson**                    **Date**